# 21-2852 (L)
# 21-2898 (CON)

---

## UNITED STATES COURT OF APPEALS
### For the
## SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, AKA Henriy Ogbuokiri, Joshua

(For Continuation of Caption See Inside Cover)

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF FOR DEFENDANT-APPELLANT DARYL BARTLEY
PURSUANT TO <u>ANDERS v. CALIFORNIA,</u> 386 U.S. 738 (1967)**

Megan Wolfe Benett, Esq.
485 Lexington Avenue, 28th Floor
New York, New York 10017
(212) 973-3406
mbenett@kreindler.com
*Attorney for Defendant-Appellant
Daryl Bartley*

Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Garnet Steven Murray-Sesay, AKA Steven Garnet Murray-Sesay, Andrew Heaven, Muhammed Bashorun, AKA Sealed Defendant 1,

Defendants,

Oladayo Oladokun, AKA Sealed Defendant 1, Daryl Bartley,

Defendants - Appellants.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES PRESENTED ..................................2

STATEMENT OF THE CASE .............................................................3

I.     Preliminary Statement ................................................................3

II.    Statement of the Facts ...............................................................3

  A.  The Indictment .......................................................................3

  B.  The Plea Agreement ...............................................................4

  C.  The Plea Allocution ...............................................................5

  D.  The Presentence Investigation Report .................................13

   i. The Sentencing Guidelines Calculation ..............................13

   ii. The Offense Conduct ..........................................................13

   iii.Personal History and Characteristics ..................................14

  E.  The Parties' Sentencing Submission ....................................14

  F.  Sentencing.............................................................................15

III.   POSSIBLE ISSUES ON APPEAL ........................................18

  A.  Whether There is Any Basis to Challenge the Guilty Plea .......................18

  B.  Whether There is Any Basis for Appellate Review of Appellant's Sentence....................................................................21

   i.  Mr. Bartley Waived His Right to Appeal the Sentence............................22

   ii. In Any Event, There are No Non-Frivolous Basis for Appealing the Sentence....................................................................23

CONCLUSION....................................................................................24

CERTIFICATE OF COMPLIANCE ................................................26

CERTIFICATE OF SERVICE .........................................................27

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anders v. California*, 386 U.S. 738 (1967) ...................................................... 24, 25

*Booker*, 543 U.S. 220 (2005) ...........................................................................24

*Boykin v. Alabama*, 395 U.S. 238 (1969) ........................................................18

*United States v. Arevalo*, 628 F.3d 93 (2d Cir. 2010) ....................................22

*United States v. Buissereth*, 638 F.3d 114 (2d Cir. 2011) ...............................22

*United States v. Djelevic*,161 F.3d 104 (2d Cir. 1998).....................................22

*United States v. Fisher*, 232 F.3d 301 (2d Cir. 2000)......................................22

*United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000)...........................25

*United States v. Lee*, 523 F.3d 104 (2d Cir. 2008) ..........................................22

*United States v. Ready*, 82 F. 3d 551 (2d Cir. 1996) .......................................23

*United States v. Rosa*, 123 F.3d 94 (2d Cir. 1997) ..........................................22

Statutes

18 U.S.C. § 1028A(a)(1) and (b) ........................................................................3

18 U.S.C. § 1343 ................................................................................................3

18 U.S.C. §§ 1349 ...........................................................................................3, 4

18 U.S.C. § 1956 ................................................................................................3

18 U.S.C. §1957..................................................................................................3

18 U.S.C. § 3231 ................................................................................................1

18 U.S.C. § 3553(a) .....................................................................................17, 21

18 U.S.C. § 3742(a)(2).......................................................................................1

28 U.S.C. §1291..................................................................................................1

Rules

Fed.R.App.P. 32(a)(7)(B) .................................................................................26

Fed.R.Crim.P. 11.......................................................................................... *passim*

Second Circuit Rule 32 .....................................................................................26

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of conviction entered on November 8, 2021, in the United States District Court for the Southern District of New York (Honorable Katherine Polk Failla). Jurisdiction of this action was in the district court pursuant to 18 U.S.C. § 3231. This Court's jurisdiction is invoked under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. §1291. A timely notice of appeal was filed on November 22, 2021. A. 72.[1]

---

[1] References to the appendix are noted by "A." followed by the relevant page numbers and the confidential appendix by "CA." followed by the relevant page numbers.

## STATEMENT OF THE ISSUES PRESENTED

Whether the record in this case presents any non-frivolous legal issue that can be raised on appeal.

## STATEMENT OF THE CASE

### I.  Preliminary Statement

Darryl Bartley appeals from a judgment of the United States District Court for the Southern District of New York, convicting him, after a guilty plea, of conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349. A. 84-91.  On November 5, 2021, the district court imposed a sentence time served with three years of supervised release, the first 18 months of which was to be served on home incarceration, along with restitution in the amount of $41,350 and a $100 special assessment. A. 273-79.

### II. Statement of the Facts

### A. The Indictment

A grand jury in the Southern District of New York indicted Daryl Bartley with three counts: conspiracy to commit bank and wire fraud in violation of 18 U.S.C. §§ 1343, 1349 (Count One), conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956, 1957 (Count Two) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (b) (Count Three). A. 74-83.  Count Three carried a mandatory minimum term of two years in prison, which would have to run consecutive to any sentence on Counts One and Two, which carried potential sentences of zero to thirty years and zero to twenty years, respectively, in prison.

3

**B. The Plea Agreement**

On December 3, 2020, Mr. Bartley signed a plea agreement with the government, which defense counsel signed on January 28, 2021. A. 84-91.  The Plea Agreement provided that Mr. Bartley would plead guilty to the violation of 18 U.S.C. § 1349 charged in Count One and, in exchange, the government would move to dismiss the remaining open counts in the indictment. A. 84.

The parties agreed to Mr. Bartley's exposure under the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.").  First, the Plea Agreement set forth the maximum penalty for the offense (30 years in prison) and then calculated the base offense level for the Count One charge as level seven. A. 85.  Then, the parties agreed that a single Sentencing Guidelines enhancement applied – specifically, a six-level increase because of the loss amount. A. 85.  After a reduction of three-points for acceptance of responsibility, the final offense level was 11. A. 85.  Last, as to Mr. Bartley's criminal history, the parties agreed that he fell within Criminal History Category VI. A. 88.  In light of this, the parties stipulated to an advisory Sentencing Guidelines range of 27- to 33-months imprisonment. A. 88.

Additionally, the Plea Agreement contained a waiver of Mr. Bartley's right to appeal any sentence within or below the stipulated Sentencing Guidelines range

4

of 27-33 months in prison. A.89.  That is, Mr. Bartley agreed to waive his right to appeal a sentence of 33-months in prison or less. A. 89.

### C. The Plea Allocution

On December 3, 2020, Mr. Bartley appeared by video before Judge Failla to plead guilty to Count One of the indictment. The Court confirmed that Mr. Bartley could hear and see the proceedings and directed him to advise the Court if he was at any time unable to see or hear. A. 94.  The Court also confirmed that Mr. Bartley had discussed with counsel his right to proceed in person in open court and that he was waiving that right. A. 94-95.  Defense counsel set forth the factual basis establishing that a further delay of the proceeding would work substantial harm to the interests of justice, specifically that Mr. Bartley was pleading to a charge with no mandatory minimum term, that he had significant covid-19 co-morbidities and that the defense intended to request a non-incarceratory sentence, such that delaying the plea and subsequent sentencing would substantially impair his rights. A. 95-96.  After clarifying that the Court was not expressing a view on the ultimate sentence, the Court found that "further delay in this case of this plea could cause substantial harm to the interests of justice." A. 96.

After swearing in Mr. Bartley, the Court asked questions that established that Mr. Bartley was 59 years old, was a college graduate, and was not, at the time, under the influence of alcohol, drugs or medication that affected his ability to see,

5

hear or understand the proceedings, nor was he under the care of a psychiatrist, that he had not consumed any alcoholic beverages in the two days prior, that his mind was clear and that he understood what was happening in the proceeding. A. 100-04.  The Court found based on that colloquy and Mr. Bartley's demeanor, as well as representations from defense counsel and the government, that Mr. Bartley was fully competent to enter a knowing and informed plea. A. 105.

Mr. Bartley confirmed that he had had enough time to review the indictment and plea offer letter from the government and that he had had enough of an opportunity to discuss them both with counsel. A. 106.[2]

The Court then explained to Mr. Bartley the rights he would be giving up by pleading guilty and had Mr. Bartley confirm that he understood that he would be foregoing those rights with a guilty pela. A. 107-11.  The court explained that Mr. Bartley had the right not to plead guilty; that if he chose not to plead guilty, he would be entitled to a speedy and public trial by a jury of 12 people; that he would be represented by counsel at trial and at every stage of the proceedings and that an attorney would be appointed to represent him free of charge if he could not afford one; that he would be presumed innocent at trial unless and until the government

---

[2] The Court also explained to Mr. Bartley that if "at any time … you would like an opportunity to speak with your attorney," the Court would give him that opportunity. A. 99.

proved his guilt beyond a reasonable doubt to all 12 jurors; that at trial he would

have the right to confront and cross-examine all of the witnesses the government

called against him; that he could remain silent at trial and no inference could be

drawn from his silence; that he could choose to testify in his own defense; that the

Court could compel witnesses and evidence for his defense at trial; that he would

be giving up any right to seek to suppress part or all of the government's evidence

against him by pleading guilty; and that he would have the right to appeal from a

jury verdict if he were convicted at a trial. A. 107-09.  After describing all of those

rights, the Court asked Mr. Bartley whether he understood that if he did "plead

guilty" and if the Court accepted his plea, he "will give up your right to trial and

other rights that I have been discussing with you," that there would "be no trial"

and that the Court would "enter a judgment of guilty on Count One … and I will

sentence you at a later date … ." A. 110.  The Court explained that "[i]f you plead

guilty and if I accept your guilty plea, there would be no appeal on the issue of

whether the government could use the evidence that it has against you, there would

also be no appeal on the issue of whether you in fact committed the offense to

which you plead guilty … ." A. 110.  When asked if he understood that, Mr.

Bartley answered "Yes, I do, your Honor." A. 110.

The Court explained that by pleading guilty Mr. Bartley would be

acknowledging that he was, in fact, guilty of the offense and that he would "have

to admit and acknowledge your guilt of the offense charged in Count One." A. 111.
Mr. Bartley confirmed that he understood this and that he wished to give up all of
the rights the Court had described and enter a plea of guilty to Count One. A. 111.

The Court then had the government summarize the elements of the crimes in
the indictment and what it would had to have to proven beyond a reasonable doubt
were Mr. Bartley to have gone to trial. A. 111-13. The government explained that
to prove Mr. Bartley guilty of Count One, it would have to prove beyond a
reasonable doubt:

> First, that two or more people conspired to commit bank fraud and
> wire fraud; and second, that the defendant willfully joined the
> conspiracy knowing of its unlawful objective.
>
> Now the first element referred to a two-object conspiracy, that is, a
> conspiracy to commit bank fraud and wire fraud, and those each have
> their own elements. As to the first object, bank fraud, there are three
> elements: First, that there was a scheme or artifice to defraud a
> financial institution or to obtain money or property owned or under
> the control of a financial institution by materially false and fraudulent
> pretenses, representations or promises; second, that the defendant
> knowingly executed the scheme or artifice to defraud; third, that the
> financial institution was insured by the Federal Deposit Insurance
> Corporation.
>
> Now the second object of the conspiracy charged in this case is wire
> fraud, and that itself also has three elements: First, that there was a
> scheme to defraud another out of money or property by means of false
> or fraudulent pretenses, representation or promises; second, that the
> defendant knowingly and willfully participated in the scheme to
> defraud; and third, that the interstate wires was used in furtherance of
> the scheme.

8

A. 112. The government also explained that, "[f]inally, for this offense the government would need to establish that venue is proper in the Southern District of New York by preponderance of the evidence." A. 113.

Thereafter, the Court proceeded to explain the maximum possible penalty for the charged conduct to which Mr. Bartley was pleading guilty, which was 30-years in prison for Count One (along with a maximum of five years on supervised release, the maximum fine and a mandatory special assessment of $100). A. 114-16. The Court also explained that it could order restitution and forfeiture, and that the government had calculated a restitution amount of $41,350 and that the government was, in addition to that, seeking a forfeiture order in the amount of $41,350, which Mr. Bartley state that he understood. A. 116-17.

The Court then confirmed that Mr. Bartley was a United States citizen, that he could lose certain "valuable civil rights" including "the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm." A. 118.

The Court described the advisory Sentencing Guidelines then went on to explain how sentencing would unfold, and clarifying that "if anyone has attempted to predict what your ultimate sentence will be, their prediction could be incorrect." A. 119-20. Judge Failla explained that before sentencing she would "need to hear from you … , I need to hear from the probation office, and I need to hear from you,

your attorney, and the government[']s attorneys at sentencing. A. 120.  The Court

also explained that even if the sentence were different than what anyone might

have suggested, he would not be permitted to withdraw his guilty plea "based

merely on dissatisfaction" with the sentence. A. 120.  T

  After that, the Court reviewed the terms of the Plea Agreement, including

the stipulated Sentencing Guidelines range of 27-33 months, the admitted

forfeiture allegation (at an amount of $41,350) and the restitution agreement (for

$41,350) as well as the appeal waiver. A. 125.  The Court explained that it was

"not bound by" the Plea Agreement and had an independent obligation to calculate

the applicable Sentencing Guidelines range. A. 125.  Similarly, the Court

confirmed that Mr. Bartley understood that if that calculation were different than

what Mr. Bartley and the government had set forth in the Plea Agreement "that

would not be a basis for you to withdraw your plea." A. 125.

  The Court confirmed that Mr. Bartley had reviewed the Plea Agreement,

understood its terms and expressly asked if he understood that he had agreed "to

waive your right to appeal or otherwise challenge a sentence of imprisonment

within or below the range of 27 to 33 months.  So if I were to impose a term of 33

months imprisonment or something less than that, you're agreeing not to appeal

that piece of your sentence, is that correct?" A. 123-26 to which Mr. Bartley

responded "that's correct." A. 126.  Mr. Bartley also stated that he understood that

10

he would not appeal any term of supervised release less than or equal to five years, so that if the Court "impose[d] a five-year term of supervised release or something less than that, you're agreeing not to appeal that piece of your sentence … ." A. 126. Mr. Bartley likewise confirmed that he was agreeing not to appeal any forfeiture or restitution amount less than or equal to $41,350, any fine less than or equal to $40,000 or any special assessment less than or equal to $100. A. 127.

Mr. Bartley then proceeded to describe the offense conduct, explaining that: "I established an account, deposited an instrument in an account that was not made out to me, and proceeded to withdraw the money by ATM." A. 129. In response to questions from the Court, he also acknowledged that he had entered into an agreement with one or more people and at least one of them was not a law enforcement officer. A. 129. The Court summarized its understanding of Mr. Bartley's allocution, stating:

> …you did have an agreement with other individuals. And … that agreement is something where the group agreed to obtain money, basically, obtain property by means of setting up these accounts at banks, depositing checks that didn't belong to the person who was depositing them, and then withdrawing the funds. Is that fair to say that that's part of the agreement, sir?

A. 133. Mr. Bartley responded "That's pretty accurate, your Honor. That's correct, yes." The Court clarified that in addition to the use of ATMs, Mr. Bartley and his co-conspirators "used the wires, either because of a telephone call, because of a

11

text, because of an email or because of the wire transfer," to which Mr. Bartley said "Yes, I would think so." A. 133. The Court also asked Mr. Bartley if, at the time he withdrew funds from an account he opened in another person's name, he understood that "either the person whose name was on the check or the bank could be deprived of that money because of the conduct you were engaging in?" and Mr. Bartley answered "Yes, I did, your Honor." A. 134. Indeed, Mr. Bartley acknowledged that at the time that he engaged in this conduct, he knew that it was wrong and illegal. A. 134.

The government proffered as to the bank's status as being federally-insured, as to venue in the Southern District of New York being proper and as to the use of the wires (including evidence that co-conspirators used internet and cellular services to communicate with each other in furtherance of the scheme.) A. 134-35. The defense stated that it had no reason to dispute those factual proffers, and that it did not know of any valid defense that would prevail at trial or any reason why Mr. Bartley should be permitted to plead guilty. A. 135.

The Court then accepted Mr. Bartley's guilty plea, finding that he was competent to enter a plea; that his plea was knowing and voluntary; and that he understood the rights he was giving up by pleading guilty. A. 136-37. The Court ordered that the Probation Department not interview Mr. Bartley for purposes of

12

the Presentence Investigation Report (PSR) without defense counsel present and scheduled sentencing. A. 137-38.

### D. The Presentence Investigation Report

#### i. The Sentencing Guidelines Calculation

The Presentence Investigation Report (PSR) concluded that the offense level was 11, as the parties had stipulated. CA. 14. The PSR also calculated Mr. Bartley as being in Criminal History Category VI, as did the Plea Agreement. CA. 25, A. 88. The PSR calculated the advisory Sentencing Guidelines range as 27-33 months' imprisonment and recommended a sentence at the highest end of that range. CA. 45.

#### ii. The Offense Conduct

The PSR described the offense conduct as follows.

Following a long-term investigation beginning with stolen checks, it was determined that from April 2018 through September 2019, Mr. Bartley and others participated in a scheme to defraud banks whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC). CA. 6. The scheme involved bank accounts that would be opened in the name of a business entity with co-conspirators establishing the accounts using the personal identifying information of other individuals. CA. 6. The co-conspirators would then deposit stolen or fraudulent checks (or induce others to wire money into the accounts) and thereafter

13

would withdraw case against those deposited checks (or wired funds). CA. 6. As for Mr. Bartley individually, the PSR described him as having been identified in surveillance video depositing a stolen $41,350 check held in the name of a food processing company and also making an opening deposit in an account he opened using an alias and another person's social security number. CA. 9.

### iii. Personal History and Characteristics

Daryl Bartley, 58-years old, at the time of his arrest, was born in Washington, D.C., where he was raised by his biological mother in a single-parent household. A. 143. His mother worked at the Library of Congress and because of her work schedule, when he was a toddler Mr. Bartley was sent to South Carolina where he lived with his grandmother until he was 10-years old. A. 143. He is a college graduate with a long work history. A. 143-44. He has been married twice and is the father of two sons, in whose life he remains an active presence. A. 145-46. He has serious health conditions, including congestive heart failure, chronic obstructive pulmonary disease, atrial fibrillation, high blood pressure, pre-diabetes, sleep apnea and obesity. A. 148. Mr. Bartley also has a long history of substance abuse as well as a significant criminal history. A. 146, CA. 15-26.

### E. The Parties' Sentencing Submission

Focusing largely on Daryl Bartley's personal history and characteristics, particularly the serious risk incarceration during the covid-19 pandemic poses for

14

someone with his myriad co-morbidities, the defense asked the sentencing court for a downward variance from the 33-41 month Sentencing Guidelines range in the PSR, to a nine-month term of home incarceration along with a community service requirement. A. 153.  This request was made, in large part, on the basis of the severe health outcomes that Mr. Bartley faced were he to face a term of incarceration, while recognizing the factors supporting the advisory Sentencing Guidelines' recommendation, specifically his long criminal history (including two prior federal felony convictions) and the fact that he was on post-release supervision for another federal fraud conviction at the time of the offense conduct. A. 143-53.

The government simply asked for a sentence within the Sentencing Guidelines range to which the parties had stipulated – that is, between 27 and 33 months in prison. A. 224.

## F.  Sentencing

At the sentencing hearing on November 5, 2021, the Court began by confirming that Mr. Bartley understood that he could proceed in person and, having consulted with counsel, had decided it was his preference to proceed virtually, via videoconference. A. 230-31.  The Court also found, on the record, that further delay to the proceeding could cause substantial harm to the interests of justice insofar as Mr. Bartley desired to resolve the matter at that time and that

15

proceeding in person could cause serious risk to Mr. Bartley's health, in light of his numerous covid-19 co-morbidities. A. 230-31.

The Court stated that, in connection with the sentencing hearing, it had the PSR, the defense sentencing submission and exhibits (including letters of support and medical records) and a defense sentencing letter. A. 233-34. The parties agreed to the order of forfeiture and order of restitution, on the terms set forth in the Plea Agreement, be signed and filed by the Court following the sentencing hearing, in light of problems with the quality of the signature on the original papers. A. 235. The Court confirmed that Mr. Bartley had reviewed the PSR and that neither he nor defense counsel had any objections to it. A. 237-38; A. 240-43. The Court adopted the report's factual recitations as well as its Sentencing Guidelines calculation, which mirrored the range to which the parties had stipulated in the Plea Agreement. A. 247.

At the sentencing hearing, the government acknowledged that Mr. Bartley's offense conduct was "situated at the low end of culpability" but found "[t]he trouble with this case" to be Mr. Bartley's "extremely extensive criminal history." A. 250. The prosecutor also acknowledged Mr. Bartley's "compelling medical conditions" and confessed to the Court "I don't know what to do about this case. I really don't." A. 251. Before allowing defense counsel to speak, the Court explained that Mr. Bartley "has the worst criminal history I've ever dealt with as

16

judge, or as former prosecutor," and that the Court "wouldn't be spending quite so much time worrying about this case were it not for the severity of the medical conditions you've identified, because that's the only thing that potentially – and I won't say it will – keeps your client out of prison." A. 251-52.

In its presentation, defense counsel, recognizing Mr. Bartley's "unique" criminal history record, focused on his medical condition and the change that had forced on both his lifestyle and his attitude. A. 253-55. The defense also discussed the need for Mr. Bartley to maintain continuity in his specialized medical care. A. 255. Mr. Bartley also spoke, explaining that his health issues, taking care of his elderly mother and his own aging had put him "just in a different vein right now." A. 258-59. He said, among other things, that "I don't have many years left, and I have no choice but to do the right thing." A. 261.

The Court then recessed while considering the sentence, and, upon returning, outlined the 18 U.S.C. § 3553(a) factors. A. 262-63. The Court observed that "[e]verything that would cause a sentencing judge to have a red flag, you've done." A. 264. At the same time, the Court agreed with the parties that Mr. Bartley's "extraordinary medical conditions" caused "fear that the Bureau of Prisons, in its current state, at this stage of its existence, cannot provide the specific care that you need for your conditions[.]" A. 264. Accordingly, the Court decided "not … to impose additional prison time." A. 264. Instead, it imposed a sentence of time

17

served with a three-year period of supervised release, with the first 18 months of that period to be home incarcerations. A. 264-65.   The Court imposed the mandatory $100 special assessment, entered a forfeiture order of $41,350 and ordered restitution in the amount of $41,350, consistent with the terms of the parties' Plea Agreement. A. 265-66.

At the close of the sentencing hearing, the district court advised Mr. Bartley of his right to appeal. A. 48.  It then issued a judgment memorializing the plea, offense of conviction and sentence, in conformity with the oral sentence. A. 273-79.

## III.   POSSIBLE ISSUES ON APPEAL

### A. Whether There is Any Basis to Challenge the Guilty Plea

The guilty plea in this case was entered in conformity with all of the terms of Fed.R.Crim.P. 11, which incorporates the constitutional requirement that a defendant be advised of the rights he or she is waiving by pleading guilty. *See* Fed.R.Crim.P. 11, Notes of Advisory Committee on the Federal Rules, Notes to 1974 Amendments; *Boykin v. Alabama*, 395 U.S. 238 (1969).  At Mr. Bartley's plea proceeding, the Court attended to all of the requirements of Rule 11.

Before accepting the plea, the Court placed Mr. Bartley under oath and cautioned him that any false statements could result in additional penalties.

18

Fed.R.Crim.P. 11(b)(1)(A). The Court confirmed that Mr. Bartley had discussed the charges with his lawyer and understood them. Fed.R.Crim.P. 11(b)(1)(G).

Mr. Bartley was correctly informed that the maximum term of imprisonment for the offense to which he was pleading guilty was 30 years' imprisonment. Fed.R.Crim.P. 11(b)(1)(H). He was also correctly told the maximum term of supervised release of five years, as well as the operation of supervised release. Fed.R.Crim.P. 11(b)(1)(H). The Court informed Mr. Bartley that there could be an order of restitution or forfeiture, and identified the restitution amount to which the parties' had agreed and that was the same amount as ultimately ordered, as well as the maximum fine, though no fine was imposed, and was advised of the mandatory $100 special assessment. Fed.R.Crim.P. 11(b)(1)(J) – (L).

The Court confirmed that Mr. Bartley understood that the sentencing court had sole discretion in fashioning any punishment and that in doing so it would be obligated to calculate the applicable Sentencing Guidelines range (which could differ from that stipulated to by the parties), consider the range and possibly depart or vary from it. Fed.R.Crim.P. 11(b)(1)(M). The Court reviewed the terms of the Plea Agreement with Mr. Bartley, including its waiver of the right to appeal or collaterally attack the sentence. Fed.R.Crim.P. 11(b)(1)(N).

The Court also made sure that Mr. Bartley, who was represented by appointed counsel, understood that he had the right to persist in a not guilty plea

and proceed to a jury trial. Fed.R.Crim.P. 11(b)(1)(B) – (C). At that trial, the
Court explained, Mr. Bartley would continue to be represented by counsel and to
have counsel appointed if necessary. Fed.R.Crim.P. 11(b)(1)(D). He would be
presumed innocent and the government would have the burden of proving Mr.
Bartley's guilt beyond a reasonable doubt. Mr. Bartley's attorneys would be able
to cross-examine the government's witnesses and could present witnesses for the
defense, and could compel the presence of such witnesses. Fed.R.Crim.P.
11(b)(1)(E). Mr. Bartley would have the right to testify in his own behalf, but
could not be compelled to do so. Fed.R.Crim.P. 11(b)(1)(E).

Mr. Bartley confirmed that he understood each of these rights. The Court
explained that if he pleaded guilty, Mr. Bartley would be giving up these rights,
which he acknowledged he understood. Fed.R.Crim.P. 11(b)(1)(F).

Mr. Bartley also acknowledged that he had reviewed the indictment and
charges with counsel. In addition, the Court summarized the charge, and the
government described the elements of the offense charged. Mr. Bartley confirmed
that his plea was voluntary. Fed.R.Crim.P. 11(b)(2).

The Court inquired as to Mr. Bartley's state of mind, and he assured the
Court that he was thinking clearly, that he understood the proceedings and was
pleading guilty because he was guilty.

In addition, Mr. Bartley supplied a factual basis for the plea. He admitted to facts that supported the elements of Count One. Fed.R.Crim.P. 11(b)(3). He acknowledged that he had agreed with others to commit a fraud on a financial institution by depositing checks not made out to him and withdrawing cash based on those deposits, and he did not dispute the government's proffer that the financial institutions were insured by the FDIC or that interstate wires were used in furtherance of the conspiracy. The record of the guilty plea allocution, therefore, does not provide a basis to challenge the guilty plea.

**B. Whether There is Any Basis for Appellate Review of Appellant's Sentence**

In the Plea Agreement, Mr. Bartley agreed to waive his right to appeal or otherwise challenge his sentence if he received a sentence at or below 27-33 months' imprisonment. He confirmed his understanding of this waiver when the Court discussed it during the Rule 11 colloquy. The time-served sentence he received was 27-months below the bottom end of the applicable Sentencing Guidelines range. The appellate waiver thus bars the instant appeal.

In any event, there was no error in the calculation of Mr. Bartley's Sentencing Guidelines range, nor any procedural or substantive error in the manner in which the Court exercised its discretion to impose a sentence of time-served followed by supervised release with the first 18 months to be served at home after considering the 18 U.S.C. § 3553(a) factors.

21

### i.     Mr. Bartley Waived His Right to Appeal the Sentence

This Court has "regularly enforced" plea agreements that "waive appellate rights as long as the sentence is within or below an agreed upon Guidelines range[.]"*United States v. Fisher*, 232 F.3d 301, 303 (2d Cir. 2000); *see also United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) (It is "'well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable.'") (quoting *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998).

"While [a defendant's] appeal waiver [does] not relieve the District Court of its responsibility to follow the procedural requirements related to the imposition of a sentence, the appeal waiver does preclude this Court from correcting the errors alleged to have occurred below." *United States v. Buissereth*, 638 F.3d 114, 117 (2d Cir. 2011); *United States v. Arevalo*, 628 F.3d 93, 97 (2d Cir. 2010) (a defendant's "waiver of his right to 'challenge . . . [his] . . . sentence' plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of [his] sentence").

Thus, this Court will enforce such a waiver, and dismiss an appeal of a sentence at or below the agreed-upon threshold, so long as the record shows that the defendant knowingly and voluntarily agreed to the waiver. *See, e.g., United States v. Rosa*, 123 F.3d 94, 100 (2d Cir. 1997) (court must scrutinize plea

22

proceeding for a demonstration of defendant's knowing and voluntary appellate waiver); *United States v. Ready*, 82 F. 3d 551, 556 (2d Cir. 1996) (same).

Here, Mr. Bartley agreed in the Plea Agreement to waive his right to appeal any sentence at or below the top of the stipulated Sentencing Guidelines range, which was 33-months imprisonment – 33 months more than he ultimately received. (And the 18-months of home incarceration that is a special condition of Mr. Bartley's supervised release is also a shorter period of time than encompassed by the appeal waiver – and is additionally not being served in a penal institution.) In accordance with Fed.R.Crim.P. 11(b)(1)(N), the Court allocuted Mr. Bartley on the appeal waiver at the guilty plea proceeding and confirmed that he understood its meaning and effect. The plea colloquy therefore is affirmative evidence that the appellate waiver was both knowing and voluntary.

### ii.    In Any Event, There are No Non-Frivolous Basis for Appealing the Sentence

In this case, the district court correctly calculated the Sentencing Guidelines range as 27-33 months in prison – the same calculation to which the parties had stipulated and the same conclusion reached in the PSR. The defense did not dispute this calculation. And, even if an objection had been lodged, no colorable challenge could be made to the calculation or the subsequent below-Sentencing Guidelines sentence.

23

At sentencing, after hearing from the defense counsel, the government and Mr. Bartley, the sentencing court varied downward below the bottom end of the Sentencing Guidelines range by 27 months, imposing a sentence of time served. While the sentencing court could have imposed up to a five-year period of supervised release, it instead imposed a three-year term with the first 18 months to be served in home incarceration.

Under *Booker*, 543 U.S. 220 (2005), sentences are reviewed for procedural and substantive reasonableness. Because there is no non-frivolous basis to argue that Mr. Bartley's sentence, which was well below the correctly-calculated Sentencing Guidelines range, was either legally defective or unreasonably long, there is no issue that can be raised on this appeal concerning his sentence.

In sum, because no legal error occurred at the sentencing proceeding and because the length of the sentence was not unreasonable, there is no non-frivolous issue that can be raised on appeal concerning Mr. Bartley's sentence.

## CONCLUSION

After carefully examining the district court record, including transcripts of the plea and sentencing proceedings, counsel has concluded that there are no non-frivolous issues in connection with the denial of his motion for sentencing relief which could be raised on this appeal. *Anders v. California*, 386 U.S. 738 (1967). Counsel has also concluded that there are no other issues in this case implicating

24

Mr. Bartley's constitutional or statutory rights that either cannot be waived or considered waived in light of the circumstances. *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). Accordingly, counsel's motion pursuant to *Anders* should be granted.

Dated this 25th day of April 2022.

Respectfully submitted,
By:   /s/ Megan W. Benett
Megan W. Benett, Esq.
485 Lexington Avenue
28th Floor
New York, NY 10017
Telephone: (212) 973-3406
mbenett@kreindler.com

*Attorney for Defendant-Appellant, Daryl Bartley*

25

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed.R.App.P. 32(a)(7)(B) and Second Circuit Rule 32-1, that this brief is reproduced using proportional typeface of Times New Roman, 14 points in size, is double-spaced and consists of 5,533 words, as calculated in the word count program in Microsoft Word, including footnotes and headings and quotations.

Dated:  April 25, 2022

By      /s/ Megan Wolfe Benett

26

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on April 25, 2022 I served all parties of record using this Court's ECF system with hard copies following by United States Postal Service and served a hard copy of this brief and supporting appendices on Daryl Bartley via overnight mail service to his last known address.

Dated:  April 25, 2022

By _____ /s/ Megan W. Benett