# 21-2852 (L)
# 21-2898 (CON)

---

## UNITED STATES COURT OF APPEALS
## For the
## SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, AKA Henriy Ogbuokiri, Joshua

(For Continuation of Caption See Inside Cover)

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

### APPENDIX FOR DEFENDANT-APPELLANT DARYL BARTLEY

Megan Wolfe Benett, Esq.
485 Lexington Avenue, 28th Floor
New York, New York 10017
(212) 973-3406
mbenett@kreindler.com
*Attorney for Defendant-Appellant*
*Daryl Bartley*

Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Garnet Steven Murray-Sesay, AKA Steven Garnet Murray-Sesay, Andrew Heaven, Muhammed Bashorun, AKA Sealed Defendant 1,

Defendants,

Oladayo Oladokun, AKA Sealed Defendant 1, Daryl Bartley,

Defendants - Appellants.

# TABLE OF CONTENTS

District Court Docket .......................................................................... A-1

Notice of Appeal ................................................................................ A-72

Indictment .......................................................................................... A-74

Plea Agreement .................................................................................. A-84

Plea Transcript dated December 3, 2020 ........................................... A-92

Defense Sentencing Submission and Exhibits .................................. A-143

Government Sentencing Submission ................................................ A-224

Sentencing Transcript dated November 5, 2021 .............................. A-228

Judgment .......................................................................................... A-273

Case 21-2898, Document 29, 04/25/2022, 3303200, Page4 of 282

Query     Reports     Utilities     Help     Log Out

APPEAL,ECF,INTAPP,PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:20-cr-00003-KPF All Defendants

Case title: USA v. Oladokun et al                         Date Filed: 01/02/2020

Magistrate judge case numbers:  1:19-mj-11193-UA
                                1:21-mj-09442-UA

Assigned to: Judge Katherine Polk Failla

**Defendant (1)**

**Oladayo Oladokun**                    represented by   **Dawn M Florio**
*also known as*                                          Dawn M. Florio Law Firm PLLC
Sealed Defendant 1                                       488 Madison Avenue
                                                         20th Floor
                                                         10022
                                                         New York, NY 10022
                                                         212-939-9539
                                                         Fax: 347-398-8062
                                                         Email: dawnmflorio@yahoo.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         Designation: Retained

                                                         **James R. Froccaro , Jr.**
                                                         James R Froccaro Attorney At Law
                                                         7 Old Shore Rd.
                                                         Port Washington, NY 11050
                                                         (516) 944-5062
                                                         Fax: (516)-944-5064
                                                         Email: jrfesq61@aol.com
                                                         *TERMINATED: 12/08/2020*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jeffrey G. Pittell**
                                                         Maher & Pittell LLP
                                                         42-20 Bell Blvd Suite 302
                                                         Bayside, NY 11361
                                                         516-829-2299
                                                         Fax: 516-977-3003
                                                         Email: jp@jpittell.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: CJA Appointment*

A-1

Case 21-2898, Document 29, 01/25/2023, 3403200, Page5 of 282

**Matthew J. Kluger**
Law Office of Matthew J. Kluger
888 Grand Concourse
Ste 1h
Bronx, NY 10451
718-293-4900
Fax: 718-618-0140
Email: SDNYkluger@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Declan J. Murray**
Dawn M. Florio Law Firm, PLLC
488 Madison Ave
Ste 20th Floor
Manhattan, NY 10022
860-810-2551
Email: declanjmurray56@gmail.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD (1s) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2s) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

---

Assigned to: Judge Katherine Polk Failla

**Defendant (2)**

| | |
|---|---|
| **Farouk Kukoyi** | represented by **Eric Wayne Siegle** |
| | Siegle & Sims L.L.P |
| | 217 Broadway |
| | Suite 611 |
| | Ny, NY 10007 |
| | 212 406-0110 |
| | Fax: 212 406-5259 |
| | Email: e.siegle@siegleandsims.com |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |
| | *Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

A-3

Assigned to: Judge Katherine Polk Failla

**Defendant (3)**

**Baldwin Osuji**

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

Assigned to: Judge Katherine Polk Failla

**Defendant (4)**

**Henry Ogbuokiri**
*also known as*
Henriy Ogbuokiri

represented by **Mehdi Essmidi**
Greco Neyland, P.C.
521 5th Avenue
Suite 1722
New York, Ste 25th Floor
New York, NY 10017
212-951-1300
Fax: 212-951-1302
Email: mehdi@gnlaw.nyc
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD<br>(1)<br><br>18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY)<br>(2)<br><br>18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT)<br>(3) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

Assigned to: Judge Katherine Polk Failla

**Defendant (5)**

| **Joshua Hicks**<br>*TERMINATED: 12/02/2021* | represented by | **John P. DeMaio**<br>John P. Demaio, Esq.<br>75 Maiden Lane, Room# 265<br>New York, NY 10038<br>(646) 250-1108<br>Fax: (646) 202-1439<br>Email: johnpdemaio@yahoo.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |
|---|---|---|

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY | Imprisonment for a total term of Time |

TO COMMIT WIRE FRAUD & BANK
FRAUD
(1)

Served. Supervised release for a term of
Three Years

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

18:1956-4999.F MONEY LAUNDERING -
FRAUD, OTHER (CONSPIRACY)
(2)

All open counts are dismissed on the motion
of the US

18:1028A.F FRAUD WITH
IDENTIFICATION DOCUMENTS
(AGGRAVATED IDENTITY THEFT)
(3)

All open counts are dismissed on the motion
of the US

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

---

Assigned to: Judge Katherine Polk Failla

**Defendant (6)**

**Anthony Lee Nelson**
*TERMINATED: 11/02/2021*

represented by **Donna Rita Newman**
Law Offices of Donna R. Newman
20 Vesey Street, Suite 400
New York, NY 10007
(212) 229-1516
Fax: (212) 676-7497
Email: donnanewmanlaw@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |

18:1349.F ATTEMPT AND CONSPIRACY
TO COMMIT WIRE FRAUD & BANK
FRAUD
(1)

Imprisonment: Twenty-five (25) months.
Supervised Release: Three (3) years.

**Highest Offense Level (Opening)**

Felony

A-6

**Terminated Counts**

18:1956-4999.F MONEY LAUNDERING -
FRAUD, OTHER (CONSPIRACY)
(2)

**Disposition**

Dismissed

**Highest Offense Level (Terminated)**

Felony

**Complaints**

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

**Disposition**

---

Assigned to: Judge Katherine Polk Failla

**Defendant (7)**

**Derrick Banks**                    represented by **Joshua Lewis Dratel**
                                     Law Offices of Joshua L. Dratel, P.C.
                                     29 Broadway, Suite 1412
                                     New York, NY 10006
                                     (212) 732-0707
                                     Fax: (212) 571-6341
                                     Email: jdratel@joshuadratel.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*
                                     *Designation: CJA Appointment*

**Pending Counts**

18:1349.F ATTEMPT AND CONSPIRACY
TO COMMIT WIRE FRAUD & BANK
FRAUD
(1)

18:1956-4999.F MONEY LAUNDERING -
FRAUD, OTHER (CONSPIRACY)
(2)

18:1028A.F FRAUD WITH
IDENTIFICATION DOCUMENTS
(AGGRAVATED IDENTITY THEFT)
(3)

**Disposition**

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

A-7

### Highest Offense Level (Terminated)

None

| Complaints | Disposition |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

Assigned to: Judge Katherine Polk Failla

### Defendant (8)

**Ibrahima Doukoure**

| Pending Counts | Disposition |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | |

### Highest Offense Level (Opening)

Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

### Highest Offense Level (Terminated)

None

| Complaints | Disposition |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

Assigned to: Judge Katherine Polk Failla

### Defendant (9)

**Jamar Skeete**     represented by     **Mitchell C. Elman**
*TERMINATED: 07/09/2021*                             Law Offices of Mitchell C. Elman
905-15 Cross Bay Boulevard, 2nd Flr.,
Ozone Park, NY 11417

A-8

(516) 586-6666
Fax: (516) 345-2517
Email: mitchell@elmanlawny.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**                                      **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                   **Disposition**

18:1349.F ATTEMPT AND CONSPIRACY
TO COMMIT WIRE FRAUD & BANK
FRAUD                                                   Rule 20 - Transfer Out
(1)

18:1956-4999.F MONEY LAUNDERING -
FRAUD, OTHER (CONSPIRACY)                               Rule 20 - Transfer Out
(2)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                          **Disposition**

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

---

Assigned to: Judge Katherine Polk Failla

**Defendant (10)**

**Paul Yaw Osei, Jr.**                represented by   **Bradley Lamar Henry**
                                                        Akerman LLP
                                                        1251 Avenue of the Americas
                                                        Ste 37th Floor
                                                        New York, NY 10020
                                                        865-806-0058
                                                        Email: bradley.henry@akerman.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Designation: CJA Appointment*

                                                        **Dorea Helene Silverman**
                                                        Dorea Silverman, Attorney At Law
                                                        80 Broad Street

Suite 1900
New York, NY 10004
917-863-9905
Email: dorea@doreasilvermanlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**                              **Disposition**

18:1349.F ATTEMPT AND CONSPIRACY
TO COMMIT WIRE FRAUD & BANK
FRAUD
(1)

18:1956-4999.F MONEY LAUNDERING -
FRAUD, OTHER (CONSPIRACY)
(2)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                           **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                  **Disposition**

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

---

Assigned to: Judge Katherine Polk Failla

**Defendant (11)**

**Kowan Poole**                  represented by  **Alain Vernauid Massena**
*TERMINATED: 12/07/2021*                         Law Office of Alain V. Massena
                                                 30 Broadway
                                                 New York, NY 10007
                                                 (212)-766-1700
                                                 Fax: (212)-766-1701
                                                 Email: avm@massenalaw.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: CJA Appointment*

                                                 **Lloyd Epstein**
                                                 Epstein and Weil
                                                 225 Broadway

A-10

New York, NY 10007
(212) 732-4888
Fax: (212) 732-6703
Email: lepstein@epsteinweil.com
*TERMINATED: 01/25/2021*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

**Pending Counts**                                        **Disposition**

18:1349.F ATTEMPT AND CONSPIRACY          IMPRISONMENT: Twenty-six (26)
TO COMMIT WIRE FRAUD & BANK              months. SUPERVISED RELEASE: Three
FRAUD                                                      (3) years.
(1)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                     **Disposition**

18:1956-4999.F MONEY LAUNDERING -        Dismissed
FRAUD, OTHER (CONSPIRACY)
(2)

18:1028A.F FRAUD WITH                            Dismissed
IDENTIFICATION DOCUMENTS
(AGGRAVATED IDENTITY THEFT)
(3)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                            **Disposition**

18:1349.F CONSPIRACY TO COMMIT
BANK FRAUD AND WIRE FRAUD,
18:1028A.F AGGRAVATED IDENTITY
THEFT

---

Assigned to: Judge Katherine Polk Failla

**Defendant (12)**

**Darrel Williams**                  represented by  **Ezra Spilke**
*TERMINATED: 10/16/2020*                                Law Offices of Ezra Spilke, PLLC
                                                        1825 Foster Avenue Suite 1K
                                                        Brooklyn, NY 11230
                                                        718-783-3682
                                                        Email: ezra@spilkelaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Designation: CJA Appointment*

A-11

**Jocelyn Emily Strauber**
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602
212-735-2995
Fax: 917-777-2995
Email: Jocelyn.Strauber@skadden.com
*TERMINATED: 01/15/2020*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | IMPRISONMENT: Eighteen (18) months to be calculated as follows: Eight (8) months to run concurrent to any remaining New Jersey State sentence, and Ten (10) months to run consecutive to Defendant's New Jersey State sentence. SUPERVISED RELEASE: Three (3) years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | Dismissed |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

Assigned to: Judge Katherine Polk Failla

**Defendant (13)**

**Daryl Bartley**          represented by   **Megan Wolfe Benett**
*TERMINATED: 11/08/2021*                   Kreindler & Kreindler LLP
                                           485 Lexington Avenue
                                           Ste 28th Floor

New York, NY 10017
212-973-3406
Fax: 212-972-9432
Email: mbenett@kreindler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | Imprisonment: Time served. Supervised Release: Three (3) years. Restitution: $41,350.00. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | Dismissed |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

Assigned to: Judge Katherine Polk Failla

**Defendant (14)**

**Garnet Steven Murray-Sesay**
*TERMINATED: 04/29/2020*
*also known as*
Steven Garnet Murray-Sesay
*TERMINATED: 04/29/2020*

represented by **Richard E Signorelli**
Law Office of Richard E. Signorelli
52 Duane St
Ste FL 7
New York, NY 10007-1227
917-750-8842
Fax: 212-254-1396
Email: richardsignorelli@gmail.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | IMPRISONMENT: Nine (9) months. SUPERVISED RELEASE: Three (3) years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | Dismissed |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

Assigned to: Judge Katherine Polk Failla

**Defendant (15)**

| **Andrew Heaven** | represented by | **Gary G Becker** |
| --- | --- | --- |
| *TERMINATED: 06/15/2021* | | Gary G. Becker, L.L.C 747 Third Avenue, 20th Floor New York, NY 10017 (212) 785-7565 Fax: (212) 214-0901 Email: becker@garybeckerlaw.com *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD & BANK FRAUD (1) | NOLLE PROSEQUI |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | NOLLE PROSEQUI |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD, 18:1028A.F AGGRAVATED IDENTITY THEFT | |

---

Assigned to: Judge Katherine Polk Failla

**Defendant (16)**

**Muhammed Bashorun**
*also known as*
Sealed Defendant 1

represented by **Matthew Daniel Myers**
Myers & Galiardo LLP
Myers & Galiardo LLP
52 Duane Street
New York, NY 10007
212-986-5900
Fax: 212-986-6250
Email: matthewmyersesq@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD (1) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (2) | |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (AGGRAVATED IDENTITY THEFT) (3) | |

## Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

## Highest Offense Level (Terminated)

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F CONSPIRACY TO COMMIT BANK AND WIRE FRAUD | |

---

**Plaintiff**

**USA**                                   represented by   **Alexander Nuo Li**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2265
Email: alexander.li@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Thomas Somerset Burnett**
Department of Justice
One St. Andrews Plaza
New York, NY 10007
212-637-1064
Email: thomas.burnett@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/27/2019 | 1 | COMPLAINT as to Oladayo Oladukin (1), Farouk Kukoyi (2), Baldwin Osuji (3), Henry Ogbuokiri (4), Joshua Hicks (5), Anthony Lee Nelson (6), Derrick Banks (7), Ibrahima Doukoure (8), Jamar Skeete (9), Paul Yaw Osei, Jr. (10), Kowan Poole (11), Darrel Williams (12), Daryl Bartley (13), Garnet Steven Murray-Sesay (14), Andrew Heaven (15). In Violation of 18 U.S.C. 1349, 1028A, and 2 (Signed by Magistrate Judge Robert W. Lehrburger) (dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/10/2019) |
| 11/27/2019 | | SEALED ORAL ORDER as to Sealed Defendant 1. (Signed by Magistrate Judge Robert W. Lehrburger on 11/27/2019)(dif) [1:19-mj-11193-UA] (Entered: 12/10/2019) |
| 12/10/2019 | 17 | Order to Unseal Case as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven.. (Signed by Magistrate Judge Sarah L Cave on |

| | | |
|---|---|---|
| | | 12/10/2019)(dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/10/2019) |
| 12/10/2019 | | Arrest of Joshua Hicks in the United States District Court - District of Washington. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/10/2019 | | Arrest of Daryl Bartley in the United States District Court - District of Washington. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/10/2019 | | Arrest of Garnet Steven Murray-Sesay in the United States District Court - Eastern District of Virginia. (dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | | Arrest of Joshua Hicks. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | [23](#) | NOTICE OF ATTORNEY APPEARANCE: Retained Attorney John P. DeMaio appearing for Joshua Hicks. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | | Attorney update in case as to Joshua Hicks. Attorney John P. DeMaio for Joshua Hicks added.. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | [24](#) | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Joshua Hicks held on 12/16/2019., Deft Appears with Retained Attorney John P. Demaio and AUSA Alexander Li for the government. AGREED CONDITIONS OF RELEASE: $50,000 PRB; ONE FRP; Travel Limited to SDNY/EDNY & Washington, DC Metro Area and the Jurisdiction Between the Metro Area and NY for Court Appearances and Counsel Meetings; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Mental Health Evaluation/Treatment As Directed by PTS; Deft to Continue or Seek Employment; or Deft to Continue or Start Education Program; Deft Shall Not Possess the Personal Identifying Information of Another Person or An Access Device of Another Person W/out Authorization of PTS Office; Deft Shall Not Contact Co-Defendants Outside the Presence of Counsel; Deft Shall Not Open New Lines of Credit or Bank Accounts W/out Authorization of PTS Office; Deft to Be Released on 12/16/19; ( Preliminary Hearing 1/15/2020 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | [25](#) | PRB Bond Entered as to Joshua Hicks in amount of $ 50,000, ONE FPR; Travel Limited to SDNY/EDNY & Washington, DC Metro Area, and the Jurisdiction Between the Metro Area and NY for Court Appearances and Counsel Meetings; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Mental Health Evaluation/Treatment As Directed by PTS; Deft to Continue or Seek Employment; or Deft to Continue or Start Education Program; Deft Shall Not Possess the Personal Identifying Information of Another Person or Access Device of Another Person W/out Authorization of PTS Office; Deft Shall Not Contact Co-Defendants Outside the Presence of Counsel; Deft Shall Not Open New Lines of Credit or Bank Accounts W/out Authorization of PTS Office; Deft to Be Released on 12/16/19 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | | Arrest of Henry Ogbuokiri. (dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | [20](#) | NOTICE OF ATTORNEY APPEARANCE: Retained Attorney Mehdi Essmidi appearing for Henry Ogbuokiri. (dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | | Attorney update in case as to Henry Ogbuokiri. Attorney Mehdi Essmidi for Henry Ogbuokiri added.. (dif) Modified on 12/20/2019 (dif). Modified on 12/20/2019 (dif). |

[1:19-mj-11193-UA] (Entered: 12/20/2019)

| 12/16/2019 | 21 | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Henry Ogbuokiri held on 12/16/2019., Deft Appears with Retained Attorney Jeff Greco by Mehdi Essmidi and AUSA Alexander Li for the government. AGREED CONDITIONS OF RELEASE: $50,000 PRB; 3 FRP'S Who Must Execute the PRB on or Before 12/30/19; Travel Limited to SDNY/EDNY & Washington, DC Metro Area, Deft May Travel in Between the Metro Area & NY for Court Proceedings and Counsel Meetings; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Deft Not to Possess Firearm/Destructive Device/Other Weapon; Deft May Not Possess the Personal Identifying Information of Another Person or Access Devices of Another Person W/out Authorization of PTS Office; Deft Shall Not Contact Co-Defendants Outside the Presence of his Counsel; Deft Shall Not Open Any New Lines of Credit or Bank Accounts W/out Authorization of PTS Office ; Deft to Be Released on 12/16/19; ( Preliminary Hearing 1/15/2020 (dif) Modified on 12/20/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/20/2019) |
|---|---|---|
| 12/16/2019 | 22 | PRB Bond Entered as to Henry Ogbuokiri in amount of $ 200,000, 3 FRP'S Who Must Execute the PRB on or Before 12/30/19; Travel Limited to SDNY/EDNY & Washington, DC Metro Area, Deft May Travel in Between the Metro Area & NY for Court Proceedings and Meetings with Counsel; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Deft Not to Possess Firearm/Destructive Device/Other Weapon; Deft May Not Possess the Personal Identifying Information of Another Person or Access Device of Another Person W/out Authorization of PTS Office; Deft Shall Not Contact Co-Defendants Outside the Presence of Counsel; Deft Shall Not Open Any New Lines of Credit or Bank Accounts W/out Authorization of PTS Office; Deft to Be Released on 12/16/19 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 |  | Arrest of Daryl Bartley. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | 28 | CJA 23 Financial Affidavit by Daryl Bartley. (Signed by Magistrate Judge Kevin Nathaniel Fox) (CJA Attorney Megan Wolfe Benett Appointed) (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 |  | Attorney update in case as to Daryl Bartley. Attorney Megan Wolfe Benett for Daryl Bartley added.. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | 29 | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Daryl Bartley held on 12/16/2019., Deft Appears with CJA Attorney Megan Wolfe Benett and AUSA Alexander Li for the government. AGREED CONDITIONS OF RELEASE: $50,000 PRB; ONE FRP; Travel limited to SDNY/EDNY & Washington, DC Metro Area, Deft May Travel Between NY and the Metro Area for Cort Proceedings and Meeting with Counsel; Surrender Travel Documents (& No New Applications); Drug Testing/Treatment As Directed by PTS; Deft to Be Released on Own Signature, Plus the Following Conditions: All Other Conditions to Be Satisfied on or Before 12/30/19; Deft Shall Not Contact Co-Defendants Outside Counsel's Presence; Deft Shall Not Open Any New Lines of Credit or Bank Accounts W/o Authorization of PTS Office; Deft Shall Not Possess the Personal Identifying Information of Another, Except for his Mother W/out Authorization of PTS Office; ( Preliminary Hearing 1/15/2020 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | 30 | PRB Bond Entered as to Daryl Bartley in amount of $ 50,000, ONE FRP; Travel Limited to SDNY/EDNY & Washington, DC Metro Area, Deft May Travel Between NY and the Metro Area for Court Proceedings and Meeting with Counsel; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug |

A-18

| | | |
|---|---|---|
| | | Testing/Treatment As Directed by PTS; Deft to Be Released on Own Signature, Plus the Following Conditions; All Other Conditions to Be Satisfied on or Before 12/30/19; Deft Shall Not Contact Co-Defendants Outside Counsel's Presence; Deft Shall Not Open Any New Lines of Credit or Bank Accounts W/out Authorization of PTS Office; Deft Shall Not Possess the Personal Identifying Information of Another Person, Except for his Mother W/out Authorization of PTS Office (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/16/2019 | 18 | **FILING ERROR - ELECTRONIC FILING IN NON-ECF CASE -** NOTICE OF ATTORNEY APPEARANCE: Eric Wayne Siegle appearing for Farouk Kukoyi. Appearance Type: Retained. (Siegle, Eric) Modified on 12/16/2019 (ka).[1:19-mj-11193-UA] (Entered: 12/16/2019) |
| 12/16/2019 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF CASE ERROR. Note to Attorney Siegle, Eric as to Farouk Kukoyi: to MANUALLY RE-FILE Document Notice of Attorney Appearance, Document No. 18. This case is not ECF. (ka)** [1:19-mj-11193-UA] (Entered: 12/16/2019) |
| 12/17/2019 | | Arrest of Paul Yaw Osei, Jr.. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/17/2019 | | Attorney update in case as to Paul Yaw Osei, Jr.. Attorney Bradley Lamar Henry for Paul Yaw Osei, Jr. added.. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/17/2019 | 26 | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Paul Yaw Osei, Jr. held on 12/17/2019., Deft Appears with CJA Attorney Bradley Henry and AUSA Alexander Li for the government. $100,000 PRB; 2 FRP'S Who Must Execute the PRB or Before Jan 2, 2020; Travel Limited to SDNY/EDNY; D DC; ED VA; D MD; Deft May Travel Through Other Judicial District to Arrive in NY for Court Appearances and Meeting with Counsel Solely; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Deft Not to Possess Firearm/Destructive Device/Other/Weapon; Deft to Be Released on Own Signature, Remaining Conditions to Be Met by 1/2/20; Deft Shall No Contact with Co-Defendants Outside the Presence of Counsel; Deft Shall Not Open Any New Lines of Credit or New Bank Accounts W/out Authorization of the PTS Office; Deft Shall Not Possess the Personal Identifying Information of Another Person or the Access Device of Another Person W/out Authorization of the PTS Office; ( Preliminary Hearing 1/16/2020 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/17/2019 | 27 | PRB Bond Entered as to Paul Yaw Osei, Jr. in amount of $ 100,000, 2 FRP'S Who Must Execute the PRB on or Before 1/2/20; Travel Limited to SDNY/EDNY; D DC; ED VA; D MD, Deft May Travel Through Other Judicial District to Arrive in NY for Court Appearances and Meeting with Counsel Solely; Surrender Travel Documents (& No New Applications); Pretrial Supervision As Directed by PTS; Drug Testing/Treatment As Directed by PTS; Deft Not to Possess Firearm/Destructive Device/Other Weapon; Deft to Be Released on Own Signature; Remaining Conditions to Be Met by 1/2/20; Deft Shall Have No Contact with Co-Defendants Outside the Presence of Counsel; Deft Shall Not Open Any New Lines of Credit or New Bank Accounts W/out Authorization of the PTS Office; Deft Shall Not Possess the Personal Identifying Information of Another Person or the Access Device of Another Person W/out Authorization of the PTS Office (dif)[1:19-mj-11193-UA] (Main Document 27 replaced on 1/7/2020) (vb). (Entered: 12/20/2019) |
| 12/17/2019 | 35 | CJA 23 Financial Affidavit by Paul Yaw Osei, Jr. CJA Brad Henry appointed counsel. APPROVED. (Signed by Magistrate Judge Kevin Nathaniel Fox) (jbo) [1:19-mj-11193-UA] (Entered: 12/26/2019) |
| 12/18/2019 | 19 | **FILING ERROR - ELECTRONIC FILING IN NON-ECF CASE -** NOTICE OF |

| | | ATTORNEY APPEARANCE: Richard E Signorelli appearing for Garnet Steven Murray-Sesay. Appearance Type: CJA Appointment. (Signorelli, Richard) Modified on 12/19/2019 (ka). [1:19-mj-11193-UA] (Entered: 12/18/2019) |
|---|---|---|
| 12/18/2019 | 31 | CJA 23 Financial Affidavit by Garnet Steven Murray-Sesay. (Signed by Magistrate Judge Kevin Nathaniel Fox) (CJA Attorney Richard Signorelli Appointed) (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/18/2019 | | Arrest of Garnet Steven Murray-Sesay. (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/18/2019 | 32 | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Garnet Steven Murray-Sesay held on 12/18/2019., Deft Appears with CJA Attorney Richard Signorelli and AUSA Alexander Li for the government. Detention on Consent w/o Prejudice; ( Preliminary Hearing 1/3/2020 (dif) [1:19-mj-11193-UA] (Entered: 12/20/2019) |
| 12/19/2019 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF CASE ERROR. Note to Attorney Signorelli, Richard as to Garnet Steven Murray-Sesay: to MANUALLY RE-FILE Document Notice of Attorney Appearance, Document No. 19. This case is not ECF. (ka) [1:19-mj-11193-UA] (Entered: 12/19/2019) |
| 12/26/2019 | 33 | NOTICE OF ATTORNEY APPEARANCE: Eric Wayne Siegle appearing for Farouk Kukoyi. (jbo) [1:19-mj-11193-UA] (Entered: 12/26/2019) |
| 12/26/2019 | | Arrest of Farouk Kukoyi. (jbo) [1:19-mj-11193-UA] (Entered: 12/26/2019) |
| 12/26/2019 | 34 | Minute Entry for proceedings held before Magistrate Judge Barbara C. Moses: Initial Appearance as to Farouk Kukoyi held on 12/26/2019. Defendant present with retained counsel Eric Siegle by Lawrence Fisher. AUSA Tom Burnett present for the government. Defendant waives pretrial report. BAIL DISPOSITION: DETENTION ON CONSENT WITHOUT PREJUDICE. Defendant arrested in D.MD 12/10; Detained there; Removed to SDNY 12/23; Bail hearing scheduled, at defendant's request, for Jan. 3, 2020 at 12 noon. (Preliminary Hearing Date: 1/27/20 on defendant's consent.) (jbo) [1:19-mj-11193-UA] (Entered: 12/26/2019) |
| 12/26/2019 | | Set/Reset Hearings as to Farouk Kukoyi: Bond Hearing set for 1/3/2020 at 12:00 PM before Judge Unassigned. (jbo) [1:19-mj-11193-UA] (Entered: 12/26/2019) |
| 12/30/2019 | | Arrest of Jamar Skeete. (dif) [1:19-mj-11193-UA] (Entered: 12/30/2019) |
| 12/30/2019 | 36 | NOTICE OF ATTORNEY APPEARANCE: Retained Attorney Mitchell C. Elman appearing for Jamar Skeete. (dif) [1:19-mj-11193-UA] (Entered: 12/30/2019) |
| 12/30/2019 | | Attorney update in case as to Jamar Skeete. Attorney Mitchell C. Elman for Jamar Skeete added.. (dif) [1:19-mj-11193-UA] (Entered: 12/30/2019) |
| 12/30/2019 | 37 | Minute Entry for proceedings held before Magistrate Judge Stewart D. Aaron: Initial Appearance as to Jamar Skeete held on 12/30/2019., Deft Appears with Retained Attorney Mitchell Elman and AUSA Alexander Li for the government. AGREED CONDITIONS OF RELEASE. Same Conditions As in 19 Mag 12069 Disposition Sheet; ( Preliminary Hearing 1/29/2020 (dif) [1:19-mj-11193-UA] (Entered: 12/30/2019) |
| 12/30/2019 | 38 | PRB Bond Entered as to Jamar Skeete in amount of $ 100,000, (Same Conditions As in 19 Mag 12069 Disposition Sheet) (dif) Modified on 12/30/2019 (dif). [1:19-mj-11193-UA] (Entered: 12/30/2019) |
| 01/02/2020 | 39 | INDICTMENT FILED as to Oladayo Oladokun (1) count(s) 1, 2, Farouk Kukoyi (2) count(s) 1, 2, 3, Baldwin Osuji (3) count(s) 1, 2, 3, Henry Ogbuokiri (4) count(s) 1, 2, 3, Joshua Hicks (5) count(s) 1, 2, 3, Anthony Lee Nelson (6) count(s) 1, 2, Derrick Banks |

| | | |
|---|---|---|
| | | (7) count(s) 1, 2, 3, Ibrahima Doukoure (8) count(s) 1, 2, Jamar Skeete (9) count(s) 1, 2, Paul Yaw Osei, Jr. (10) count(s) 1, 2, Kowan Poole (11) count(s) 1, 2, 3, Darrel Williams (12) count(s) 1, 2, 3, Daryl Bartley (13) count(s) 1, 2, 3, Garnet Steven Murray-Sesay (14) count(s) 1, 2, 3, Andrew Heaven (15) count(s) 1, 2. (jm) (Entered: 01/03/2020) |
| 01/02/2020 | | Attorney update in case as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Attorney Alexander Nuo Li for USA added. (jm) (Entered: 01/03/2020) |
| 01/02/2020 | | Case Designated ECF as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. (jm) (Entered: 01/03/2020) |
| 01/02/2020 | | Arrest of Kowan Poole (11). (bw) (Entered: 01/13/2020) |
| 01/03/2020 | 40 | LETTER by Joshua Hicks as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven addressed to Judge Katherine Polk Failla from John DeMaio dated January 3, 2020 re: Arraignment Jan 8, 2020 Document filed by Joshua Hicks. (DeMaio, John) (Entered: 01/03/2020) |
| 01/03/2020 | 41 | NOTICE OF ATTORNEY APPEARANCE: Richard E Signorelli appearing for Garnet Steven Murray-Sesay. Appearance Type: CJA Appointment. (Signorelli, Richard) (Entered: 01/03/2020) |
| 01/03/2020 | 42 | Minute Entry for proceedings held before Magistrate Judge Stewart D. Aaron: Detention Hearing as to (20-Cr-03-02) Farouk Kukoyi held on 1/3/2020. AUSA Tom Burnett. Defense Counsel Eric Siegle. BAIL DISPOSITION: $250,000 PRB; 3 FRP; Travel restricted to SDNY/EDNY/DMD and points in between for travel; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; Drug testing/treatment as directed by PTS; Defendant to be released on own signature, plus the following conditions: 3 FRPs; Refrain from possessing personal identifying information/documents of others; Do not open any new bank accounts or new lines of credit without prior approval of PTS; No contact with co-defendants unless in presence of counsel; Defendant shall reside at 64 North Ritters Lane, Owens Mills, MD, and shall not change his residence without PTS approval. (bw) (Entered: 01/06/2020) |
| 01/03/2020 | 43 | Appearance Bond Entered as to (20-Cr-03-02) Farouk Kukoyi in amount of $250,000.00. $250,000 PRB signed by 3 FRP; Travel restricted to SDNY/EDNY/District of Maryland plus points in between for travel; Pretrial supervision as directed by Pretrial Services; Surrender travel documents (& no new applications); Drug testing/treatment as directed by PTS; Defendant to be released on own signature, plus the following conditions: 3 FRPs; Refrain from possessing personal identifying information/documents of others; Do not open any new bank accounts or new lines of credit without prior approval of PTS; No contact with co-defendants unless in the presence of counsel; Defendant shall reside at 64 North Ritters Lane, Owens Hills, MD, and shall not change his residence without PTS approval. [Advice of Penalties and Sanctions attached. Defendant Released.] (bw) (Entered: 01/06/2020) |
| 01/06/2020 | 44 | NOTICE OF ATTORNEY APPEARANCE Thomas Somerset Burnett appearing for USA. (Burnett, Thomas) (Entered: 01/06/2020) |
| 01/07/2020 | | *****DELETED DOCUMENT. Deleted document number Notice of Hearing. The** |

| | | |
|---|---|---|
| | | **document was incorrectly filed in this case. (tn)** (Entered: 01/07/2020) |
| 01/07/2020 | | NOTICE OF HEARING as to Henry Ogbuokiri, Joshua Hicks, Paul Yaw Osei, Jr., and Garnet Steven Murray-Sesay: Arraignment set for 1/8/2020 at 12:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla; as to Farouk Kukoyi, Jamar Skeete, and Daryl Bartley: Arraignment set for 1/13/2020 at 02:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. ***No PDF is attached to this entry. (tn) (Entered: 01/07/2020) |
| 01/08/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Joshua Hicks (5) Count 1,2,3 and Garnet Steven Murray-Sesay (14) Count 1,2,3 held on 1/8/2020. (jbo) (Entered: 01/08/2020) |
| 01/08/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Joshua Hicks (5) Count 1,2,3 and Garnet Steven Murray-Sesay (14) Count 1,2,3 Not Guilty. (jbo) (Entered: 01/08/2020) |
| 01/08/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Paul Yaw Osei, Jr. (10) Count 1,2 held on 1/8/2020. Defendant Paul Yaw Osei, Jr. present with attorney Bradley Lamar Henry. AUSAs Thomas Somerset Burnett and Micah Fergenson present. Court reporter Raquel Robles present. Defendant enters a plea of NOT GUILTY to Indictment 20cr3 (KPF). The next Pretrial Conference is scheduled for 4/15/2020 at 11:00 a.m. Time is excluded in the interests of justice from 1/8/2020 to 4/15/2020. (See transcript.) (jbo) (Entered: 01/08/2020) |
| 01/08/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Paul Yaw Osei, Jr. (10) Count 1,2 Not Guilty. (jbo) (Entered: 01/08/2020) |
| 01/13/2020 | [45](#) | **FILING ERROR - DEFICIENT DOCKET ENTRY -** NOTICE OF ATTORNEY APPEARANCE: Eric Wayne Siegle appearing for Farouk Kukoyi. Appearance Type: Retained. (Siegle, Eric) Modified on 1/13/2020 (ka). (Entered: 01/13/2020) |
| 01/13/2020 | 46 | CJA 23 Financial Affidavit by (20-Cr-003-11) Kowan Poole. APPROVED: (Signed by Magistrate Judge Katharine H. Parker on 1/13/2020); Attorney Lloyd Epstein. (bw) (Entered: 01/13/2020) |
| 01/13/2020 | | Attorney update in case as to Kowan Poole (11). Attorney Lloyd Epstein for Kowan Poole added. (bw) (Entered: 01/13/2020) |
| 01/13/2020 | [47](#) | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Initial Appearance as to (20-Cr-003-11) Kowan Poole held on 1/13/2020. Date of Arrest: 01/02/2020 in DC. AUSA Tom Burnett. Defense Counsel Lloyd Epstein (CJA). BAIL DISPOSITION: See Transcript. Agreed conditions of release; Travel restricted to SDNY/EDNY/D.D.C. and points in between for travel to court/see NY lawyer; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; Drug testing/treatment as directed by PTS; Home detention; GPS; Defendant not to possess firearm/destructive device/other weapon; Defendant to be released on own signature. Defendant to reside at 1819 Bruce Place SE, Washington, D.C. No contact with co-defendants outside presence of counsel. Defendant must refrain from accessing personally identifying information, financial information or bank accounts of others. Defendant to report weekly in person to PTS, weekly drug testing. Defendant to participate in High Intensity Supervision Program. ADDITIONAL PROCEEDINGS: Conference before District Judge on 1/13/2020 at 2:30 p.m. (bw) (Entered: 01/13/2020) |
| 01/13/2020 | | ORAL ORDER as to (20-Cr-003-11) Kowan Poole. Status Conference set for 1/13/2020 at 02:30 PM before Judge Katherine Polk Failla. (By Magistrate Judge Katharine H. Parker on 1/13/2020) (bw) (Entered: 01/13/2020) |

<div align="center">A-22</div>

| 01/13/2020 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR as to Farouk Kukoyi: Notice to Attorney Siegle, Eric to RE-FILE Document 45 Notice of Attorney Appearance - Defendant. ERROR(S): Document has not been fully secured, item can be changed/altered in real time. (ka) (Entered: 01/13/2020) |
|---|---|---|
| 01/13/2020 | 48 | ORDER SETTING CONDITIONS OF RELEASE and ADVICE OF PENALTIES AND SANCTIONS as to (20-Cr-003-11) Kowan Poole. Agreed conditions of release; Travel restricted to SDNY/EDNY/D.D.C. and points in between for travel to court/see NY lawyer; Surrender travel documents and no new applications; Pretrial supervision as directed by Pretrial Services; Drug testing and treatment; Home detention; GPS; Defendant not to possess firearms, destructive devices, other weapons; Defendant to be released on own signature. Defendant to reside at 1819 Bruce Place SE, Washington, D.C. No contact with co-defendants outside presence of counsel. Defendant must refrain from accessing personally identifying information, financial information or bank accounts of others. Defendant to report weekly in person to PTS, weekly drug testing. Defendant to participate in High Intensity Supervision Program. (bw) (Entered: 01/13/2020) |
| 01/13/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Farouk Kukoyi (2) Count 1,2,3 and Jamar Skeete (9) Count 1,2 and Kowan Poole (11) Count 1,2,3 and Daryl Bartley (13) Count 1,2,3 held on 1/13/2020. Defendant Farouk Kukoyi (2) present with attorney Eric Wayne Siegle; Defendant Jamar Skeete (9) present with attorney Mitchell C. Elman; Defendant Kowan Poole (11) present with attorney Llyod Epstein; Defendant Daryl Bartley (13) present with attorney Megan Wolfe Benett. AUSAs Thomas Somerset Burnett and Micah Fergenson present. NYPD Detective Daniel Alessandrio present. Court reporter Kristen Carrannante present. Defendants each enter a plea of NOT GUILTY to Indictment 20cr3 (KPF). The next Pretrial Conference is scheduled for 4/15/2020 at 11:00 a.m. Time is excluded in the interests of justice from 1/13/2020 to 4/15/2020. (See transcript). (jbo) (Entered: 01/13/2020) |
| 01/13/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Farouk Kukoyi (2) Count 1,2,3 and Jamar Skeete (9) Count 1,2 and Kowan Poole (11) Count 1,2,3 and Daryl Bartley (13) Count 1,2,3 Not Guilty. (jbo) (Entered: 01/13/2020) |
| 01/14/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Henry Ogbuokiri (4) Count 1,2,3 held on 1/14/2020. Defendant Henry Ogbuokiri present with attorney Mehdi Essmidi. AUSA Alexander Nuo Li present. Court reporter Martha Martin present. Defendant enters a plea of NOT GUILTY to Indictment 20cr3 (KPF). The next Pretrial Conference is scheduled for 4/15/2020 at 11:00 a.m. Time is excluded in the interests of justice from 1/14/2020 to 4/15/2020. (See transcript). (jbo) (Entered: 01/14/2020) |
| 01/14/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Henry Ogbuokiri (4) Count 1,2,3 Not Guilty. (jbo) (Entered: 01/14/2020) |
| 01/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Change of Plea Hearing as to Garnet Steven Murray-Sesay held on 1/15/2020. Defendant Garnet Steven Murray-Sesay (14) present with attorney Richard E. Signorelli. AUSAs Alexander Nuo Li and Thomas Somerset Burnett present. Court reporter Eve Giniger present. Defendant allocuted and advised of rights. Defendant withdraws previously entered not guilty plea, and enters a plea of GUILTY to Count One of Indictment 20cr3 (KPF). Plea accepted. PSR ordered. Sentencing set for Wednesday, May 6, 2020 at 3:00 p.m. Defendant's sentencing submission due two weeks prior to sentencing. Government's sentencing submission due one week prior to sentencing. Defendant continued remanded. (See transcript.) (jw) (Entered: 01/16/2020) |

A-23

| 01/15/2020 | | Change of Not Guilty Plea to Guilty Plea as to Garnet Steven Murray-Sesay (14) Count 1. (jw) (Entered: 01/16/2020) |
| --- | --- | --- |
| 01/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Garnet Steven Murray-Sesay (14) Guilty as to Count 1. (jw) (Entered: 01/16/2020) |
| 01/15/2020 | | Order of Referral to Probation for Presentence Investigation and Report as to Garnet Steven Murray-Sesay. (Signed by Judge Katherine Polk Failla on 1/15/2020)(jw) (Entered: 01/16/2020) |
| 01/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla as to Garnet Steven Murray-Sesay; Sentencing set for 5/6/2020 at 03:00 PM before Judge Katherine Polk Failla. (jw) (Entered: 01/16/2020) |
| 01/15/2020 | | Arrest of Darrel Williams. (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | 50 | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Initial Appearance as to Darrel Williams held on 1/15/2020. Defendant present with CJA counsel David Meister and Jocelyn Strauber. AUSA Alexander Li present for the government. Defendant waives pretrial report. On writ. BAIL DISPOSITION: DETENTION ON CONSENT WITHOUT PREJUDICE. Detention Hearing scheduled for 1/17/20 at 2pm. See transcript. Defendant arraigned and pleads Not Guilty. Conference before District Judge on 4/15/20 at 11am. Speedy trial time excluded until 4/15/20. (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Arraignment as to Darrel Williams (12) Count 1,2,3 held on 1/15/2020. (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Plea entered by Darrel Williams (12) Count 1,2,3 Not Guilty. (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | 51 | CJA 23 Financial Affidavit by Darrel Williams. CJA Jocelyn Strauber appointed counsel. APPROVED. (Signed by Magistrate Judge Katharine H. Parker) (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | | Attorney update in case as to Darrel Williams. Attorney Jocelyn Emily Strauber for Darrel Williams added. (jbo) (Entered: 01/17/2020) |
| 01/15/2020 | 52 | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Status Conference (Substitution of Counsel) as to (20-Cr-003-12) Darrel Williams held on 1/15/2020. AUSA Alexander Li. Defense Counsel Ezra Spilke (CJA). Defendant waives pretrial report. BAIL DISPOSITION: See transcript. COMMENTS: Jocelyn Strauber is being replaced by Ezra Spilke. (bw) (Entered: 01/21/2020) |
| 01/15/2020 | | Attorney update in case as to Darrel Williams (12). Attorney Ezra Spilke for Darrel Williams added. Attorney Jocelyn Emily Strauber terminated. (bw) (Entered: 01/21/2020) |
| 01/17/2020 | 49 | LETTER by Darrel Williams addressed to Magistrate Judge Katharine H. Parker from Jocelyn E. Strauber dated January 17, 2020 re: Withdraw as Counsel (Strauber, Jocelyn) (Entered: 01/17/2020) |
| 02/03/2020 | 53 | LETTER MOTION addressed to Judge Katherine Polk Failla from Thomas Burnett dated February 3, 2020 re: Proposed Protective Order . Document filed by USA as to Farouk Kukoyi, Henry Ogbuokiri, Joshua Hicks, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley. (Attachments: # 1 Text of Proposed Order Proposed Protective Order)(Burnett, Thomas) (Entered: 02/03/2020) |
| 02/04/2020 | 54 | PROTECTIVE ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry |

| | | Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Katherine Polk Failla on 2/3/2020) (lnl) (Entered: 02/04/2020) |
|---|---|---|
| 02/05/2020 | 55 | TRANSCRIPT of Proceedings as to Joshua Hicks, Garnet Steven Murray-Sesay re: Arraignment held on 1/8/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/26/2020. Redacted Transcript Deadline set for 3/9/2020. Release of Transcript Restriction set for 5/5/2020. (McGuirk, Kelly) (Entered: 02/05/2020) |
| 02/05/2020 | 56 | TRANSCRIPT of Proceedings as to Paul Yaw Osei, Jr. re: Arraignment held on 1/8/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/26/2020. Redacted Transcript Deadline set for 3/9/2020. Release of Transcript Restriction set for 5/5/2020. (McGuirk, Kelly) (Entered: 02/05/2020) |
| 02/07/2020 | 70 | ORDER as to (20-Cr-3-04) Henry Ogbuokiri. It is hereby ORDERED that the defendant's bail is modified to include the following condition: Do not change your residence unless approved in advance by Pretrial Services. SO ORDERED: (Signed by Judge Katherine Polk Failla on 2/7/2020)(bw) (Entered: 04/14/2020) |
| 02/12/2020 | 57 | TRANSCRIPT of Proceedings as to Farouk Kukoyi re: Conference held on 1/13/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/4/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/12/2020. (McGuirk, Kelly) (Entered: 02/12/2020) |
| 02/12/2020 | 58 | TRANSCRIPT of Proceedings as to Henry Ogbuokiri re: Arraignment held on 1/14/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/4/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/12/2020. (McGuirk, Kelly) (Entered: 02/12/2020) |
| 02/13/2020 | 59 | TRANSCRIPT of Proceedings as to Garnet Steven Murray-Sesay re: Plea held on 1/15/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Eve Giniger, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/5/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/13/2020. (McGuirk, Kelly) (Entered: 02/13/2020) |
| 02/13/2020 | 60 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Garnet Steven Murray-Sesay. Notice is hereby given that an official transcript of a Plea proceeding held on 1/15/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

A-25

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/13/2020) |
| 03/23/2020 | 61 | LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated March 23, 2020 re: Adjournment of 4/15 Conference . Document filed by USA as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. (Li, Alexander) (Entered: 03/23/2020) |
| 03/23/2020 | 62 | MEMO ENDORSED granting 61 LETTER MOTION Adjournment of 4/15 Conference as to Oladayo Oladokun (1), Farouk Kukoyi (2), Baldwin Osuji (3), Henry Ogbuokiri (4), Joshua Hicks (5), Anthony Lee Nelson (6), Derrick Banks (7), Ibrahima Doukoure (8), Jamar Skeete (9), Paul Yaw Osei, Jr. (10), Kowan Poole (11), Darrel Williams (12), Daryl Bartley (13), Garnet Steven Murray-Sesay (14), Andrew Heaven (15)...ENDORSEMENT: Application GRANTED. The status conference previously scheduled for April 15, 2020, is hereby ADJOURNED to June 15, 2020, at 3:30 p.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Street, New York, NY. It is further ORDERED that time is excluded under the Speedy Trial Act between April 15, 2020, and June 15, 2020. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and the defendants in a speedy trial because it will permit the defendants to review extensive discovery and discuss pretrial resolutions of this case. SO ORDERED. (Signed by Judge Katherine Polk Failla on 3/23/2020) (jbo) (Entered: 03/24/2020) |
| 03/30/2020 | 63 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated March 30, 2020 re: Advancement of Sentencing via Telephone Conference . Document filed by Garnet Steven Murray-Sesay. (Signorelli, Richard) (Entered: 03/30/2020) |
| 03/30/2020 | 64 | MEMO ENDORSEMENT as to Garnet Steven Murray-Sesay (14) granting 63 CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated March 30, 2020 re: Advancement of Sentencing via Telephone Conference. ENDORSEMENT: Application GRANTED. Mr. Murray-Sesay's sentencing, previously scheduled for May 6, 2020, is hereby ADJOURNED to April 13, 2020, at 3:00 p.m. Given the rescheduling, Defendant's sentencing submission is due to the Court on or before April 3, 2020. The Government's sentencing submission shall be due to the Court on April 10, 2020. The Court will conduct the sentencing telephonically, on its own conference line. Counsel for Mr. Murray-Sesay has indicated that Mr. Murray-Sesay wishes to waive his right to be physically present at his sentencing. Accordingly, the Court will only proceed with the sentencing telephonically if it is able to confirm, at such time, that Mr. Murray-Sesay's waiver is knowing and voluntary. See Fed. R. Crim. P. 43(c)(1)(B); United States v. Salim, 690 F.3d 115, 122-24 (2d Cir. 2012). The dial-in information is as follows: At 3:00 p.m. on April 13, 2020, the parties shall call (888) 363-4749 and enter access code 5123533. If the conference line requests a "security code" the parties shall press "*". Please note, the conference will not be available prior to 3:00 p.m. SO ORDERED. (Signed by Judge Katherine Polk Failla on 3/30/2020) (lnl) (Entered: 03/31/2020) |
| 03/30/2020 | | Set/Reset Hearings as to Garnet Steven Murray-Sesay: Sentencing set for 4/13/2020 at 03:00 PM before Judge Katherine Polk Failla. (lnl) (Entered: 03/31/2020) |
| 04/02/2020 | 66 | LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated April 2, 2020 re: Brief adjournment of sentencing deadlines and telephonic proceeding . Document filed by Garnet Steven Murray-Sesay. (Signorelli, Richard) (Entered: 04/02/2020) |

A-26

Case 21-2898, Document 29, 01/25/2022, 3093300, Page30 of 282

| 04/02/2020 | 67 | MEMO ENDORSEMENT 66 LETTER MOTION Requested that his sentencing hearing proceed telephonically as to Garnet Steven Murray-Sesay...ENDORSEMENT...Application GRANTED. Mr. Murray-Sesay's telephonic sentencing, previously scheduled for April 13, 2020, is hereby ADJOURNED to April 27, 2020, at 2:00 p.m. Given the rescheduling, Defendant's sentencing submission is due to the Court on or before April 13, 2020. The Government's sentencing submission shall be due to the Court on April 20, 2020. Having reviewed many submissions from Mr. Murray-Sesays counsel over thepast week, the Court offers the following observation: Based on the information available to it (which is concededly incomplete), defense counsel does not appear to appreciate the severity of his clients conduct in this case or his clients prior criminal history. The Court expects that, by the sentencing date, the defense will more fairly contend with these issues. The Court will conduct the sentencing telephonically, on its own conference line. Counsel for Mr. Murray-Sesay has indicated that Mr. Murray-Sesay wishes to waive his right to be physically present at his sentencing. (See Dkt. #63). Accordingly, the Court will only proceed with the sentencing telephonically if it is able to confirm, at such time, that Mr. Murray-Sesay's waiver is knowing and voluntary. See Fed. R. Crim. P. 43(c)(1)(B); United States v. Salim, 690 F.3d 115, 122-24 (2d Cir. 2012). The dial-in information is as follows: At 2:00 p.m. on April 27, 2020, the parties shall call (888) 363-4749 and enter access code 5123533. If the conference line requests a security code the parties shall press *. Please note, the conference will not be available prior to 2:00pm. (Signed by Judge Katherine Polk Failla on 4/2/2020) (jw) (Entered: 04/02/2020) |
| 04/02/2020 | | Set/Reset Deadlines/Hearings as to Garnet Steven Murray-Sesay:Defendant Replies due by 4/13/2020. Government Responses due by 4/20/2020; Sentencing set for 4/27/2020 at 02:00 PM before Judge Katherine Polk Failla (jw) (Entered: 04/02/2020) |
| 04/13/2020 | 69 | SENTENCING SUBMISSION by Garnet Steven Murray-Sesay. (Attachments: # 1 Exhibit Exhs A-D redacted (Exh A, defendant letter; Exh B, character letters; Exh C, BOP Work Performance Rating; Exh D, Objections Letter to U.S. Probation Office) (Signorelli, Richard) (Entered: 04/13/2020) |
| 04/20/2020 | 71 | SENTENCING SUBMISSION by USA as to Garnet Steven Murray-Sesay. (Li, Alexander) (Entered: 04/20/2020) |
| 04/22/2020 | 72 | LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated April 22, 2020 re: Disclosure of PSR materials from Defendant's prior Virginia Case . Document filed by Garnet Steven Murray-Sesay. (Attachments: # 1 Text of Proposed Order Proposed order for disclosure of PSR materials from prior Virginia case) (Signorelli, Richard) (Entered: 04/22/2020) |
| 04/22/2020 | 73 | ORDER 72 LETTER MOTION as to Garnet Steven Murray-Sesay. IT IS FURTHER ORDERED that the PSR Materials from the Virginia Case will remain under seal in this case, will not be filed on the public docket, and will only be used by defendant's counsel in connection with the sentencing of the Defendant herein. (Signed by Judge Katherine Polk Failla on 4/22/2020) (jw) (Entered: 04/22/2020) |
| 04/22/2020 | 74 | LETTER MOTION addressed to Judge Katherine Polk Failla from Lloyd Epstein dated 4/21/2020 re: Kowan Poole *Request to Modify Conditions of Bond*. Document filed by Kowan Poole. (Epstein, Lloyd) (Entered: 04/22/2020) |
| 04/22/2020 | 75 | MEMO ENDORSEMENT 74 LETTER MOTION This is to request that the conditions of the GPS bracelet, home confinement, and HISP be removed. There is work available in Washington, D.C. and removal of these conditions will enable Mr. Poole to find a job...ENDORSEMENT...Application Granted. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/22/20) (jw) (Entered: 04/22/2020) |

Case 21-2898, Document 29, 01/25/2022, 3203300, Page31 of 282

| | | |
|---|---|---|
| 04/24/2020 | 76 | SENTENCING SUBMISSION by Garnet Steven Murray-Sesay. (Attachments: # 1 Exhibit Exh E: letter; Exh F: VA transcript excerpt; Exh G VA sentencing memo; Exh H: VA presentence report excerpt (filed under seal))(Signorelli, Richard) (Entered: 04/24/2020) |
| 04/27/2020 | | NOTICE OF SENTENCING as to Garnet Steven Murray-Sesay: The Sentencing in this matter will take place on 4/28/2020 at 12:00 PM before Judge Katherine Polk Failla. The sentencing will proceed via videoconference, with audio access as follows: Dial-in information: (855) 268-7844; Access Code 32091812#; and PIN 9921299#. ***No PDF is attached to this entry. (tn) (Entered: 04/27/2020) |
| 04/28/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Sentencing held on 4/28/2020 for Garnet Steven Murray-Sesay (14) Count 1. Defendant Garnet Steven Murray-Sesay present with attorney Richard E Signorelli. AUSA Alexander Nuo Li present. (See Judgment). (Court Reporter Kristin Carannante) (ap) (Entered: 04/28/2020) |
| 04/29/2020 | 77 | LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated April 29, 2020 re: Motion to Modify Sentence before Filing of Judgment of Conviction . Document filed by Garnet Steven Murray-Sesay. (Signorelli, Richard) (Entered: 04/29/2020) |
| 04/29/2020 | | DISMISSAL OF COUNTS on Government Motion as to Garnet Steven Murray-Sesay (14) Count 2,3. (ap) (Entered: 04/29/2020) |
| 04/29/2020 | 78 | JUDGMENT IN A CRIMINAL CASE as to Garnet Steven Murray-Sesay (14). THE DEFENDANT: pleaded guilty to count One. ALL OPEN COUNTS are dismissed on the motion of the United States. IMPRISONMENT: Nine (9) months (Defendant is to receive credit for time served since the date of arrest, 12/10/2019) The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the Defendant be designated to a facility with an appropriate security level near the Chesterfield, VA area. The Court also recommends that Defendant serve the rest of his sentence in a one-man cell. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Three (3) years. ASSESSMENT: $100.00 due immediately. (Signed by Judge Katherine Polk Failla on 4/28/2020) (ap) (Entered: 04/29/2020) |
| 04/29/2020 | 79 | MEMO ENDORSEMENT as to Garnet Steven Murray-Sesay on re: 77 LETTER MOTION addressed to Judge Katherine Polk Failla from Richard E. Signorelli dated April 29, 2020 re: Motion to Modify Sentence before Filing of Judgment of Conviction. ENDORSEMENT: The Court has reviewed this letter from defense counsel for Mr. Murray-Sesay. (Dkt. #77). The Court appreciates defense counsel's concerns regarding his client. However, all of these concerns were raised by defense counsel in Mr. Murray-Sesay's sentencing submissions (see Dkt. #69 at 5-6, 10-11, 14-15; Dkt. #76 at 3), and were discussed at length during his sentencing proceeding on April 28, 2020. The Court considered the impact of the COVID-19 pandemic on Mr. Murray-Sesay in varying substantially downward from his Sentencing Guidelines range. The Court also filed a medical attention form for Mr. Murray-Sesay with the Metropolitan Detention Center and, at the request of defense counsel, requested that Mr. Murray-Sesay be moved to a single-occupant cell. (Dkt. #78 at 2). For all of these reasons, Mr. Murray-Sesay's application is DENIED. (Signed by Judge Katherine Polk Failla on 4/29/2020) (ap) Modified on 4/30/2020 (ap). (Entered: 04/29/2020) |
| 05/08/2020 | 80 | CJA 23 Financial Affidavit by (20-Cr-003-06) Anthony Lee Nelson. APPROVED: (Signed by Magistrate Judge Stewart D. Aaron on 5/8/2020); Attorney Donna R. Newman. (bw) (Entered: 05/08/2020) |
| 05/08/2020 | | Attorney update in case as to Anthony Lee Nelson (6). Attorney Donna Rita Newman for Anthony Lee Nelson added. (bw) (Entered: 05/08/2020) |

A-28

| 05/08/2020 | 81 | Minute Entry for proceedings held before Magistrate Judge Stewart D. Aaron: Initial Appearance as to (20-Cr-003-06) Anthony Lee Nelson held on 5/8/2020. AUSA Thomas Burnett. Defense Counsel Donna Newman (CJA). Proceeding: Rule 9. BAIL DISPOSITION: Agreed conditions of release; Travel restricted to SDNY/EDNY/District of Maryland and District of Columbia; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; Drug testing/treatment as directed by PTS; Curfew; Electronic monitoring; Defendant to continue or seek employment; Defendant not to possess firearm/destructive device/other weapon; Defendant to be released on own signature; No contact with codefendants unless in the presence of counsel. Do not possess any personal identifying information of others or access device of another without authorization from Pretrial Services. No new lines of credit or bank accounts without authorization from Pretrial Services. ADDITIONAL PROCEEDINGS: Defendant arraigned; pleads Not Guilty. Conference before District Judge on 6/15/2020 at 3:30 p.m. Speedy Trial Time excluded under 18 U.S.C. Section 3161(h)(7) until 6/15/2020. (bw) (Entered: 05/08/2020) |
| --- | --- | --- |
| 05/08/2020 | | Minute Entry for proceedings held before Magistrate Judge Stewart D. Aaron: Arraignment as to Anthony Lee Nelson (6) Count 1,2 held on 5/8/2020. Plea entered by Anthony Lee Nelson (6) Count 1,2 -- Not Guilty. (bw) (Entered: 05/08/2020) |
| 05/08/2020 | | ORAL ORDER as to (20-Cr-003-06) Anthony Lee Nelson. Time excluded from 5/8/2020 until 6/15/2020. Status Conference set for 6/15/2020 at 03:30 PM before Judge Katherine Polk Failla. (By Magistrate Judge Stewart D. Aaron on 5/8/2020) (bw) (Entered: 05/08/2020) |
| 05/08/2020 | 82 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING by (20-Cr-003-06) Anthony Lee Nelson. (Accepted by Magistrate Judge Stewart D. Aaron on 5/8/2020) (bw) (Entered: 05/08/2020) |
| 05/08/2020 | 83 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE by (20-Cr-003-06) Anthony Lee Nelson. This proceeding was conducted by reliable video or telephone conferencing technology. (Signed by Magistrate Judge Stewart D. Aaron on 5/8/2020) (bw) (Entered: 05/08/2020) |
| 05/08/2020 | 84 | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 4/28/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/29/2020. Redacted Transcript Deadline set for 6/8/2020. Release of Transcript Restriction set for 8/6/2020. (McGuirk, Kelly) (Entered: 05/08/2020) |
| 05/08/2020 | 85 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 4/28/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 05/08/2020) |
| 06/08/2020 | 86 | SCHEDULING ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry |

| | | |
|---|---|---|
| | | Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. On March 23, 2020, the Court scheduled a pretrial conference in this action for June 15, 2020, at 3:30 p.m. (Dkt. #62). That conference will proceed as scheduled telephonically. Both counsel and defendants shall appear telephonically for the conference. The dial-in information is as follows: At 3:30 p.m. on June 15, 2020, the parties shall call (888) 363-4749 and enter access code 5123533. Please note, the conference will not be available prior to 3:30 p.m. (Signed by Judge Katherine Polk Failla on 6/8/2020) (ap) (Entered: 06/08/2020) |
| 06/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference as to Farouk Kukoyi, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley held on 6/15/2020. Defendant Farouk Kukoyi (2) present with attorney Eric Wayne Siegle; Defendant Henry Ogbuokiri (4) with attorney Mehdi Essmidi; Defendant Joshua Hicks (5) present with attorney John P. DeMaio;Defendant Anthony Lee Nelson (6) present with attorney Donna Rita Newman; Defendant Jamar Skeete (9) present with attorney Mitchell C. Elman; Defendant Paul Yaw Osei (10) present with attorney Bradley Lamar Henry; Defendant Kowan Poole (11) present with attorney Llyod Epstein; Attorney Ezra Spilke representing defendant Darrel Williams (12) (appearance waived) present; Defendant Daryl Bartley (13) present with attorney Megan Wolfe Benett. AUSAs Alexander Li and Thomas Somerset Burnett present. NYPD Detective Daniel Alessandrio present. Court reporter Eve Giniger present. The next Pretrial Conference is scheduled for 9/16/2020 at 11:00 a.m. Time is excluded in the interests of justice from 6/15/2020 to 9/16/2020. All Defendants, except Defendant Williams, continued released. (Pretrial Conference set for 9/16/2020 at 11:00 AM before Judge Katherine Polk Failla) (lnl) (Entered: 06/15/2020) |
| 06/16/2020 | 87 | CJA 23 Financial Affidavit by (20-Cr-003-1) Oladayo Oladokun. APPROVED: (Signed by Magistrate Judge James L. Cott on 6/16/2020); Attorney Jeffrey Pittell. (bw) (Entered: 06/16/2020) |
| 06/16/2020 | | Attorney update in case as to Oladayo Oladokun (1). Attorney Jeffrey G. Pittell for Oladayo Oladokun added. (bw) (Entered: 06/16/2020) |
| 06/16/2020 | 88 | Minute Entry for proceedings held before Magistrate Judge James L. Cott: Initial Appearance as to (20-Cr-003-1) Oladayo Oladokun held on 6/16/2020. AUSA Alexander Li. Defense Counsel Jeffrey Pittell (CJA). BAIL DISPOSITION: Detention on consent without prejudice. ADDITIONAL PROCEEDINGS: Defendant arraigned; pleads Not Guilty. Conference before District Judge on 9/16/2020. (bw) (Entered: 06/16/2020) |
| 06/16/2020 | | Minute Entry for proceedings held before Magistrate Judge James L. Cott: Arraignment as to Oladayo Oladokun (1) Count 1,2 held on 6/16/2020. Plea entered by Oladayo Oladokun (1) Count 1,2 -- Not Guilty. (bw) (Entered: 06/16/2020) |
| 06/17/2020 | 89 | ORDER as to Oladayo Oladokun: On June 16, 2020, Defendant Oladayo Oladokun had an initial appearance before Magistrate Judge Cott, at which time he pleaded not guilty to Counts 1 and 2 of the Indictment. At that appearance, Oladokun was appointed counsel and consented to detention without prejudice to requesting a bail hearing at a late date. His counsel has now asked the Court to schedule such bail hearing. Accordingly, the parties are hereby ORDERED to appear for a bail hearing on June 25, 2020 at 12:00 p.m. The dial-in information is as follows: At 12:00 p.m. on June 25, 2020, the parties shall call (888) 363-4749 and enter access code 5123533. Please note, the conference will not be available prior to 12:00 p.m. (Bond Hearing set for 6/25/2020 at 12:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 6/17/2020) (ap) (Entered: 06/17/2020) |

<center>A-30</center>

Case 21-2898, Document 29, 01/25/2022, 3080300, Page34 of 282

| | | |
|---|---|---|
| 06/23/2020 | 90 | LETTER by USA as to Oladayo Oladokun addressed to Judge Katherine Polk Failla from USA dated June 23, 2020 re: Opposition to Defendant Oladayo Oladokun's Anticipated Bail Motion Document filed by USA. (Li, Alexander) (Entered: 06/23/2020) |
| 06/24/2020 | 91 | NOTICE OF ATTORNEY APPEARANCE: James R. Froccaro, Jr appearing for Oladayo Oladokun. Appearance Type: Retained. (Froccaro, James) (Entered: 06/24/2020) |
| 06/24/2020 | 92 | LETTER MOTION addressed to Judge Katherine Polk Failla from James R. Froccaro, Jr. dated June 24, 2020 re: request for Bond . Document filed by Oladayo Oladokun. Return Date set for 6/25/2020 at 12:00 PM. (Froccaro, James) (Entered: 06/24/2020) |
| 06/24/2020 | 93 | ORDER as to Darrel Williams. On June 15, 2020, the Government and counsel for Defendant Darrel Williams notified the Court that they had reached a plea agreement and that Mr. Williams would like to have a change of plea hearing. Mr. Williams's counsel indicated that Mr. Williams, who is detained at the Metropolitan Detention Center, consents to proceed by video-conference and waive his physical presence at the hearing. The Court has scheduled Mr. Williams's change of plea hearing for June 30, 2020, at 9:00 a.m. The conference will proceed via video conference, with audio access as follows: Dial-in (855) 268- 7844, Access Code 32091812#, PIN 9921299#. The Court will provide instructions for accessing the conference for video participants separately (Change of Plea Hearing set for 6/30/20 at 09:00 AM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/24/20)(jw) (Entered: 06/25/2020) |
| 06/25/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Bond Hearing as to Oladayo Oladokun held on 6/25/2020. Defendant Oladayo Oladokun presence waived. Attorneys James R. Froccaro Jr. and Jeffrey G. Pittell representing Defendant present. AUSA(s) Alexander Nuo Li and Thomas Somerset Burnett present. NYPD Detective Daniel Alessandrino present. Pretrial Services Officer Miller present. Court reporter Andrew Walker present. Attorney Jeffrey Pittell is relieved as counsel for Defendant, and attorney James Froccaro is substituted as attorney of record for the defendant. Defendant's application for bail is DENIED. The next Pretrial Conference is set for September 16, 2020 at 11:00 a.m. Time is excluded in the interests of justice from 6/25/2020 to 9/16/2020. (See transcript) (Pretrial Conference set for 9/16/2020 at 11:00 AM before Judge Katherine Polk Failla.) (jw) (Entered: 06/25/2020) |
| 06/30/2020 | 94 | WAIVER OF RIGHT TO BE PRESENTAT CRIMINAL PROCEEDING as to Darrel Williams. (Signed by Judge Katherine Polk Failla on 6/30/2020) (ap) (Entered: 06/30/2020) |
| 06/30/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Darrel Williams held on 6/30/2020. Defendant Darrel Williams (12) present with attorney Ezra Spilke. AUSA Thomas Somerset Burnett present. Court reporter Pamela Utter present. Defendant consented to waive his physical presence, and was allocuted and advised of rights. Defendant withdraws previously entered not guilty plea, and enters a plea of GUILTY to Count One of Indictment 20cr3 (KPF). Plea accepted. PSR ordered. Sentencing set for October 28, 2020 at 3:00 p.m. Defendant's sentencing submission due two weeks prior to sentencing. Government's sentencing submission due one week prior to sentencing. Defendant continued remanded. (See transcript.) (jbo) (Entered: 07/01/2020) |
| 06/30/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Darrel Williams (12) Guilty as to Count 1. (jbo) (Entered: 07/01/2020) |
| 06/30/2020 | | Change of Not Guilty Plea to Guilty Plea as to Darrel Williams (12) Count 1. (jbo) (Entered: 07/01/2020) |
| 06/30/2020 | | Set/Reset Hearings as to Darrel Williams: Sentencing set for 10/28/2020 at 03:00 PM |

A-31

| | | before Judge Katherine Polk Failla. (jbo) (Entered: 07/01/2020) |
|---|---|---|
| 06/30/2020 | | Order of Referral to Probation for Presentence Investigation and Report as to Darrel Williams. (Signed by Judge Katherine Polk Failla on 6/30/2020)(jbo) (Entered: 07/01/2020) |
| 07/10/2020 | | NOTICE OF HEARING as to Kowan Poole: A conference is scheduled for July 15, 2020 at 3:00 p.m., which will be held via video conference, with audio access as follows: (917) 933-2166, Conference ID: 683938904. The parties who will be participating by video will be provided a link in advance of the conference. ***No PDF is attached to this entry. (Violation of Supervised Release Hearing set for 7/15/2020 at 03:00 PM before Judge Katherine Polk Failla.) (tn) (Entered: 07/10/2020) |
| 07/15/2020 | 95 | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference as to Kowan Poole held on 7/15/2020. AUSA Alexander Li/Thomas Burnett for the Government. Lloyd Epstein for the Defendant. BAIL DISPOSITION: AGREED CONDITIONS OF RELEASE. TRAVEL RESTRICTED TO SDNY/EDNY/D.D.C and points in between for travel to court/see NY lawyer; SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS); PRETRIAL SUPERVISION: AS DIRECTED BY PRETRIAL SERVICES; DRUG TESTING/TREATMT AS DIRECTED BY PTS; HOME INCARCERATION; GPS; DEF. NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEF. TO BE RELEASED ON OWN SIGNATURE. ADDITIONAL CONDITIONS/ADDITIONAL PROCEEDINGS/COMMENTS: D to reside at 1819 Bruce Place SE Washington D.C. No contact with co-Ds outside presence of counsel.. D must refrain from accessing personally identifying information, financial information or bank accounts of others. D to report weekly in person to PTS, weekly drug testing. D to participate in High Intensity Supervision Program. (ap) (Entered: 07/15/2020) |
| 07/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Hearing as to Kowan Poole held on 7/15/2020. Defendant Kowan Poole (11) present with attorney Lloyd Epstein. AUSAs Alexander Li and Thomas Somerset Burnett present. Probation Officer Francesca Piperato present. Court reporter Jennifer Thun present. Defendant's bail conditions are modified to home incarnation with location monitoring and participation in the high intensity supervision program. Defendant continued released. (See transcript). (ap) Modified on 7/16/2020 (ap). (Entered: 07/15/2020) |
| 07/29/2020 | 96 | TRANSCRIPT of Proceedings as to Oladayo Oladokun re: Conference held on 6/25/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/19/2020. Redacted Transcript Deadline set for 8/31/2020. Release of Transcript Restriction set for 10/27/2020. (McGuirk, Kelly) (Entered: 07/29/2020) |
| 09/01/2020 | 98 | ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. The scheduling order issued earlier today (Dkt. #97) setting a conference for September 2, 2020, at 11:30 a.m. was issued in error. The Clerk of Court is directed to terminate the conference and delete the docket entry. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/1/2020)(jbo) (Entered: 09/01/2020) |
| 09/01/2020 | | ***DELETED DOCUMENT. Deleted document number 97, as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray- |

A-32

Sesay, Andrew Heaven. The document was incorrectly filed in this case. (jbo) (Entered: 09/01/2020)

| | | |
|---|---|---|
| 09/08/2020 | 99 | ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven: On June 25, 2020, the Court scheduled a pretrial conference in this action for September 16, 2020, at 11:00 a.m. That conference will proceed as scheduled telephonically. Both counsel and defendants shall appear telephonically for the conference. The dial-in information is as follows: At 11:00 a.m. on September 16, 2020, the parties shall call (888) 363-4749 and enter access code 5123533. Please note, the conference will not be available prior to 11:00 a.m. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/8/2020) (lnl) (Entered: 09/08/2020) |
| 09/16/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Pretrial Conference as to Oladayo Oladokun, Farouk Kukoyi, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Daryl Bartley held on 9/16/2020. Attorney James Froccaro representing Defendant Oladayo Oladokun (1) (presence waived) present; Defendant Farouk Kukoyi (2) present with attorney Eric Wayne Siegle; Attorney Mehdi Essmidi representing Defendant Henry Ogbuokiri (4) (presence waived) present; Defendant Joshua Hicks (5) present with attorney John P. DeMaio; Defendant Anthony Lee Nelson (6) present with attorney Donna Rita Newman; Defendant Jamar Skeete (9) present with attorney Mitchell C. Elman; Defendant Paul Yaw Osei (10) present with attorney Bradley Lamar Henry; Defendant Kowan Poole (11) present with attorney Llyod Epstein; Defendant Daryl Bartley (13) present with attorney Megan Wolfe Benett. AUSA Thomas Somerset Burnett present. The next Pretrial Conference is scheduled for 12/9/2020 at 12:00 p.m. Time is excluded in the interests of justice from 9/16/2020 until 12/9/2020. All Defendants, except Defendant Oladayo Oladokun, continued released. (See transcript). (Pretrial Conference set for 12/9/2020 at 12:00 PM before Judge Katherine Polk Failla.) (Court Reporter Vincent Bologna) (ap) (Entered: 09/16/2020) |
| 09/25/2020 | 101 | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 6/30/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/16/2020. Redacted Transcript Deadline set for 10/26/2020. Release of Transcript Restriction set for 12/24/2020. (McGuirk, Kelly) (Entered: 09/25/2020) |
| 09/25/2020 | 102 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 6/30/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 09/25/2020) |
| 09/30/2020 | 103 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Ezra Spilke dated September 30, 2020 re: scheduling an earlier sentencing hearing . Document |

A-33

| | | |
|---|---|---|
| | | filed by Darrel Williams. (Spilke, Ezra) (Entered: 09/30/2020) |
| 09/30/2020 | 104 | MEMO ENDORSED granting 103 LETTER MOTION scheduling an earlier sentencing hearing as to Darrel Williams (12)...ENDORSEMENT: Application GRANTED. The sentencing proceeding for Mr. Williams is hereby rescheduled to October 13, 2020, at 9:00 a.m., with a backup date of October 20, 2020, at 9:00 a.m. or 11:00 a.m. The hearing will proceed by video conference. Instructions will be provided to video participants in advance of the proceeding. Mr. Williams's sentencing submission is due on or before October 1, 2020; the Government's submission is due on or before October 8, 2020. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/30/2020) (jbo) (Entered: 09/30/2020) |
| 09/30/2020 | | Set/Reset Hearings as to Darrel Williams: Sentencing set for 10/13/2020 at 09:00 AM before Judge Katherine Polk Failla. (jbo) (Entered: 09/30/2020) |
| 10/01/2020 | 105 | Sentencing Letter by Darrel Williams addressed to Judge Katherine Polk Failla from Ezra Spilke dated October 1, 2020. (Attachments: # 1 Exhibit)(Spilke, Ezra) (Entered: 10/01/2020) |
| 10/02/2020 | | Arrest of Andrew Heaven in the United States District Court - District of Maine. (jm) (Entered: 10/05/2020) |
| 10/02/2020 | | Arrest of Andrew Heaven (15). (bw) (Entered: 10/16/2020) |
| 10/05/2020 | 106 | Rule 5(c)(3) Documents Received as to Andrew Heaven from the United States District Court - District of Maryland. (jm) (Entered: 10/05/2020) |
| 10/07/2020 | 107 | MEMORANDUM as to Anthony Lee Nelson. We are requesting decision from the Court. My Chambers will inform all parties concerned that I will conduct a Bail Review Hearing in Courtroom #618 on October 15, 2020 at 3:30pm ( Bail Review Hearing set for 10/15/2020 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 10/7/2020)(jw) (Entered: 10/07/2020) |
| 10/07/2020 | | Arrest of Derrick Banks in the United States District Court - District of Maryland. (jm) (Entered: 10/08/2020) |
| 10/08/2020 | 108 | Rule 5(c)(3) Documents Received as to Derrick Banks from the United States District Court - District of Maryland. (jm) (Entered: 10/08/2020) |
| 10/08/2020 | 109 | SENTENCING SUBMISSION by USA as to Darrel Williams. (Burnett, Thomas) (Entered: 10/08/2020) |
| 10/09/2020 | 111 | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 9/16/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2020. Redacted Transcript Deadline set for 11/9/2020. Release of Transcript Restriction set for 1/7/2021. (McGuirk, Kelly) (Entered: 10/09/2020) |
| 10/09/2020 | 112 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 9/16/20 has been filed |

4/22/22, 10:29 AM

SDNY CM/ECF NextGen Version 1.6...

| | | |
|---|---|---|
| | | by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 10/09/2020) |
| 10/13/2020 | [113](#) | CONSENT PRELIMINARY ORDER OF FORFEITURE / MONEY JUDGMENT as to (20-Cr-003-12) Darrel Williams. . . .[See this Consent Preliminary Order of Forfeiture/Money Judgment]. . . IT IS HEREBY STIPULATED AND AGREED, by and between theUnited States of America, by its attorney Geoffrey S. Berman, United States Attorney, Assistant United States Attorney, Alexander Li of counsel, the defendant, and his counsel, Ezra Spilke, Esq., that: 1. As a result of the offense charged in Count One of the Indictment, to which the defendant pled guilty, a money judgment in the amount of $156,264 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the defendant personally obtained, shall be entered against the defendant. 2. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture/Money Judgment is final as to the defendant, DARREL WILLIAMS, and shall be deemed part of the sentence of the defendant, and shall be included in the judgment of conviction therewith.. . .[See this Consent Preliminary Order of Forfeiture/Money Judgment]. . .7. The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. 8. The Clerk of the Court shall forward three certified copies of this Consent Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Alexander J. Wilson, Co-Chief of the Money Laundering and Transnational Criminal Enterprises Unit, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007. 9. The signature page of this Consent Preliminary Order of Forfeiture/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. SO ORDERED: (Signed by Judge Katherine Polk Failla on 10/13/2020)(bw). [*** NOTE: The Clerk of the Court has forwarded three certified copies of this Consent Preliminary Order of Forfeiture/Money Judgment to AUSA Alexander J. Wilson, via interoffice mail on 10/19/2020. ***] Modified on 10/19/2020 (bw). (Entered: 10/13/2020) |
| 10/13/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Sentencing held on 10/13/2020 for Darrel Williams (12) Count 1. Defendant Darrel Williams (12) present with attorney Ezra Spilke. AUSA Ashley Nicolas, Alexander Li and Thomas Burnett present. Court reporter Steven Greenblum present. Defendant continued remanded. (See Judgment). (lnl) (Entered: 10/14/2020) |
| 10/13/2020 | | DISMISSAL OF COUNTS on Government Motion as to Darrel Williams (12) Count 2,3. (bw) (Entered: 10/16/2020) |
| 10/14/2020 | [114](#) | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated October 14, 2020 re: Hearing on Bond Violation . Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 10/14/2020) |
| 10/15/2020 | [115](#) | MEMO ENDORSEMENT as to (20-Cr-003-06) Anthony Lee Nelson on re: [114](#) LETTER MOTION filed by Anthony Lee Nelson addressed to Judge Katherine Polk Failla from Attorney Donna R. Newman dated October 14, 2020 re: Hearing on Bond Violation. ENDORSEMENT: The Court is in receipt of the above letter from Defendant regarding the hearing scheduled for October 15, 2020. Under New York's COVID-19 travel restriction guidelines, Mr. Nelson may travel through states on the restricted list, including Delaware, without being subject to quarantine requirements so long as he does not remain in those states longer than 24 hours. Accordingly, the conference will remain |

| | | |
|---|---|---|
| | | in person. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/14/2020)(bw) (Entered: 10/15/2020) |
| 10/15/2020 | 116 | NOTICE OF ATTORNEY APPEARANCE: Gary G Becker appearing for Andrew Heaven. Appearance Type: CJA Appointment. (Becker, Gary) (Entered: 10/15/2020) |
| 10/15/2020 | | NOTICE FOR PUBLIC ACCESS REMOTE DIAL-IN as to Anthony Lee Nelson re: 115 Memo Endorsement: Remote public access for the bond hearing scheduled for 10/15/2020 at 3:30 p.m., is available at: Dial-in (888) 363-4749, Access Code 5123533. ***No PDF is attached to this entry. (tn) (Entered: 10/15/2020) |
| 10/15/2020 | 117 | Minute Entry for proceedings held before Judge Katherine Polk Failla: Initial Appearance as to (20-Cr-3-07) Derrick Banks held on 10/15/2020. Date of Arrest: 10/7/2020. AUSA Thomas Burnett. Defense Counsel Joshua Dratel, Esq. (CJA). Proceeding: Arraignment. Defendant arraigned; pleads Not Guilty. BAIL DISPOSITION: Agreed conditions of release; $50,000 PRB; 1 FRP; Travel restricted to SDNY/District of Columbia and all districts needed to pass through for travel; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; Drug testing/treatment as directed by PTS; Defendant to submit to urinalysis, if positive, add condition of drug testing/treatment; Defendant to continue or seek employment; Defendant not to possess firearm/destructive device/other weapon; Defendant to be released on own signature; Remaining conditions to be met by 10/29/2020. - Maintain residence at an address approved by Pretrial Services and not relocate without prior approval of Pretrial Services. - Refrain from opening new bank accounts and new lines of credit without prior approval from Pretrial Services. - No contact with victims, witnesses, or codefendants unless in the presence of defense counsel. - No use of illegal drugs. - Comply with all federal, state, and local directives related to COVID-19. - Travel to SDNY is limited to attorney meetings, court conferences, and events approved by Pretrial Services. (bw) (Entered: 10/15/2020) |
| 10/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Derrick Banks (7) Count 1,2,3 held on 10/15/2020. Plea entered by Derrick Banks (7) Count 1,2,3 -- Not Guilty. (bw) (Entered: 10/15/2020) |
| 10/15/2020 | 119 | Minute Entry for proceedings held before Judge Katherine Polk Failla: Initial Appearance / Arraignment as to Andrew Heaven (15) held on 10/15/2020. Date of Arrest: 10/2/2020. AUSA Thomas Burnett. Defense Counsel Gary G. Becker, Esq. (CJA). BAIL DISPOSITION: Agreed conditions of release; $50,000 PRB; 1 FRP; Secured by cash/property; Travel restricted to SDNY/D.Md., D.D.C., E.D.Va. & W.D.Va. and districts needed to pass through for travel; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; Drug testing/treatment as directed by PTS; Mental health evaluation/treatment as directed by PTS; Defendant to submit to urinalysis, if positive, add condition of drug testing/treatment; Defendant not to possess firearm/destructive device/other weapon; Defendant to be released on own signature; Remaining conditions to be met by 10/29/2020. - Refrain from opening new bank accounts and new lines of credit without prior approval from Pretrial Services. - No contact with victims, witnesses, or codefendants unless in the presence of defense counsel. - No use of illegal drugs. - Comply with all federal, state, and local directives related to COVID-19. - Travel to SDNY is limited to attorney meetings, court conferences, and events approved by Pretrial Services. (bw) (Entered: 10/16/2020) |
| 10/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Derrick Banks (7) Count 1,2,3 and Andrew Heaven (15) Count 1,2. Defendant Derrick Banks (7) present with attorney Joshua L. Dratel; Defendant Andrew Heaven (15) present with attorney Gary Becker. AUSA Thomas Burnett present. Pretrial Services Officer Courtney DeFeo present. Court reporter Khris Sellin present. Defendant Derrick Banks |

| | | |
|---|---|---|
| | | pleads NOT GUILTY to Counts One through Three of Indictment 20cr3 (KPF). Defendant Andrew Heaven pleads NOT GUILTY to Counts One and Two of Indictment 20cr3 (KPF). CJA attorney Joshua Dratel appointed for Defendant Banks; CJA attorney Gary Becker appointed for Defendant Heaven. Mr. Heaven's GPS monitoring bail condition, and Mr. Bank's home detention condition, are removed, and new bail conditions imposed as ordered. The next conference is scheduled for 12/9/2020 at 12:00 p.m. Time is excluded in the interests of justice from 10/15/2020 until 12/9/2020. (See transcript). (Status Conference set for 12/9/2020 at 12:00 PM before Judge Katherine Polk Failla) **Plea entered by Derrick Banks (7) Count 1,2,3 and Andrew Heaven (15) Count 1,2 Not Guilty** (lnl) (Entered: 10/19/2020) |
| 10/15/2020 | 127 | CJA 23 Financial Affidavit by Andrew Heaven. (Signed by Judge Katherine Polk Failla) Attorney Gary Becker (jw) (Entered: 10/30/2020) |
| 10/15/2020 | | Attorney update in case as to Andrew Heaven. Attorney Gary G Becker for Andrew Heaven added. (jw) (Entered: 10/30/2020) |
| 10/15/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Hearing as to Anthony Lee Nelson held on 10/15/2020. Defendant Anthony Lee Nelson (6) present with attorney Donna Rita Newman. AUSA Thomas Somerset Burnett present. Bail conditions are continued as stated on the record. Defendant continued released. (See transcript). (Court Reporter George Malinowski) (ap) (Entered: 11/04/2020) |
| 10/16/2020 | 118 | JUDGMENT In A Criminal Case. Date of Imposition of Judgment: 10/13/2020. Defendant Darrel Williams (12) pleaded guilty to Count(s) 1. Count(s) All open counts are dismissed on the motion of the United States. IMPRISONMENT: Eighteen (18) months to be calculated as follows: Eight (8) months to run concurrent to any remaining New Jersey State sentence, and Ten (10) months to run consecutive to Defendant's New Jersey State sentence. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the Defendant be designated to Fort Dix, NJ, or FCI Fairton, NJ, or, if there is no space available in those facilities, then to a facility of an appropriate security level in the southern New Jersey area. The Court also recommends that Defendant be treated for his high blood pressure and hernia. - The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Three (3) years. Standard Conditions of Supervision (See page 4 of Judgment). Special Conditions of Supervision (See page 5 of Judgment). ASSESSMENT: $100.00, due immediately. - The determination of restitution is deferred until 1/14/2021. An Amended Judgment in a Criminal Case (AO 245C) will be entered after such determination. - The defendant shall forfeit the defendant's interest in the following property to the United States: $156,264 (See Consent Preliminary Order of Forfeiture/Money Judgment dated 10/13/2020). (Signed by Judge Katherine Polk Failla on 10/16/2020)(bw) (Entered: 10/16/2020) |
| 10/16/2020 | 166 | Appearance Bond Entered as to Andrew Heaven: $50,000 Personal Recognizance Bond; To be cosigned by One Financially Responsible Person; Additional Conditions.... [**Advice of Penalties and Sanctions attached.] (jbo) (Entered: 04/12/2021) |
| 10/28/2020 | 121 | MOTION for Bond *Modification*. Document filed by Kowan Poole. (Epstein, Lloyd) (Entered: 10/28/2020) |
| 10/28/2020 | 122 | MEMO ENDORSED granting 121 Motion for Bond as to Kowan Poole (11)...ENDORSEMENT: Application GRANTED. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/28/2020) (jbo) (Entered: 10/28/2020) |
| 10/29/2020 | 123 | NOTICE OF ATTORNEY APPEARANCE: Dorea Helene Silverman appearing for Paul Yaw Osei, Jr.. Appearance Type: CJA Appointment. (Silverman, Dorea) (Entered: 10/29/2020) |

A-37

Case 21-2898, Document 29, 01/25/2022, 3243200, Page41 of 282

| 10/29/2020 | 124 | ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. Brady, 373 U.S. at 87. This obligation applies regardless of whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case....[See this Order]... For purposes of this Order, the Government includes all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or the investigation that led to the prosecution, of the offense or offenses with which the defendant is charged. The Government has an affirmative obligation to seek from such sources all information subject to disclosure under this Order. If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may: (i) specify the terms and conditions of such production; (ii) grant a continuance; (iii) impose evidentiary sanctions; (iv) impose sanctions on any responsible lawyer for the Government; (v) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or (vi) enter any other order that is just under the circumstances. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/29/2020)(bw) (Entered: 10/29/2020) |
| 10/29/2020 | 125 | MOTION for Bond *Modification*. Document filed by Kowan Poole. (Epstein, Lloyd) (Entered: 10/29/2020) |
| 10/29/2020 | 126 | MEMO ENDORSEMENT granting 125 MOTION for Bond Modification, filed by Kowan Poole (11)re: This is a request to formally change the condition of Mr. Poole's bond from "home incarceration" to "home detention." ENDORSEMENT: Application GRANTED. Mr. Poole's status is hereby modified to home detention. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/29/2020) (bw) (Entered: 10/29/2020) |
| 10/29/2020 | 128 | ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven: This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences o violating those obligations. (Signed by Judge Katherine Polk Failla on 10/29/2020) (See ORDER set forth) (ap) (Entered: 11/02/2020) |
| 10/29/2020 | 158 | Appearance Bond Entered as to Derrick Banks: $50,000 PRB; TO BE COSIGNED BY 1 FRP; TRAVEL RESTRICTED TO SDNY/ DISTRICT OF COLUMBIA AND ALL DISTRICTS NEEDED TO PASS THROUGH FOR TRAVEL; SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS); PRETRIAL SUPERVISION AS DIRECTED BY PRETRIAL SERVICES; DRUG TESTING/TREATMENT AS DIRECTED BY PTS; DEF. TO SUBMIT TO URINALYSIS; IF POSITIVE, ADD CONDITION OF DRUG TESTING/TREATMENT; DEF. TO CONTINUE OR SEEK EMPLOYMENT; DEF. NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEF. TO BE RELEASED ON OWN SIGNATURE, REMAINING CONDITIONS TO BE MET BY: 10/29/20; ADDITIONAL CONDITIONS..... [**Advice of Penalties and Sanctions attached.] (jbo) (Main Document 158 replaced on 3/31/2021) (jbo). (Entered: 02/24/2021) |

Case 21-2898, Document 29, 01/25/2022, 3093400, Page42 of 282

| | | |
|---|---|---|
| 11/05/2020 | [129](#) | TRANSCRIPT of Proceedings as to Oladayo Oladokun re: Conference held on 6/15/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Eve Giniger, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/27/2020. Redacted Transcript Deadline set for 12/7/2020. Release of Transcript Restriction set for 2/3/2021. (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [130](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun. Notice is hereby given that an official transcript of a Conference proceeding held on 6/15/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [131](#) | TRANSCRIPT of Proceedings as to Darrel Williams re: Sentence held on 10/13/2020 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/27/2020. Redacted Transcript Deadline set for 12/7/2020. Release of Transcript Restriction set for 2/3/2021. (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [132](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Darrel Williams. Notice is hereby given that an official transcript of a Sentence proceeding held on 10/13/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [133](#) | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 10/15/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/27/2020. Redacted Transcript Deadline set for 12/7/2020. Release of Transcript Restriction set for 2/3/2021. (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [134](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 10/15/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/05/2020) |
| 11/05/2020 | [135](#) | TRANSCRIPT of Proceedings as to Anthony Lee Nelson re: Conference held on 10/15/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: George |

Malinowski, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/27/2020. Redacted Transcript Deadline set for 12/7/2020. Release of Transcript Restriction set for 2/3/2021. (McGuirk, Kelly) (Entered: 11/05/2020)

| 11/05/2020 | 136 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Anthony Lee Nelson. Notice is hereby given that an official transcript of a Conference proceeding held on 10/15/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/05/2020) |
|---|---|---|
| 11/06/2020 | 137 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Kowan Poole. (Signed by Judge Katherine Polk Failla on 11/6/2020) (ap) (Entered: 11/06/2020) |
| 11/06/2020 | 138 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Kowan Poole. (Signed by Judge Katherine Polk Failla on 11/6/2020) (See ORDER set forth. Three certified copies forwarded to AUSA Alexander Wilson via interoffice mail) (ap) Modified on 11/9/2020 (ap). (Entered: 11/06/2020) |
| 11/06/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Kowan Poole held on 11/6/2020. Defendant Kowan Poole (11) present with attorney Llyod Epstein. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 3/11/2021 at 3:00 p.m. Defendant's submission due two weeks in advance of sentencing; Governments submission due one week in advance of sentencing. PSR ordered. Defendant continued released. Bail conditions are continued. (See transcript). (Sentencing set for 3/11/2021 at 03:00 PM before Judge Katherine Polk Failla) **Plea entered by Kowan Poole (11) Guilty as to Count 1.** (lnl) (Entered: 11/23/2020) |
| 11/06/2020 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Kowan Poole. (Signed by Judge Katherine Polk Failla on 11/6/2020) (lnl) (Entered: 11/23/2020) |
| 11/19/2020 | 139 | NOTICE OF ATTORNEY APPEARANCE: Joshua Lewis Dratel appearing for Derrick Banks. Appearance Type: CJA Appointment. (Dratel, Joshua) (Entered: 11/19/2020) |
| 11/23/2020 | 140 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated November 23, 2020 re: Restitution Order . Document filed by USA as to Darrel Williams. (Attachments: # 1 Text of Proposed Order Proposed Restitution Order)(Li, Alexander) (Entered: 11/23/2020) |
| 11/23/2020 | 141 | ORDER OF RESTITUTION as to Darrel Williams. (Signed by Judge Katherine Polk Failla on 11/23/2020) (ap) (Entered: 11/24/2020) |
| 11/24/2020 | 142 | MOTION for James R. Froccaro Jr. to Withdraw as Attorney *for defendant Oladayo Oladokun*. Document filed by Oladayo Oladokun. (Froccaro, James) (Entered: 11/24/2020) |
| 11/30/2020 | 143 | ORDER as to Daryl Bartley. Defendant Daryl Bartley, Counsel, and the Government are hereby ORDERED to appear for a change of plea conference on December 3, 2020, at 3:00 p.m. The conference will proceed by video conference. Access instructions will be provided to the parties in advance of the conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 11/30/2020)(bw) (Entered: 11/30/2020) |
| 12/01/2020 | | NOTICE OF PUBLIC AUDIO ACCESS DIAL-IN as to Daryl Bartley re: 143 Order. The change of plea hearing scheduled for December 3, 2020 at 3:00 p.m., will proceed via |

| | | |
|---|---|---|
| | | video conference, with remote public access as follows: Dial-in (917) 933-2166, Participant Code: 320927844. Instructions for video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 12/01/2020) |
| 12/03/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Daryl Bartley held on 12/3/2020. Defendant Daryl Bartley (13) present with attorney Megan Wolfe Benett. AUSAs Alexander Nuo Li and Thomas Somerset Burnett present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 4/14/2021 at 2:30 p.m. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. PSR ordered. Defendant continued released - bail conditions still apply. (See transcript). (Sentencing set for 4/14/2021 at 02:30 PM before Judge Katherine Polk Failla) **Plea entered by Daryl Bartley (13) Guilty as to Count 1.** (lnl) (Entered: 12/04/2020) |
| 12/03/2020 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Daryl Bartley. (Signed by Judge Katherine Polk Failla on 12/3/2020) (lnl) (Entered: 12/04/2020) |
| 12/04/2020 | 144 | MEMO ENDORSEMENT as to Oladayo Oladokun on re: 142 MOTION for James R. Froccaro Jr. to Withdraw as Attorney *for defendant Oladayo Oladokun* filed by Oladayo Oladokun...ENDORSEMENT...The Court is in receipt of the above letter from Mr. Froccaro. Mr. Froccaro, incoming counsel for Oladokun, counsel for the Government, and Defendant Oladokun are hereby ORDERED to appear for a telephonic conference regarding this matter on December 8, 2020, at 12:00 p.m. At 12:00 p.m. on December 8, 2020, the parties shall call 888-363-4749 and enter access code 5123533#. Please be advised that the conference will not be available prior to 12:00 p.m. ( Telephone Conference set for 12/8/2020 at 12:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/4/20)(jw) (Entered: 12/07/2020) |
| 12/07/2020 | | NOTICE ADJOURNING CHANGE OF ATTORNEY HEARING as to Oladayo Oladokun: The conference scheduled for 12/8/2020 at 12:00 p.m. is **ADJOURNED to 10:30 a.m. that same day,** and will be held telephonically. At the scheduled time, the parties are to call (888) 363-4749 and enter access code 5123533. Please note that the conference will not be available until 10:30 a.m. (Telephone Conference set for 12/8/2020 at 10:30 AM before Judge Katherine Polk Failla.) ***No PDF is attached to this entry. (tn) (Entered: 12/07/2020) |
| 12/08/2020 | | NOTICE CONVERTING PRETRIAL CONFERENCE TO TELEPHONIC CONFERENCE as to Oladayo Oladokun, Farouk Kukoyi, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Jamar Skeete, Paul Yaw Osei, Jr., Andrew Heaven: The conference scheduled for 12/9/2020 at 12:00 p.m., will be held telephonically. At the scheduled time, the parties are to call (888) 363-4749 and enter access code 5123533. Please note that the conference will not be available until 12:00 p.m. Defense counsel are to provide their respective clients with the above dial-in information. ***No PDF is attached to this entry. (tn) (Entered: 12/08/2020) |
| 12/08/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Attorney Appointment Hearing as to Oladayo Oladokun held on 12/8/2020. Defendant Oladayo Oladokun (1) present with incoming CJA attorney Matt Kluger and outgoing attorney James Froccaro. AUSAs Alexander Nuo Li and Thomas Somerset Burnett present. Court reporter Khris Sellin present. CJA attorney Matt Kluger appointed and substituted as attorney of record for Defendant. Defendant continued remanded. (See transcript). (jbo) (Entered: 12/08/2020) |
| 12/08/2020 | | Attorney update in case as to Oladayo Oladokun. Attorney Matthew J. Kluger for |

Case 21-2898, Document 29, 01/25/2022, 3303300, Page45 of 282

| | | |
|---|---|---|
| | | Oladayo Oladokun added. Attorney James R. Froccaro, Jr terminated. (jbo) (Entered: 12/08/2020) |
| 12/09/2020 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pretrial Conference as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Daryl Bartley, Andrew Heaven held on 12/9/2020. Attorney Matt Kluger representing Defendant Oladayo Oladokun (1) (presence waived) present; Defendant Farouk Kukoyi (2) present with attorney Eric Siegle; Defendant Henry Ogbuokiri (4) present with attorney Mehdi Essmidi; Attorney John P. DeMaio representing Defendant Joshua Hicks (5) (presence waived) present; Defendant Anthony Lee Nelson (6) present with attorney Donna Newman; Defendant Derrick Banks (7) present with attorney Joshua Dratel; Defendant Jamar Skeete (9) present with attorney Mitchell C. Elman; Defendant Paul Yaw Osei (10) present with attorney Dorea Silverman; Defendant Andrew Heaven (15) present with attorney Gary Becker. AUSA Alexander Nuo Li present. Court reporter Kelly Surina present. Rule 5(f) colloquy with Government. The next Pretrial Conference is scheduled for 3/9/2021 at 10:30 a.m. Time is excluded in the interests of justice from 12/9/2020 until 3/9/2021. All Defendants, except Defendant Oladokun, continued released. (See transcript). (Pretrial Conference set for 3/9/2021 at 10:30 AM before Judge Katherine Polk Failla) (ap) (Entered: 12/09/2020) |
| 12/14/2020 | 145 | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 11/6/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: George Malinowski, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/4/2021. Redacted Transcript Deadline set for 1/14/2021. Release of Transcript Restriction set for 3/15/2021. (McGuirk, Kelly) (Entered: 12/14/2020) |
| 12/14/2020 | 146 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 11/6/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/14/2020) |
| 12/28/2020 | 147 | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 12/3/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Michael McDaniel, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/19/2021. Redacted Transcript Deadline set for 1/28/2021. Release of Transcript Restriction set for 3/29/2021. (McGuirk, Kelly) (Entered: 12/28/2020) |
| 12/28/2020 | 148 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick |

| | | |
|---|---|---|
| | | Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 12/3/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/28/2020) |
| 12/30/2020 | [149](#) | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 12/8/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2021. Redacted Transcript Deadline set for 2/1/2021. Release of Transcript Restriction set for 3/30/2021. (McGuirk, Kelly) (Entered: 12/30/2020) |
| 12/30/2020 | [150](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 12/8/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/30/2020) |
| 01/04/2021 | [151](#) | TRANSCRIPT of Proceedings as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven re: Conference held on 12/9/20 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kelly Surina, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/25/2021. Redacted Transcript Deadline set for 2/4/2021. Release of Transcript Restriction set for 4/5/2021. (McGuirk, Kelly) (Entered: 01/04/2021) |
| 01/04/2021 | [152](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. Notice is hereby given that an official transcript of a Conference proceeding held on 12/9/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/04/2021) |
| 01/05/2021 | [153](#) | NOTICE OF ATTORNEY APPEARANCE: Dawn M Florio appearing for Oladayo Oladokun. Appearance Type: Retained. *Dawn M. Florio* (Florio, Dawn) (Entered: 01/05/2021) |

A-43

Case 21-2898, Document 29, 01/25/2022, 3203400, Page47 of 282

| 01/25/2021 | [154](#) | ORDER as to Kowan Poole: The Court is in receipt of a request from Lloyd Epstein, counsel for Defendant Kowan Poole, to withdraw from Mr. Poole's representation for personal reasons. That request is GRANTED. New counsel shall be appointed in this matter under the Criminal Justice Act. New counsel for Defendant, once assigned, is hereby ORDERED to advise the Government and the Court of the fact of his or her appointment. The Clerk of Court is directed to mail a copy of this Order to Defendant's address of record. Attorney Lloyd Epstein terminated in case as to Kowan Poole. (Signed by Judge Katherine Polk Failla on 1/25/2021) (Copy mailed to Defendant at address from Chambers) (ap) Modified on 1/25/2021 (ap). (Entered: 01/25/2021) |
| 02/16/2021 | [155](#) | ORDER as to Kowan Poole. The Court will hold a telephonic conference in this matter on February 17, 2021, at 12:00 p.m. To access the conference line, the parties shall call (888) 363-4749 and enter access code 5123533#. Please note, the conference line will not be available before 12:00 p.m. (Telephone Conference set for 2/17/2021 at 12:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 2/16/21) (jw) (Entered: 02/16/2021) |
| 02/17/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference as to Kowan Poole held on 2/17/2021. Defendant Kowan Poole (11) present with incoming CJA attorney Alain V. Massena. AUSAs Thomas Somerset Burnett and Alexander Nuo Li present. CJA attorney Alain V. Massena appointed and substituted as attorney of record for Defendant. Sentencing is scheduled for 4/28/2021 at 11:00 a.m. Defendant is to inform the Court if he prefers a remote proceeding in advance of the sentencing. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. Defendant continued released. (See transcript).(Sentencing set for 4/28/2021 at 11:00 AM before Judge Katherine Polk Failla) (Court Reporter Kristin Carannante) (ap) (Entered: 02/17/2021) |
| 02/17/2021 | [156](#) | CONSENT TO PROCEED BY VIDEOCONFERENCE as to (20-Cr-3-11) Kowan Poole. This proceeding was conducted by reliable videoconferencing technology. (Signed by Judge Katherine Polk Failla on 2/17/2021)(bw) (Entered: 02/17/2021) |
| 02/26/2021 | [159](#) | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated February 26, 2021 re: Adjournment of 3/9 Conference . Document filed by USA as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. (Li, Alexander) (Entered: 02/26/2021) |
| 03/01/2021 | [160](#) | MEMO ENDORSEMENT as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven....ENDORSEMENT...Application GRANTED. The pretrial conference scheduled for March 9, 2021, is ADJOURNED to May 11, 2021, at 3:00 p.m. It is ORDERED that time is excluded under the Speedy Trial Act through May 11, 2021. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and the defendants in a speedy trial because it will permit the parties to continue their review of discovery and to discuss any pretrial resolutions to the case (Pretrial Conference set for 5/11/2021 at 03:00 PM before Judge Katherine Polk Failla.) Time excluded from 3/1/21 until 5/11/21. (Signed by Judge Katherine Polk Failla on 3/1/21)(jw) (Entered: 03/01/2021) |
| 03/15/2021 | [162](#) | TRANSCRIPT of Proceedings as to Kowan Poole re: Conference held on 2/17/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. |

A-44

| | | |
|---|---|---|
| | | After that date it may be obtained through PACER. Redaction Request due 4/5/2021. Redacted Transcript Deadline set for 4/15/2021. Release of Transcript Restriction set for 6/14/2021. (McGuirk, Kelly) (Entered: 03/15/2021) |
| 03/15/2021 | [163](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Kowan Poole. Notice is hereby given that an official transcript of a Conference proceeding held on 2/17/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/15/2021) |
| 04/05/2021 | [165](#) | ENDORSED LETTER as to Daryl Bartley addressed to Judge Katherine Polk Failla from Megan W. Benett, dated 3/30/2021, re: Adjournment of sentencing. ENDORSEMENT: Application GRANTED. The sentencing in this matter is ADJOURNED to June 22, 2021, at 3:00 p.m. The sentencing will proceed by video. Access instructions will be provided in advance of the proceeding. The defense sentencing submission shall be filed on or before June 8, 2021, and the Government's submission shall be filed on or before June 14, 2021. SO ORDERED. (Sentencing set for 6/22/2021 at 03:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 4/5/2021) (lnl) (Entered: 04/05/2021) |
| 04/14/2021 | [167](#) | ORDER as to (20-Cr-3-6) Anthony Lee Nelson. The Court will hold a change of plea hearing in this matter on May 4, 2021, at 12:00 p.m. The proceeding will be conducted by video conference. Access instructions will be provided in advance. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/14/2021)(bw) (Entered: 04/14/2021) |
| 04/14/2021 | [168](#) | FIRST MOTION for Extension of Time *and request for adjournment of sentencing*. Document filed by Kowan Poole. (Massena, Alain) (Entered: 04/14/2021) |
| 04/15/2021 | [169](#) | ORDER as to Anthony Lee Nelson: The change of plea hearing scheduled in this matter for May 4, 2021, at 12:00 p.m. will now occur the same date at 10:00 a.m. (Change of Plea Hearing set for 5/4/2021 at 10:00 AM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 4/15/2021) (ap) (Entered: 04/15/2021) |
| 04/15/2021 | [170](#) | MEMO ENDORSEMENT as to Kowan Poole (11) on [168](#) FIRST MOTION for Extension of Time and request for adjournment of sentencing. ENDORSEMENT: The Court sends its condolences to Mr. Massena and his family on their loss. The sentencing in this matter is ADJOURNED to June 4, 2021, at 3:00 p.m. Defendant's sentencing submission shall be filed on or before May 21, 2021, and the Government's submission shall be filed on or before May 28, 2021. (Signed by Judge Katherine Polk Failla on 4/15/2021) (ap) (Entered: 04/15/2021) |
| 04/15/2021 | | Set/Reset Hearings as to Kowan Poole: Sentencing set for 6/4/2021 at 03:00 PM before Judge Katherine Polk Failla. (ap) (Entered: 04/15/2021) |
| 04/15/2021 | [171](#) | ORDER as to Henry Ogbuokiri: The Court will hold a change of plea hearing in this matter on May 19, 2021, at 2:00 p.m. The proceeding will be conducted by video conference. Access instructions will be provided in advance. (Change of Plea Hearing set for 5/19/2021 at 02:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 4/15/2021) (ap) (Entered: 04/15/2021) |
| 04/15/2021 | [172](#) | ORDER as to Paul Yaw Osei, Jr.: The Court will hold a change of plea hearing in this matter on May 7, 2021, at 4:00 p.m. The proceeding will be conducted by video conference. Access instructions will be provided in advance. (Change of Plea Hearing set for 5/7/2021 at 04:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 4/15/2021) (ap) (Entered: 04/15/2021) |

Case 21-2898, Document 29, 01/25/2023, 3993400, Page49 of 282

| 04/20/2021 | 173 | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated April 20, 2020 re: Amendment to Conditions of bond . Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 04/20/2021) |
| 04/20/2021 | 174 | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated April 20, 2021 re: Amendment to Conditions of bond . Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 04/20/2021) |
| 04/21/2021 | 175 | MEMO ENDORSED granting 174 LETTER MOTION Amendment to Conditions of bond as to Anthony Lee Nelson (6)... ENDORSEMENT: Application GRANTED. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/21/21) (jbo) (Entered: 04/21/2021) |
| 04/29/2021 | | NOTICE OF REMOTE PUBLIC ACCESS DIAL-IN as to Anthony Lee Nelson re: 169 Order: The conference scheduled for 5/4/21 at 10:00 a.m., will proceed via video conference, with public audio access as follows: Dial-in (917) 933-2166, Conference ID 673538794#. Instructions for video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 04/29/2021) |
| 04/30/2021 | 176 | ORDER as to Joshua Hicks: The Court will hold a change of plea hearing in this matter on May 6, 2021, at 2:30 p.m. The proceeding will be conducted by video conference. Access instructions will be provided in advance. (Change of Plea Hearing set for 5/6/2021 at 02:30 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 4/30/2021) (ap) (Entered: 05/03/2021) |
| 05/04/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Anthony Lee Nelson held on 5/4/2021. Defendant Anthony Lee Nelson present with attorney Donna R. Newman. AUSA Alexander Nuo Li present. NYPD Detective Daniel Alessandrino present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 9/8/2021 at 3:00 p.m. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. PSR ordered. Defendant continued released, bail conditions still apply. (See transcript). (Sentencing set for 9/8/2021 at 03:00 PM before Judge Katherine Polk Failla) (Court Reporter Rose Prater) (ap) (Entered: 05/04/2021) |
| 05/04/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: **Plea entered by Anthony Lee Nelson (6) Guilty as to Count 1.** (ap) (Entered: 05/04/2021) |
| 05/04/2021 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Anthony Lee Nelson. (Signed by Judge Katherine Polk Failla on 5/4/2021) (ap) (Entered: 05/04/2021) |
| 05/04/2021 | 177 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING. (Signed by Judge Katherine Polk Failla on 5/4/2021) (ap) (Entered: 05/04/2021) |
| 05/04/2021 | 178 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Anthony Lee Nelson. (Signed by Judge Katherine Polk Failla on 5/4/2021) (See ORDER set forth. Forwarded three certified copies of this Order to AUSA Alexander Wilson via interoffice mail) (ap) Modified on 5/4/2021 (ap). (Entered: 05/04/2021) |
| 05/04/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Joshua Hicks re: 176 Order: The conference scheduled for 5/6/21 at 2:30 p.m., will proceed via video conference, with public audio access as follows: Dial-in (917) 933-2166, Conference ID 109 460 705#. Instructions for video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 05/04/2021) |
| 05/05/2021 | | NOTICE OF REMOTE PUBLIC ACCESS DIAL-IN as to Paul Yaw Osei, Jr. re: 172 |

A-46

| | | |
|---|---|---|
| | | Order: The conference scheduled for 5/7/21 at 4:00 p.m., will proceed via video conference, with public audio access as follows: Dial-in (917) 933-2166, Conference ID 712 163 0#. Instructions for video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 05/05/2021) |
| 05/06/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Joshua Hicks held on 5/6/2021. Defendant Joshua Hicks present with attorney John P. Demaio. AUSA Thomas Somerset Burnett present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is deferred pending the outcome of Defendant's Youth Adult Program application. If Mr. Hicks is not accepted into the program, the parties shall inform the Court promptly, so that the Court can order the PSR and set a sentencing date. Defendant continued released, bail conditions still apply. (See transcript). (Court Reporter Andrew Walker) (ap) (Entered: 05/07/2021) |
| 05/06/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: **Plea entered by Joshua Hicks (5) Guilty as to Count 1.** (ap) (Entered: 05/07/2021) |
| 05/07/2021 | 179 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Joshua Hicks. (Signed by Judge Katherine Polk Failla on 5/6/2021) (See ORDER set forth. Forwarded three certified copies of this Order to AUSA Alexander Wilson via interoffice mail) (ap) Modified on 5/7/2021 (ap). (Main Document 179 replaced on 5/27/2021) (ap). (Entered: 05/07/2021) |
| 05/07/2021 | 180 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Joshua Hicks. (Signed by Judge Katherine Polk Failla on 5/6/2021) (ap) (Entered: 05/07/2021) |
| 05/07/2021 | 181 | ORDER as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Daryl Bartley, Andrew Heaven: The pretrial conference in this matter scheduled for May 11, 2021, at 3:00 p.m. is ADJOURNED to June 1, 2021, at 12:00 p.m. The conference will proceed remotely. Access instructions will be provided in advance of the conference. (Pretrial Conference set for 6/1/2021 at 12:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 5/7/2021) (ap) (Entered: 05/07/2021) |
| 05/07/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Paul Yaw Osei, Jr. held on 5/7/2021. Defendant Paul Yaw Osei, Jr. present with attorneys Dorea Helene Silerman and Bradley Lamar Henry. AUSA Alexander Nuo Li present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 9/29/2021 at 3:00 p.m. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. PSR ordered. Defendant continued released, bail conditions still apply. (See transcript). (Sentencing set for 9/29/2021 at 03:00 PM before Judge Katherine Polk Failla) (Court Reporter Steven Greenblum) (ap) Modified on 5/19/2021 (tn). (Entered: 05/17/2021) |
| 05/07/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: **Plea entered by Paul Yaw Osei, Jr. (10) Guilty as to Count 1.** (ap) (Entered: 05/17/2021) |
| 05/07/2021 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Paul Yaw Osei, Jr.. (Signed by Judge Katherine Polk Failla on 5/7/2021) (ap) (Entered: 05/17/2021) |
| 05/07/2021 | | Set/Reset Deadlines/Hearings as to Paul Yaw Osei, Jr.: Sentencing set for 9/29/2021 at 03:00 PM before Judge Katherine Polk Failla.. (tn) (Entered: 05/19/2021) |
| 05/10/2021 | 182 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to |

| | | |
|---|---|---|
| | | Paul Yaw Osei, Jr. (Signed by Judge Katherine Polk Failla on 5/7/2021) (See ORDER as set forth) (Three certified copies of this ORDER were forwarded to AUSA Alexander Wilson on 3/10/2021 by the Clerk's Office) (lnl) (Entered: 05/10/2021) |
| 05/10/2021 | 183 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Paul Yaw Osei, Jr. (Signed by Judge Katherine Polk Failla on 5/7/2021) (lnl) (Entered: 05/10/2021) |
| 05/11/2021 | 184 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated May 11, 2021 re: Exclusion of Speedy Trial Time . Document filed by USA as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. (Li, Alexander) (Entered: 05/11/2021) |
| 05/11/2021 | 185 | MEMO ENDORSEMENT as to Oladayo Oladokun, Derrick Banks, Jamar Skeete, Andrew Heaven on 184 CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated May 11, 2021 re: Exclusion of Speedy Trial Time. ENDORSEMENT: It is ORDERED that time is excluded under the Speedy Trial Act through June 1, 2021. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and the defendants in a speedy trial because it will allow for Mr. Oladokun to be present and for the parties to continue their review of the discovery and to discuss any pre-trial resolutions to the case. SO ORDERED. (Time excluded from 5/11/2021 until 6/1/2021) (Signed by Judge Katherine Polk Failla on 5/11/2021) (lnl) (Entered: 05/12/2021) |
| 05/18/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Henry Ogbuokiri re: 171 Order: The conference scheduled for 5/19/21 at 2:00 p.m., will proceed via video conference, with public audio access as follows: Dial-in (917) 933-2166, Conference ID 176 944 268#. Instructions for video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 05/18/2021) |
| 05/19/2021 | | Terminate Deadlines and Hearings as to Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Ibrahima Doukoure, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay:Pretrial Conference. (tn) (Entered: 05/19/2021) |
| 05/19/2021 | 186 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Henry Ogbuokiri re: Entry of Plea of Guilty (Signed by Judge Katherine Polk Failla on 5/19/21) (jw) (Entered: 05/20/2021) |
| 05/19/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Henry Ogbuokiri held on 5/19/2021. Defendant Henry Ogbuokiri present with attorney Mehdi Essmidi. AUSA Marguerite Colson present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 9/30/2021 at 3:00 p.m. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. PSR ordered. Defendant continued released, bail conditions still apply. (See transcript). (Court Reporter Kristin Carannante) (ap) (Entered: 05/20/2021) |
| 05/19/2021 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Henry Ogbuokiri. (Signed by Judge Katherine Polk Failla on 5/19/2021) (ap) (Entered: 05/20/2021) |
| 05/19/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: **Plea entered by Henry Ogbuokiri (4) Guilty as to Count 1.** (ap) (Entered: 05/20/2021) |
| 05/21/2021 | 187 | FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Alain V. Massena dated May 21, 2021 re: Request to adjourn . Document filed by Kowan Poole. |

| | | |
|---|---|---|
| | | (Massena, Alain) (Entered: 05/21/2021) |
| 05/21/2021 | 188 | MEMO ENDORSEMENT re: 187 FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Alain V. Massena dated May 21, 2021 re: Request to adjourn...ENDORSEMENT...Application GRANTED. Sentencing is ADJOURNED until August 25, 2021, at 3:00 p.m. The defense sentencing submission shall be filed on or before August 11, 2021, and the Government's submission shall be filed on or before August 18, 2021. (Signed by Judge Katherine Polk Failla on 5/21/21) (jw) (Entered: 05/21/2021) |
| 05/21/2021 | | Set/Reset Deadlines/Hearings as to Kowan Poole:Defense Replies due by 8/11/2021. Government Responses due by 8/18/2021; Sentencing set for 8/25/2021 at 03:00 PM before Judge Katherine Polk Failla (jw) (Entered: 05/21/2021) |
| 05/24/2021 | 189 | FIRST MOTION for Release from Custody *Bail Motion*. Document filed by Oladayo Oladokun. (Attachments: # 1 Exhibit Medical Records)(Florio, Dawn) (Entered: 05/24/2021) |
| 05/28/2021 | 190 | LETTER RESPONSE in Opposition by USA as to Oladayo Oladokun addressed to Judge Katherine Polk Failla from USA dated May 28, 2021 re: 189 FIRST MOTION for Release from Custody *Bail Motion*.. (Attachments: # 1 Exhibit A - Bail Hearing Transcript, # 2 Exhibit B - Defendant's Vaccination Declination, # 3 Exhibit C - Defendant's Medical Records)(Li, Alexander) (Entered: 05/28/2021) |
| 05/28/2021 | | NOTICE OF CONFERENCE DIAL-IN as to Oladayo Oladokun, Derrick Banks, Jamar Skeete, Andrew Heaven re: 181 Order: The conference scheduled for 6/1/2021 at 12:00 p.m. will be held telephonically. At the scheduled time, the parties are to call (888) 363-4749 and enter access code 5123533. Please note that the conference will not be available until 12:00 p.m. ***No PDF is attached to this entry. (tn) (Entered: 05/28/2021) |
| 06/01/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Pretrial Conference as to Oladayo Oladokun, Derrick Banks, Jamar Skeete, Andrew Heaven held on 6/1/2021. Defendant Oladayo Oladokun (1) present with attorneys Dawn M. Florio and Declan Murray; Defendant Derrick Banks (7) present with attorney Joshua Dratel; Defendant Jamar Skeete (9) present with attorney Mitchell C. Elman; Defendant Andrew Heaven (15) present with attorney Gary Becker. AUSA Alexander Nuo Li present. Court reporter Martha Martin present. Attorney Dawn Florio is substituted as counsel, and Mr. Kluger is terminated as counsel, for Mr. Oladokun. Defendant(s)' motion(s) due by 7/14/2021; Opposition due by 8/6/2021; and Reply due by 8/16/2021. A motion hearing is set for 8/31/2021 at 10:00 a.m. Defendant Oladokun's bail application is continued to 6/2/2021 at 12:00 p.m. At that time, the parties shall call (888) 363-4749 and enter access code 5123533. Time is excluded in the interests of justice from 6/1/2021 until 8/31/2021. All Defendants, except Defendant Oladokun, continued released. (See transcript). (Motions due by 8/31/2021., Replies due by 8/16/2021., Opposition due by 8/6/2021, Motion Hearing set for 8/31/2021 at 10:00 AM before Judge Katherine Polk Failla.) (jw) (Entered: 06/02/2021) |
| 06/02/2021 | 191 | TRANSCRIPT of Proceedings as to Paul Yaw Osei, Jr. re: Conference held on 5/7/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/23/2021. Redacted Transcript Deadline set for 7/6/2021. Release of Transcript Restriction set for 8/31/2021. (McGuirk, Kelly) (Entered: 06/02/2021) |
| 06/02/2021 | 192 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Paul Yaw Osei, Jr.. Notice is hereby given that an official transcript of a Conference proceeding held on 5/7/21 has |

| | | |
|---|---|---|
| | | been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/02/2021) |
| 06/02/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Status Conference as to Oladayo Oladokun held on 6/2/2021. Attorneys Dawn M. Florio and Declan Murray present. Defendant Oladayo Oladokun's presence waived. AUSA Alexander Nuo Li present. Court reporter Martha Martin present. Defendant's bail application is GRANTED. Defendant Oladokun continued remanded until bail conditions have been met. (See transcript). (jw) (Entered: 06/02/2021) |
| 06/02/2021 | 193 | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Hearing as to Oladayo Oladokun held on 6/2/2021. AUSA Alexander Li for the Government. Dawn Florio for the Defendant. BAIL DISPOSITION: $600K PRB; 5 FRP; SECURED BY CASH/PROPERTY: Residence of Abeditan Oladokun; TRAVEL RESTRICTED TO SDNY/EDNY/D. MD. and places in between to travel to/from Court, counsel meetings; SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS); PRETRIAL SUPERVISION: AS DIRECTED BY PRETRIAL SERVICES. DRUG TESTING/TREATMT AS DIRECTED BY PTS; HOME INCARCERATION; GPS; DEF. NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEF. TO BE DETAINED UNTIL ALL CONDITIONS ARE MET. Deft to reside with mother at 9510 Underwood St, Lanham, MD 20706. Deft may self-install location monitoring equipment at the direction of PTS. Deft may only possess a computer or device that can access the internet as required by PTS to facilitate its monitoring of him. To the extent that Deft possesses a computer or device, PTS is authorized to monitor that device, including via installation of monitoring software. Deft must disclose computer restrictions to anyone residing at the residence; PTS is authorized to seek their cooperation in password protecting their computers/devices along with obtaining signed agreements regarding same. Deft shall not possess the Personal Identifying Information of another person w/o PTS authorization. Deft shall not contact co-defts outside the presence of counsel. Deft shall not open new lines of credit or bank accounts w/o PTS authorization. (ap) (Entered: 06/02/2021) |
| 06/07/2021 | 194 | ENDORSED LETTER as to Daryl Bartley addressed to Judge Katherine Polk Failla from Megan W. Benett dated 6/7/21 re: Reschedule Sentencing....ENDORSEMENT: Application GRANTED. Mr. Bartley's sentencing is ADJOURNED to July 22, 2021 at 3:00pm (Sentencing set for 7/22/2021 at 03:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/7/2021)(jw) (Entered: 06/08/2021) |
| 06/08/2021 | 195 | TRANSCRIPT of Proceedings as to Anthony Lee Nelson re: Conference held on 5/4/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Rose Prater, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/29/2021. Redacted Transcript Deadline set for 7/9/2021. Release of Transcript Restriction set for 9/7/2021. (McGuirk, Kelly) (Entered: 06/08/2021) |
| 06/08/2021 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Anthony Lee Nelson. Notice is hereby given that an official transcript of a Conference proceeding held on 5/4/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/08/2021) |

| 06/11/2021 | 197 | TRANSCRIPT of Proceedings as to Henry Ogbuokiri re: Conference held on 5/19/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/2/2021. Redacted Transcript Deadline set for 7/12/2021. Release of Transcript Restriction set for 9/9/2021. (McGuirk, Kelly) (Entered: 06/11/2021) |
|---|---|---|
| 06/11/2021 | 198 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Henry Ogbuokiri. Notice is hereby given that an official transcript of a Conference proceeding held on 5/19/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/11/2021) |
| 06/15/2021 | 199 | NOLLE PROSEQUI ENTERED as to Andrew Heaven. Andrew Heaven (15) Count 1,2. (Signed by Judge Katherine Polk Failla on 6/15/2021) (ap) (Entered: 06/15/2021) |
| 06/17/2021 | 200 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 06/21/2021) |
| 06/23/2021 | 201 | TRANSCRIPT of Proceedings as to Joshua Hicks re: Conference held on 5/6/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/14/2021. Redacted Transcript Deadline set for 7/26/2021. Release of Transcript Restriction set for 9/21/2021. (McGuirk, Kelly) (Entered: 06/23/2021) |
| 06/23/2021 | 202 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Joshua Hicks. Notice is hereby given that an official transcript of a Conference proceeding held on 5/6/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/23/2021) |
| 07/08/2021 | 203 | ORDER as to Daryl Bartley: The sentencing for Mr. Bartley, currently scheduled for July 22, 2021, is ADJOURNED to August 18, 2021, at 3:00 p.m. The sentencing will proceed by video conference. Access instructions will be provided to the parties in advance of the proceeding. (Sentencing set for 8/18/2021 at 03:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 7/8/2021) (ap) (Entered: 07/08/2021) |
| 07/09/2021 | 204 | CONSENT TO TRANSFER JURISDICTION (Rule 20) from the U.S.D.C. Southern District of New York to the United States District Court - District of Columbia. Counts closed as to Jamar Skeete (9) Count 1,2. (bw) (Entered: 07/09/2021) |
| 07/12/2021 | 205 | FIRST MEMORANDUM OF LAW by Oladayo Oladokun *Dawn M. Florio*. (Attachments: # 1 Exhibit Surgery Letter, # 2 Exhibit Trial Letter)(Florio, Dawn) (Entered: 07/12/2021) |
| 07/12/2021 | 206 | MEMO ENDORSEMENT as to Oladayo Oladokun, Derrick Banks re: Memorandum in Support of Motion Under Rule 45(b)(1)(A)...ENDORSEMENT...Application GRANTED. The deadline for Defendants Oladokun and Banks to file their pretrial motions is extended to July 28, 2021; the Government's responses are due August 20, 2021; and Defendants' replies are due August 30, 2021. The motion hearing scheduled for August 31, 2021, is ADJOURNED to September 9, 2021, at 11:00 a.m. At that time, the |

| | | |
|---|---|---|
| | | parties shall call (888) 363-4749 and enter access code 5123533. Time under the Speedy Trial Act is excluded through September 9, 2021, pursuant to 18 U.S.C. § 3161(h)(1)(D) (Motions due by 7/28/2021., Defendant Replies due by 8/30/2021., Government Responses due by 8/20/2021, Motion Hearing set for 9/9/2021 at 11:00 AM before Judge Katherine Polk Failla.) Time excluded from 7/7/21 until 9/9/21. (Signed by Judge Katherine Polk Failla on 7/12/21)(jw) (Entered: 07/13/2021) |
| 07/15/2021 | 207 | ORDER as to Henry Ogbuokiri. The sentencing for Mr. Ogbuokiri currently scheduled for September 30, 2021, is ADJOURNED to November 17, 2021, at 3:30 p.m. Defendant's sentencing submission shall be filed on or before November 3, 2021, and the Governments submission shall be filed on or before November 10, 2021. (Defendant submission due by 11/3/2021., Government submission due by 11/10/2021, Sentencing set for 11/17/2021 at 03:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 7/15/21)(jw) (Entered: 07/16/2021) |
| 07/15/2021 | 218 | Appearance Bond Entered as to Oladayo Oladokun: $600,000 Personal Recognizance Bond; To be cosigned by five financially responsible persons; Secured by residence; Additional conditions..... (jbo) (Main Document 218 replaced on 8/17/2021) (jbo). (Entered: 08/17/2021) |
| 07/22/2021 | 208 | ORDER as to Joshua Hicks: Mr. Hicks's sentencing will proceed on November 30, 2021, at 3:30 p.m. in Courtroom 618, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The defense sentencing submission shall be filed on or before November 16, 2021, and the Government's submission shall be filed on or before November 23, 2021. (Sentencing set for 11/30/2021 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 7/22/2021) (ap) (Entered: 07/22/2021) |
| 07/22/2021 | 209 | ENDORSED LETTER as to Joshua Hicks addressed to Judge Katherine Polk Failla, from John DeMaio dated 7/22/2021 re: Defense counsel writes to request permission to submit a reply. ENDORSEMENT: The Court is in receipt of the above request from defense counsel. A written replay is not permitted, but counsel may present oral argument during the proceeding on November 30, 2021. (Signed by Judge Katherine Polk Failla on 7/22/2021) (ap) (Entered: 07/22/2021) |
| 07/28/2021 | 211 | LETTER by USA as to Andrew Heaven addressed to Judge Katherine Polk Failla from Thomas Burnett dated July 28, 2021 re: Nolle Prosequi as to Andrew Heaven Document filed by USA. (Burnett, Thomas) (Entered: 07/28/2021) |
| 07/28/2021 | 212 | FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Dawn M. Florio dated 7/28/2021 re: Omnibus. Dismissal, Suppression, Bill of Particulars . Document filed by Oladayo Oladokun. (Attachments: # 1 Affidavit Statement of OroboroOladokun)(Murray, Declan) (Entered: 07/28/2021) |
| 08/05/2021 | 214 | ENDORSED LETTER as to (20-Cr-3-13) Daryl Bartley addressed to Judge Katherine Polk Failla from Attorney Megan W. Benett dated August 4, 2021 re: For the foregoing reasons, I request that this Court extend the time by which defense sentencing materials are due by three business days until Monday August 9, 2021 and the time by which government sentencing materials are due by two business days until Friday August 13, 2021. ENDORSEMENT: Application GRANTED. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/5/2021)(bw) (Entered: 08/05/2021) |
| 08/09/2021 | 215 | ENDORSED LETTER as to Daryl Bartley addressed to Judge Katherine Polk Failla, from Megan W. Benett dated 8/8/2021 re: Defense counsel writes to request adjournment of sentencing. ENDORSEMENT: Application GRANTED. The sentencing scheduled for August 18, 2021, is ADJOURNED to November 5, 2021, at 3:30 p.m. (Sentencing set for |

A-52

SDNY CM/ECF NextGen Version 1.6

| | | |
|---|---|---|
| | | 11/5/2021 at 03:30 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 8/9/2021) (ap) (Entered: 08/09/2021) |
| 08/09/2021 | [216](#) | SECOND LETTER MOTION addressed to Judge Katherine Polk Failla from Alain V. Massena dated August 9, 2021 re: Request to adjourn . Document filed by Kowan Poole. (Massena, Alain) (Entered: 08/09/2021) |
| 08/10/2021 | [217](#) | ENDORSED LETTER as to Kowan Poole addressed to Judge Katherine Polk Failla from Alain V. Massena, Esq. dated 2021 re: submitted to respectfully request that the sentencing hearing in this matter, currently scheduled for August 25, 2021, be adjourned until November 12, 2021, at 3:30 p.m. ENDORSEMENT: Application GRANTED. SO ORDERED. ( Sentencing set for 11/12/2021 at 03:30 PM before Judge Katherine Polk Failla. ) (Signed by Judge Katherine Polk Failla on 8/10/2021)(bw) (Entered: 08/10/2021) |
| 08/20/2021 | [219](#) | MEMORANDUM in Opposition by USA as to Oladayo Oladokun re [212](#) FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Dawn M. Florio dated 7/28/2021 re: Omnibus. Dismissal, Suppression, Bill of Particulars .. (Attachments: # [1](#) Exhibit Exhibit A, # [2](#) Exhibit Exhibit B, # [3](#) Exhibit Exhibit C, # [4](#) Exhibit Exhibit D) (Burnett, Thomas) (Entered: 08/20/2021) |
| 08/24/2021 | [220](#) | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated August 24, 2021 re: Adjournment of Sentencing . Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 08/24/2021) |
| 08/24/2021 | [221](#) | ORDER granting [220](#) LETTER MOTION Adjournment of Sentencing as to Anthony Lee Nelson (6)... ENDORSEMENT: Application GRANTED. Mr. Nelson's sentencing is ADJOURNED to October 22, 2021, at 3:30 p.m. The defense sentencing submission shall be filed on or before October 8, 2021, and the Government's submission shall be filed on or before October 15, 2021. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/24/21) (jbo) (Entered: 08/24/2021) |
| 08/24/2021 | | Set/Reset Hearings as to Anthony Lee Nelson: Sentencing set for 10/22/2021 at 03:30 PM before Judge Katherine Polk Failla. (jbo) (Entered: 08/24/2021) |
| 08/25/2021 | [222](#) | ORDER as to Derrick Banks. The Court will hold a change of plea hearing in this matter on September 14, 2021, at 9:00 a.m. The proceeding will be conducted via video conference. Access instructions will be provided in advance. SO ORDERED. (Change of Plea Hearing set for 9/14/2021 at 09:00 AM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/25/21)(jbo) (Entered: 08/26/2021) |
| 08/30/2021 | [223](#) | LETTER RESPONSE to Motion by Oladayo Oladokun addressed to Judge Katherine Polk Failla from DAWN M. FLORIO dated 8/30/2021 re: [212](#) FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Dawn M. Florio dated 7/28/2021 re: Omnibus. Dismissal, Suppression, Bill of Particulars .. *Dawn M. Florio* (Florio, Dawn) (Entered: 08/30/2021) |
| 09/08/2021 | | NOTICE ADJOURNING HEARING ON MOTION [212](#) FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Dawn M. Florio dated 7/28/2021 re: Omnibus. Dismissal, Suppression, Bill of Particulars in case as to Oladayo Oladokun: The conference scheduled for 9/9/2021 is **ADJOURNED to 9/23/2021 at 11:30 a.m.** , and will be held via video conference with public audio access at (917) 933-2166, Conference ID 817 404 295#. Instructions to video participants will be sent separately in advance of the conference. (Motion Hearing set for 9/23/2021 at 11:30 AM before Judge Katherine Polk Failla.) ***No PDF is attached to this entry. (tn) (Entered: 09/08/2021) |
| 09/08/2021 | | Terminate Deadlines and Hearings as to Oladayo Oladokun, Derrick Banks. (tn) (Entered: 09/08/2021) |

Case 21-2898, Document 29, 01/25/2022, 3293300, Page57 of 282

| 09/08/2021 | 224 | LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated September 8, 2021 re: Exclusion of Speedy Trial Time . Document filed by USA as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Banks, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven. (Li, Alexander) (Entered: 09/08/2021) |
|---|---|---|
| 09/09/2021 | 225 | MEMO ENDORSEMENT as to Oladayo Oladokun granting 224 LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated September 8, 2021 re: Exclusion of Speedy Trial Time. ENDORSEMENT: Application GRANTED. The Court excludes time under the Speedy Trial Act from September 9, 2021, to September 23, 2021, finding that such exclusion is in the interests of justice in order to permit the Court to consider the defendant's motion. The Clerk of Court is directed to terminate the motion at docket entry 224. (Signed by Judge Katherine Polk Failla on 9/9/2021) (lnl) (Entered: 09/09/2021) |
| 09/13/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Derrick Banks re: 222 Order: The conference scheduled for 9/14/2021 at 9:00 a.m., will be held via video conference with public audio access at (917) 933-2166, Conference ID 753 608 218#. Instructions to video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 09/13/2021) |
| 09/14/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Change of Plea Hearing as to Derrick Banks held on 9/14/2021. Defendant Derrick Banks present with attorney Joshua Lewis Dratel. AUSAs Thomas Somerset Burnett and Alexander Nuo Li present. Court reporter Sam Mauro present. Defendant withdraws previously entered plea and pleads GUILTY to Count One of Indictment 20cr3 (KPF). Sentencing is scheduled for 1/19/2022 at 3:30 p.m. Defendant's submission due two weeks in advance of sentencing; Government's submission due one week in advance of sentencing. PSR ordered. Defendant continued released, bail conditions still apply. (See transcript) (Sentencing set for 1/19/2022 at 03:30 PM before Judge Katherine Polk Failla.) (C.R) (Entered: 09/14/2021) |
| 09/14/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Plea entered by Derrick Banks (7) Guilty as to Count 1. (C.R) (Entered: 09/14/2021) |
| 09/14/2021 | | Change of Not Guilty Plea to Guilty Plea as to Derrick Banks (7) Count 1. (C.R) (Entered: 09/14/2021) |
| 09/14/2021 | | Order of Referral to Probation for Presentence Investigation and Report as to Derrick Banks. (Signed by Judge Katherine Polk Failla on 9/14/21)(C.R) (Entered: 09/14/2021) |
| 09/15/2021 | | NOTICE ADJOURNING HEARING ON MOTION 212 FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from Dawn M. Florio dated 7/28/2021 re: Omnibus. Dismissal, Suppression, Bill of Particulars in case as to Oladayo Oladokun: The conference scheduled for 9/23/2021 at 11:30 a.m. is **ADJOURNED to 1:00 p.m. that same day**, and will be held via video conference with public audio access at (917) 933-2166, Conference ID 817 404 295#. Instructions to video participants will be sent separately in advance of the conference. (Motion Hearing set for 9/23/2021 at 01:00 PM before Judge Katherine Polk Failla. )(tn) (Entered: 09/15/2021) |
| 09/15/2021 | 226 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Dorea Silverman dated September 15, 2021 re: 60-day adjournment of sentencing . Document filed by Paul Yaw Osei, Jr.. (Silverman, Dorea) (Entered: 09/15/2021) |
| 09/17/2021 | 227 | MEMO ENDORSEMENT 226 CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Dorea Silverman dated September 15, 2021 re: 60-day |

A-54

Case 21-2898, Document 29, 01/25/2022, 3243300, Page58 of 282

| | | |
|---|---|---|
| | | adjournment of sentencing...ENDORSEMENT...Application GRANTED. The Court sends its condolences. The September 29, 2021 sentencing in this matter is adjourned to December 15, 2021 at 3:30pm. The Clerk of Court is directed to terminate the motion at docket entry 226. (Signed by Judge Katherine Polk Failla on 9/17/21) (jw) (Entered: 09/17/2021) |
| 09/17/2021 | | Set/Reset Deadlines/Hearings as to Paul Yaw Osei, Jr. Sentencing set for 12/15/2021 at 03:30 PM before Judge Katherine Polk Failla (jw) (Entered: 09/17/2021) |
| 09/23/2021 | 228 | NOTICE OF ATTORNEY APPEARANCE: Declan J. Murray appearing for Oladayo Oladokun. Appearance Type: Retained. *Co-Counsel* (Murray, Declan) (Entered: 09/23/2021) |
| 09/23/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Motion Hearing as to Oladayo Oladokun held on 9/23/2021. Defendant Oladayo Oladokun (1) present with attorneys Dawn M. Florio and Declan Murray; AUSAs Alexander Nuo Li and Thomas Burnett present. The Court reserves decision on Defendant's motion. (See transcript). (Court Reporter Martha Martin) (ap) (Entered: 09/27/2021) |
| 09/24/2021 | 229 | LETTER by USA as to Oladayo Oladokun addressed to Judge Katherine Polk Failla from USA dated September 24, 2021 re: Court's Questions at Oral Argument on Pretrial Motions Document filed by USA. (Li, Alexander) (Entered: 09/24/2021) |
| 09/29/2021 | 230 | ORDER as to Oladayo Oladokun. On September 23, 2021, the Court held a motion hearing addressing Defendant Oladayo Oladokun's omnibus motion to dismiss the indictment and for other relief in this case. (See Minute Entry for September 23, 2021; see also Dkt. #212). The parties are hereby ORDERED to appear on October 13, 2021, at 10:00 a.m. for a telephonic conference at which the Court will issue an Order resolving Mr. Oladokun's motion. At the scheduled date and time, the parties shall call (888) 363-4749 and enter access code 5123533. Please note that the conference will not be available prior to 10:00 a.m. SO ORDERED. ( Telephone Conference set for 10/13/2021 at 10:00 AM before Judge Katherine Polk Failla. ) (Signed by Judge Katherine Polk Failla on 9/29/2021)(bw) (Entered: 09/29/2021) |
| 09/30/2021 | | SEALED ORAL ORDER as to Sealed Defendant 1. (Signed by Magistrate Judge Gabriel W. Gorenstein on 9/30/2021)(dif) [1:21-mj-09442-UA] (Entered: 10/07/2021) |
| 09/30/2021 | 1 | COMPLAINT as to Muhammed Bashorun (1). In Violation of 18 U.S.C. 1349 (Signed by Magistrate Judge Gabriel W. Gorenstein) (dif) [1:21-mj-09442-UA] (Entered: 10/07/2021) |
| 10/01/2021 | | Arrest of Muhammed Bashorun in the United States District Court - Eastern District of Virginia. (dif) [1:21-mj-09442-UA] (Entered: 10/07/2021) |
| 10/01/2021 | 3 | Rule 5(c)(3) Documents Received as to Muhammed Bashorun from the United States District Court - Eastern District of Virginia. (dif) [1:21-mj-09442-UA] (Entered: 10/07/2021) |
| 10/05/2021 | 231 | MEMORANDUM as to Daryl Bartley. We are requesting direction from the Court: My Chambers will inform all parties concerned that I will conduct a Bail Review Hearing in Courtroom #618 on October 13, 2021 at 11:00 am (Bail Review Hearing set for 10/13/2021 at 11:00 AM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 10/5/21)(jw) (Entered: 10/05/2021) |
| 10/05/2021 | 232 | FIRST MOTION to Postpone Sentencing . Document filed by Henry Ogbuokiri. (Essmidi, Mehdi) (Entered: 10/05/2021) |
| 10/06/2021 | 233 | MEMO ENDORSEMENT 232 Motion to Postpone Sentencing as to Henry Ogbuokiri...ENDORSEMENT...Application GRANTED. The assigned Pretrial Services |

A-55

| | | Officer shall submit the draft Presentence Investigation Report ("PSR") on or before November 17, 2021. Upon submission of the draft PSR, the parties shall have 14 days to file any objections to the Report to the Pretrial Services Officer. The sentencing in this matter is hereby ADJOURNED to January 18, 2022, at 3:00 p.m. The Clerk of Court is directed to terminate the motion at docket entry 232. (Signed by Judge Katherine Polk Failla on 10/6/21) (jw) (Entered: 10/06/2021) |
|---|---|---|
| 10/06/2021 | | Set/Reset Deadlines/Hearings as to Henry Ogbuokiri: Sentencing set for 1/18/2022 at 03:00 PM before Judge Katherine Polk Failla (jw) (Entered: 10/06/2021) |
| 10/07/2021 | 234 | (S4) SUPERSEDING INDICTMENT FILED as to Oladayo Oladokun (1) count(s) 1s, 2s. (jm) (Entered: 10/07/2021) |
| 10/07/2021 | 235 | INDICTMENT FILED as to Muhammed Bashorun (16) count(s) 1, 2, 3. (jm) (Entered: 10/07/2021) |
| 10/07/2021 | 236 | SENTENCING SUBMISSION by Anthony Lee Nelson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Newman, Donna) (Entered: 10/07/2021) |
| 10/08/2021 | 237 | ORDER as to Oladayo Oladokun. By Order dated September 29, 2021, the Court directed the parties to appear on October 13, 2021, for a telephonic conference at which the Court will resolve Defendant Oladayo Oladokun's omnibus motion. (Dkt. #230). On October 7, 2021, the Government filed a superseding indictment as to Mr. Oladokun. (Dkt. #234). The Court will schedule Mr. Oladokuns arraignment on the superseding indictment for the same date and time as its decision on his motion. Accordingly, the parties are hereby ORDERED to appear on October 13, 2021, at 10:00 a.m. for Mr. Oladokun's arraignment and for the Courts Order resolving Mr. Oladokun's motion. The Court hereby CONVERTS the telephonic conference to a video conference. Instructions for both public audio access and video participants will be sent separately in advance of theconference. (Signed by Judge Katherine Polk Failla on 10/8/21)(jw) (Entered: 10/08/2021) |
| 10/08/2021 | 238 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 10/08/2021) |
| 10/08/2021 | 239 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 10/08/2021) |
| 10/08/2021 | 240 | FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from DAWN FLORIO dated 10/8/21 re: Bail Modifications *Dawn M. Florio*. Document filed by Oladayo Oladokun. (Florio, Dawn) (Entered: 10/08/2021) |
| 10/08/2021 | 244 | Arrest Warrant Returned Executed on 9/30/2021 as to Muhammed Bashorun (16). (bw) (Entered: 10/12/2021) |
| 10/11/2021 | 241 | LETTER MOTION addressed to Judge Katherine Polk Failla from Megan W. Benett dated 10/11/2021 re: permission to appear remotely on 10/13/2021 . Document filed by Daryl Bartley. (Benett, Megan) (Entered: 10/11/2021) |
| 10/12/2021 | 242 | MEMO ENDORSEMENT as to Oladayo Oladokun (1) granting 240 FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from DAWN FLORIO dated 10/8/21 re: Bail Modifications Dawn M. Florio. ENDORSEMENT: Application GRANTED. Mr. Oladokun's bail conditions are hereby MODIFIED to permit him to travel to and from and use a gym for one 90-minute period each day. Mr. Oladokun shall select the timing of his visits to the gym in consultation with his assigned Pretrial Services Officer, and shall provide upon request any documentation related to his visits to his assigned Officer. (Signed by Judge Katherine Polk Failla on 10/12/2021) (ap) (Entered: 10/12/2021) |
| 10/12/2021 | 243 | MEMO ENDORSEMENT as to Daryl Bartley (13) granting 241 LETTER MOTION addressed to Judge Katherine Polk Failla from Megan W. Benett dated 10/11/2021 re: permission to appear remotely on 10/13/2021. ENDORSEMENT: Application GRANTED. The in-person hearing scheduled for October 13, 2021, at 11:00 a.m. is |

A-56

| | | |
|---|---|---|
| | | hereby CONVERTED to a video conference. Public dial-in information and instructions for video participants will be sent separately in advance of the conference. The Clerk of Court is directed to terminate the motion at docket entry 241. (Signed by Judge Katherine Polk Failla on 10/12/2021) (ap) (Entered: 10/12/2021) |
| 10/12/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Daryl Bartley re: 243 Order: The conference scheduled for 10/13/2021 at 11:00 a.m., will be held via video conference with public audio access at (917) 933-2166, Conference ID 548 185 383#. Instructions to video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 10/12/2021) |
| 10/12/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Oladayo Oladokun re: 237 Order: The conference scheduled for 10/13/2021 at 10:00 a.m., will be held via video conference with public audio access at (917) 933-2166, Conference ID 521 476 216#. Instructions to video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 10/12/2021) |
| 10/13/2021 | 245 | ORDER as to Oladayo Oladokun. It is hereby ORDERED that the following trial schedule will be in effect as to Defendant Oladayo Oladokun: Trial will commence on September 12, 2022, at 9:00 a.m.; The parties' respective jury charge requests, proposed voir dire questions, and any motions in limine will be due August 15, 2022; Any opposition papers to motions in limine will be due August 22, 2022; and The final pretrial conference will be scheduled for August 31, 2022, at 10:00 a.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/13/2021)(bw) (Entered: 10/13/2021) |
| 10/13/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Arraignment as to Oladayo Oladokun (1) Count 1s,2s held on 10/13/2021. Plea entered by Oladayo Oladokun Not Guilty. Defendant Oladayo Oladokun (1) present with attorneys Dawn M. Florio and Declan Murray; AUSA Thomas Burnett present. Court reporter Sharonda Jones present. Defendant pleads NOT GUILTY to Counts One and Two of Indictment S4 20cr3 (KPF). Defendant's motions are DENIED for the reasons set forth on the record, except for the motion to suppress vehicle evidence, on which the Court reserves decision pending further briefing from the Government. (See transcript). (jbo) (Entered: 10/14/2021) |
| 10/13/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Revocation Hearing as to Daryl Bartley held on 10/13/2021. Defendant Daryl Bartley (13) present with attorney Megan Wolfe Benett present. AUSA Alexander Nuo Li present. PTSO Francesca Piperato present. Court reporter Carol Ganley present. Defendant is reminded that he must take his release conditions seriously and strictly comply with them. Defendant continued released, pretrial bail conditions still apply. (See transcript.) (jbo) (Entered: 10/14/2021) |
| 10/15/2021 | 246 | LETTER MOTION addressed to Judge Katherine Polk Failla from Megan W. Benett dated 10/15/2021 re: request for extension of time to serve and file defense sentencing submission . Document filed by Daryl Bartley. (Benett, Megan) (Entered: 10/15/2021) |
| 10/15/2021 | 247 | SENTENCING SUBMISSION by USA as to Anthony Lee Nelson. (Li, Alexander) (Entered: 10/15/2021) |
| 10/15/2021 | 248 | MEMO ENDORSEMENT as to Daryl Bartley (13) granting 246 LETTER MOTION addressed to Judge Katherine Polk Failla from Megan W. Benett dated 10/15/2021 re: request for extension of time to serve and file defense sentencing submission. ENDORSEMENT: Application GRANTED. Mr. Bartley shall file his sentencing submission on or before October 26, 2021. The Clerk of Court is directed to terminate the |

SDNY.com/ECF NextGen Version 1.6

| | | |
|---|---|---|
| | | motion at docket entry 246. (Signed by Judge Katherine Polk Failla on 10/15/2021) (ap) (Entered: 10/18/2021) |
| 10/18/2021 | 249 | CJA 23 Financial Affidavit by Muhammed Bashorun. APPROVED. Matthew D. Myers appointed. (Signed by Judge Ronnie Abrams) (lnl) (Entered: 10/18/2021) |
| 10/18/2021 | 250 | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger:Initial Appearance on disposition sheet as to Muhammed Bashorun held on 10/18/2021. Defense counsel Matthew Myers. AUSA Thomas Burnett. Agreed conditions of release: $50,000, PRB, 1 FRP, Travel restricted to SDNY/EDNY/D. Washington D.C and travel in between for court appearances. Surrender travel documents (& No new applications), Pretrial Supervision as directed by Pretrial Services, Deft to continue or seek employment, Deft to be released on own signature; remaining conditions to be met by 10/25/2021; No self-employment; All employment must be approved in advance by PTS; Deft shall not open any lines of credit without prior approval from Court or PTS; Must allow PTS access to all financial records; No contact any co-defendants/witness/victims unless with counsel. Deft waived personal appearance and consented to telephone. (jw) (Entered: 10/19/2021) |
| 10/18/2021 | | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger:Arraignment on disposition sheet as to Muhammed Bashorun (16) Count 1,2,3 held on 10/18/2021. Defense counsel Matthew Myers. AUSA Thomas Burnett. Deft arraigned and pleads not guilty. Speedy Trial Time excluded under 18 USC 3161(h)(7) until 11/1/2021. (jw) (Entered: 10/19/2021) |
| 10/18/2021 | | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger: Plea entered by Muhammed Bashorun (16) Count 1,2,3 Not Guilty. (jw) (Entered: 10/19/2021) |
| 10/19/2021 | 251 | Sentencing Letter by Anthony Lee Nelson addressed to Judge Katherine P. Failla from Donna R. Newman dated October 19, 2021 re: Reply To Government Position Regarding Sentencing & In Further Support of Defendant's Position Regarding Sentencing. (Newman, Donna) (Entered: 10/19/2021) |
| 10/20/2021 | 252 | LETTER by USA as to Oladayo Oladokun addressed to Judge Katherine Polk Failla from Tom Burnett dated 10/20/2021 re: Evidence Seized from Automobile Document filed by USA. (Burnett, Thomas) (Entered: 10/20/2021) |
| 10/21/2021 | 253 | MEMO ENDORSEMENT as to Oladayo Oladokun on re: 252 LETTER by USA as to Oladayo Oladokun addressed to Judge Katherine Polk Failla from Tom Burnett dated 10/20/2021 re: Evidence Seized from Automobile. ENDORSEMENT: The Court is in receipt of the Government's above letter. Based on the representations made in the Government's letter, the Court believes it has now resolved all of Mr. Oladokun's pretrial motions. (See Minute Entry for October 13, 2021). Accordingly, the Court expects the parties to comply with the deadlines set forth in its October 13, 2021 Order. (Dkt. #245). (Signed by Judge Katherine Polk Failla on 10/20/2021) (ap) (Entered: 10/21/2021) |
| 10/22/2021 | 254 | ORDER as to Anthony Lee Nelson: For the reasons stated at the October 22, 2021 telephonic conference (see Minute Entry for Oct. 22, 2021), the pretrial release conditions that were initially imposed on Defendant Anthony Lee Nelson on May 8, 2020 (see Dkt. #81), are modified to include home incarceration with location monitoring to be selected by the Pretrial Services Office. (Signed by Judge Katherine Polk Failla on 10/22/2021) (ap) (Entered: 10/22/2021) |
| 10/22/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference as to Anthony Lee Nelson held on 10/22/2021. Defendant Anthony Lee Nelson present with attorney Donna R. Newman. AUSAs Alexander Nuo Li and Thomas Burnett present. Pretrial Services Officer Ashley Comse present. The Court will issue an |

A-58

| | | |
|---|---|---|
| | | order for the modifications to Defendant's bond. Sentencing is adjourned to 11/1/2021 at 11:00 a.m. Defendant continued released, bail conditions, modified, still apply. (Conference recorded - see transcript). (Sentencing set for 11/1/2021 at 11:00 AM before Judge Katherine Polk Failla.) (jbo) (Entered: 10/25/2021) |
| 10/25/2021 | 255 | LETTER MOTION addressed to Judge Katherine Polk Failla from Tom Burnett dated October 25, 2021 re: Bashorun Initial Pre-Trial Conference and Exclusion of Time . Document filed by USA as to Muhammed Bashorun. (Burnett, Thomas) (Entered: 10/25/2021) |
| 10/25/2021 | 256 | MEMO ENDORSED granting 255 LETTER MOTION Bashorun Initial Pre-Trial Conference and Exclusion of Time as to Muhammed Bashorun (16)... ENDORSEMENT: The Court is in receipt of the Government's above letter. The parties are ORDERED to appear for a pretrial conference in this matter on December 7, 2021, at 3:00 p.m. The conference will proceed by video. Public dial-in information and instructions for video participants will be sent separately in advance of the conference. It is further ORDERED that time is excluded under the Speedy Trial Act between November 1, 2021, and December 7, 2021. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and Mr. Bashorun in a speedy trial because it will permit the parties to produce and review discovery and discuss possible pretrial resolutions of this case. The Clerk of Court is directed to terminate the motion at docket entry 255. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/25/21) (jbo) (Entered: 10/25/2021) |
| 10/26/2021 | 257 | SENTENCING SUBMISSION by Daryl Bartley. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Benett, Megan) (Entered: 10/26/2021) |
| 10/28/2021 | 258 | LETTER MOTION addressed to Judge Katherine Polk Failla from Tom Burnett dated October 28, 2021 re: Exclusion of Time Until Trial . Document filed by USA as to Oladayo Oladokun. (Burnett, Thomas) (Entered: 10/28/2021) |
| 10/28/2021 | 259 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 10/28/2021) |
| 10/28/2021 | 260 | SENTENCING SUBMISSION by USA as to Anthony Lee Nelson. (Li, Alexander) (Entered: 10/28/2021) |
| 10/28/2021 | 261 | MEMO ENDORSEMENT as to Oladayo Oladokun (1) granting 258 LETTER MOTION addressed to Judge Katherine Polk Failla from Tom Burnett dated October 28, 2021 re: Exclusion of Time Until Trial. ENDORSEMENT: Application GRANTED. The Court excludes time under the Speedy Trial Act through September 12, 2022. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and Mr. Oladokun in a speedy trial for the reasons stated in the Government's above letter. The Clerk of Court is directed to terminate the motion at docket entry 258. (Signed by Judge Katherine Polk Failla on 10/28/2021) (ap) (Entered: 10/29/2021) |
| 10/29/2021 | 262 | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated October 29, 2021 re: Sentencing/Reply to Government Position With Respect to Mr. Nelson's sentencing . Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 10/29/2021) |
| 10/29/2021 | 263 | LETTER by Daryl Bartley addressed to Judge Katherine Polk Failla from Megan W. Benett dated 10/29/2021 re: redacted versions of Exhibits E and F to defense sentencing submission (ECF No. 257) (Attachments: # 1 Exhibit E (redacted), # 2 Exhibit F (redacted))(Benett, Megan) (Entered: 10/29/2021) |
| 10/29/2021 | 264 | SENTENCING SUBMISSION by USA as to Daryl Bartley. (Li, Alexander) (Entered: 10/29/2021) |

Case 21-2898, Document 29, 01/25/2022, 3093200, Page63 of 282

| 10/29/2021 | 266 | ENDORSED LETTER as to (20-Cr-3-13) Daryl Bartley addressed to Judge Katherine Polk Failla from Attorney Megan W. Benett dated October 29, 2021 re: I respectfully request that the sentencing proceeding proceed on November 5, 2021 by video teleconference. ENDORSEMENT: Application GRANTED. The sentencing in this matter will proceed by video. Public-dial in information and instructions for video participants and will be sent in advance of the sentencing proceeding. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/29/2021)(bw) (Entered: 11/01/2021) |
|---|---|---|
| 10/30/2021 | 265 | LETTER MOTION addressed to Judge Katherine Polk Failla from Alain Massena dated 10/29/2021 re: Submission *Sentencing Submission*. Document filed by Kowan Poole. (Massena, Alain) (Entered: 10/30/2021) |
| 11/01/2021 | 267 | ORDER OF RESTITUTION as to (20-Cr-3-6) Anthony Lee Nelson. Upon the application of the United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, Thomas S. Burnett and Alexander Li, Assistant United States Attorneys, of counsel; the presentence report; the Defendant's conviction on Count One of the above-referenced Indictment; and all other proceedings in this case, it is hereby ORDERED that: 1. Amount of Restitution. ANTHONY LEE NELSON, the Defendant, shall pay restitution in the total amount of $1,857,348, pursuant to 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii), to the victims of the offense charged in Count One. The names, addresses, and specific amounts owed to each victim are set forth in the Schedule of Victims, attached hereto as Schedule A. Upon advice by the United States Attorney's Office of a change of address of a victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court....[*** See this Order of Restitution ***]... 6. Sealing. Consistent with 18 U.S.C. §§3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1, to protect the privacy interests of victims, the Schedule of Victims, attached hereto as Schedule A, shall be filed under seal, except that copies may be retained and used or disclosed by the Government, the Clerks Office, and the Probation Department, as need be to effect and enforce this Order, without further order of this Court. SO ORDERED: (Signed by Judge Katherine Polk Failla on 11/1/2021)(bw) (Entered: 11/01/2021) |
| 11/01/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Sentencing held on 11/1/2021 for Anthony Lee Nelson (6) Count 1. Defendant Anthony Lee Nelson (6) present with attorney Donna Rita Newman. AUSAs Alexander Nuo Li and Thomas Somerset Burnett present. Court reporters Khris Sellin and Alena Lynch present. Defendant's application to modify the bail conditions to home detention with location monitoring is GRANTED. Defendant continued released. (See Judgment.) (jbo) (Entered: 11/02/2021) |
| 11/02/2021 | | DISMISSAL OF COUNTS on Government Motion as to Anthony Lee Nelson (6) Count 2. (jbo) (Entered: 11/02/2021) |
| 11/02/2021 | 268 | JUDGMENT IN A CRIMINAL CASE as to Anthony Lee Nelson (6). The defendant pleaded guilty to Count(s) 1. All open counts are Dismissed. Imprisonment: Twenty-five (25) months. Supervised Release: Three (3) years. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that Defendant be designated to FCI Cumberland, MD, or FCI Fort Dix, NJ, or, if there is no space available in those facilities, then to a facility of an appropriate security level as close to the Maryland/District of Columbia area as possible. The Court also recommends placement in the designated RDAP program if appropriate. The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons: before 2 p.m. on 1/28/2022. Assessment $100.00 due immediately. Restitution: $1,857,348.00. The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to |

| | | |
|---|---|---|
| | | penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g). Special instructions regarding the payment of criminal monetary penalties: While serving the term of imprisonment, the Defendant shall make installment payments toward his restitution obligation, and may do so through the Bureau of Prisons' (BOP) Inmate Financial Responsibility Plan (IFRP). Pursuant to BOP policy, the BOP may establish a payment plan by evaluating the Defendant's six-month deposit history and subtracting an amount determined by the BOP to be used to maintain contact with family and friends. The remaining balance may be used to determine a repayment schedule. BOP staff shall help the Defendant develop a financial plan and shall monitor the inmate's progress in meeting his restitution obligation. Any unpaid amount remaining upon release from prison will be paid in installments of not less than 15 percent of the Defendant's gross income on the first of each month. The defendant shall forfeit the defendant's interest in the following property to the United States: $1,857,348.00 (see Consent Preliminary Order of Forfeiture/Money Judgment dated 5/4/2021, Dkt. #178) (Signed by Judge Katherine Polk Failla on 11/2/21)(jbo) (Entered: 11/02/2021) |
| 11/04/2021 | 270 | TRANSCRIPT of Proceedings as to Oladayo Oladokun re: Conference held on 9/23/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/26/2021. Redacted Transcript Deadline set for 12/6/2021. Release of Transcript Restriction set for 2/2/2022. (Moya, Goretti) (Entered: 11/04/2021) |
| 11/04/2021 | 271 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun. Notice is hereby given that an official transcript of a Conference proceeding held on 9/23/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 11/04/2021) |
| 11/04/2021 | | NOTICE OF REMOTE PUBLIC ACCESS DIAL-IN as to Daryl Bartley re: 266 Endorsed Letter: The conference scheduled for 11/5/21 at 3:30 p.m., will proceed via video conference, with public audio access as follows: Dial-in (917) 933-2166, Conference ID 161 135 502#. ***No PDF is attached to this entry. (tn) (Entered: 11/04/2021) |
| 11/05/2021 | 272 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 11/05/2021) |
| 11/05/2021 | 273 | SENTENCING SUBMISSION by USA as to Kowan Poole. (Burnett, Thomas) (Entered: 11/05/2021) |
| 11/05/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Sentencing held on 11/5/2021 for Daryl Bartley (13) Count 1. Defendant Daryl Bartley present with attorney Megan Wolfe Benett. AUSA Alexander Nuo Li present. Pretrial Services Officer Francesca Piperato present. Court reporter Khris Sellin present. (See Judgment). (jw) (Entered: 11/08/2021) |
| 11/05/2021 | | DISMISSAL OF COUNTS on Government Motion as to Daryl Bartley (13) Count 2,3. (bw) (Entered: 11/08/2021) |
| 11/08/2021 | 274 | JUDGMENT In A Criminal Case. Date of Imposition of Judgment: 11/5/2021. Defendant Daryl Bartley (13) pleaded guilty to Count(s) 1. Count(s) All open counts are dismissed on the motion of the United States. IMPRISONMENT: Time served. SUPERVISED RELEASE: Three (3) years. Standard Conditions of Supervision (See page 4 of Judgment). Special Conditions of Supervision (See page 5 of Judgment). |

| | | |
|---|---|---|
| | | ASSESSMENT: $100.00, due immediately. RESTITUTION: $41,350.00. Special instructions regarding the payment of criminal monetary penalties: You shall commence monthly installment payments of 15% of your gross income, payable on the 15th of each month, immediately upon your release from home incarceration. The defendant shall forfeit the defendant's interest in the following property to the United States: $41,350.00. (Signed by Judge Katherine Polk Failla on 11/8/2021)(bw) (Entered: 11/08/2021) |
| 11/08/2021 | [275](#) | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to (20-Cr-003-13) Daryl Bartley.... IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, by its attorney Damian Williams, United States Attorney, Assistant United States Attorney, Alexander Li of counsel, and the Defendant, DARYL BARTLEY, and his counsel, Megan Benett, Esq., that: 1. As a result of the offense charged in Count One of the Indictment, to which the Defendant pled guilty, a money judgment in the amount of $41,350 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained, shall be entered against the Defendant, for which the Defendant is jointly and severally liable with co-defendants Oladayo Oladokun and Henry Ogbuokiri, to the extent a forfeiture money judgment is entered against Oladayo Oladokun and Henry Ogbuokiri. 2. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant, DARYL BARTLEY, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith....[*** See this Consent Preliminary Order Of Forfeiture/Money Judgment ***]... 7. The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. 8. The Clerk of the Court shall forward three certified copies of this Consent Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Alexander J. Wilson, Co-Chief of the Money Laundering and Transnational Criminal Enterprises Unit, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007. 9. The signature page of this Consent Preliminary Order of Forfeiture/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. SO ORDERED: (Signed by Judge Katherine Polk Failla on 11/8/2021) [*** NOTE: The Clerk of the Court has forwarded three certified copies of this Consent Preliminary Order of Forfeiture/Money Judgment to AUSA Alexander J. Wilson, via interoffice mail on 11/8/2021. ***](bw) (Entered: 11/08/2021) |
| 11/09/2021 | [276](#) | ORDER OF RESTITUTION as to (20-Cr-003-13) Daryl Bartley. Upon the application of the United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, Thomas S. Burnett and Alexander Li, Assistant United States Attorneys, of counsel; the presentence report; the Defendant's conviction on Count One of the above-referenced Indictment; and all other proceedings in this case, it is hereby ORDERED that: 1. Amount of Restitution. DARYL BARTLEY, the Defendant, shall pay restitution in the total amount of $41,350, pursuant to 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii), to the victims of the offense charged in Count One. The names, addresses, and specific amounts owed to each victim are set forth in the Schedule of Victims, attached hereto as Schedule A. Upon advice by the United States Attorney's Office of a change of address of a victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court. (*** See this Order of Restitution for complete details. ***) SO ORDERED: (Signed by Judge Katherine Polk Failla on 11/9/2021)(bw) (Entered: 11/09/2021) |
| 11/10/2021 | | NOTICE ADJOURNING SENTENCING as to Kowan Poole: The proceeding scheduled for 11/12/2021 is **ADJOURNED** to 12/1/2021 at 3:00 p.m., and will be held in |

Case 21-2898, Document 29, 01/25/2022, 3239300, Page66 of 282

|  |  |  |
|---|---|---|
|  |  | Courtroom 618, 40 Centre Street, New York, NY. (Sentencing set for 12/1/2021 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) ***No PDF is attached to this entry. (tn) (Entered: 11/10/2021) |
| 11/10/2021 | 277 | TRANSCRIPT of Proceedings as to Oladayo Oladokun re: Conference held on 10/13/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/13/2021. Release of Transcript Restriction set for 2/8/2022. (Moya, Goretti) (Entered: 11/10/2021) |
| 11/10/2021 | 278 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun. Notice is hereby given that an official transcript of a Conference proceeding held on 10/13/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 11/10/2021) |
| 11/12/2021 | 282 | NOTICE OF APPEAL (Interlocutory) by Oladayo Oladokun from 281 Order. (nd) (Entered: 11/16/2021) |
| 11/12/2021 |  | Appeal Remark as to Oladayo Oladokun re: 282 Notice of Appeal - Interlocutory. $505.00 APPEAL FILING FEE DUE. (nd) (Entered: 11/16/2021) |
| 11/16/2021 | 281 | ORDER as to Oladayo Oladokun: On July 12, 2021, Defendant Oladayo Oladokun filed an omnibus motion seeking several forms of relief under Federal Rule of Criminal Procedure 12. (Dkt. #212). After hearing oral argument on Mr. Oladokun's motion on September 23, 2021 (see Minute Entry for September 23, 2021), the Court issued an oral decision denying the motion in part and reserving decision on it in part on October 13, 2021 (see Minute Entry for October 13, 2021). For the reasons stated at the October 13, 2021 conference, the Court denied Mr. Oladokun's except insofar as it sought to suppress evidence seized from a Porsche sedan. (See Minute Entry for October 13, 2021). On October 20, 2021, the Government filed a letter stating that it would not introduce at trial any evidence seized from the Porsche. (Dkt. #252). That same day, the Court issued an endorsement stating that the Government's decision not to introduce evidence seized from the Porsche mooted Mr. Oladokun's remaining motion to suppress that same evidence and noting that it had resolved all of Mr. Oladokun's pretrial motions. (Dkt. #253). The Clerk of Court is directed to terminate the motion at docket entry 212. (Signed by Judge Katherine Polk Failla on 11/16/2021) (ap) (Entered: 11/16/2021) |
| 11/16/2021 |  | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Oladayo Oladokun to US Court of Appeals re: 282 Notice of Appeal - Interlocutory. (nd) (Entered: 11/16/2021) |
| 11/16/2021 |  | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Oladayo Oladokun re: 282 Notice of Appeal - Interlocutory were transmitted to the U.S. Court of Appeals. (nd) (Entered: 11/16/2021) |
| 11/17/2021 |  | USCA Appeal Fees received $ 505.00, receipt number 465401289214 as to Oladayo Oladokun on 11/17/2021 re: 282 Notice of Appeal - Interlocutory filed by Oladayo Oladokun. (nd) (Entered: 11/17/2021) |
| 11/22/2021 | 283 | NOTICE OF APPEAL by Daryl Bartley from 274 Judgment. (tp) (Entered: 11/23/2021) |
| 11/22/2021 |  | Appeal Remark as to Daryl Bartley re: 283 Notice of Appeal - Final Judgment. Appeal Fee Waived. Attorney CJA. (tp) (Entered: 11/23/2021) |

A-63

| 11/23/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Daryl Bartley to US Court of Appeals re: 283 Notice of Appeal - Final Judgment. (tp) (Entered: 11/23/2021) |
|---|---|---|
| 11/23/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Daryl Bartley re: 283 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 11/23/2021) |
| 11/23/2021 | 284 | SENTENCING SUBMISSION by USA as to Joshua Hicks. (Li, Alexander) (Entered: 11/23/2021) |
| 11/24/2021 | 285 | Sentencing Letter by Joshua Hicks as to Oladayo Oladokun, Farouk Kukoyi, Baldwin Osuji, Henry Ogbuokiri, Joshua Hicks, Anthony Lee Nelson, Derrick Barnes, Ibrahima Doukoure, Jamar Skeete, Paul Yaw Osei, Jr., Kowan Poole, Darrel Williams, Daryl Bartley, Garnet Steven Murray-Sesay, Andrew Heaven, Muhammed Bashorun addressed to Hon. Failla from John DeMaio dated 11.24.21. (DeMaio, John) (Entered: 11/24/2021) |
| 11/24/2021 | 286 | TRANSCRIPT of Proceedings as to Anthony Lee Nelson re: Conference held on 11/1/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/15/2021. Redacted Transcript Deadline set for 12/27/2021. Release of Transcript Restriction set for 2/22/2022. (Moya, Goretti) (Entered: 11/24/2021) |
| 11/24/2021 | 287 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Anthony Lee Nelson. Notice is hereby given that an official transcript of a Conference proceeding held on 11/1/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 11/24/2021) |
| 11/30/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Sentencing held on 11/30/2021 for Joshua Hicks (5) Count 1. Defendant Joshua Hicks present with attorney John P. Demaio. AUSA Alexander Nuo Li present. Court reporter Lisa Franko present. (See Judgment). (jw) (Entered: 12/03/2021) |
| 12/01/2021 | | NOTICE ADJOURNING SENTENCING as to Kowan Poole: The proceeding scheduled for 12/1/2021 is ADJOURNED to 12/3/2021 at 11:30 a.m., and will be held in Courtroom 618, 40 Centre Street, New York, NY. (Sentencing set for 12/3/2021 at 11:30 AM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. ) ***No PDF is attached to this entry. (tn) (Entered: 12/01/2021) |
| 12/01/2021 | 288 | SEALED DOCUMENT placed in vault. (jus) (Entered: 12/01/2021) |
| 12/02/2021 | | DISMISSAL OF COUNTS on Government Motion as to Joshua Hicks (5) Count 2,3. (jw) (Entered: 12/03/2021) |
| 12/02/2021 | 290 | FILED JUDGMENT IN A CRIMINAL CASE as to Joshua Hicks (5), Pleaded guilty to Count(s) 1, Imprisonment for a total term of Time Served. Supervised release for a term of Three Years. Count(s) 2, 3 are dismissed on the motion of the US. Special Assessment of $100 which is due immediately. Restitution of $1,489,670.00. You will serve the first eighteen (18) months of supervised release on home detention at your current residence with location monitoring technology and must follow the rules and regulations of the location monitoring program. You will be restricted to your residence at all times except for employment, education, religious services, medical services, substance abuse testing/treatment or mental health treatment, attorney visits, court appearances, court- |

| | | |
|---|---|---|
| | | ordered obligations, or other activities pre-approved by the officer. You must contribute to the cost of such program not to exceed the amount determined reasonable by the court approved United States Probation Office's "Sliding Scale for Services". (Signed by Judge Katherine Polk Failla on 12/2/21)(jw) (Entered: 12/03/2021) |
| 12/03/2021 | 291 | ORDER OF RESTITUTION as to Joshua Hicks. It is hereby ORDERED that JOSHUA HICKS, the Defendant, shall pay restitution in the total amount of $1,489,670, pursuant to 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii), to the victims of the offense charged in Count One. The names, addresses, and specific amounts owed to each victim are set forth in the Schedule of Victims, attached hereto as Schedule A. Upon advice by the United States Attorney's Office of a change of address of a victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court. Restitution is due jointly and severally with co-defendant Anthony Lee Nelson. (Signed by Judge Katherine Polk Failla on 12/1/21)(jw) (Entered: 12/03/2021) |
| 12/03/2021 | 294 | ORDER OF RESTITUTION as to Kowan Poole. (Signed by Judge Katherine Polk Failla on 12/3/2021) (ap) (Entered: 12/06/2021) |
| 12/03/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Sentencing held on 12/3/2021 for Kowan Poole (11) Count 1. Defendant Kowan Poole (11) present with attorney Alain V. Massena. AUSA Alexander Nuo Li present. Court reporter Rose Prater present. Defendant continued remanded. (See Judgment). (jbo) (Entered: 12/07/2021) |
| 12/04/2021 | 292 | TRANSCRIPT of Proceedings as to Daryl Bartley re: Conference held on 11/5/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2021. Redacted Transcript Deadline set for 1/4/2022. Release of Transcript Restriction set for 3/4/2022. (Moya, Goretti) (Entered: 12/04/2021) |
| 12/04/2021 | 293 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Daryl Bartley. Notice is hereby given that an official transcript of a Conference proceeding held on 11/5/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 12/04/2021) |
| 12/06/2021 | | NOTICE OF REMOTE PUBLIC AUDIO ACCESS DIAL-IN as to Muhammed Bashorun re: 256 Order on Letter Motion: The conference scheduled for 12/7/2021 at 3:00 p.m., will be held via video conference with public audio access at (917) 933-2166, Conference ID 720 276 643#. Instructions to video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry. (tn) (Entered: 12/06/2021) |
| 12/06/2021 | 295 | LETTER MOTION addressed to Judge Katherine Polk Failla from Matthew D. Myers dated 12/6/2021 re: United States v. Bashorun . Document filed by Muhammed Bashorun. (Myers, Matthew) (Entered: 12/06/2021) |
| 12/06/2021 | 296 | MEMO ENDORSEMENT as to Muhammed Bashorun (16) on 295 LETTER MOTION addressed to Judge Katherine Polk Failla from Matthew D. Myers dated 12/6/2021 re: United States v. Bashorun. ENDORSEMENT: The initial pretrial conference in this matter is hereby ADJOURNED to January 19, 2022, at 11:30 a.m. Additionally, it is ORDERED that time is excluded under the Speedy Trial Act between December 7, 2021, and January 19, 2022. The Court finds that the ends of justice served by excluding such time outweigh the interests of the public and Defendant Muhammed Bashorun in a |

A-65

| | | |
|---|---|---|
| | | speedy trial because it will permit defense counsel to continue to review discovery. The Clerk of Court is directed to terminate the motion at docket entry 295. (Signed by Judge Katherine Polk Failla on 12/6/2021) (ap) (Entered: 12/07/2021) |
| 12/07/2021 | 297 | MOTION to Postpone Sentencing . Document filed by Paul Yaw Osei, Jr.. (Henry, Bradley) (Entered: 12/07/2021) |
| 12/07/2021 | | DISMISSAL OF COUNTS on Government Motion as to Kowan Poole (11) Count 2,3. (ap) (Entered: 12/07/2021) |
| 12/07/2021 | 298 | JUDGMENT IN A CRIMINAL CASE as to Kowan Poole (11). THE DEFENDANT: pleaded guilty to count One. ALL OPEN COUNTS are dismissed on the motion of the United States. IMPRISONMENT: Twenty-six (26) months. The court makes the following recommendations to the Bureau of Prisons: 2 The Court recommends that the Defendant be designated to a facility of an appropriate security level as close to the Washington D.C. area as possible. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Three (3) years. See SPECIAL CONDITIONS OF SUPERVISION. ASSESSMENT: $100.00 due immediately. RESTITUTION: $134,460.00. Name of Payee: See Order of Restitution dated 12/3/2021 (Dkt. #294). The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g). While serving the term of imprisonment, the Defendant shall make installment payments toward his restitution obligation, and may do so through the Bureau of Prisons' (BOP) Inmate Financial Responsibility Plan (IFRP). Pursuant to BOP policy, the BOP may establish a payment plan by evaluating the Defendant's six-month deposit history and subtracting an amount determined by the BOP to be used to maintain contact with family and friends. The remaining balance may be used to determine a repayment schedule. BOP staff shall help the Defendant develop a financial plan and shall monitor the inmate's progress in meeting his restitution obligation. Any unpaid amount remaining upon release from prison will be paid in installments of not less than 15 Percent of the Defendant's gross income on the first of each month. Joint and Several: Farouk Kukoyl, 20-cr-00003-KPF-2; Joshua Hicks, 20-cr-00003-KPF-5; Anthony Lee Nelson, 20-cr-00003-KPF-6. The defendant shall forfeit the defendant's interest in the following property to the United States: $134,460.00 (See Consent Preliminary Order of Forfeiture/Money Judgment, Dkt. #138) (Signed by Judge Katherine Polk Failla on 12/7/2021) (ap) Modified on 12/9/2021 (ap). Modified on 12/9/2021 (ap). (Entered: 12/07/2021) |
| 12/08/2021 | 299 | MEMO ENDORSEMENT as to Paul Yaw Osei, Jr. on 297 MOTION to Postpone Sentencing. ENDORSEMENT: Application GRANTED. The sentencing in this matter is hereby ADJOURNED to January 28, 2022, at 3:00 p.m. The Clerk of Court is directed to terminate the motion at docket entry 297. SO ORDERED. (Sentencing set for 1/28/2022 at 03:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 12/8/2021) (lnl) (Entered: 12/08/2021) |
| 12/08/2021 | 300 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 12/08/2021) |
| 12/08/2021 | 301 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 12/08/2021) |
| 12/16/2021 | 302 | JUDICIAL RESPONSE as to Oladayo Oladokun. The Court Orders: Please inform all parties concerned that I will conduct a Bail Review Hearing in Courtroom # 618 on 12/21/21 at 12:00 pm. (Bond Hearing set for 12/21/2021 at 12:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/16/21)(jbo) (Entered: 12/17/2021) |

A-66

| 12/17/2021 | 303 | LETTER MOTION addressed to Judge Katherine Polk Failla from Donna R. Newman dated December 17, 2021 re: Request for Temporary Amendment to Conditions of Release *To Allow Mr. Nelson to Do Holiday Shopping and to Celebrate the Holidays with Family*. Document filed by Anthony Lee Nelson. (Newman, Donna) (Entered: 12/17/2021) |
|---|---|---|
| 12/17/2021 | 304 | MEMO ENDORSEMENT granting 303 LETTER MOTION filed by Anthony Lee Nelson (6), addressed to Judge Katherine Polk Failla from Attorney Donna R. Newman dated December 17, 2021 re: Request for Temporary Amendment to Conditions of Release To Allow Mr. Nelson to Do Holiday Shopping and to Celebrate the Holidays with Family. ENDORSEMENT: Application GRANTED. The Clerk of Court is directed to terminate the motion at docket entry 303. SO ORDERED. (Signed by Judge Katherine Polk Failla on 12/17/2021) (bw) (Entered: 12/20/2021) |
| 12/20/2021 | 305 | FIRST LETTER MOTION addressed to Judge Katherine Polk Failla from DAWN FLORIO dated 12/20/2021 re: Adjournment *Dawn M. Florio*. Document filed by Oladayo Oladokun. (Florio, Dawn) (Entered: 12/20/2021) |
| 12/20/2021 | 306 | ENDORSED LETTER as to (20-Cr-3-1) Oladayo Oladokun addressed to Judge Katherine Polk Failla from Attorney Dawn M. Florio dated December 20, 2021 re: I, Dawn M. Florio, Esq., represents Oladayo Oladokun on the above instant matter dated for December 21, 2021 @ 12pm for an in-person bail review. ENDORSEMENT: The Court sends its best wishes for a speedy recovery to defense counsel's associate and continued good health to defense counsel. The bail review hearing in this matter is hereby ADJOURNED to January 4, 2022, at 3:00 p.m. The hearing will be held in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007. The Clerk of Court is directed to terminate the motion at docket entry 305. SO ORDERED. ( Bond Hearing set for 1/4/2022 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. ) (Signed by Judge Katherine Polk Failla on 12/20/2021)(bw) (Entered: 12/21/2021) |
| 12/27/2021 | 307 | ENDORSED LETTER as to Daryl Bartley addressed to Judge Katherine Polk Failla, from Megan W. Benett dated 12/23/2021 re: Defense counsel writes to request modification. ENDORSEMENT: Application GRANTED. The terms of Mr. Bartley's supervised release are hereby MODIFIED to permit him to travel to and from the Mayor of the District of Columbia's Office on Returning Citizens' Affairs. Mr. Bartley shall obtain prior approval from his supervising Probation Officer prior to any such travel. (Signed by Judge Katherine Polk Failla on 12/27/2021) (ap) (Entered: 12/27/2021) |
| 12/30/2021 | 308 | TRANSCRIPT of Proceedings as to Joshua Hicks re: Conference held on 11/30/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Lisa Picciano Franko, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022. (Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 309 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Joshua Hicks. Notice is hereby given that an official transcript of a Conference proceeding held on 11/30/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 12/30/2021) |
| 01/04/2022 | 310 | ORDER as to Oladayo Oladokun. It is hereby ORDERED that Defendant Oladayo Oladokun (USM #21480-037) is remanded to the custody of the United States Marshal. |

| | | |
|---|---|---|
| | | SO ORDERED. (Signed by Judge Katherine Polk Failla on 1/4/22)(jbo) (Entered: 01/05/2022) |
| 01/04/2022 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Hearing as to Oladayo Oladokun held on 1/4/2022. Defendant Oladayo Oladokun (1) present with attorneys Dawn M. Florio and Declan Murray; AUSA Thomas Burnett present. PTSO Ashely Comey and Senior United States Probation Officer James Ridgeway (by telephone) present. Court reporter Steven Greenblum present. Defendant's bail is revoked and defendant remanded to the custody of the U.S. Marshals. (See transcript). (jbo) (Entered: 01/05/2022) |
| 01/06/2022 | 311 | JUDICIAL RESPONSE as to Daryl Bartley. The Court Orders: Transfer of Jurisdiction to the District of Columbia APPROVED. (Signed by Judge Katherine Polk Failla on 1/6/22) (jbo) (Entered: 01/06/2022) |
| 01/06/2022 | 312 | TRANSFER OF JURISDICTION as to Daryl Bartley. (**Not signed by receiving District Judge of Columbia.) (Signed by Judge Katherine Polk Failla on 1/6/22)(jbo) (Entered: 01/06/2022) |
| 01/07/2022 | 313 | SECOND MOTION to Postpone Sentencing . Document filed by Henry Ogbuokiri. (Essmidi, Mehdi) (Entered: 01/07/2022) |
| 01/07/2022 | 314 | MEMO ENDORSED granting 313 Motion to Postpone Sentencing as to Henry Ogbuokiri (4)... ENDORSEMENT: Application GRANTED. The sentencing in this matter is hereby ADJOURNED to April 15, 2022, at 3:00 p.m. Additionally, objections to the draft Presentence Investigation Report shall be filed on or before February 1, 2022. The Clerk of Court is directed to terminate the motion at docket entry 313. SO ORDERED. (Signed by Judge Katherine Polk Failla on 1/7/22) (jbo) (Entered: 01/07/2022) |
| 01/07/2022 | | Set/Reset Hearings as to Henry Ogbuokiri: Sentencing set for 4/15/2022 at 03:00 PM before Judge Katherine Polk Failla. (jbo) (Entered: 01/07/2022) |
| 01/07/2022 | 315 | TRANSCRIPT of Proceedings as to Kowan Poole re: Conference held on 12/3/21 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Rose Prater, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/28/2022. Redacted Transcript Deadline set for 2/7/2022. Release of Transcript Restriction set for 4/7/2022. (Moya, Goretti) (Entered: 01/07/2022) |
| 01/07/2022 | 316 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Kowan Poole. Notice is hereby given that an official transcript of a Conference proceeding held on 12/3/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 01/07/2022) |
| 01/10/2022 | 317 | LETTER by Derrick Banks addressed to Judge Katherine Polk Failla from Joshua L. Dratel, Esq. dated January 10, 2022 re: Respectfully requesting an adjournment of Mr. Banks's sentencing until the week of February 14, 2022, as well as the schedule for sentencing submissions. (Dratel, Joshua) (Entered: 01/10/2022) |
| 01/10/2022 | 318 | ENDORSED LETTER as to (20-Cr-003-7) Derrick Banks addressed to Judge Katherine Polk Failla from Attorney Joshua L. Dratel dated January 10, 2022 re: Accordingly, it is respectfully requested that Mr. Banks's sentencing be adjourned until the week of February 14, 2022, with submissions due two weeks (Mr. Banks's) and one week (the |

| | | |
|---|---|---|
| | | government's) before sentencing. ENDORSEMENT: Application GRANTED. Given Mr. Banks's need for three additional weeks and the Court's trial schedule, Mr. Banks's sentencing is hereby ADJOURNED to March 16, 2022, at 3:00 p.m. Mr. Banks shall file his sentencing submission on or before March 2, 2022, and the Government shall file its submission on or before March 9, 2022. SO ORDERED. ( Brief due by 3/2/2022. Responses to Brief due by 3/9/2022. Sentencing set for 3/16/2022 at 03:00 PM before Judge Katherine Polk Failla. ) (Signed by Judge Katherine Polk Failla on 1/10/2022)(bw) (Entered: 01/10/2022) |
| 01/18/2022 | 319 | SEALED DOCUMENT placed in vault. (jus) (Entered: 01/18/2022) |
| 01/18/2022 | | NOTICE OF REMOTE PUBLIC ACCESS DIAL-IN as to Muhammed Bashorun re: 296 Order on Letter Motion: The conference scheduled for 1/19/2022 at 11:30 a.m., will be held via video conference with public audio access at (917) 933-2166, Conference ID 745 117 064#. Instructions to video participants will be sent separately in advance of the conference. ***No PDF is attached to this entry.(tn) (Entered: 01/18/2022) |
| 01/19/2022 | 320 | RULE 5(F) ORDER as to Muhammed Bashorun. (Signed by Judge Katherine Polk Failla on 1/19/22)(jbo) (Entered: 01/19/2022) |
| 01/19/2022 | | Minute Entry for proceedings held before Judge Katherine Polk Failla:Pretrial Conference as to Muhammed Bashorun held on 1/19/2022 as to Muhammed Bashorun. Defendant Muhammed Bashorun (16) present with attorney Matthew Daniel Myers. AUSA Alexander Nuo Li present. Court reporter George Malinowski present. The next pretrial conference is scheduled for 3/2/2022 at 3:00 p.m. Time is excluded in the interest of justice from 1/19/2022 through 3/2/2022. Defendant continued released. (See transcript). ( Pretrial Conference set for 3/2/2022 at 03:00 PM before Judge Katherine Polk Failla.) (jw) (Entered: 01/19/2022) |
| 01/21/2022 | 321 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Dorea Silverman dated January 21, 2022 re: adjourn sentencing . Document filed by Paul Yaw Osei, Jr.. (Silverman, Dorea) (Entered: 01/21/2022) |
| 01/21/2022 | 322 | MEMO ENDORSEMENT as to Paul Yaw Osei, Jr. (10) granting 321 CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from Dorea Silverman dated January 21, 2022 re: adjourn sentencing. ENDORSEMENT: Application GRANTED. The sentencing in this matter is ADJOURNED to April 13, 2022, at 3:00 p.m. The Clerk of Court is directed to terminate the motion at docket entry 321. (Signed by Judge Katherine Polk Failla on 1/21/2022) (ap) (Entered: 01/21/2022) |
| 01/21/2022 | | Set/Reset Hearings as to Paul Yaw Osei, Jr.: Sentencing set for 4/13/2022 at 03:00 PM before Judge Katherine Polk Failla. (ap) (Entered: 01/21/2022) |
| 01/28/2022 | 323 | TRANSCRIPT of Proceedings as to Oladayo Oladokun re: Conference held on 1/4/22 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/18/2022. Redacted Transcript Deadline set for 2/28/2022. Release of Transcript Restriction set for 4/28/2022. (Moya, Goretti) (Entered: 01/28/2022) |
| 01/28/2022 | 324 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Oladayo Oladokun. Notice is hereby given that an official transcript of a Conference proceeding held on 1/4/22 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

A-69

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 01/28/2022) |
| 02/07/2022 | 325 | Supervised Release Jurisdiction Transferred Out to the U.S.D.C. District of Columbia as to Daryl Bartley. (ap) (Entered: 02/23/2022) |
| 02/07/2022 | | TRANSFER OUT SUPERVISED RELEASE DOCUMENTS SENT via email as to Daryl Bartley to the U.S.D.C. District of Columbia. The following documents were emailed: Copy of the Transfer of Jurisdiction Form, copy of the indictment/information, copy of the docket sheet, copy of judgment and letter of acknowledgment. (ap) (Entered: 02/23/2022) |
| 03/01/2022 | 326 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/01/2022) |
| 03/01/2022 | 327 | LETTER by Derrick Banks addressed to Judge Katherine Polk Failla from Joshua L. Dratel, Esq., dated March 1 re: Respectfully requesting an adjournment of Mr. Banks's sentencing until the first week of May 2022, as well as the schedule for sentencing submissions (Dratel, Joshua) (Entered: 03/01/2022) |
| 03/01/2022 | 328 | MEMO ENDORSEMENT as to Derrick Banks on re: 327 LETTER by Derrick Banks addressed to Judge Katherine Polk Failla from Joshua L. Dratel, Esq., dated March 1 re: Respectfully requesting an adjournment of Mr. Banks's sentencing until the first week of May 2022, as well as the schedule for sentencing submissions. ENDORSEMENT: Application GRANTED. The sentencing in this matter is hereby ADJOURNED to May 4, 2022, at 3:00 p.m. Mr. Banks shall file his sentencing submission on or before April 20, 2022, and the Government shall file its submission on or before April 27, 2022. (Sentencing set for 5/4/2022 at 03:00 PM before Judge Katherine Polk Failla) (Signed by Judge Katherine Polk Failla on 3/1/2022) (ap) (Entered: 03/02/2022) |
| 03/02/2022 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pretrial Conference as to Muhammed Bashorun held on 3/2/2022. Defendant Muhammed Bashorun (16) present with attorney Matthew Daniel Myers. AUSA Alexander Nuo Li present. Court reporter Khris Sellin present. Defendant's anticipated motion is due by 4/1/2022; Opposition is due by 4/22/2022; and Reply is due by 4/29/2022. The motion hearing is scheduled for 5/10/2022 at 3:00 p.m. Time is excluded in the interest of justice from 3/2/2022 through 5/10/2022. Defendant continued released. (See transcript). (jbo) (Entered: 03/02/2022) |
| 03/15/2022 | 330 | MEMORADNUM as to Derrick Banks: We are requesting direction from the Court: Please inform all parties concerned that I will conduct a Bail Review Hearing in Courtroom #618 on 4/12/22 at 11:00am (Signed by Judge Katherine Polk Failla on 3/15/22)(jw) (Entered: 03/15/2022) |
| 03/15/2022 | | Set/Reset Deadlines/Hearings as to Derrick Banks: Bail Review Hearing set for 4/12/2022 at 11:00 AM before Judge Katherine Polk Failla (jw) (Entered: 03/15/2022) |
| 03/31/2022 | 331 | LETTER MOTION addressed to Judge Katherine Polk Failla from Matthew D. Myers dated 3/31/2022 re: United States v. Oladokun . Document filed by Muhammed Bashorun. (Myers, Matthew) (Entered: 03/31/2022) |
| 04/01/2022 | 332 | MEMO ENDORSEMENT as to Muhammed Bashorun on 331 LETTER MOTION addressed to Judge Katherine Polk Failla from Matthew D. Myers dated 3/31/2022 re: United States v. Oladokun. ENDORSEMENT: The Court is in receipt of Defendant Muhammed Bashorun's above letter. For the reasons stated above, the Court hereby CONVERTS the May 10, 2022 motion hearing to a status conference. The Clerk of Court is directed to terminate the motion at docket entry 331. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/1/2022) (lnl) (Entered: 04/01/2022) |

| 04/01/2022 | 333 | THIRD MOTION to Postpone Sentencing . Document filed by Henry Ogbuokiri. (Essmidi, Mehdi) (Entered: 04/01/2022) |
|---|---|---|
| 04/04/2022 | 334 | MEMO ENDORSED granting 333 Motion to Postpone Sentencing as to Henry Ogbuokiri (4)... ENDORSEMENT: Application GRANTED. The sentencing in this matter is hereby ADJOURNED to May 3, 2022 at 3pm. The Clerk of Court is directed to terminate the motion at docket entry 333. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/4/22) (jbo) (Entered: 04/04/2022) |
| 04/04/2022 | | Set/Reset Hearings as to Henry Ogbuokiri: Sentencing set for 5/3/2022 at 03:00 PM before Judge Katherine Polk Failla. (jbo) (Entered: 04/04/2022) |
| 04/06/2022 | 335 | SENTENCING SUBMISSION by USA as to Paul Yaw Osei, Jr.. (Attachments: # 1 Text of Proposed Order Proposed Restitution Order)(Burnett, Thomas) (Entered: 04/06/2022) |
| 04/06/2022 | 336 | SENTENCING SUBMISSION by Paul Yaw Osei, Jr.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit) (Silverman, Dorea) (Entered: 04/06/2022) |
| 04/12/2022 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Bond Hearing as to Derrick Banks held on 4/12/2022. Defendant Derrick Banks present with attorney Joshua Lewis Dratel. AUSA Alexander Nuo Li present. PSO Francesca Piperato present. Court reporter George Malinowski present. Defendant is admonished to take his release conditions seriously and strictly comply with them. Defendant continued released, bail conditions still apply. (See transcript). (jbo) (Entered: 04/12/2022) |
| 04/14/2022 | 337 | CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated April 14, 2022 re: Withdraw Warrant . Document filed by USA as to Kowan Poole. (Attachments: # 1 Exhibit Arrest Warrant)(Li, Alexander) (Entered: 04/14/2022) |
| 04/14/2022 | 338 | MEMO ENDORSEMENT as to Kowan Poole (11) granting 337 CONSENT LETTER MOTION addressed to Judge Katherine Polk Failla from USA dated April 14, 2022 re: Withdraw Warrant. ENDORSEMENT: Application GRANTED. The warrant is hereby WITHDRAWN. SO ORDERED. (Signed by Judge Katherine Polk Failla on 4/14/2022) (lnl) (Entered: 04/15/2022) |
| 04/18/2022 | 339 | ORDER as to (20-Cr-3-4) Henry Ogbuokiri. The sentencing in this matter currently scheduled for May 3, 2022, at 3:00 p.m. is hereby ADJOURNED to June 10, 2022, at 3:00 p.m. SO ORDERED. ( Sentencing set for 6/10/2022 at 03:00 PM before Judge Katherine Polk Failla. )(Signed by Judge Katherine Polk Failla on 4/18/2022)(bw) (Entered: 04/18/2022) |
| 04/20/2022 | 340 | SENTENCING SUBMISSION by Derrick Banks. (Dratel, Joshua) (Entered: 04/20/2022) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/22/2022 10:28:55 | | |
| **PACER Login:** | kreindlerllp | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cr-00003-KPF |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

## A-71

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

### United States District Court

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: Nov 22 2021

Southern _____ District of New York _____

Caption:

United States _____ v.

Daryl Bartley _____

Docket No.: 20-cr-03 _____

Katherine Polk Failla _____
(District Court Judge)

Notice is hereby given that Daryl Bartley _____ appeals to the United States Court of Appeals for the Second Circuit from the judgment | ✔ |, other | _____
(specify)

entered in this action on Nov. 8, 2021 _____.
(date)

This appeal concerns: Conviction only |___| Sentence only | ✔ | Conviction & Sentence |___| Other |___|

Defendant found guilty by plea | ✔ | trial | | N/A [ .

Offense occurred after November 1, 1987? Yes | ✔ | No [ N/A [

Date of sentence: Nov. 5, 2021 _____ N/A |___|

Bail/Jail Disposition: Committed |___| Not committed | ✔ | N/A |

Appellant is represented by counsel? Yes ✔ ] No | | If yes, provide the following information:

| | |
|---|---|
| Defendant's Counsel: | Megan Wolfe Benett |
| Counsel's Address: | 485 Lexington Ave. |
| | New York, NY 10017 |
| Counsel's Phone: | (212) 973-3406 |
| Assistant U.S. Attorney: | Alexander Li |
| AUSA's Address: | One Saint Andrew's Plaza |
| | New York, NY 10007 |
| AUSA's Phone: | (212) 637-2265 |

Signature

A-72



**KREINDLER**

KREINDLER & KREINDLER LLP | 750 Third Avenue | New York, NY 10017-2725
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

November 19, 2021

Ms. Ruby J. Krajick
Clerk of the Court
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Daryl Bartley*
     20 Cr. 03 (S.D.N.Y.) (KPF)

Dear Ms. Krajick,

Enclosed is a Notice of Appeal in the above-captioned criminal case. On the basis of a
previously submitted financial affidavit, the defendant, Daryl Bartley was determined to
qualify for appointment of counsel pursuant to the Criminal Justice Act, 18 U.S.C. §
3006A, and therefore should qualify for *in forma pauperis* status for purposes of the
appeal filing fee. Please let us know if you have any questions.

     Respectfully submitted,

     MEGAN WOLFE BENETT
     750 Third Avenue, 32nd Floor
     New York, New York 10017
     Tel.: (212) 973-3406
     Fax: (212) 972-9432
     Email: mbenett@kreindler.com

New York    Boston    Los Angeles

A-73

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - v. -

OLADAYO OLADOKUN,
FAROUK KUKOYI,
BALDWIN OSUJI,
HENRY OGBUOKIRI,
JOSHUA HICKS,
ANTHONY LEE NELSON,
DERRICK BANKS,
IBRAHIIMA DOUKOURE,
JAMAR SKEETE,
PAUL YAW OSEI, JR.,
KOWAN POOLE,
DARREL WILLIAMS,
DARYL BARTLEY,
GARNET STEVEN MURRAY-SESAY,
  a/k/a "Steven Garnet
      Murray-Sesay," and
ANDREW HEAVEN,

             Defendants.

- - - - - - - - - - - - - - - - X

INDICTMENT

20 Cr.

**20 CRIM 003**

## COUNT ONE
### (Conspiracy to Commit Bank Fraud and Wire Fraud)

The Grand Jury charges:

1.    From at least in or about April 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY,

A-74

GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree, together and with each other, to commit bank fraud, in violation of Title 18, United States Code, Section 1344, and wire fraud, in violation of Title 18, United States Code, Section 1343.

2.    It was a part and object of the conspiracy that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

3.    It was a further part and object of the conspiracy that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY

2

A-75

OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

4.     From at least in or about April 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay,"

3

and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree, together and with each other, to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957(a).

5.      It was a part and object of the conspiracy that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, bank deposits, transfers, and withdrawals, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracy to commit bank fraud and wire fraud charged in Count One of this Indictment, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

4

6.    It was a further part and object of the conspiracy
that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY
OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS,
IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN
POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-
SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN,
the defendants, and others known and unknown, in an offense
involving and affecting interstate and foreign commerce, knowing
that the property involved in certain financial transactions, to
wit, bank deposits, transfers, and withdrawals, represented the
proceeds of some form of unlawful activity, would and did
conduct and attempt to conduct such financial transactions,
which in fact involved the proceeds of specified unlawful
activity, to wit, the conspiracy to commit bank fraud and wire
fraud charged in Count One of this Indictment, knowing that the
transactions were designed in whole and in part to conceal and
disguise the nature, the location, the source, the ownership,
and the control of the proceeds of the specified unlawful
activity, in violation of Title 18, United States Code, Section
1956(a)(1)(B)(i).

7.    It was a further part and object of the conspiracy
that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY
OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS,
IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN

5

A-78

POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-

SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN,

the defendants, and others known and unknown, within the United

States, knowingly would and did engage and attempt to engage in

monetary transactions in criminally derived property of a value

greater than $10,000 and that was derived from specified

unlawful activity, to wit, the conspiracy to commit bank fraud

and wire fraud charged in Count One of this Indictment, in

violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## COUNT THREE
### (Aggravated Identity Theft)

The Grand Jury further charges:

8. From at least in or about April 2018 up to and

including at least in or about September 2019, in the Southern

District of New York and elsewhere, FAROUK KUKOYI, BALDWIN

OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, DERRICK BANKS, KOWAN

POOLE, DARREL WILLIAMS, DARYL BARTLEY, and GARNET STEVEN MURRAY-

SESAY, a/k/a "Steven Garnet Murray-Sesay," the defendants,

knowingly did transfer, possess, and use, without lawful

authority, a means of identification of another person, during

and in relation to a felony violation enumerated in Title 18,

United States Code, Section 1028A(c), to wit, KUKOYI, OSUJI,

OGBUOKIRI, HICKS, BANKS, POOLE, WILLIAMS, BARTLEY, and MURRAY-

6

A-79

SESAY used the names and social security numbers of other persons to open, access, and transact in bank accounts during and in relation to the bank fraud and wire fraud conspiracy charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1) & (b), and 2.)

### FORFEITURE ALLEGATIONS

9. As a result of committing the offense alleged in Count One of this Indictment, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

10. As a result of committing the offense alleged in Count Two of this Indictment, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI,

7

A-80

JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a "Steven Garnet Murray-Sesay," and ANDREW HEAVEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

11.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third person;
>
> c.  has been placed beyond the jurisdiction of the Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property which cannot be subdivided without difficulty;

8

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON                                    GEOFFREY S. BERMAN
                                              United States Attorney

9

A-82

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

**OLADAYO OLADOKUN, FAROUK KUKOYI,
BALDWIN OSUJI, HENRY OGBUOKIRI,
JOSHUA HICKS, ANTHONY LEE NELSON,
DERRICK BANKS, IBRAHIIMA DOUKOURE,
JAMAR SKEETE, PAUL YAW OSEI, JR.,
KOWAN POOLE, DARREL WILLIAMS,
DARYL BARTLEY, GARNET STEVEN MURRAY-
SESAY, a/k/a "Steven Garnet Murray-
Sesay," and ANDREW HEAVEN,**

Defendants.

### INDICTMENT

20 Cr.

(18 U.S.C. §§ 1349, 1956, 1028A, and 2.)

GEOFFREY S. BERMAN
United States Attorney

_Tracy Whitten_
Foreperson

_Filed Indictment
case assigned to Judge Failla_

_1/2/20
KL_

A-83

_Stewart Aaron
U.S.M.J._



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 24, 2020

Megan Benett, Esq.
Kreindler & Kreindler LLP
750 Third Avenue
New York, New York 10017

        Re: <u>United States</u> v. <u>Daryl Bartley</u>, 20 Cr. 3 (KPF)

Dear Ms. Benett:

        On the understandings specified below, the Office of the United States Attorney for the Southern District of New York (this "Office") will accept a guilty plea from Daryl Bartley (the "defendant") to Count One of the above-referenced Indictment. Count One charges the defendant with Conspiracy to Commit Bank and Wire Fraud, in violation of Title 18, United States Code, Section 1349, and carries a maximum term of imprisonment of 30 years, a maximum term of supervised release of five years, a maximum fine pursuant to Title 18, United States Code, Section 3571, of the greatest of $1,000,000, twice the gross pecuniary gain resulting from the offense, or twice the gross pecuniary loss to persons other than the defendant, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

        In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for the conspiracy to commit bank fraud and wire fraud alleged in Count One of the above-referenced Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

        The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A): a sum of money equal to $41,350 in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture

annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

The defendant further agrees to make restitution in the amount of $41,350 in accordance with 18 U.S.C. § 3663A(a)(1) and (c)(1)(A)(ii).

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

### A. Offense Level

1. The November 1, 2018 edition of the Guidelines Manual is applicable to the offense charged in Count One of the Indictment.

2. Count One charges the defendant with conspiring to commit bank fraud and wire fraud in violation 18 U.S.C. § 1349. Under U.S.S.G. § 2X1.1(a), the base offense level for Count One is the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

3. Bank fraud in violation of 18 U.S.C. § 1344 has statutory maximum term of imprisonment of 30 years. Accordingly, under U.S.S.G. § 2B1.1(a)(1), the base offense level for Count One is 7.

4. Because the defendant intended to inflict a loss of $55,162, which is more than $40,000 but less than $95,000, a 6-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(1)(D).

5. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the above, the applicable Guidelines offense level is 11.

### B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has 22 criminal history points, calculated as follows:

1. On or about February 17, 1983, the defendant was convicted in the Fulton County Superior Court of theft by receiving stolen property, in violation of Georgia Code § 16-8-7. On or about February 17, 1983, the defendant was sentenced principally to a term of imprisonment of 6 months and a term of probation of 2 years and 6 months. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history points are added.

2. On or about February 10, 1988, the defendant was convicted in Atlanta Traffic Court of driving while license suspended or revoked, in violation of Georgia Code § 40-5-121(a). On or

about February 10, 1988, the defendant was sentenced principally to a term of imprisonment of 12 months. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history points are added.

3. On or about November 4, 1998, the defendant was arrested and subsequently convicted in Cobb County State Court of deposit account fraud, in violation of Georgia Code § 16-9-20(b)(1)(2). On or about June 8, 2001, the defendant was sentenced principally to a term of probation of 12 months. Because there was an intervening arrest, this sentence is counted separately from the sentence described in the paragraph immediately below, in accordance with U.S.S.G. § 4A1.2(a)(2). Pursuant to U.S.S.G. § 4A1.2(e)(3), however, no criminal history points are added.

4. On or about June 7, 2000, the defendant was arrested and subsequently convicted in Cobb County State Court of two counts of forgery in the first degree, in violation of Georgia Code § 16-9-1(b). On or about June 8, 2001, the defendant was sentenced principally to a term of probation of 5 years in resolution of both counts. On or about September 5, 2001, the defendant's probation was modified upon a violation of probation. On or about June 15, 2004, the defendant's probation was revoked and the defendant was resentenced to a term of imprisonment of 1 year, 11 months, and 15 days. Pursuant to U.S.S.G. §§ 4A1.2(k) and 4A1.1(a), 3 criminal history points are added.

5. On or about June 21, 2001, the defendant was convicted in Cobb County State Court of giving a false name, address, or birthday to a law enforcement officer, in violation of Georgia Code § 16-10-25. On or about June 21, 2001, the defendant was sentenced principally to term of imprisonment of 65 days. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history points are added.

6. On or about April 15, 2004, the defendant was convicted in Cobb County Superior Court of theft by receiving stolen property, in violation of Georgia Code § 16-8-7. On or about April 15, 2004, the defendant was sentenced principally to term of imprisonment of 2 years. Pursuant to U.S.S.G. § 4A1.1(a), 3 criminal history points are added.

7. On or about October 4, 2004, the defendant was convicted in Fulton County Superior Court of two counts of forgery in the first degree, in violation of Georgia Code § 16-9-1(b). On or about October 4, 2004, the defendant was sentenced principally to a term of imprisonment of 18 months on the first count, and a term of imprisonment of 12 months on the second count, running concurrently. Because the defendant was arrested for these offenses on the same date and sentenced on these offenses on the same date, these sentences are treated as a single sentence pursuant to U.S.S.G. § 4A1.2(a)(2). Pursuant to U.S.S.G. § 4A1.1(a), 3 criminal history points are added.

8. On or about February 9, 2007, the defendant was convicted in Cobb County State Court of deposit account fraud, in violation of Georgia Code § 16-9-20(b)(1)(2). On or about February 9, 2007, the defendant was sentenced principally to term of imprisonment of 1 day and a term of probation of 11 months and 29 days. Pursuant to U.S.S.G. § 4A1.2(e)(3), no criminal history points are added.

9.   On or about March 26, 2009, the defendant was convicted in the United States District Court for the Eastern District of Virginia of bank fraud, in violation of 18 U.S.C. § 1344.  On or about July 6, 2009, the defendant was sentenced principally to a term of imprisonment of 21 months, followed by a term of supervised release of 5 years.  Pursuant to U.S.S.G. § 4A1.1(a), 3 criminal history points are added.

10. On or about November 19, 2008, the defendant was arrested and subsequently convicted in Montgomery County Circuit Court of unauthorized use or disclosure of a credit card, in violation of Maryland Code § 8-214.  On or about May 18, 2010, the defendant was sentenced principally to a term of imprisonment of 4 years, of which 4 years was suspended, and a term of probation of 5 years.  Because there was an intervening arrest, this sentence is counted separately from the sentence described in the paragraph immediately below, in accordance with U.S.S.G. § 4A1.2(a)(2).  Pursuant to U.S.S.G. §§ 4A1.2(a)(3) and 4A1.1(c), 1 criminal history point is added.

11. On or about January 14, 2010, the defendant was arrested and subsequently convicted in Montgomery County Circuit Court of a theft scheme greater than $500, in violation of Maryland Code § 7-104.  On or about May 18, 2010, the defendant was sentenced principally to a term of imprisonment of 4 years, of which 3 years, 7 months, and 4 days were suspended, and a term of probation of 5 years.  Pursuant to U.S.S.G. §§ 4A1.2(b)(2) and 4A1.1(b), 2 criminal history points are added.

12. On or about November 19, 2010, the defendant was convicted in Fairfax County Circuit Court of larceny by check, in violation of Virginia Code § 18.2-181, and was sentenced principally to a term of imprisonment of 15 months, of which 15 months were suspended.  Pursuant to U.S.S.G. §§ 4A1.2(a)(3) and 4A1.1(c), 1 criminal history point is added.

13. On or about September 20, 2013, the defendant was convicted in Arlington County Circuit Court of possession of a controlled substance, in violation of Virginia Code § 18.2-250, and was sentenced principally to a term of imprisonment of 5 years, of which 4 years, 11 months, and 25 days were suspended.  Pursuant to U.S.S.G. §§ 4A1.2(b)(2) and 4A1.1(c), 1 criminal history point is added.

14. On or about August 14, 2014, the defendant was convicted in the United States District Court for the Eastern District of Virginia of conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2).  On or about October 24, 2014, the defendant was sentenced principally to a term of imprisonment of 60 months, followed by a term of supervised release of 3 years.  On or about September 7, 2018, upon his violation of supervised release, the defendant was sentenced to a term of imprisonment of 15 days with supervised release to continue.  On or about July 19, 2019, upon his violation of supervised release, the defendant was sentenced to a term of imprisonment of 120 days, with no supervised release to follow.  Pursuant to U.S.S.G. §§ 4A1.2(k) and 4A1.1(a), 3 criminal history points are added.

15. Because the defendant committed the instant offense while under a criminal justice sentence, namely, the term of supervised release in his October 24, 2014 sentence from the United

States District Court for the Eastern District of Virginia, 2 criminal history points are added, pursuant to U.S.S.G. § 4A1.1(d).

In accordance with the above, the defendant's Criminal History Category is VI.

### C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 27 to 33 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 11, the applicable fine range is $4,000 to $40,000.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The

defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 27 to 33 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $40,000, and the Government agrees not to appeal any fine that is greater than or equal to $4,000. The defendant further agrees not to appeal any forfeiture or restitution amount that is less than or equal to $41,350, and the Government agrees not to appeal any forfeiture or restitution amount that is greater than or equal to $41,350. The defendant also agrees not to appeal any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or

otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

AUDREY STRAUSS
Acting United States Attorney

By: _____

Alexander Li
Thomas S. Burnett
Assistant United States Attorneys
(212) 637-2265/-1064

APPROVED:

_____

Christopher DiMase
Co-Chief, General Crimes

AGREED AND CONSENTED TO:

_____

Daryl Bartley

DeC. 3, 2020
DATE

APPROVED:

_____

Megan Benett, Esq.
Attorney for Daryl Bartley

January 28, 2021
DATE

KC3TBARP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                          20 CR 003 (KPF)

5   DARYL BARTLEY,

6               Defendant.

7   ------------------------------x
                                        New York, N.Y.
8                                       December 3, 2020
                                        3:20 p.m.
9
    Before:
10
                    HON. KATHERINE P. FAILLA,
11
                                        District Judge
12

13              APPEARANCES (Videoconference)

14  AUDREY STRAUSS
         Acting United States Attorney for the
15       Southern District of New York
    ALEXANDER LI
16  THOMAS BURNETT

17  KREINDLER & KREINDLER
         Attorneys for Defendant
18  BY:  MEGAN BENETT

19

20

21

22

23

24

25

KC3TBARP

1          (Via videoconference, case called)

2          DEPUTY CLERK:  Counsel, please state your name for the

3    record, beginning with the government.

4          MR. LI:  Good afternoon your Honor, Alexander Li for

5    the government.  With me on the line is Thomas Burnett.

6          THE COURT:  Mr. Burnett, I'm not able to see you.  Are

7    you simply appearing for an audio component or also hoping to

8    appear by video?

9          There you are.

10          MR. BURNETT:  I have myself off because Alexander will

11   take the lead.

12          THE COURT:  Thank you.  I'm also happy to see you.

13   Thank you.

14          Ms. Benett, thank you.

15          MS. BENETT:  Megan Benett on behalf of Daryl Bartley,

16   who is on the call by videoconference as well.

17          THE COURT:  Thank you.

18          Mr. Bartley, good afternoon to you, sir.  Have you

19   been able to see and to hear the proceedings that have taken

20   place thus far this afternoon?

21          THE DEFENDANT:  Good afternoon to you, your Honor, as

22   well.  Yes, I have.  I have been tuned in and we've been

23   waiting for you.

24          THE COURT:  Well, thank you.  There was a hiccup in a

25   prior video proceeding we had where my video feed cut out.  I'm

1   hopeful it will not repeat itself today, but my deputy will let
2   me know if it does happen, and I'll keep my phone nearby in
3   case that's a possibility.
4            If at any time you're unable to see me or hear me,
5   please let us know, sir.
6            THE DEFENDANT:  I will, your Honor.
7            THE COURT:  Ms. Benett, there are a few housekeeping
8   measures that I want to review, and the first is that this is a
9   proceeding in Mr. Bartley's criminal case for which he is
10  entitled to have it take place in open court.  I will ask him
11  at some point, I imagine in the near term, but without going
12  into the specifics of your communications, have you discussed
13  with Mr. Bartley the rights that he has to have this proceeding
14  take place in open court and his ability to waive those rights
15  and have the proceeding take place by videoconference?
16           MS. BENETT:  Yes, your Honor, we have discussed that.
17           THE COURT:  May I discuss this directly with your
18  client?
19           MS. BENETT:  Yes.
20           THE COURT:  Mr. Bartley, I know you heard me speaking
21  with your attorney, and I don't want the specifics of your
22  communications with your attorney because they are private, but
23  I do want to make sure that you and she discussed the rights
24  that you have to have this proceeding take place in person and
25  your ability to waive those rights.

KC3TBARP

1    THE DEFENDANT:  Yes, we have, your Honor.  I

2    understand that I have other rights as well, yes.

3    THE COURT:  Mr. Bartley, as a result of your

4    discussions with your attorney, is it your wish today to

5    proceed by videoconference and not in person?

6    THE DEFENDANT:  Yes, it is, your Honor.

7    THE COURT:  Ms. Benett, to that end, there are

8    requirements under the CARES Act that I find that a further

9    delay in this proceeding could work substantial harm to the

10   interests of justice.  There are certain preliminary

11   requirements or findings that have been made by our chief judge

12   regarding the need for certain proceedings to take place by

13   alternate means, but should I turn to you or should I turn to

14   Mr. Li for the factual proffer that would aid me in making the

15   finding that a further delay of this proceeding would work

16   substantial harm to the interests of justice?

17   MS. BENETT:  Your Honor, I could take the lead on

18   that.  Mr. Bartley was presented about a year ago.  He is

19   entering a plea -- he would like to enter a plea to the top

20   charge in the indictment, the conspiracy charge.  He is in a

21   high risk category for Covid-19 for a variety of reasons, not

22   only his age but also he suffers from chronic obstructive

23   pulmonary disorder, asthma, sleep apnea, all of which are

24   comorbidities of Covid.

25   I intend at the time of sentencing to make a

1   submission that asks for a sentence of time served.  And

2   accordingly, delaying the opportunity for him to enter a plea

3   and for us to prepare that sentencing submission for the Court

4   would substantially impair his rights.

5            THE COURT:  One moment, please.

6            (Pause)

7            THE COURT:  Thank you very much.

8            Mr. Li, do you wish to add to anything Ms. Benett has

9   said?

10           MR. LI:  No, thank you, your Honor.

11           THE COURT:  Ms. Benett, obviously I'm not saying

12  anything today as to any sentence that I might ultimately

13  impose because, as I will make clear throughout this

14  proceeding, I don't have the information that I need in order

15  to make such a finding.  But I do understand the statements

16  that you have made, and I understand as well that given the

17  length of this case and the concerns that your client has about

18  its resolution, I believe that I can make a finding that

19  further delay in this case of this plea could cause substantial

20  harm to the interests of justice.

21           Also, because as I'm sitting here talking to you all

22  this afternoon, I have no idea when it will be safe to have

23  proceedings in the courtroom again, and I can imagine it could

24  be on the order of weeks, so I appreciate that and I am making

25  that finding.

1      Ms. Benett, one other housekeeping measure that I will
2   be addressing with you and Mr. Li, I don't believe we have had
3   occasion to speak about this in this case, but about a month
4   ago I issued an order regarding an amendment to Federal Rule of
5   Criminal Procedure 5(f), which requires certain discussions to
6   be had with the prosecutors at the initial conference in a case
7   about their disclosure obligations.
8       Ms. Benett, given that this case is ongoing and
9   therefore it's a little bit unclear how that amendment would
10  apply, it would be my proposal that I inquire of the
11  prosecutors as to whether they have received my written order
12  and whether they are aware of and have complied with the
13  obligations outlined in that order.  But if you would like me
14  to make a more detailed inquiry of them, I will do so.
15      MS. BENETT:  That's not necessary, your Honor.
16      THE COURT:  Thank you.
17      Mr. Li, did you receive a copy of my written order?
18      MR. LI:  Yes, your Honor, I received a copy and I read
19  it in full.
20      THE COURT:  Are you able to speak as well on behalf of
21  Mr. Burnett and your prosecution team in this case?
22      MR. LI:  Yes, I have spoken with Mr. Burnett about
23  that order, and he, too, has read it in full.
24      THE COURT:  Are you able to represent to me and to the
25  defense that the government is in compliance with the

KC3TBARP

1  obligations that are outlined in that order?

2          MR. LI:  Yes.

3          THE COURT:  Thank you, sir.

4          Ms. Benett, would you like me to ask any additional

5  questions of the prosecutor on this issue?

6          MS. BENETT:  No, thank you.

7          THE COURT:  Thank you.

8          Mr. Bartley, at a prior proceeding in this case you

9  were arraigned on this indictment and you entered a plea of not

10  guilty to the charges contained in this indictment.  It is my

11  understanding that today you wish to change your previously

12  entered plea from not guilty and to enter a plea of guilty to

13  Count One of Indictment 20 CR 003 which charges you with

14  conspiracy to commit bank and wire fraud.  Is that your

15  intention today, sir?

16          THE DEFENDANT:  Yes, it is, your Honor.

17          THE COURT:  And Mr. Bartley, before I can accept a

18  change in your plea, I need to ask you a series of questions.

19  So I want to begin this proceeding by explaining to you the

20  purposes that those questions serve.

21          The first thing I would like to do, sir, is to confirm

22  that you are competent to enter a plea of guilty if that is

23  what you wish to do.  When I use that term, what I mean is that

24  you can see and hear and understand what is going on in this

25  proceeding.  And if I find that you are competent, I will be

```
 1   asking you questions about the rights that you have and that
 2   you would be waiving by entering a guilty plea.  I would be
 3   asking you questions about the charge to which you propose to
 4   plead guilty, the elements of that offense and the penalties
 5   associated with it.  And finally, I'm going to ask you some
 6   questions to ensure that you're pleading guilty because you are
 7   in fact guilty of this offense and not for some other reason.
 8            Do you understand that, sir?
 9            THE DEFENDANT:  I do.  Yes, I do, your Honor.
10            THE COURT:  Mr. Bartley, sir, if at any time you
11   cannot hear or cannot understand what I am saying or you would
12   like clarifying information or you would like an opportunity to
13   speak with your attorney, all you need to do is let me know and
14   I will give you that opportunity or that clarification.
15            Will you do that, sir?
16            THE DEFENDANT:  Yes, ma'am.
17            THE COURT:  Mr. Bartley, could you please raise your
18   right hand.
19            (Defendant sworn)
20            THE COURT:  Could you please state your full name.
21            THE DEFENDANT:  Daryl Ferdinand Bartley.
22            THE COURT:  Thank you, sir.  Mr. Bartley, the
23   consequence of my placing you under oath is that if you answer
24   any of the questions that I'm about to ask you falsely, you
25   could be prosecuted for a separate offense, and that offense is
```

KC3TBARP

1    commonly known as perjury.  Do you understand that, sir?

2              THE DEFENDANT:  Yes, I do, your Honor, I do.

3              THE COURT:  Thank you.  Mr. Bartley, how old are you,

4    sir?

5              THE DEFENDANT:  I'm 59.

6              THE COURT:  How far did you go in school?

7              THE DEFENDANT:  I have a BA degree.

8              THE COURT:  And generally speaking, where did you

9    attend school?

10             THE DEFENDANT:  Morehouse College in Atlanta, Georgia.

11             THE COURT:  Thank you.  Did you live in the Atlanta

12   area, sir?

13             THE DEFENDANT:  I lived in the Washington, DC area but

14   went away to school in the Atlanta area, ended up staying there

15   for a while after school as well and beyond, but I lived in the

16   Washington, DC area before I went away to college.

17             THE COURT:  I appreciate the clarification.  Thank

18   you, sir.

19             Mr. Bartley, have you ever been treated or

20   hospitalized for any form of mental illness?

21             THE DEFENDANT:  No, I have not, your Honor.

22             THE COURT:  Are you now or have you recently been

23   under the care of a doctor or a psychiatrist?

24             THE DEFENDANT:  No, I am not, your Honor.

25             THE COURT:  Your counsel mentioned some longstanding

1    conditions that you have.  Are you receiving medical attention

2    for any of those conditions, sir?

3            THE DEFENDANT:  That's what I was going to clarify.

4    Yes, I am receiving lots of medical attention now; no mental

5    medical attention, but lots of respiratory, and I have

6    congestive heart failure, I have -- they call it a-fib, it's an

7    irregular heartbeat, a fibrillation or something, I can't

8    pronounce the word.  I have hypertension, COPD, sleep apnea.  I

9    have a few things going on in my life right now.  And I'm about

10   to see a urologist tomorrow.  I have some other things I'm

11   discovering as well.  So I have quite a few issues going on

12   physically and nothing psychiatrist-wise or mentally, but it

13   may come to that with all of this stuff going on.

14           THE COURT:  Could you tell me, please, I presume that

15   there are certain prescriptions that you're taking for the

16   conditions you have just outlined.

17           THE DEFENDANT:  Yes, ma'am, quite a few.

18           THE COURT:  Quite a few.  Are you able to tell me what

19   they are?

20           THE DEFENDANT:  Of course.  Let me see.  They happen

21   to be sitting right next to me.  One I'm taking, this is

22   called -- you see the commercials all the time, it's apixaban,

23   but another name for it is Eliquis.

24           THE COURT:  Okay.

25           THE DEFENDANT:  I'm also taking Entresto.  I'm also

1    taking Bumetanide.  That's a fluid pill.  I could spell it for
2    you.
3              THE COURT:  Thank you.
4              THE DEFENDANT:  B-U-M-E-T-A-N-I-D-E.  You have that
5    one?
6              THE COURT:  I now do.  That's a new one for me, sir,
7    thank you.
8              THE DEFENDANT:  Okay.  And I'm taking Carvedilol.
9    Should I spell it?
10             THE COURT:  Please.
11             THE DEFENDANT:  C-A-R-V-E-D-I-L-O-L.  I'm also taking
12   Atorvastatin.  Do I need to spell that one?
13             THE COURT:  Just to be safe, sir, thank you.
14             THE DEFENDANT:  A-T-O-R-V-A-S-T-A-T-I-N.  And I'm also
15   taking Metolazone, spelled M-E-T-O-L-A-Z-O-N-E.
16             I have an inhalant as well, and I think that's -- we
17   have recently switched them up a little bit.  Those are the
18   main core that I take twice a day and once a day now, but they
19   have been switched up quite a bit.
20             THE COURT:  Mr. Bartley, do any of these medications,
21   either on their own or in combination with other medications
22   that you taking, affect your ability to see, to hear, or to
23   understand what is going on today?
24             THE DEFENDANT:  No, none whatsoever.  Not at all.
25             THE COURT:  Thank you for letting me know.  Sir, have

KC3TBARP

1   you ever been treated or hospitalized for any form of

2   addiction, including drug or alcohol addiction?

3           THE DEFENDANT:  No.  I did -- well, I was incarcerated

4   from '14 to '17 and I did the RDAP program at Danbury.  That's

5   the only form of treatment that I had ever had.

6           THE COURT:  Ms. Benett, you wanted to add something?

7           MS. BENETT:  I believe, Judge, you said inpatient or

8   outpatient, right?

9           THE COURT:  I did, yes.  Well, I said treated or

10  hospitalized, so I consider inpatient or outpatient both to be

11  treatment.

12          Other than the RDAP program, were there outpatient

13  treatment programs in which you participated, Mr. Bartley?

14          THE DEFENDANT:  No, I'm doing an outpatient program

15  now.  I had been in DC while I'm on pretrial.  I've been doing

16  an outpatient program with an organization called RAP, and my

17  case manager is a Mr. Roof-Elle (phonetic).  I speak to him

18  three times a week by phone because of the pandemic, and other

19  than that, none, no.

20          THE COURT:  Mr. Bartley, has any of the treatments

21  that you have received in the past or are receiving now

22  impacted in any way your ability to see, hear or understand

23  these proceedings?

24          THE DEFENDANT:  None whatsoever, your Honor, no.

25          THE COURT:  Sir, you listed a number of prescriptions

```
 1   for me and I did my best to take them down.  Other than the
 2   prescriptions that you have listed for me, have you taken any
 3   drugs, medicine or pills of any type in the last two days?
 4              THE DEFENDANT:  No, I have not.
 5              THE COURT:  Have you consumed any alcoholic beverages
 6   of any type in the last two days?
 7              THE DEFENDANT:  No, I have not.
 8              THE COURT:  Is your mind clear this afternoon, sir?
 9              THE DEFENDANT:  Yes.  Yes, ma'am, it is.
10              THE COURT:  Do you understand --
11              THE DEFENDANT:  Crystal.
12              THE COURT:  Do you understand what is happening in
13   this proceeding?
14              THE DEFENDANT:  Yes, I do.
15              THE COURT:  Ms. Benett, have you had a sufficient
16   opportunity to discuss this matter with your client?
17              MS. BENETT:  Yes, your Honor.
18              THE COURT:  Do you believe that he understands the
19   nature of the rights that he has and that he would be waiving
20   were he to enter a guilty plea in this case?
21              MS. BENETT:  Yes.
22              THE COURT:  Do you also believe that he understands or
23   is capable of understanding the nature of these proceedings
24   this afternoon?
25              MS. BENETT:  I do.
```

KC3TBARP

```
 1            THE COURT:  Ms. Benett, do you have any doubt as to
 2   Mr. Bartley's competence to plead guilty if that is what he
 3   wishes to do?
 4            MS. BENETT:  I do not, your Honor.
 5            THE COURT:  Mr. Li, do you have any doubt as to
 6   Mr. Bartley's competence to plead guilty if that is what he
 7   wishes to do?
 8            MR. LI:  I do not, your Honor.
 9            THE COURT:  Mr. Bartley, based on our discussion this
10   afternoon, and that includes both your responses to my
11   questions and my observations of your demeanor on this
12   videoconferencing platform, and based as well on the
13   conversations that I just had with your attorney and with the
14   attorney for the government, I find that you're fully competent
15   to enter a knowing and informed plea of guilty if that is what
16   you wish to do.
17            Mr. Bartley, among the documents that you may have
18   nearby is a document that says in the upper right-hand corner
19   "Indictment."  Have you seen that?  Do you know the document of
20   which I speak?
21            THE DEFENDANT:  Yes, I do, your Honor, and yes, I
22   have, yes.
23            THE COURT:  I will wait for you to just get that
24   indictment.  And just so that we're looking at the same
25   document, I believe you might also have a letter to your
```

KC3TBARP

1    attorney from the government that is dated November 24 of this

2    year, so you might want to have a copy of that document nearby.

3    Just let me know when you have both of those documents nearby.

4              THE DEFENDANT:  I have them both in front of me, your

5    Honor.

6              THE COURT:  Thank you.  Mr. Bartley, we have talked

7    about this indictment in the past and I have asked you some of

8    these questions previously, but given the nature of this

9    proceeding it is important that I ask them again.

10             Have you read this document, sir?

11             THE DEFENDANT:  Yes, I have, your Honor.

12             THE COURT:  Have you had enough of an opportunity to

13   discuss this document with your attorney?

14             THE DEFENDANT:  I have indeed, yes, your Honor.

15             THE COURT:  More pointedly, sir, have you had enough

16   of an opportunity to speak with your attorney about the charge

17   to which you propose to plead guilty, which is Count One of

18   this indictment, and any defenses that you may have to that

19   charge?

20             THE DEFENDANT:  Yes, I have, your Honor.

21             THE COURT:  Without giving me the details of your

22   communication, have you and your attorney discussed the

23   consequences of entering a plea of guilty in this case?

24             THE DEFENDANT:  Yes, we have.

25             THE COURT:  Are you satisfied with your attorney's

1   representation of you in this matter?

2            THE DEFENDANT:  Yes, totally, your Honor.  Yes, ma'am.

3            THE COURT:  Thank you, sir.  Mr. Bartley, I'm going to

4   ask you some questions now about the rights that you have and

5   that you would be waiving or giving up were you to enter a

6   guilty plea.  And you have been paying very careful attention,

7   I appreciate that.  Once again, sir, if there is anything that

8   is confusing or any reason that you would like to speak to your

9   attorney, please let me know.

10           THE DEFENDANT:  Yes, I will.  Thank you, your Honor.

11           THE COURT:  Mr. Bartley, under the Constitution and

12  laws of the United States, you have the right to continue with

13  your previously entered plea of not guilty to the charges

14  contained in the indictment.  Do you understand that, sir?

15           THE DEFENDANT:  Yes, I do.

16           THE COURT:  If you continued with your plea of not

17  guilty, you would be entitled to a speedy and public trial by a

18  jury on the charges contained in the indictment.  Do you

19  understand that, sir?

20           THE DEFENDANT:  Yes, I do, your Honor.

21           THE COURT:  If there were a trial in this case, the

22  government would be required to prove you guilty by competent

23  evidence beyond a reasonable doubt and you would not have to

24  prove that you were innocent if you were to go to trial.  Do

25  you understand that?

KC3TBARP

```
 1              THE DEFENDANT:  Yes, I do.

 2              THE COURT:  A jury of twelve people would have to

 3     agree unanimously that you were guilty of these offenses.  You

 4     would not have to prove that you were innocent of any offense

 5     if you were to go to trial.  Do you understand that, sir?

 6              THE DEFENDANT:  I do indeed.

 7              THE COURT:  Mr. Bartley, at a trial and at every stage

 8     of your prosecution, you are entitled to the assistance of an

 9     attorney.  If and to the extent that you cannot afford an

10     attorney, an attorney is appointed for you at public expense

11     free of cost to you in order to represent you.  Do you

12     understand that, sir?

13              THE DEFENDANT:  I do.  Yes, I do, your Honor.

14              THE COURT:  If there were a trial in this case, the

15     witnesses for the government would have to come in to court and

16     testify in your presence.  Your attorney could cross-examine

17     the government's witnesses.  She could object to the

18     government's evidence.  She could offer evidence on your own

19     behalf if you wanted her to do so.  You would also have the

20     right to have subpoenas or other documents or process used in

21     order to compel witnesses to testify in your defense.  Do you

22     understand each of those things, sir?

23              THE DEFENDANT:  Yes, I do, your Honor.

24              THE COURT:  Mr. Bartley, if there were a trial in this

25     case, you would have the right to testify if you wanted to do
```

KC3TBARP

```
 1   so and you would have the right not to testify if you wanted

 2   not to do so.  If you decide not to testify, no one, including

 3   the jury, could draw any inference or suggestion of guilt from

 4   your decision not to testify.  Do you understand that, sir?

 5              THE DEFENDANT:  Yes, I do, is your Honor.

 6              THE COURT:  Another consequence of entering a guilty

 7   plea in this particular that matter is that you waive or give

 8   up your right to seek supression or exclusion of part or all of

 9   the government's evidence against you.  Do you understand that,

10   sir?

11              THE DEFENDANT:  Yes, I do, yes.

12              THE COURT:  And without giving me the specifics of any

13   communications that you may have had with your attorney, have

14   you had a sufficient opportunity to discuss with her whether

15   there is any basis to seek supression or exclusion of the

16   government's evidence against you?

17              THE DEFENDANT:  Yes, I have, your Honor.

18              THE COURT:  Do you understand, sir, that if you were

19   convicted at a trial, you would have the right to appeal from

20   the jury's verdict?

21              THE DEFENDANT:  Yes, I do.

22              THE COURT:  Do you also understand even now as you're

23   entering this plea you have the right to change your mind and

24   to continue with your previously entered pleas of not guilty?

25              THE DEFENDANT:  Yes, I do.
```

```
1        THE COURT:  Mr. Bartley, if you plead guilty, and if I
2    accept your guilty plea, you will give up your right to trial
3    and other rights that I have been discussing with you other
4    than your right to an attorney, because you have the right to
5    an attorney whether you plead guilty or go to trial.  But if
6    you plead guilty, and if I accept your guilty plea, there will
7    be no trial.  I will enter a judgment of guilty on Count One of
8    this indictment and I will sentence you at a later date based
9    on information that I obtain from you today, information that I
10   obtain from the United States Probation Office in a document
11   known as a presentence investigation report, and information
12   that I obtain from you and your attorney and the attorneys for
13   the government in connection with sentencing.
14        If you plead guilty and if I accept your guilty plea,
15   there would be no appeal on the issue of whether the government
16   could use the evidence that it has against you, there would
17   also be no appeal on the issue of whether you in fact committed
18   the offense to which you plead guilty.  Do you understand each
19   of those things, sir?
20        THE DEFENDANT:  Yes, I do, your Honor.
21        THE COURT:  I also want to make sure you understand
22   that if you plead guilty, there is a degree to which you will
23   give up your right not to incriminate yourself.  And what I
24   mean by that is I will be asking you questions later in this
25   proceeding to confirm that you are pleading guilty because you
```

1    are in fact guilty of this offense and not for some other

2    reason.  You will have to admit and acknowledge your guilt of

3    the offense charged in Count One.  Do you understand that, sir?

4              THE DEFENDANT:  Yes, I do, your Honor.

5              THE COURT:  Mr. Bartley, do you understand each of the

6    rights that I have been discussing with you for the past few

7    minutes?

8              THE DEFENDANT:  Yes, I have.

9              THE COURT:  Would you like me to provide any

10   additional or clarifying information about any of these rights?

11             THE DEFENDANT:  No, I think I'm pretty clear on those,

12   your Honor, thank you.

13             THE COURT:  And is it your wish today, sir, to give up

14   your right to trial and the other rights that I have been

15   discussing with you and to enter a plea of guilty to Count One?

16             THE DEFENDANT:  Yes, it is, your Honor.

17             THE COURT:  That count charges you with conspiring or

18   agreeing with others to commit bank and wire fraud in violation

19   of Section 1349 of Title 18 of the United States Code.  Are you

20   aware of that, sir?

21             THE DEFENDANT:  Yes, ma'am, I am, your Honor.

22             THE COURT:  Mr. Li, can I ask you, please, to state

23   for me and for Mr. Bartley the elements of this offense?

24             MR. LI:  Of course.  Count One charges the defendant

25   with one count of conspiracy to commit bank fraud and wire

1    fraud.  That offense has two elements.  In order to prove to

2    the defendant guilty, the government would be required to prove

3    beyond a reasonable doubt:  First, that two or more people

4    conspired to commit bank fraud and wire fraud; and second, that

5    the defendant willfully joined the conspiracy knowing of its

6    unlawful objective.

7             Now the first element referred to a two-object

8    conspiracy, that is, a conspiracy to commit bank fraud and wire

9    fraud, and those each have their own elements.  As to the first

10   object, bank fraud, there are three elements:  First, that

11   there was a scheme or artifice to defraud a financial

12   institution or to obtain money or property owned or under the

13   control of a financial institution by materially false and

14   fraudulent pretenses, representations or promises; second, that

15   the defendant knowingly executed the scheme or artifice to

16   defraud; third, that the financial institution was insured by

17   the Federal Deposit Insurance Corporation.

18            Now the second object of the conspiracy charged in

19   this case is wire fraud, and that itself also has three

20   elements:  First, that there was a scheme to defraud another

21   out of money or property by means of false or fraudulent

22   pretenses, representation or promises; second, that the

23   defendant knowingly and willfully participated in the scheme to

24   defraud; and third, that the interstate wires was used in

25   furtherance of the scheme.

```
 1            Finally, for this offense the government would need to
 2     establish that venue is proper in the Southern District of New
 3     York by preponderance of the evidence.
 4            THE COURT:  Mr. Li, thank you very much.
 5            Mr. Bartley, were you able to hear the prosecutor just
 6     now?
 7            THE DEFENDANT:  Yes, I was, your Honor.
 8            THE COURT:  And do you understand, sir, if you were to
 9     elect to go to trial that is what the government would have to
10     prove at trial?
11            THE DEFENDANT:  Okay.  One moment.  Okay, I lost you
12     for a moment.  What did you say, your Honor, I'm sorry?
13            THE COURT:  No problem, sir.  My point of asking the
14     prosecutor to outline those elements was to make sure that you
15     understood that if you were to go to trial, that's what the
16     government would have to prove at a trial in this case.
17            THE DEFENDANT:  Yes, I'm aware.  I understand that,
18     yes.
19            THE COURT:  I notice as well, sir, that your picture
20     froze up probably at the same time that my picture froze up.
21     If you want to move to a location that you have better
22     reception --
23            THE DEFENDANT:  No, I hear you fine and I see you
24     clearly.  I'm okay now.  I just needed to stretch for a moment.
25     I don't know if that had anything to do with it.
```

1          Is my picture getting smaller?

2          THE COURT:  That's not the issue, no.  It does move

3    around a bit, but I suspect that's because you have been moving

4    around a bit.  I now understand why.

5          THE DEFENDANT:  Just a little bit, yes.

6          THE COURT:  Mr. Bartley, what I'm going to do now is

7    talk to you about the penalties associated with the Count One

8    offense, and I'm focused in the first instance on the maximum

9    possible penalties that the law permits me to impose.  This is

10   not to suggest that this is necessarily what you're going to

11   receive, but I do want to make sure that you understand that by

12   pleading guilty, you're exposing yourself to the possibility of

13   receiving any combination of punishment up to the statutory

14   maximum terms that I'm about to describe.  Do you understand,

15   sir?

16         THE DEFENDANT:  Yes, I do, your Honor.

17         THE COURT:  I'm going to focus first on restrictions

18   on your liberty.  And the maximum term of imprisonment for this

19   offense is 30 years.  Do you understand that, sir?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Do you also understand that any term of

22   imprisonment that I impose could be followed by a term of up to

23   five years of supervised release?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I'm going to talk to you for a moment

1   about supervised release, sir, and that is:  When I use that
2   term, what I mean is it's a period of time where you would be
3   subject to supervision by the United States Probation Office.
4   There would be terms and conditions of supervised release that
5   you would have to follow, and if you were unable or unwilling
6   to follow those terms and conditions, the possibility exists
7   that I could revoke your term of supervised release and that I
8   could send you to prison to serve time without a jury trial.
9   If that were to happen, in the event of a revocation of your
10  supervised release term, if I imposed a term of imprisonment
11  upon revocation, you wouldn't get any credit for any time that
12  you spent serving any other term of imprisonment.  You also
13  wouldn't get any credit for any time that you spent on
14  supervised release in compliance with its terms.  Do you
15  understand each of those things about supervised release, sir?

16          THE DEFENDANT:  I think so.  I'm pretty certain I do.
17  So you're saying if my supervised supervision was -- if you
18  revoked it and I had to end up being sentenced to go back or
19  into prison, none of the previous times would count, it would
20  be as if I'm starting a fresh sentence.  Is that what you're
21  saying?

22          THE COURT:  That's exactly correct, sir.

23          THE DEFENDANT:  That's what I thought you were saying.
24  Yes, I do understand that.

25          THE COURT:  And on the issue of time that you had

1    spent in compliance, you wouldn't be able to get a credit
2    against your sentence for the months of time that you had been
3    in compliance with your terms and conditions.

4                THE DEFENDANT:  Understood.

5                THE COURT:  That's a rather long way of saying that
6    one should not violate the terms and conditions of supervised
7    release, but I will leave that directive for another day, sir.

8                THE DEFENDANT:  Yes, ma'am.

9                THE COURT:  I also want to make sure that you
10   understand that there is no parole in the federal system.  If
11   you were sentenced to a term of imprisonment, you would not be
12   released early on parole.  There is an opportunity to earn
13   credit for good behavior, but even then you would still have to
14   serve approximately 85 percent of any term of imprisonment
15   imposed.  Do you understand that, sir?

16               THE DEFENDANT:  Yes, I do, your Honor.

17               THE COURT:  In addition to these restrictions on your
18   liberty, the maximum possible punishment also includes certain
19   financial penalties.  The maximum allowable fine is the
20   greatest of these three things:  One million dollars, twice the
21   gross pecuniary gain derived from the offense or twice the
22   gross pecuniary loss to persons other than yourself, whichever
23   is the greatest.  I could order restitution to any person or
24   entity who has been injured as a result of your criminal
25   conduct.  And I believe that in this case the government has

KC3TBARP

1    calculated that restitution figure to be $41,350.  I could also

2    order you to forfeit any proceeds that you may have derived

3    from the offense or any property that you may have used to

4    commit or to facilitate the commission of the offense.  And

5    here as well I believe the government is seeking forfeiture in

6    the amount of $41,350.  And I must order a mandatory special

7    assessment of $100 per count of conviction.

8            Do you understand, sir, that these restrictions on

9    your liberty and these financial penalties taken together are

10   the maximum possible penalties associated with this offense?

11           THE DEFENDANT:  Yes, I, do, your Honor.

12           THE COURT:  Mr. Bartley, I have to ask you a series of

13   questions now, and my experience has been that not all of these

14   questions are applicable to everyone but I have to ask them

15   nonetheless.  So I will begin by asking:  Are you a United

16   States citizen, sir?

17           THE DEFENDANT:  Yes, I am.

18           THE COURT:  And you were born in this country, sir, or

19   are you a naturalized citizen?

20           THE DEFENDANT:  I was born in this country.

21           THE COURT:  I ask, sir, because a guilty plea of this

22   type can have adverse immigration consequences, but since you

23   are born here, I will ask you something different.

24           Do you understand, sir, that as a result of this

25   guilty plea, you could lose certain valuable civil rights to

1   the extent that you have them today or could obtain them or

2   reobtain them in the future.  These would include the right to

3   vote, the right to hold public office, the right to serve on a

4   jury, and the right to possess a firearm.  Are you aware of

5   that, sir?

6            THE DEFENDANT:  Yes, I am, your Honor.

7            THE COURT:  At this time, Mr. Bartley, are you serving

8   any other sentences?

9            THE DEFENDANT:  No, I'm not, your Honor.

10           THE COURT:  And might you be on parole or supervised

11  release for any other offenses at this time?

12           THE DEFENDANT:  I was, but I'm not anymore, no.

13           THE COURT:  I see.  And to the best of your knowledge,

14  sir, are you being prosecuted in any other jurisdiction but

15  this one?

16           THE DEFENDANT:  No, I am not, your Honor.

17           THE COURT:  Mr. Bartley, the reason I'm asking these

18  questions is because sometimes folks appear before me and they

19  have multiple cases going on at the same time or they have a

20  criminal proceeding and a parole hearing.  And what I want to

21  make sure you understand is that resolving the case before me

22  resolves the case before me, it doesn't necessarily resolve any

23  other matter that you could have.  Do you understand that, sir?

24           THE DEFENDANT:  Yes, I do.

25           THE COURT:  Mr. Bartley, without giving me the

KC3TBARP

1    specifics of your communications, have you discussed with your

2    attorney the process of sentencing?

3            THE DEFENDANT:  Yes, I think so.  I'm pretty certain

4    we did.  We talked about giving the plea today, setting a

5    sentencing date for a later date.

6            THE COURT:  Let me stop you, please, because I

7    certainly don't want to intrude on your private communications

8    with your attorney, ask the question a little differently.  You

9    understand, sir, that I will be the judge who will be

10   sentencing you?

11           THE DEFENDANT:  I did not, but now I do.

12           THE COURT:  Do you understand, sir, that at the time

13   of your sentence I must consider certain factors, and there are

14   sentencing factors that are set forth in a statute.  Are you

15   aware of that?

16           THE DEFENDANT:  Yes, I am.

17           THE COURT:  And one of the factors that I must

18   consider is something called the United States Sentencing

19   Guidelines.  Is that a term that's familiar to you, sir?

20           THE DEFENDANT:  Yes, ma'am, it is, indeed.

21           THE COURT:  If I use the term "guidelines" or

22   "sentencing guidelines," that's what I'm referring to.  What I

23   would like to make sure, Mr. Bartley, is that you understand

24   that if anyone has attempted to predict what your ultimate

25   sentence will be, their prediction could be incorrect.  As I

KC3TBARP

1    just mentioned, I will be the judge sentencing you, and I need
2    to have information that I don't yet have.  I need to hear from
3    you today, I need to hear from the probation office, and I need
4    to hear from you, your attorney, and the government attorneys
5    at sentencing.  So do you understand, sir, that today no one
6    can predict with any confidence what your ultimate sentence
7    will be?

8              THE DEFENDANT:  Yes, I do understand that.

9              THE COURT:  Do you also understand if your sentence is
10   different from what anyone might have suggested to you, if it
11   is different from what you expected or hoped for, if it is
12   different from any range contained in any agreement that you
13   may have with the government, you would still be bound by your
14   guilty plea.  You would not be permitted to withdraw your
15   guilty plea based merely on dissatisfaction with your sentence.
16   Do you understand that, sir?

17             THE DEFENDANT:  Yes, I do, your Honor.

18             THE COURT:  Mr. Bartley, I am told and I am advised
19   that you are pleading guilty today pursuant to a written plea
20   agreement with the government.  Am I correct?

21             THE DEFENDANT:  Yes, I am.

22             THE COURT:  And in preparation for this proceeding, I
23   was given a letter that is dated November 24 of 2020 from the
24   United States Attorney's Office for the Southern District of
25   New York to your attorney, Ms. Benett.  I'm going to hold up a

1    copy, although I'm not sure how legible it will be, but is that

2    a document that looks familiar to you, sir?

3         THE DEFENDANT:  I'm holding it in my hand as well

4    right now, your Honor, yes.

5         THE COURT:  Okay.  Now let me ask this, it may have

6    been -- the copy that I received last night did not have

7    signatures on it, have you emailed to us a copy with the

8    signatures on it?

9         THE DEFENDANT:  Yes, I have, your Honor.

10        THE COURT:  You emailed to your attorney?

11        THE DEFENDANT:  To my attorney.

12        THE COURT:  Is it you or Ms. Benett who has sent it to

13   us?

14        THE DEFENDANT:  Ms. Benett.

15        MR. LI:  Your Honor, this is Alexander Li.  I received

16   the signed copy from Ms. Benett earlier today.  We sent it to

17   chambers approximately half an hour before the plea was

18   scheduled.  I apologies for the delay.  It was about 2:30 p.m.

19   And I believe your Honor's law clerk acknowledged receipt.

20        THE COURT:  Thank you.  Let me do this, please, and I

21   want to print out that version of it.

22        MS. BENETT:  This is Megan Benett.  To be clear, the

23   delay was on the defense end, not the government's.

24        THE COURT:  I'm not looking to blame anyone.  I was

25   confident that at some point I would get a version with

KC3TBARP

1    signatures, and I'm happy to know that I now have it, but I do

2    think it makes the most sense for me to use that in this

3    proceeding.

4              MS. BENETT:  I think you'll see -- unless Mr. Li was

5    able to work some magic, I think you will see the resolution on

6    the signature pages is not terrific, but I want to reassure the

7    Court that pages 4 and 5 of the document that you have in your

8    hand Mr. Bartley has right now.  You'll see it's the same as

9    the others.

10             THE COURT:  Yes, it's an attractive signature page.

11   I'm now holding it up.

12             Mr. Bartley, I'm going to mark this version of the

13   document as Court Exhibit 1, and at some point I believe I will

14   be sending all of these to the U.S. Attorney's Office for

15   safekeeping, but for now I will hold onto it.

16             Sir, the copy that I received shortly before this

17   proceeding has a page 8 with a number of signatures on it.  I

18   will hold up the document, sir, recognizing that it's -- are

19   you able to see the signatures on this document, Mr. Bartley?

20             THE DEFENDANT:  Vaguely, yes.

21             THE COURT:  Is one of them yours?

22             THE DEFENDANT:  Yes, it is.

23             THE COURT:  And did you sign that document today, on

24   the 3rd of December?

25             THE DEFENDANT:  Yes, I did, your Honor.

KC3TBARP

1          THE COURT:  Before you signed this document -- well,

2     let me back up a moment.  Mr. Bartley, is this your plea

3     agreement with the government?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Before you signed this document, did you

6     read it?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  And to the extent that you had any

9     questions about it, were you able to discuss those questions

10    with your attorney?

11         THE DEFENDANT:  I was, yes.

12         THE COURT:  At the time that you signed this document,

13    did you understand its provisions?

14         THE DEFENDANT:  I did, yes, ma'am.

15         THE COURT:  Do you have a copy of the document nearby,

16    sir?

17         THE DEFENDANT:  Yes, I do, your Honor.

18         THE COURT:  And does the copy that you have also have

19    your signature on the back of it?

20         THE DEFENDANT:  It does indeed, yes.

21         THE COURT:  Thank you.  Mr. Bartley, I'm going to

22    direct your attention to a couple of provisions in this

23    agreement because I want to make sure that you and I have the

24    same understanding about those provisions.  I'm going to begin

25    with page 1 of the agreement and I'm looking at the last

KC3TBARP

1    paragraph on page 1.  Tell me, please, when you're there, when

2    you're looking at the same part of the document.

3              THE DEFENDANT:  I'm here.

4              THE COURT:  Thank you, sir.  Mr. Bartley, I understand

5    in this paragraph that you are admitting to the forfeiture

6    allegation that is associated with Count One of the indictment,

7    and that you are agreeing to forfeit to the United States a sum

8    of money equal to $41,350, is that correct?

9              THE DEFENDANT:  That's correct.

10             THE COURT:  Sir, could I ask you, please, to turn to

11   page 2 of the agreement and tell me when you've gotten to page

12   2.

13             THE DEFENDANT:  I'm at page 2, your Honor.

14             THE COURT:  If you look at the first full paragraph on

15   page 2, it is my understanding that in that paragraph you are

16   agreeing to make restitution in connection with certain

17   statutes in the amount of $41,350, is that correct?

18             THE DEFENDANT:  That's correct.

19             THE COURT:  Now sir, I'm looking at pages 2, 3, 4 and

20   the top of 5.  And what I understand to be happening in these

21   pages is that you and the government are agreeing or

22   stipulating that the United States Sentencing Guidelines apply

23   to your case in a particular fashion.  Is that your

24   understanding as well?

25             THE DEFENDANT:  Yes, ma'am.

KC3TBARP

1          THE COURT:  Mr. Bartley, please understand that I'm

2     not a signatory to this agreement and I'm not bound by it, and

3     I, in fact, have an independent obligation to calculate the

4     guidelines.  This is not to say that I'm going to come up with

5     a different number than you and the government have stipulated

6     to, but I did want to make sure you understood my independent

7     obligation to calculate the guidelines.  Do you understand

8     that, sir?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  And do you understand, sir, that if I

11     correctly calculate the guidelines range and I come up with a

12     different range than the range that you have in this agreement

13     of 27 to 33 months, that would not be a basis for you to

14     withdraw your guilty plea.  Do you understand that, sir?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Mr. Bartley, could you please turn to page

17     6 of the agreement and let me know when you're at page 6?

18          THE DEFENDANT:  I'm at page 6, your Honor.

19          THE COURT:  Thank you, sir.  I'm looking at the first

20     full paragraph on page 6.  It begins with the words "it is

21     agreed."  Do you see that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  Mr. Bartley, my understanding is that in

24     this provision, this paragraph of the agreement, you and the

25     government are each waiving or giving up your right to do

KC3TBARP

1  certain things if certain things take place at sentencing.  And

2  I will be a little more specific there because I think my

3  sentence was a bit confusing.  You are agreeing not to appeal

4  or to bring other collateral challenges through a petition or a

5  motion under Sections 2241 or 2255 of Title 18 of the United

6  States Code, you're agreeing not to challenge certain pieces of

7  your sentence if certain things happen at sentencing.  Is that

8  your understanding of this paragraph, sir?

9          THE DEFENDANT:  Yes, it is, your Honor, yes.

10          THE COURT:  I know you and government have both agreed

11  to waive things.  I'm going to focus on your waivers today.  I

12  understand, sir, that you're agreeing to waive your right to

13  appeal or otherwise challenge a sentence of imprisonment within

14  or below the range of 27 to 33 months imprisonment.  So if I

15  were to impose a term of 33 months imprisonment or something

16  less than that, you're agreeing not to appeal that piece of

17  your sentence, is that correct?

18          THE DEFENDANT:  That's correct.

19          THE COURT:  I understand later in that paragraph you

20  are agreeing not to appeal any term of supervised release that

21  is less than or equal to the statutory maximum of five years,

22  and so that means if I impose a five-year term of supervised

23  release or something less than that, you're agreeing not to

24  appeal that piece of your sentence, is that correct?

25          THE DEFENDANT:  Yes, I am, that's correct.

KC3TBARP

```
 1            THE COURT:  I also understand that you are agreeing
 2    not to appeal any fine that is less than or equal to $40,000,
 3    any forfeiture or restitution amount that is less than or equal
 4    to $41,350, and any special assessment that is less than or
 5    equal to $100.  Am I also correct, sir?
 6            THE DEFENDANT:  Yes, you are.  That's correct, your
 7    Honor.
 8            THE COURT:  Thank you.
 9            Mr. Li, are there additional provisions of the
10    agreement that you would like me to review with Mr. Bartley
11    this afternoon?
12            MR. LI:  No, thank you, your Honor.
13            THE COURT:  Mr. Bartley, I am going to ask you a bit
14    of a broader question, sir, and that is the following:  Does
15    this agreement that you and I have been discussing for the past
16    few minutes constitute your complete and total understanding of
17    the agreement that you have with the government?
18            THE DEFENDANT:  Yes, it does.
19            THE COURT:  Mr. Bartley, I'm going to ask you the
20    question from the opposite perspective, and this is not to
21    trick you, it's just to make sure I understand this completely.
22    To the best of your knowledge, sir, has anything been left out
23    of this agreement?
24            THE DEFENDANT:  Nothing that I can think of, no,
25    ma'am.
```

KC3TBARP

```
 1              THE COURT:  Mr. Bartley, other than what is contained
 2    in this agreement, has anyone made you any promise or offered
 3    you any type of inducement in order to get you to plead guilty
 4    or to sign this agreement?
 5              THE DEFENDANT:  No one has not.  No, they have not, no
 6    one.
 7              THE COURT:  They have not.  Thank you.  I know you and
 8    I both had a couple of negatives there, I do appreciate that.
 9              Separately, has anyone threatened you or forced you to
10    plead guilty here today or to sign this agreement?
11              THE DEFENDANT:  No, no one has.
12              THE COURT:  Has anyone made any promise to you as to
13    what your ultimate sentence will be?
14              THE DEFENDANT:  No, no one has not.
15              THE COURT:  May I hear that again, please?
16              THE DEFENDANT:  No, no one hasn't.  Let's try that
17    again.
18              THE COURT:  No promises have been made to you,
19    correct?
20              THE DEFENDANT:  None whatsoever, yes.  That's correct.
21              THE COURT:  I'm glad we both understand what the other
22    is saying.
23              Mr. Bartley, could you please tell me in your own
24    words what it is you did that makes you believe that you are
25    guilty of Count One of this indictment.
```

```
 1          THE DEFENDANT:  Okay.  Let's see the best way to put
 2     that.  Well, I know that I established an account, deposited an
 3     instrument in an account that was not made out to me, and
 4     proceeded to withdraw the money by ATM.
 5          THE COURT:  Ms. Benett, may I ask your client some
 6     follow-up questions?
 7          MS. BENETT:  Sure, yes, of course.
 8          THE COURT:  And obviously, Ms. Benett, if I'm asking a
 9     question that you would prefer he not answer, you'll tell him
10     not to answer, but I don't think I'm going to be going into
11     that territory.
12          Mr. Bartley, at some point in the 2018 to 2019 time
13     period, did you enter into an agreement with one or more other
14     people?
15          THE DEFENDANT:  Yes, I did, your Honor.
16          THE COURT:  The people with whom you entered into that
17     agreement, at least one of them was a civilian, by which I mean
18     not a law enforcement officer or undercover, correct, they were
19     just regular people?
20          THE DEFENDANT:  That's correct, your Honor.
21          Could I ask my attorney a question privately, please,
22     or somehow?
23          THE COURT:  Sure.  Ms. Noriega --
24          THE DEFENDANT:  Sorry for the interruption.
25          THE COURT:  That's fine.  I want to make sure you are
```

KC3TBARP

1    giving me your best answer.

2              DEPUTY CLERK:  They would have to turn off their video

3    and call each other on a different line and mute their video.

4              MS. BENETT:  I can call on a cell phone.

5              THE DEFENDANT:  I can give you a number if you call me

6    right quick.  Are you ready?

7              DEPUTY CLERK:  Judge, there is public on the phone.  I

8    don't know if you want that number --

9              THE COURT:  Mr. Bartley --

10             MS. BENETT:  Text me the number that you want me to

11   use.

12             THE DEFENDANT:  Hold on.

13             THE COURT:  Ms. Noriega, would Mr. Bartley be able to

14   get off of this call and then call back in?

15             DEPUTY CLERK:  Yes, Judge.

16             THE COURT:  Mr. Bartley, if that's easier for you.

17             THE DEFENDANT:  Probably so, your Honor.

18             THE COURT:  We'll see you momentarily then.

19             THE DEFENDANT:  Thank you very much, your Honor.

20             (Pause)

21             MS. BENETT:  Mr. Bartley should be right back.

22             THE COURT:  Ms. Benett, when he returns, do you wish

23   me to ask him follow-up questions or does he wish to state

24   something on the record?

25             MS. BENETT:  I think it's fine if you ask follow-up

```
 1    questions.  I wish he were here.

 2              THE COURT:  I'm sure he will be here momentarily.

 3              MS. BENETT:  There is one thing that I will clarify

 4    when he is on the call.

 5              THE COURT:  Thank you.

 6              (Pause)

 7              MS. BENETT:  Sorry, everybody, I called Mr. Bartley to

 8    check to make sure he wasn't having problems, and apparently I

 9    disconnected his efforts to join back in.  So I promised him I

10    will not call him again.

11              THE COURT:  We look forward to his admission.

12              (Pause)

13              THE DEFENDANT:  Okay, there you are, your Honor.  I

14    apologize to you and everyone else for the delay.  I was having

15    complications getting on.

16              THE COURT:  Mr. Bartley, you owe us no apologies, but

17    at this moment I am not seeing your video.

18              THE DEFENDANT:  No, you will.

19              THE COURT:  Thank you.  So much, much better.

20              I understand Ms. Benett came on a moment before you

21    did and she indicated when you returned there was some --

22              THE DEFENDANT:  Say that again, your Honor?

23              THE COURT:  Whose phone is ranging?

24              THE DEFENDANT:  That's my home line, land line.

25              MS. BENETT:  Can you mute your phone for a second?
```

KC3TBARP

1      THE DEFENDANT:  Mute my phone, yes.

2      THE COURT:  Go ahead, Ms. Benett.

3      MS. BENETT:  I wanted to mention on the FDI insured

4   element, I'm not sure what representation the Court thinks

5   would be sufficient on that, but Mr. Bartley can allocute as to

6   the nature of the financial institution where he made the

7   deposits, but I don't know if he can -- I don't think the

8   government -- I imagine the government might have proved that

9   up with other evidence.  Perhaps the description of the

10   financial institution itself would be sufficient to meet that

11   element.

12      THE COURT:  What I typically do, Ms. Benett, is I ask

13   the government to make a proffer that the banks involved in the

14   case are insured by the FDIC.  I ask the defense if they

15   contest or any have any reason to dispute that proffer.  Will

16   that work for you?

17      MS. BENETT:  That's great, thank you.

18      THE COURT:  All right.  Mr. Bartley, just to return,

19   sir, when we were speaking before the break you indicated to me

20   that you did have an agreement with other individuals.  And my

21   understanding, sir, was that agreement is something where the

22   group agreed to obtain money, basically, obtain property by

23   means of setting up these accounts at banks, depositing checks

24   that didn't belong to the person who was depositing them, and

25   then withdrawing the funds.  Is that fair to say that that's

KC3TBARP

1   part of the agreement, sir?

2              THE DEFENDANT:  That's pretty accurate, your Honor.

3   That's correct, yes.

4              THE COURT:  And I would think of that, sir, as a

5   scheme, as a way of obtaining money or property that belongs to

6   someone else.  Would you agree with me on that point, sir?

7              THE DEFENDANT:  Yes, I could agree with that, yes.

8              THE COURT:  And it sounds like, either by using the

9   ATMs or using -- I imagine there were phone calls or text

10  messages, that in the course of this scheme, you and your

11  colleagues used the wires, either because of a telephone call,

12  because of a text, because of an email or because of the wire

13  transfer, is that fair, sir?

14             THE DEFENDANT:  Yes, I would think so.  The ATM

15  wouldn't count as a form of wiring?

16             THE COURT:  I'm not sure that it would.  Did you have

17  a single email communication with anybody else involved in the

18  matter?

19             THE DEFENDANT:  No, not that I -- no, I can't say that

20  I did.

21             THE COURT:  It doesn't have to be you, sir, who uses

22  the wires, it may be that one of your colleagues did.  I'll ask

23  the government for that information in a moment.  But you told

24  me that some of your personal involvement involved setting up

25  an account at the bank, depositing funds in the bank, and

KC3TBARP

1    withdrawing money from the bank.  Is that correct?

2                THE DEFENDANT:  That's correct.

3                THE COURT:  At the time that you did that, sir, did

4    you have an understanding that either the person whose name was

5    on the check or the bank could be deprived of that money

6    because of the conduct that you were engaging in?

7                THE DEFENDANT:  Yes, I did, your Honor.

8                THE COURT:  At the time that you did this, sir, were

9    you or was any of your colleagues in the Southern District of

10   New York, which would include Manhattan, the Bronx, Westchester

11   County or counties north of Westchester?

12               THE DEFENDANT:  I wouldn't know anything in New York,

13   I was in the DC area.

14               THE COURT:  I will speak to the government about the

15   involvement of folks in this district.

16               THE DEFENDANT:  Yes, I'm not familiar with what took

17   place in your particular district.  I have no knowledge.

18               THE COURT:  At the time that you engaged in the

19   conduct that you've been describing for me, did you understand

20   that what you were doing was wrong and illegal?

21               THE DEFENDANT:  Yes, I did, your Honor.

22               THE COURT:  Mr. Li, would you like to make a proffer

23   as to the FDIC, as to venue, and as to use of the wires?

24               MR. LI:  Yes, your Honor, I can make a proffer as to

25   all three.  If this matter were to go to trial, the government

1    would introduce documentary records showing that the banks, the

2    victims of defendant's conduct, were in fact insured by the

3    Federal Deposit Insurance Corporation.

4            With respect to the use of the wires, the government

5    would introduce evidence that co-conspirators used internet and

6    cellular services to communicate with each other in furtherance

7    of the scheme.

8            And with respect to venue, the government would

9    proffer and introduce evidence showing that co-conspirators in

10   this conspiracy successfully directed victims located in

11   Yonkers and in Manhattan to transfer money over the wires from

12   bank branches located in Manhattan and in Yonkers to the

13   co-conspirators.

14           THE COURT:  Thank you.

15           Ms. Benett, do you or does your client have any reason

16   to dispute the factual proffers that the government has just

17   made to me?

18           MS. BENETT:  No, your Honor.

19           THE COURT:  Ms. Benett, do you know of any valid

20   defense that would prevail at trial or any reason why your

21   client should not be permitted to plead guilty?

22           MS. BENETT:  No, your Honor.

23           THE COURT:  Mr. Li, are there additional questions

24   that you would like me to ask of Mr. Bartley?

25           MR. LI:  No, thank you, your Honor.

KC3TBARP

1          THE COURT:  I have already gotten from you, Mr. Li, a
2    factual proffer so I will not ask for that again.
3          Sir, do you agree that there is a sufficient factual
4    predicate for a guilty plea to Count One?
5          MR. LI:  I do, your Honor.
6          THE COURT:  If Mr. Bartley wants to plead guilty to
7    Count One, is there any reason why I should not accept it?
8          MR. LI:  I know of no such reason, your Honor.
9          THE COURT:  Ms. Benett, do you agree that there is a
10   sufficient factual predicate for a guilty plea to Count One?
11         MS. BENETT:  Yes, Judge.
12         THE COURT:  If your client wishes to plead guilty to
13   Count One, is there any reason why I should not accept that
14   plea?
15         MS. BENETT:  None, your Honor.
16         THE COURT:  Mr. Bartley, at this time do you wish to
17   enter a plea of guilty to Count One of Indictment 20 CR 003?
18         THE DEFENDANT:  I do, your Honor.
19         THE COURT:  Mr. Bartley, because you've acknowledged
20   that you are in fact guilty of this offense, because I'm
21   satisfied that you're aware of your rights, including your
22   right to go to trial, because I'm satisfied that you're aware
23   of the elements of the offense and the penalties associated
24   with it, I find that you are knowingly and voluntarily pleading
25   guilty, and I will accept your guilty plea and I will enter a

1    judgment of guilty on Count One of the indictment.

2               We spoke earlier about sentencing, which is, in fact,

3    what I understand to be the next phase in this case.  And the

4    probation office will want to interview you in connection with

5    the presentence investigation report that you heard me refer to

6    a little while ago.  I'm going to order that that interview not

7    take place unless your attorney is present.  Now I'm not sure

8    whether these are taking place by phone or video, I suspect

9    they're both, but I wanted to make sure that it doesn't take

10   place unless your attorney is nearby.  Do you understand, sir?

11              THE DEFENDANT:  Yes, thank you, your Honor, I do, yes.

12              THE COURT:  And Mr. Bartley, I won't provide you legal

13   advice because you have very competent counsel to do that, but

14   I do want you to understand that I rely very heavily on the

15   presentence investigation report in determining what is an

16   appropriate sentence.  I'm telling you this so that you

17   understand that if you choose to speak to the probation office,

18   you might want to ensure that what you say to them is complete

19   and accurate, because I will be relying on that report so

20   heavily.  I also want to make sure you understand that you have

21   the right to review that report before I see it, as does your

22   attorney, as do the attorneys for the government.  And I invite

23   you to review that report, sir, in case there's anything that

24   requires modification or clarification.

25              Do you understand what I have just said?

```
1            THE DEFENDANT:  Yes, I do, your Honor.
2            THE COURT:  Thank you.
3            Ms. Noriega, I have a date for sentence?
4            DEPUTY CLERK:  Thursday, April 1st, 2021 at 3:00 p.m.
5            THE COURT:  My hope is that is a date and time that
6     works for everyone.
7            Mr. Li, if you have not done this already, could you
8     please provide probation with the factual statement within next
9     week or so?
10            MR. LI:  Yes, your Honor, we will be sure to do that.
11            THE COURT:  Ms. Benett, in the next two weeks, could
12     you at least schedule or get on the schedule of interviews with
13     the probation office?
14            MS. BENETT:  Yes, that's fine.  I am checking on that
15     April date.  I may actually have a conflict on my calendar.
16            That is the sentencing date, not a control date,
17     correct?
18            THE COURT:  It is a sentencing date and not a control
19     date.  Tell me, are you on trial or out of district?
20            MS. BENETT:  I am supposed to be out of district that
21     week and the week before.
22            THE COURT:  When will you return?
23            MS. BENETT:  I would be returning, because of the --
24     given the quarantine rules, I don't know if I could appear
25     right away the following week, so could I ask that we put it on
```

KC3TBARP

 1    for the week of April 12?

 2              THE COURT:  Ms. Noriega, do we have time that week?

 3              DEPUTY CLERK:  Wednesday, April 14, at 2:30.

 4              THE COURT:  Is that a date and time that works for

 5    everyone?

 6              I will take that as a yes, thank you.

 7              I'm going to ask for your defense submission two weeks

 8    in advance of sentencing and I will ask for the government's

 9    responsive submission one week in advance of sentencing.

10              Also in preparation for this proceeding I received a

11    document with another curious signature page called a Consent

12    Preliminary Order of Forfeiture Money Judgment.  I will hold up

13    the document and see if that's a document that looks familiar

14    to you.  Do you have a copy of this one as well, sir?

15              THE DEFENDANT:  Yes, I do, your Honor, yes.

16              THE COURT:  On the back page of the document you will

17    see some signatures.  Do you see those, sir?

18              THE DEFENDANT:  Yes, I do.

19              THE COURT:  Is one of those yours?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Did you sign that today, sir?

22              THE DEFENDANT:  Yes, I did.

23              THE COURT:  Before you signed this document, did you

24    read it?

25              THE DEFENDANT:  Yes.

KC3TBARP

```
1            THE COURT:  And to the extent that you had any
2    questions, were you able to resolve those questions with your
3    attorney?
4            THE DEFENDANT:  I was indeed.
5            THE COURT:  So at the time that you signed this, sir,
6    did you understand what you were signing?
7            THE DEFENDANT:  Yes, I did.
8            THE COURT:  Okay.  Mr. Li, it is my practice to docket
9    this document but I'm just anticipating the clerk's office
10   might not really like the signature page.  Could you get, if I
11   may call it such, a cleaner version that you could send my way?
12           MR. LI:  Of course, your Honor.  I will coordinate
13   with defense counsel to make sure that happens.
14           MS. BENETT:  I could send the originals into the
15   government's hands.  We could make that happen.
16           THE COURT:  That's fine, and I appreciate it, just
17   because I'm having a little difficulty reading the last page,
18   and I could imagine the clerk's office putting up a bit of a
19   fuss before docketing it.  So I will wait to receive from you
20   all a cleaner copy of the signature page and you could simply
21   email that to our chambers' inbox.  And I will hold off on
22   signing and docketing this until I get that page, because I
23   don't think there is any immediacy to signing this order.
24           Mr. Li, it doesn't have to be signed today, correct?
25           MR. LI:  That is correct, it does not have to be
```

KC3TBARP

1  signed today.

2          THE COURT:  I will not sign it today, sir, thank you.

3          Mr. Li, I did not sense that the government had any

4  request for modification of Mr. Bartley's bail conditions, am I

5  correct?

6          MR. LI:  That is correct, your Honor.

7          THE COURT:  From your perspective, sir, are there

8  additional issues to discuss with me today?

9          MR. LI:  Not from my perspective.  Thank you, your

10  Honor.

11          THE COURT:  Thank you.

12          Ms. Benett, I would like to address your client on his

13  bail conditions and on the sentencing date.  May I do so?

14          MS. BENETT:  Yes.

15          THE COURT:  Mr. Bartley, you are still on bail

16  conditions.  Do you remember signing a bond earlier in this

17  case?

18          THE DEFENDANT:  Yes, I do, your Honor.

19          THE COURT:  Those conditions continue to apply, sir.

20  I don't want you to think that because you pleaded guilty you

21  now have no conditions or restrictions.  They are all still

22  there.  Do you understand, sir?

23          THE DEFENDANT:  Yes, I do, absolutely.

24          THE COURT:  Thank you, sir.  Separately, you just

25  heard me schedule a sentencing date of April 14 of next year.

1   If there are any conferences in this case where I order you to

2   appear, and your sentencing is going to be one of them, you

3   need to appear for that proceeding.  As time progresses we can

4   talk about whether certain things will be done by video or in

5   person, but what I do need you to understand is that if I order

6   you to be somewhere, either by video or in person, you have to

7   be there.  And if you're not, you could be charged with a

8   separate offense that is commonly known as bail jumping.

9   Mr. Bartley, will you appear when I tell you to appear?

10          THE DEFENDANT:  With bells on, yes, I will.

11          THE COURT:  Not the answer I normally get, but I

12   certainly will accept it.

13          THE DEFENDANT:  I will be there, yes.

14          THE COURT:  Ms. Benett, now that I clarified with your

15   client the issues of bail and his obligation to be in court,

16   that's all I had planned to discuss with him today.  From your

17   perspective, is there anything else that we should be

18   addressing today?

19          MS. BENETT:  We have nothing else, your Honor.

20          THE COURT:  Thank you all very much.  Stay healthy,

21   have a happy holiday season.  I will see you in the new year.

22   We are adjourned.

23          THE DEFENDANT:  Thank you, your Honor.

24          (Adjourned)

25



KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

October 26, 2021

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

      Re:    *U.S. v. Daryl Bartley*, 20 cr. 00003 (S.D.N.Y.) (KPF)

Dear Judge Failla:

    Daryl Bartley is before this Court to be sentenced for his role in a conspiracy to commit bank and wire fraud.  Mr. Bartley, nearly 60-years old, suffers from congestive heart disease and advanced heart failure (and would be eligible for a heart transplant if not for his obesity), chronic obstructive pulmonary disease, hypertension, sleep apnea and other medical problems.  He lives with his elderly mother, maintains close relationships with his two sons and their mothers and has completed drug treatment and sought mental health services during the course of this case.  As discussed in greater detail below, Mr. Bartley – recognizing his request constitutes a substantial variance from the Sentencing Guidelines recommendation of 27-33 months – respectfully requests that this Court impose a hybrid sentence of a nine-month period of home detention followed by probation with a community service requirement of 200 hours, which, we believe would constitute a sufficient but not greater than necessary sentence in this case.

I.      **Offense Conduct**

    As Mr. Bartley has admitted, on two occasions he participated in this conspiracy by depositing a stolen check into an account held by a shell company and by making an opening deposit under an alias.  The stipulated-to intended-loss amount of those two fraudulent transactions was $55,162 (and the actual loss was $41,350).  The parties have agreed, as has the Probation Department, that Mr. Bartley's offense conduct under the Sentencing Guidelines is 11.  Were this Mr. Bartley's first offense, the advisory sentencing range would be only 8-14 months (and the recommendation would fall within Zone B of the Sentencing Guidelines, which expressly anticipates potential sentences of, among other things, probation with community confinement or home detention.) – reflecting the Sentencing Commission's conclusion that the offense conduct was meaningful yet modest.

But, of course, this is not Mr. Bartley's first offense – nor even his second or third, and his Sentencing Guidelines range is driven substantially higher by his substantial criminal history. Given this history, it is evident, if unfortunate, that incarceration alone has not accomplished one of the goals of the federal sentencing regime – deterrence. Perhaps, then, the analysis here is better focused on what sort of sentence is sufficient but not greater than necessary to accomplish the additional goals of the federal sentencing regime – just punishment, protecting the public and rehabilitation, while also taking into consideration the nature of the offense and Mr. Bartley's history and background, and to look at other factors, specifically, Mr. Bartley's rapidly declining health, as accomplishing the deterrent goals.

As discussed below, given the limited offense conduct, Mr. Bartley's myriad health complications, the likely grave consequences of incarceration and the alternative sentences available, home confinement combined with probation and community service can accomplish the goals of the federal sentencing regime without being a sentence more severe than necessary to reflect the seriousness of the offense, punish Mr. Bartley, protect the public and assist with rehabilitation.

## II.      Objections to Pre-Sentence Investigation Report

The defense has no objections to the description of the offense conduct, the calculation of the offense level or the criminal history calculation in the Probation Department's Pre-Sentence Investigation Report (PSR). For the reasons discussed herein, however, we disagree with the PSR sentencing recommendation.

## III.      A Sentence of Home Confinement Followed by Probation with a Substantial Community Service Requirement is Sufficient But Not Greater Than Necessary in this Case

As the Court is well-aware, the Sentencing Guidelines are "*not mandatory* on sentencing courts" and are "also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). In imposing a sentence, courts are required to consider the factors set forth in 18 U.S.C. § 3553(a) to create an "individualized assessment" based on a defendant's particular circumstances. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). A court must impose a sentence below the range recommended by the Guidelines if such a sentence would satisfy the purposes of § 3553(a). *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 183-84 (2d Cir. 2010); *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

Given Daryl Bartley's limited role in the criminal conspiracy as well as his history and characteristics, in particular his acute medical condition, a below-Guidelines sentence would reflect the seriousness of the offense while meeting the other requirements of 18 U.S.C. § 3553(a).

October 26, 2021
Page 3

### A. Daryl Bartley's Personal History

Daryl Bartley was born in Washington, D.C. to Sarah Bartley and Harvey Stewart. Daryl's father's role in his life was minimal and Daryl was raised essentially by his mother alone. Sarah Bartley was a librarian at the Library of Congress and childcare was difficult on her sole salary, so when Daryl was just a toddler he was sent to South Carolina, where he lived with his grandmother until he was 10-years old. After that, Daryl returned to Washington, D.C., enrolling in its public school system and living with his mother until he left for college in 1979. *See generally*, Exhibit A, Daryl Bartley Letter.

That year, Daryl matriculated at Morehouse College in Atlanta, Georgia. His academic studies were focused on business and while in college he and some schoolmates decided that they would transform the theoretical into the practical and started their own company. Corporate Courier employed other students as couriers for local Atlanta-based businesses and gave Daryl a taste of entrepreneurial success.[1]

Inspired by his first foray into the business world, Daryl left Morehouse before obtaining his degree to take a job with R.R. Donnelly & Sons in Chicago. Richard Robert Donnelly founded the printing and publishing company in 1864 and in 1908 the founder's son established the Lakeside Press Apprentice School. That program was intended to combine instruction with practical work and was a feeder into the company's executive and managerial ranks. Daryl was invited to join the apprenticeship program, one of only two out of fifty in his applicant group who were invited to do so, but left the company soon after completing the program, returning to Washington, D.C.

Upon his return to his hometown, Daryl went into cable contracting and communications, going into business with a friend who had been the outside plant manager for the D.C.-based TeleCommunications, Inc. ("TCI," now known as Comcast.) Mr. Bartley's role was to secure all the rights of easements from all of the property owners in D.C. where TCI wanted to place cable. After about two years of doing so, Daryl had the opportunity to move to Chicago working for TCI itself as a cable television advertising executive.

By the time he moved to Chicago, Daryl had met and married Bridgette Gidron and there they had their first and only child together. Their son was severely disabled and, ultimately, the two decided to move to the New York City area so they could be close to Bridgette's family, who wanted to help them with their son. Upon moving to New York, Daryl found a job with Cablevision, where he started as an advertising manager in the Bronx and Bridgette stayed home to care for their son and attend to his various and demanding needs.

---

[1] Daryl Bartley did his best to recall the chronology of his employment history both with counsel and during PSR interviews (for this case and prior ones). Given the passage of time and lapses in memory, however, some of which can be attributed to Daryl's history of substance abuse, recalling the sequence of which job came when and what years he lived in what places was challenging. The description herein is based on several meetings and collateral interviews and is, we believe, a reasonable timeline of Daryl's work life and a highlights those moments that were most important to him.

A-145

October 26, 2021
Page 4

The pressure, however, of being the sole financial support of the family and the stress of a high-need child weighed on Daryl and impacted the marriage. Bridgette's father owned a highly successful group of Cadillac dealerships in the Bronx and Westchester County. Richard Gidron was New York's first Black Cadillac dealer – and only the nation's second – and developed an empire that reached to lawmakers, sports figures and celebrities. *See Richard D. Gidron is Dead at 68; Ran an Empire of Car Dealerships*, The New York Times, Oct. 15, 2007. Bridgette as well as her parents measured Daryl against his father-in-law's success, with Daryl always falling short and the couple separated in the late 1990s, formally divorcing in 2000. (The irony of this highly successful man to whom he could never compare having a fall from grace Daryl knows all too well is not lost on Daryl.)

After Daryl and Bridgette separated, Daryl returned to Chicago and again worked with the friend who had introduced him to the cable industry in Washington, D.C. They created a company that was involved in underground and aerial construction for cable television networks as well as audits of the physical materials involved in the construction projects. That company ultimately dissolved when they brought in a third business partner who promised financial support but ultimately fell short of his promises.

While in Chicago, Mr. Bartley met Jodi Bailey, who, unlike his former wife, also worked outside of the home, relieving some of the financial pressure that Mr. Bartley had felt in his marriage. In the mid-1990s, the couple moved to Atlanta, where Mr. Bartley partnered with National Basketball Association player Dale Davis, a member of the Indiana Pacers, to start a sports marketing company. Mr. Davis and Daryl Bartley shared friends and lived near each other in the Atlanta area, where Mr. Davis stayed in the off-season. Around that time, Daryl and Jodi purchased a home together. The business with Mr. Davis never realized its promise, however. Soon after that, Mr. Bartley began working with Horace Jones, the father of his dear from Rev. Conrad B. Tillard, who had a music production company focusing on gospel music acts. As Conrad's brother Rev. Shana E. Jones explains, while working with Mr. Jones "Daryl helped advance the careers of several of MCA Universal's signed talent." *See* Exhibit B, Letters in Support at 6.

Though both of Daryl's long-term relationships ultimately dissolved, he remains friendly with Bridgette and Jodi and remains a presence in both of his sons' lives. Indeed, when his younger son and Jodi were living in upstate New York and Daryl living in Washington, D.C., Daryl would regularly make weekend trips to watch his son play football and to spend time together. Indeed, at one point Daryl's son asked to move from New York to live full-time with Daryl, which the parents agreed to try. Daryl welcomed his son by finding a home in Arlington, Virginia's Yorktown High School, a strong school with a renowned football program. Daryl then for the next two years worked on getting his son a spot at St. Stephen's, an Episcopal independent school, as well as a full scholarship to attend it. It was soon thereafter, unfortunately, that Mr. Bartley, in part experiencing the pressure to establish a home and routine that would allow his son to feel on a par with his school peers, engaged in the conduct underlying his 2014 conviction, resulting in a five-year prison term and causing unfortunate and substantial collateral damage to his family.

An additional struggle that has been present throughout all of Daryl's adult stages of life – college student, entrepreneur, company man, husband, parent, aspiring entertainment representative – was the simultaneously defining and self-destructive thread of substance dependence. As his dear friend Conrad explains, Daryl's "struggles with an addictive personality and substance abuse issues" have been an issue for much of his life. *See* Exhibit B, Letters in Support at 1. Daryl began using drugs while in college, primarily powder cocaine. While at first, his drug use was occasional, he found the desire difficult to resist and what was infrequent became weekly and then daily. Since then – for the past four decades – Daryl has turned to drugs, usually cocaine, during periods of depression and anxiety. During his current pre-trial supervision, Daryl has again addressed this head-on, participating in multiple programs with notable success. As his primary counselor at Regional Addiction Prevention, Incorporated, Andre Ruth-El, states, Mr. Bartley gave "great feedback" to his peers in group sessions, was always on time and was simply "an outstanding person" who has "shown that he has taken in the information" of the program. *See* Exhibit C, Mr. Ruth-El Letter. Likewise, program director of Preventive Measures, Mr. Averrett Brown, confirms that Daryl "successfully completed the Day Rehab Program" focusing on "overcoming drug addiction" as well as "receiving mental health services … since December 2020 to October 2021." *See* Exhibit D, Letters from Preventive Measures at 1.

Somewhat remarkably, despite Daryl's long history of substance dependence – and despite his long criminal history – his friends have stayed close and loyal. This is a reflection of how giving and loyal Daryl has been and remains, in turn, to them. When a young college student at Northeastern University, Shanan sought out Daryl's counsel, which helped lead him to the clergy. Daryl introduced Shanan to books he would not have otherwise read (David Halberstam's *The Best and The Brightest*, for example), lent him money and shared with Shanan and Shanan's friends the mistakes of his life in hoping to navigate them around those risks.

How someone with the love and support Daryl has received over his life has continued to make the mistakes he has may be difficult to understand. The offense conduct in this case arose during a period of crisis in his life, when he felt nothing was going right. He had no job; he had no car; he could not get a job because of his criminal history. Every time he applied for a job his criminal history would come up and he would be turned away. Each time he thought a door would open – an interview for a sales job, an opportunity in marketing – that door would slam in his face. He tried to procure work for which he was overqualified, once getting close to a job doing surveys for the bus company where all he had to do was ride the bus and count the people up one stop and back, but even that he could not get because of his record. If he found a way to get a car, he would not be able to Uber or Lyft because of his background. For the first time since he went to college, he was living with his mother, dependent on her for not just shelter but food and money, as well. He was, in short, feeling desperate. He saw a chance to make quick money and he foolishly and took it.

October 26, 2021
Page 6

### B. Daryl Bartley's Serious Health Conditions and the Severe Consequences of Institutional Confinement

Daryl Bartley approaches this sentencing with his sixtieth birthday around the corner and his health rapidly deteriorating. As documented by medical records, Daryl suffers from congestive heart failure, chronic obstructive pulmonary diseases (COPD), atrial fibrillation, high blood pressure, pre-diabetes, sleep apnea and obesity. *See* Exhibit E, Selected Medical Records at 1. Earlier this year, Daryl became a patient of the advanced heart failure program at Washington Hospital Center under the care of Dr. Sriram Rao. Dr. Rao explains that Daryl's "fairly severe cardiomyopathy" would make him eligible for a possible heart transplant but for his weight. *See* Exhibit F, Dr. Rao Letter.

Over the course of his period of pre-trial supervision, he has had at least seven hospitalizations, with three of them prolonged, and has been evaluated for a possible heart transplant and has put on substantial weight. *See, e.g.,* Exhibit E, Selected Medical Records at 10-13 (07/08/2020 hospitalization), 20-21 (07/28/2020 hospitalization), 23-25 (08/30/2020 hospitalization), 26 (01/12/2021 hospitalization), 27 (02/20/2021 hospitalization), 28 (recommendation to be admitted to hospital 04/13/2021), 35-37 (06/20/201 hospitalization), 32-34 (06/28/2021 three-week hospitalization for "acute decompensated heart failure"), 43-47 (08/24/2021 one-week hospitalization); Exhibit F, Dr. Rao Letter.[2]

Daryl Bartley's complex medical issues weigh in favor of a sentence that he can serve outside of a congregate Bureau of Prisons setting for two reasons: (i) he is at high risk of death or severe outcomes should he contract covid-19, which continues to be a particularly acute risk in prisons; and (ii) given the complexity of his medical conditions, Daryl is unlike to receive adequate treatment within the Bureau of Prisons system.

### i. Covid-19 Co-Morbidities and Risk of Severe Consequences

As the medical records unequivocally demonstrate, Daryl Bartley squarely falls within that cohort of people that the Centers for Disease Control has identified as being at high risk for severe illness or death should he contract covid-19 with not just one but multiple documented comorbidities.[3]

For example, "[s]omeone with pre-existing heart disease who becomes ill with covid-19 may suffer a heart attack or develop congestive heart failure. This rapid worsening of cardiovascular health is likely due to a combination of the severe viral illness and its increased

---

[2] Daryl was also hospitalized again in September 2021 and we are awaiting those medical records.

[3] *See* CDC, People Who are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last accessed October 21, 2021.

October 26, 2021
Page 7

demands on the heart (fever causes rapid heart rate, for example), compounded by low oxygen levels due to pneumonia and increased propensity for blood clot formation."[4]

Likewise, COPD, a long-term lung disease that makes it hard to breathe leaves an individual more susceptible to severe complications if they contract covid-19.[5] "Like influenza and the common cold, coronavirus can cause an upper respiratory infection, which can make breathing difficult. That puts those who already have respiratory ailments, such as chronic obstructive pulmonary disease, or COPD, at a higher risk for severe and potentially life-threatening complications."[6] When covid-19 "venture[s] deeper into the lungs" the "results [are] pneumonia-like symptoms, requiring hospitalization and sometimes intubation on a ventilator."[7]

Numerous studies have also linked obesity to higher rates of severe illness, hospitalization and death from covid-19.[8] In fact, a study last year by researchers from Kaiser Permanente found that obesity is actually a higher risk factor for death among covid-19 patients than other risk factors and is especially dangerous for men and younger patients.[9]

---

[4] *See* Dara K. Lee Lewis, How does cardiovascular disease increase the risk of severe illness and death from COVID19?, Harvard Health Blog (Apr. 2, 2020), https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401, last accessed October 21, 2021.

[5] *See* https://www.lung.org/lung-health-diseases/lung-disease-lookup/copd, last accessed October 21, 2021.

[6] Levine, David, "Coronavirus and Asthma," U.S. News & World Report, March 27, 2020, https://health.usnews.com/conditions/articles/coronavirus-and-asthma, last accessed October 22, 2021.

[7] Joel Achenbach, New CDC Data Shows Danger of Coronavirus, The Washington Post (Mar. 31, 2020), https://www.washingtonpost.com/health/new-cdc-data-on-underlying-health-conditions-in-coronavirus-patients-who-need-hospitalization-intensive-care/2020/03/31/0217f8d2-7375-11ea-85cb-8670579b863d_story.html, last accessed October 22, 2021.

[8] *See, e.g.,* Katherine Wu, *Studies Begin to Untangle Obesity's Role in Covid-19*, N.Y. Times (Sept. 29, 2020) (citing recent report finding that obese people infected with covid-19 "were more than twice as likely to end up in the hospital and nearly 50 percent more likely to die of Covid-19"); Sarah Boseley, *Obesity increases risk of Covid-19 death by 48%, study finds*, The Guardian, Aug. 26, 2020 (citing recent study finding that "[o]besity increases the risk of dying of Covid-19 by nearly 50% and may make vaccines against the disease less effective."); *Relationship between COVID-19 deaths and morbid obesity*, Science Daily (Aug. 20, 2020) (describing a study finding a significant relationship between obesity and death from covid-19).

[9] *See* Sara Y. Tartof, PhD, et al, *Obesity and Mortality Among Patients Diagnosed With COVID-19: Results From an Integrated Health Care Organization*, Annals of Internal Medicine (Aug. 12, 2020), https://www.acpjournals.org/doi/10.7326/M20-3742, last accessed October 25, 2021.

October 26, 2021
Page 8

One federal court has summarized the risk of obesity in stark terms:

A number of recent studies have further investigated the link between obesity and severe illness and death from COVID-19. One study discovered an "increasing risk of death with degree of obesity." In other words, the higher a person's BMI is, the greater the risk that COVID-19 will prove fatal for that person. Another recent study of nearly 7,000 COVID patients found that obesity is associated with a 2-4 times greater risk of death, especially for men and all people under 60 years old.

*United States v. Perkins*, 14 Cr. 104 (LM), 2020 WL 4783558, at *4 (D.N.H. Aug. 18, 2020) (recommending that the BOP temporarily release inmate with obesity and hypertension) (internal citations omitted).

Despite relatively high numbers of vaccination, and despite Daryl's own vaccination, the nation continues to grapple with the covid-19 pandemic and Daryl's co-morbidities place him at risk of severe outcomes or death were he to contract covid-19, which is far more likely were he detained in a Bureau of Prisons (BOP) facility than detained at home.

The impact of the pandemic on persons incarcerated in the BOP has been devastating. According to BOP's reporting, since the pandemic began, 256 individuals have died in BOP custody due to COVID-19 while another 42,940 incarcerated individuals and 8,022 staff have contracted the disease. The rapid spread of the highly contagious delta variant—even among vaccinated individuals—underscores the uncertainty around this pandemic and the ongoing risks to individuals in custodial settings like jails and prisons.

Public health experts have repeatedly opined that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings."[10] The particularly acute threat of contracting covid-19 in a prison environment is a natural consequences of the manner in which inmates are housed, the general lack of hygiene and quality medical care and the overcrowding that are typical in prison facilities.[11]

---

[10] "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at https://bit.ly/2W9V6oS, last accessed October 21, 2021.

[11] *See, e.g.*, Timothy Williams et al., "'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars," THE NEW YORK TIMES (Mar. 30, 2020); *Remick v. City of Philadelphia*, No. 20 Civ. 1959, Doc. 1, Ex. A (E. D. Pa. Apr. 20, 2020) (Declaration of Joseph J. Amon, Ph.D., MSPH, Director of Global Health and Clinical Professor of Community Health and Prevention at the Drexel Dornsife School of Public Health, at 5); Joseph A. Bick, *Infection Control in Jails and Prisons. Clinical Infectious Diseases,* Healthcare Epidemiology, Oct. 15, 2007) at 1047-55 (noting that in prison facilities, "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise").

Given Daryl's unique and complicated health conditions, leading to the many different hospitalizations over the course of his current pre-trial release, alone, it is highly likely that should Daryl contract covid-19 (altogether possible with the variations responsible for the current numbers of infections among vaccinated populations percolating in highly-dense carceral settings) he will be at risk of severe outcomes or even death. This is, surely, not a goal of the federal sentencing regime and the appropriate punishment here must take into account the risk Daryl faces and should accommodate that risk with an alternative to incarceration if there is one that will serve the goals of the federal sentencing regime.

ii. **Limitations of Medical Care Within the Bureau of Prisons**

While the BOP, of course, has medical professionals on staff as well as medical facilities, the reality is that Daryl Bartley will not receive care if in BOP custody commensurate with what he is currently receiving or with what he needs to adequately treat his complex, interacting medical conditions. As demonstrated by Dr. Rao's letter, Daryl requires close follow-up by the specialists at the advanced heart failure center and consults with them on a biweekly basis. *See* Exhibit F, Dr. Rao Letter. And, of course, he has required repeated acute medical attention in a hospital setting – this year alone on five separate occasions.

Unfortunately, there are endemic problems with BOP health care, which a 2004 Department of Justice report attributed in part to challenges presented by the prevalent institutional attitude. "A final issue generated by the tension between care and custody has to do with moralism—the belief that those convicted of serious crimes have somehow earned their suffering, as if the pain of illness and old age in prison were a part of the inmate's just deserts. These beliefs are widespread and intense among some custody personnel and are prevalent also among health care providers." U.S. Dept. of Justice, *Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates* at 48 (2004).

Four years later, the Department of Justice audited the BOP, and in its subsequent report, *The Federal Bureau of Prison's Efforts to Manage Inmate Health Care* (February 2008), documented numerous deficiencies in both quality and management of health care.[12] Critical to Daryl Bartley, 94% of inmates had not received a cardiovascular risk calculation in five years, 12% had not received a glucose check in three years and 29% had not received cholesterol checks over five years. *Id.* at ix.

Then, in 2016, the Department of Justice reported on the BOP's "serious challenge" in "recruitment and retention of medical professionals. *Review of the Federal Bureau of Prisons' Medical Staffing Challenges*, March 2016.[13] The report found that despite its obligation to provide medical care to incarcerated individuals, "many institutions remain understaffed, limiting the amount of care that an institution can provide." *Id.* at 2. Further, the report concluded that the BOP's salaries and incentives were not competitive with the private sector

---

[12] Available at https://oig.justice.gov/reports/BOP/a0808/final.pdf, last accessed October 21, 2021.

[13] Available at https://www.oversight.gov/sites/default/files/oig-reports/e1602.pdf, last accessed October 22, 2021.

October 26, 2021
Page 10

and that "[a]s a result, health services units are left understaffed, with increased workloads that limit the amount of medical care that can be provided inside an institution." *Id.* at 7.

A 2000 scholarly review of the provision of medical care in prisons reached similar conclusions, raising concerns about the competency medical staff that the BOP was able to hire and retain:

> physician assistants (PAs) provide 75% to 80% of all primary care to inmates ("BOP and DOD," 1997); however, many PAs "do not meet the training and certification requirements of the medical community outside" of correctional facilities (U.S. General Accounting Office, 1994, p. 3). For example, "34 of the 66 physician assistants working in the Federal Bureau of Prisons at its seven medical referral centers have not . . . graduated from a program approved by the American Medical Association nor obtained certification from the National Commission on Certification of Physician Assistants" (U.S. General Accounting Office, 1994, p. 11).

Dabney, Dean & Vaughn, Michael. (2000). Incompetent Jail and Prison Doctors. Prison Journal - PRISON J. 80. 151-183. 10.1177/0032885500080002003.

Emblematic of these challenges and the work-arounds the BOP has developed, its current Health Services Division leader is Michael Smith, who has no medical training at all. *See* Federal Bureau of Prisons, About Our Agency, Health Services Division, accessible at https://www.bop.gov/about/agency/org_hsd.jsp (last accessed October 21, 2021).

The intractable issues surrounding provision of medical care are another factor that must be considered in the context of Daryl Bartley's sentence. Other courts have, for example, found that the ability to receive proper medical treatment must be taken under consideration as an 18 U.S.C. § 3553(a) factor. *See United States v. Spigner*, 416 F.3d 708, 712 (8th Cir. 2005) (reversing and remanding for resentencing based solely on the defendant's health as "[t]he district court was required to impose a sentence reflective of [the defendant's] need for medical care."; *United States v. Carmona-Rodriguez,* 2005 WL 840464, *4 (S.D.N.Y., April 11, 2005) (court recognized that needed medical care is a factor that must be considered along with the guidelines.); *Nellum,* 2005 WL 300073, at 4 (stating that § 3553(a)(2) and *Booker* "'require judges to impose sentences that ... effectively provide the defendant with needed medical care.'") (quoting *Booker,* 125 S.Ct. at 765.); *see also United States v. Wadena*, 470 F.3d 735, 739 (8th Cir. 2006)("the overarching policy [of the guidelines and 3553] is clear: in some situations, a district court may impose a non-prison sentence when a defendant has serious medical needs.")

Just as the risk of contracting covid-19 and suffering severe outcomes weighs in favor of an alternative to incarceration should it be possible to fashion a reasonable one, so, too, do the limits of competent medical care for someone with Daryl's conditions (and repeated hospitalizations).

October 26, 2021
Page 11

**IV.    Nine Months of Home Incarceration Followed by Probation with a Specific and Substantial Community Service Requirement is Sufficient but Not Greater Than Necessary to Accomplish the Federal Sentencing Regime's Goals in this Case**

During his time on pre-trial supervision in this case, which commenced in early 2000, Daryl Bartley has been living with and caring for his elderly mother. Were this Court to impose a nine-month or longer period of home incarceration, Daryl would have his freedom of movement severely restricted, which certainly would constitute punishment for his role in the conspiracy, while protecting him from the real and serious risk of severe health outcomes he would face in a carceral setting. (Becoming severely ill, disabled or dying from incarceration might also constitute punishment, but would be a punishment far beyond the goals of the federal sentencing regime in this case.) Home incarceration would also allow Daryl to continue to look after his mother and, as she ages into her 80s, potentially save her from having to enter an assisted living facility or nursing home.

A period of probation following such home incarceration would also allow the Court to follow Daryl's progress and, should he slip, the Court would have a full arsenal of consequences, from further home incarceration to institutional incarceration.

Further, adding a substantial community service requirement to Daryl's probation term would have a dual effect. One, it would allow him to contribute to the sorts of organizations that have benefited him over his recent pre-trial supervision. For example, through one of the substance abuse and mental health programs Daryl has been attending, Preventive Measures, he has gotten to know the program director and staff well. Averrett Brown, the program director, connected Daryl with a team member who runs the National Association for the Advancement of Returning Citizens Cure the Streets division. That program assists District of Columbia residents returning from incarceration to obtain the documentation needed to find employment, to secure housing and to connect with social services agencies. As the program supervisor explains, he "will be happy to have Mr. Bartley work beside us" and will monitor the hours worked. *See* Exhibit D at 2. Were this Court to order Daryl to perform a substantial period of community service, not only would this reduce the cost to taxpayers of his sentence,[14] it would also constitute a pro-social contribution to his community. It would also serve as a persistent reminder, as he works with returning citizens, of the very real risk of incarceration he faces should he reoffend.

Respectfully submitted,

_____
/s/
Megan W. Benett

cc:  all counsel

---

[14] As set forth in the PSR, the taxpayer cost of the 33-month sentence the Probation Department recommends would total $108,240. *See* PSR at ¶ 186. A two-year term of probation would cost taxpayers only $8,928. *Id.* And any cost of electronic monitoring during a period of home detention would be borne by Daryl Bartley himself.

A-153

EXHIBIT A

October 26, 2021

Hon. Katherine P. Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

      Re:    *U.S. v. Daryl Bartley*, 20 cr. 00003 **(SDNY) (KPF)**

Your Honor,

I wanted to take some time for you to gain a feel for just the person that I am, I have been and what I intend to become. I want to start with my upbringing. I was born to a single mother. I knew my father, but did not have much contact with him. He was, by what I knew, a successful business-man, which almost instantly led me to wonder why he was not in my life. I was a fairly smart young person, if one wants to use the accolades that I received from school. I was raised in Southeast DC, one of the toughest and most notorious areas at the time and even to this day. I could have gone to high school in that area, but chose to ride some 75 minutes away, McKinley Tech High School There, I excelled academically, socially and was considered one of the more popular students in the entire school, which comprised of students from the entire Washington, DC area. I also played on the football team and class business manager during both my junior and senior years, a testament to my early leadership.

My academic achievements led me to prestigious Morehouse College in Georgia, where I, again, excelled in academics with some of the organizations on campus. I had friends from all over the country, with whom I would go home from time to time. While in college, because there were financial challenges, I had enough initiative and moxie to work at two of the more high end clothing stores in Atlanta, both Sax Fifth Avenue and Nieman Marcus, where I was an award winning salesperson. In fact, there was almost a bidding war for my services and I was only 21 years old. Even though I worked, I was one of the top students when I graduated in

my major, Business Administration. I was asked to show other students how they should be attired for interviews. However, I should say that some of what led me to do thigs that I should have done was a certain level of impatience, want things faster than the natural course of events.

After graduating from college, I was hired a salesperson for RR Donnelly, a leading print company. I did well in that position, but using the aforementioned theme of wanting things fast and being impatient, I began an entrepreneurial life and was part owner of a Courier service, Corporate Courier. At about the age of 26, I yearned to get back to Washington and had found a way to get to know my father and to be around my mother, who lived by herself.

Not too long after that I got married, which didn't last long, but I had my first child at the age of 31. As any father would want to do, I wanted to provide and maybe took some short cuts to do said provision, especially given that he is a special needs son. Five years later, I had my second son. I wanted to spend time and show them some of the things that I had seen and keep them away from some of the things that were not so pleasant in my life. I had on again, off again relationships with their mothers, providing as best I could. It should be noted that my mother was from the tradition of hard-working mothers and worked at the Library of Congress for 40-plus years. She doted on me and as she was rising in age, I wanted to return that treatment to her. I found myself doing errands, spending days on weekends with her, when I wasn't tending to my children and eking out a living.

As I reach this portion/quarter in my life, some would say end of the third, but with my compromised health, I may just be in the fourth quarter. As I approach 60 years old, I can look back and say that I should have had more patience and made better decisions. I know, from my accomplishments, what has been said of me to the praise that I have gotten from teachers, professors, co-workers and friends alike, the talent has always been there. For a number of reasons, going forward, I will be towing the line for all who have been there for me, including my friends, my associates, my family and most of all, my mother and my children. As a result of some of those decisions, my mother's life was not as easy as it should have been, but I was precocious, competitive, desirous of the finer things in life and sometimes, it led me

down a less than normal path. I have the beauty of time, retrospect, wisdom, counsel and a mother's love and watchful eye of my children to tell me that this is THE LAST TIME that I will do anything that is outside the law. I will use my God-given abilities, my vast network and my support system to be a productive member of society, Thank you for considering my life and story.

Sincerely,

Daryl F. Bartley

EXHIBIT B

October 15, 2021

Dear Honorable Judge Polk -Fallia,

I write to you on behalf of my lifelong friend Darryl F. Bartley, asking if you might show leniency and even mercy toward him in the matter before you.

While I realize that Mr. Bartley stands before the bar of justice as an individual who has had numerous brushes with the law and in fact stands before the court having squandered far too much of his life in the criminal justice system. I further realize that based upon his record it can be difficult to see the extraordinary individual that Mr. Bartley is has been, and I believe, still has the potential to be.

To utterly understand Mr. Bartley, one must think of the tale of the Emperor with No Clothes, and it requires the mind of an old friend (a true believer in him) and an astute child (just stating the facts as they are) in this case the courts). The Child would say quite correctly that the emperor is naked, but the old friend would be able to speak of a time when the emperor had clothes and they were marvelous. I am writing to you to speak of Mr. Bartley's potential to be marvelous again or just a solid citizen again, and that will be marvelous.

Darryl Bartley is a brilliant and talented individual, he was an exceptional student and leader at Morehouse College in Atlanta, Ga. A visionary entrepreneur who has successfully started several successful small businesses and early in his career acquired some notable positions in the corporate sector as well. He has also enjoyed marriage and family life, and the blessing of two wonderful sons.

Yet because of his struggles with an addictive personality and substance abuse issues he has made some mistakes in life. Indeed, he has made numerous mistakes, and he has paid a tremendous price in terms of his life, which once held enormous promises. In spite of his struggles Mr. Bartley has functioned much of his life at an exceedingly high level and has achieved a great deal of professional and personal success, indeed he has had some remarkably high moments in his life. Thus, I remain a true believer in Mr. Bartley, and his ability to be reformed and to ultimately fulfill his latent potential if allowed to stay outside of confinement. Perhaps now even as a mentor to young people heading down the wrong path. As he is nearing sixty years old, with severe health challenges, he simply seeks to have a chance to get his life back on track that it was once was.

Finally, he wants to play a significant role in helping to steward his two sons, Blaine his eldest, who is severely handicapped, and Brandon, both whom need his love, guidance and the chance to see their father turn his life around. I know that this weighs heavily on Mr. Bartley, I've never seen him more committed to change his life around. I certainly will be a supportive resource for him in this effort, to help Mr. Bartley stay on the straight and narrow path.
 Sincerely ,

Conrad B. Tillard

Rev. Conrad B. Tillard Sr., M.Div., Th.M.
Senior Minister
Flatbush Tompkins Congregational Church
Brooklyn, New York
347.586.6678

Honorable Katherine Polk Failla                    June 9, 2021
United States District Court
Southern District Court of New York
40 Foley Square
New York, New York 10013

Dear Judge Failla,

Please accept this letter for Darryl Bartley requesting sentence leniency
and serious consideration for his recent health challenges.

Having known Darryl for over thirty years, through his good and bad
times, in and out of legal situations, I am convinced that if ever he was
deserving of leniency it is now. Life is far too short and opportunities
are far too scarce to waste time living a life of personal or physical
confinement. Honestly speaking I know that Darryl's past life choices
have personally confined him with addiction and poor associations. But
having spent hours talking with him over the last year I am convinced
that the Darryl of the past is not the Darryl that will stand before you in
a few days. Today's Darryl is remorseful and repentant.

I am asking you to consider Darryl's deteriorating health conditions
along with his mental transformation and desire to be a positive
member of our community and society.   Your leniency will be
appreciated by me, his family , Darryl himself and the community at
large.

Thank you for the opportunity to communicate this request.


Sincerely,
*Horace Jones*
Horace Jones



July 7, 2021

The Honorable Katherine Polk Failla
United States District Court
for the Southern District of
New York
40 Foley Square
New York, NY 10013

Good day Your Honor,

I am writing this letter to put forth that I am acting as a character reference for Daryl Bartley. We went to college together, are from the same hometown, and have known each other for the better part of 35 years. None of the aforementioned matters if those days were spent in a superficial manner. I have driven from Washington, DC to Atlanta with Daryl on a number of occasions. We have socialized together. We have done business together. We have even worshipped together at my church home. I give all of that background, so that you know that the words that I will write in this letter are not in any way shallow or less than sincere. They come from a place of knowing someone deeply, their inner person, the one that very few people get to know. I am one of those people as it relates to my friend, Daryl.

As it relates to me and my life's travels. I recently resigned as the Executive Director of The Prince George's County Parks & Recreation Foundation. It was a position that allowed me to see all kinds of people, from citizens participating at the many wonderful parks and community centers throughout Prince George's County to having to hold meetings and make presentations to very seasoned and well-placed public servants. I have had to meet with and solicit to princes and paupers alike. In some of my previous positions, I have had a marketing company, an events management company, a consulting company and that which is my latest venture, the writing of a book, my second. I have an undergraduate degree from Morehouse College, as well as an MBA from UVa. I have worked with Bank of America, IBM, Chase, as well some other well-heeled organization and people. I say all of that not to boast or brag, but more as a way to bring to the fore the depth and breadth of the people with whom I have held company.

A-162

Of the many people that I know and have association, Daryl has the qualities to be ANYTHING he wants. While I have seen him use these qualities before, upon seeing him and relating to him recently, there appears to be more of a sense of purpose and sincerity. Since his return, he is walking a little taller, speaking more morally, and acting upon each of the previous postures. I have seen him do some amazing things as a student while working his way through college, as one of the top students in the Morehouse Business Department to the corporate world to his work as an entrepreneur and any other life endeavors, challenging or otherwise. He has qualities that you only see from the best and brightest and he is ready to use them in a positive fashion. We have talked extensive about this and other endeavors.

 Some of those qualities include intellect, friendliness, cordial, dapper, well-organized, careful thinking, and critical thinking, amongst others. However, one word that stands out to me and that is "moxie." Moxie is that sometimes hard to describe quality, that "je ne sais qua," that only a few possess. He is able to bring people together, because in addition, he is one of a kind, a true original. All of these come to bear to allow him to be all that he can be for the people who depend on him, including, but not limited to, his friends, college colleagues, his family, his co-workers, and the people who seems most important to him, his sons, Brandon and Blaine.

Daryl has been there for many of us that were included in the people that depend on him. If he is granted leniency, you can be assured that we will be behind him to do all the right things to continue to have him as a productive citizen, contributing to his community, his work environments, and of course, his sons' life. One of Daryl's son is a budding football star, while the other is a special needs child, who could have gotten derailed and the other have his life altered, given his condition. However, Daryl has instilled some of the good qualities that he possesses into his sons, thus, one son is well on his way to being a football player of note and the other a functioning member of society. Frankly, that which Daryl has instilled in his sons will bode both of them well in any life endeavor, whether meager and getting along for Blaine or magnanimous, as in athletics for Brandon. I close with a request that you allow Daryl to fulfill that promise that I have seen over the years that we have known each other. As a seasoned successful professional, I will bring to the fore as many people as it takes to be a support system for this man, because, from what I know, for him, "the [proverbial] sky is the limit"! If you need to reach me, feel free to do so at (202) 246-7294 or via email at rbiany.pgcdc@gmail.com. Thank you, in advance, for any and all consideration.

Sincerely,
Brian S. Yeldell
President/CEO – BYG Enterprises

June 25, 2021

Dear Judge,

I am Reverend Shanan E. Jones. In 2018, following 12 years as Executive Pastor of the historic Ebenezer Baptist Church, home church of Martin Luther King, Jr., I founded The Gathering Church in both Atlanta, Georgia, and Liberia West Africa. I also serve as the President of Concerned Black Clergy of Metropolitan Atlanta, Inc. Today, I am writing to express my sincere thoughts on the character of Daryl Bartley. I have known Daryl for more than 38 years and he has always been a role model to myself and others. As a child, Daryl befriended my older brother, Rev. Conrad B. Tillard during their college years. During that period, Daryl was studying at Morehouse College and Conrad at the University of Pennsylvania. They would meet in Washington, D.C. one summer and quickly became fast friends.

Daryl always impressed me by the way he presented himself. He spoke perfect English, was polite, and brilliant. Perhaps it was the brilliance that most captured me. While a college student, Daryl -- a business major -- and some of his fellow colligates began a courier service. The business, Corporate Courier employed several of their fellow students. They rented a small space, insured drivers, purchased transmitter radio equipment, had a dispatcher, slapped company logo magnets on their employee's vehicles and transformed former pizza delivery students into an engine that helped Atlanta commerce connect and advance.

From those early days, I have watched Daryl launch several endeavors to bolster several products to market and help others to grow. Through the years, Daryl would go into business with my parents by serving their Clef Productions and Entertainment, Inc. as Executive Vice President of Marketing. In this capacity, Daryl helped advance the careers of several of MCA Universal's signed talent.

Daryl Bartley is a warm, caring and incredibly gifted man of faith. His life has indeed trekked a meandering journey that has caused him to experience gargantuan highs and extreme lows. He has certainly had his challenges, but the measure of Daryl is how he recovers. I admire his ability to embrace his failures to turn them into personal and entrepreneur successes. He is working to do that right now. It is my hope that this court will help Daryl continue his journey of self-improvement by allowing him to remain free to contribute to our society.

Sincerely,

Rev. Shanan E. Jones, M.Div., M.A.C.E.
Founding Pastor

EXHIBIT C

# *Regional Addiction Prevention, Incorporated*

1949 FOURTH STREET, NE ☛ WASHINGTON, DC 20002 ☛ TELEPHONE: 202.462.7500 ☛ FAX: 202.462.7507 ☛ EMAIL: RAPINC2@BELLATLANTIC.NET

March 15, 2021

To Megan W. Benett

RE: Daryl Bartley
DOB: ███/1961

Mr. Daryl Bartley has been attending the Regional Addiction Prevention, Inc. (RAP) (IOP) program from April 24, 2020 to September 21, 2020. Mr. Bartley has participated in the group sessions with great feedback to his peers and has always been on time for his groups. Do to the crisis we have been having telephone sessions that have also been helpful. Mr. Bartley has successfully completed the IOP program.

RAP, INC. is a program that help individuals regain their understanding about the use of all substance and how to stay away from them. The groups proved, Relapse Prevention, Criminal and Addictive Thinking, Drug and Alcohol Education, Stress Management, Family Counseling, Twelve Steps Counseling. Groups are from 10:00 am to 11:00 am on Monday, Friday and 6:00 pm to 7:00 pm Wednesday of every week.

Mr. Bartley has been an outstanding person and has shown that he has taken in the information that has been provided to him. Mr. Bartley is to continue to use the zoom meeting for NA/AA and must get a sponsor to continue with his triggers to maintain his sobriety.

If further information is needed please feel free to contact me at (202) 462-7500 Ex 1223.

Sincerely,

Andre' Ruth-EL CAC1 NCAC1

Primary Counselor ___*Andre' Ruth-El, CAC1*___

EXHIBIT D



**2124 Martin Luther King Jr. Ave, SE**

**Washington, D.C. 20032**

**P: 202-563-7632**

**F: 202-248-1401**

October 21, 2021

RE: Daryl Bartley

To whom it may concern:

Mr. Daryl Bartley is a patient at Preventive Measures and has been receiving mental health services under our care since December 2020 to October 2021.

Mr. Bartley has successfully completed the Day Rehab Program by overcoming drug addiction, showing fellowship in a fun and supportive environment, learning life skills, coping skills, and conflict resolution.

If you have any additional questions, please do not hesitate to contact me.

Warm Regards,

Averrett Brown

Program Director

Marvin Blunt

marvin.blunt@preventivemeasures.onmicrosoft.com

10/21/2021

1:06 p.m.

To whom it may concern, my name is Marvin Blunt and I am writing this letter in reference to Daryl Bartley. I am the supervisor with NAARC (Nation Association for the Advancement of Returning Citizens) Cure the Streets. I will be happy to have Mr. Bartley work beside us as an organization in doing his community service hours. He is required to provide the paperwork for myself to sign for the days that Mr. Bartley is working with NAARC.

Warm Regards,

Marvin Blunt

Supervisor

1

# EXHIBIT E

BARTLEY, DARYL (id #17563361, dob:    1961)

JHH-1      3/24/2020 8:33:43 AM    PAGE    5/012     Fax Server



**JOHNS HOPKINS**
M E D I C I N E

SMH SIBLEY MEMORIAL HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: 1961, Sex: M
Acct #: 2001175998
Adm: 2/18/2020, IP Adm: 2/18/2020, Disch: 2/23/2020

## ADMISSION INFORMATION (continued)

| Transfer Source: | | Service Area: | JHM CLINICAL | Service Unit: | Sibley Memorial Hospital 5B |
|---|---|---|---|---|---|
| Admit Provider: | Jason T Rose, MD | Attending Provider | Nadia Eltaki, MD | Referring Provider: | |

### Discharge Summary by Aurell K Horing, MD at 2/22/2020 10:31 AM

| Author: Aurell K Horing, MD | Service: Hospitalist Service | Author Type: Physician |
|---|---|---|
| Filed: 2/23/2020 8:49 AM | Date of Service: 2/22/2020 10:31 AM | Status: Addendum |
| Editor: Aurell K Horing, MD (Physician) | | |

## DISCHARGE SUMMARY

Date Time: 2/23/2020 8:47 AM
Patient Name: Daryl Ferdinand Bartley
Attending Physician: Aurell K Horing MD
Primary Care Physician: Mudita Malhotra, MBBS

**Date of Admission:**
2/18/2020

**Date of Discharge:**
2/23/2020

**Discharge Dx:**

Patient Active Problem List

| Diagnosis | Date |
|---|---|
| · Influenza A | 02/18/2020 |
| · COPD exacerbation | 02/18/2020 |
| · Atrial fibrillation | 01/16/2020 |
| · CKD (chronic kidney disease) stage 3, GFR 30-59 ml/min | 12/10/2019 |
| · OSA (obstructive sleep apnea) | 03/05/2019 |
| · Morbid obesity due to excess calories | 02/19/2019 |
| · Hypertension | 02/19/2019 |
| · Acute on chronic systolic CHF (congestive heart failure) | 01/26/2019 |
| · Cardiomyopathy | 09/19/2018 |

**Hospital Course:**
**Brief History:**
Per HPI "PMH as noted below
Echo from 1 year ago reveals left ventricular wall thickness moderately increased mild dilation of the left ventricle EF approximately 30 to 40% is made a right ventricular systolic pressure is 58 mmHg."

**Hospital Course:**
**Assessment:**
58-y/o M w/ PMH afibb on eliquis, COPD not on oxygen, OSA (noncompliant with CPAP), HTN, mod PHTN, Chronic systolic HF, morbid obesity, CKD stage III (baseline 1.5-2.0) P/w productive cough/sob + diarrhea. Was diagnosed with influenza A as outpatient (not tested inpatient). Was found to be hypoxic in ER

BARTLEY, DARYL (id #17563361, dob: ____ 1961)

JHH~1          3/24/2020 8:33:43 AM   PAGE   6/012   Fax Server



SMH SIBLEY MEMORIAL          Bartley, Daryl Ferdinand
HOSPITAL                     MRN: SM1124373, DOB: ____ 1961, Sex: M
5255 Loughboro Road, NW      Acct #: 2001175998
Washington DC 20016-2633     Adm: 2/18/2020, IP Adm: 2/18/2020, Disch:
                             2/23/2020

Discharge Summary by Asrell K Horing, MD at 2/22/2020 10:31 AM (continued)

and BIPAP started and transferred to ICU on 2/18, downgraded on 2/19. Probnp elevated more than baseline and chest xray with signs of fluid overload and patient with placed on lasix 40 IV bid on 2/18. On 2/21 had RRT for hypotension, AMS and bradycardia- 500 cc bolus and glucagon 1 mg given. Transferred to tele on 2/21. HR ,BP, and mental status now normalized.

Problem List and Plan:

Acute respiratory failure requiring bipap 2/2 acute on chronic systolic heart failure and copd exacerbation triggered by influenza A

S/p bipap in ICU, now on RA (walking test done and now oxygen need on exertion either)
2/18 and 2/19 Chest xray showed signs of fluid overload with respective improved insterstitial infiltrates + elevated probnp
Lasix IV bid given from 2/18- 2/20 with aldactone, stopped 2/21 2/2 hypotension (at home on lasix 40 mg oral bid and aldactone 25 mg daily)
Echo: Ef 30%, severe global LV systolic dysf, LA severely dilated--> Unchanged from 2/20/2019
S/p tamiflu for 5 days
Plan:
Dc on lasix 40 mg daily for 2/23 , and outpatient pcp or cardiologist can titrate back up to 40 mg bid.
prednisone total 5 days for copd exacerbation--> will give one day 40 mg on discharge
c/w mucinex bid/IS and prn tessalon pearls

Afibb with slow RVR and initially hypotension (resolved) and initially Acute encephalopathy likely presyncope (resolved)
HR was controlled during then during RRT 2/21 became afibb with slow RVR (was on coreg 12.5 mg bid which is his home dose) down to 30s with syncopal episode and AMS with pauses up to 2.21 sec--> patient received glucagon 1 mg and coreg stopped and transferred to tele
Cardio JHCP appreciated
Plan:
C/w eliquis 5 mg bid
coreg 6.25 mg bid--> dc on this dose and f/u with PCP/cardio to titrate back up to 12.5 mg bid regular home dose

Acute on chronic systolic heart failure-resolved
Used to see Dr. Bodurian now sees Capital Cardiology Sara Collins
Last Echo on file 2/2019 Ef 30-40%, LA severely dilated, RSVP 58 mmhg
Cardio appreciated
Lasix/aldactone stopped 2/21 due to hypotension and 500 cc bolus given (home dose lasix 40 mg bid and aldactone 25 mg daily)
Lungs now CTA
Plan:
Dc on lasix 40 mg daily for 2/23 , and outpatient pcp or cardiologist can titrate back up to 40 mg bid.
Dc back on aldactone 25 mg daily

CKD stage III
Baseline 1.5-2.0
Better than baseline
Plan:
Monitor

A-172

BARTLEY, DARYL (id #17563361, dob: [    ]/1961)

JHH-1            3/24/2020 8:33:43 AM    PAGE    7/012    Fax Server

 **JOHNS HOPKINS** MEDICINE

| SMH SIBLEY MEMORIAL HOSPITAL | Bartley, Daryl Ferdinand |
|---|---|
| 5255 Loughboro Road, NW | MRN: SM1124373, DOB: [  ]/1961; Sex: M |
| Washington DC 20016-2633 | Accl #: 2001175998 |
| | Adm: 2/18/2020, IP Adm: 2/18/2020, Disch: 2/23/2020 |

Discharge Summary by Aurell K Horing, MD at 2/22/2020 10:51 AM (continued)

**COPD not on oxygen with mild exacerbation**
Received solumedrol 125 mg IV in ER, no steroids since then
Some mild diffuse wheezing heard on exam, now CTA
Plan:
C/w albuterol prn
prednisone total 5 days for copd exacerbation--> will give one day 40 mg on discharge

**HTN**
Hypotensive on 2/21 so held coreg/lasix/aldactone and put parameters on imdur/hydralazine and cozaar
Plan:
Coreg 6.25 mg bid, lasix 40 mg daily
Restart aldactone as outpatient
C/w imdur/hydralazine/cozaar but with new hold paramers

**HLD**
Plan:
C/w lipitor daily

**Influenza A**
Tested as outpatient
S/p tamiflu course
Plan:
Droplet precautions

**Morbid obesity/ PHTN, OSA noncompliants with CPAP**
Established
bmi 45
Plan:
C/w cpap
Encourage diet and exercise

**Abx Stewardship:**
None

**Consultants:**
Cardio JHCP
ICU

**DC Planning:**
To home

**Foley catheter, Lines and Drains:**

No central line

Generated on 3/24/20 8:21 AM                                              Page 7

**BARTLEY, DARYL (id #17563361, dob:** █████/1961)

    JHH-2       4/7/2020 10:11:13 AM  PAGE  2/003  Fax Server

Page 1 of 2



SIBLEY MEMORIAL
HOSPITAL
JOHNS HOPKINS MEDICINE

## ECHO TRANSTHORACIC (TTE) COMPLETE

### Bartley, Daryl Ferdinand
MRN: SM1124373, Gender Identity: Male, █████ 1961 (58 yrs), Inpatient
Accession #: 25064120

## Final Result

**General:** The cardiac rhythm is atrial fibrillation with a slow ventricular response.

**Left Ventricle:** Diastolic function was indeterminate. Moderate concentric left ventricular hypertrophy.

Severe global LV systolic dysfunction. The estimated left ventricular ejection fraction is 30%.

The left ventricle is moderately dilated.

The LV apex is not well visualized.

**Right Ventricle:** The right ventricular cavity size appears normal.

**Left Atrium:** The left atrium is severely dilated. Left atrium volume index 53.32 ml/m2.

**Aortic Valve:** The structure of the aortic valve is tricuspid. There is evidence of sclerosis in the aortic valve. There is evidence of mild aortic regurgitation.

**Mitral Valve:** There is evidence of trivial (trace) mitral regurgitation. The mitral valve appears normal in structure.

**Pulmonic Valve:** There is evidence of trace (trivial) pulmonic regurgitation. The pulmonic valve was not well visualized.

**Tricuspid Valve:** There is no evidence of tricuspid regurgitation. The tricuspid valve appears normal in structure.

**Pericardium:** There is no evidence of pericardial effusion.

**Aorta:** There is evidence of dilation in the aortic root, limited to the sinuses of Valsalva. The dilation is mild.

**Pulmonic Artery:** Unable to obtain RVSP due to insufficient tricuspid regurgitation jet.

**Venous:** Inferior vena cava appears normal.

**Conclusions:** Severe global LV systolic dysfunction. The estimated left ventricular ejection fraction is 30%.Moderate concentric left ventricular hypertrophy.The left ventricle is moderately dilated.The LV apex is not well visualized.Diastolic function

was indeterminate.The left atrium is severely dilated.There is evidence of sclerosis in the aortic valve. There is evidence of mild aortic regurgitation.There is evidence of dilation in the aortic root, limited to the sinuses of Valsalva. The dilation is

 mild.Compared with the study dated 2/20/2019, there has been no significant change.

Signed by Eric Bruce Lieberman, MD on 2/21/2020 1:03 PM

## Appointment Info
**Exam Date**
📅 2/21/2020

Bartley, Daryl Ferdinand (MR # SM1124373) Printed at 4/7/20 10:00 AM      Page 1 of 2

HOWARD
UNIVERSITY
Faculty Practice Plan
Internal Medicine- Division of Pulmonary Disease and Sleep Medicine

RE: Daryl Bartley
MRN: 58000
DOB: [    ]/1961

05/01/2020

## Chief Complaint
f/u of SOB via phone call

## Reason For Visit
F/u of SOB via phone call.

## History of Present Illness
Mr Bartley is a 58 year old smoker (quit a few months ago) and h/o crack-cocaine use (both smoke and snort and last used 5 years ago) who agreed for telephone call f/u evaluation of SOB and intermittent wheezing for the past 4 years associated with intermittent cough productive of yellow sputum presumptively due to diastolic CHF. His comorbidities include OSA, severe obesity, HTN, dyslipidemia, CAD and diastolic CHF. He has had multiple ER visits and hospitalizations for acute worsening of SOB with his last ER visit and hospitalizations was 4/2020 at Sibley Memorial hospital for decompensated heart failure. he was tested for COVID-19 which was negative. He admits to having SOB after less than 1 flight of stairs and when walking up a hill but he is able to walk on the treadmill flat surface for 30 mins. Coughing is mostly at nights. Feels very congested in the morning. He denies leg swelling.

He also has OSA diagnosed in 2013 and has had rept PSG and is on CPAP and f/u in sleep clinic at HUH - he is non-compliant with his CPAP machine.
He also has symptoms of chronic rhinosinusitis and has a h/o deviated nasal septum.
He also has intermittent leg swelling and orthopnea - is now f/u with cardiology at Sibley Memorial hospital.

## Review of Systems

Constitutional: feeling tired, but no fever and no chills.
Head and Face: no facial pain.
Eyes: no itching of the eyes.
Gastrointestinal: no vomiting.
Integumentary and Breasts: no rashes and no erythema.
Neurological: no headache and no difficulty walking. no leg weakness
Psychiatric: no insomnia.
2. Acute on chronic diastolic CHF (congestive heart failure) (428.33,428.0) (I50.33)
3. Chalazion (373.2) (H00.19)
4. CHF (congestive heart failure) (428.0) (I50.9)

Howard Faculty Practice Plan
Internal Medicine - Division of Pulmonary Disease and Sleep Medicine
2041 Georgia Avenue, NW, Suite 5B01
Washington, DC 20060
Office: (202) 865-2122 Fax: (202) 865-1014

Opt-Out: Not Defined

o: 9121297294322002100          From:  (55018)                    08/28/20 02:37 PM 76  Page 64 of 67
Case 1e-201-c2-00003 ckPifleDocument 263-2, Filed 10/29/2ge Page 2 of 52

5. Chronic cough (786.2) (R05)
6. Coronary artery disease (414.00) (I25.10)
7. Degenerative arthritis (715.90) (M19.90)
8. Dermatitis (692.9) (L30.9)
9. Deviated nasal septum (470) (J34.2)
10. Diastolic heart failure (428.30) (I50.30)
11. Encounter for preventive health examination (V70.0) (Z00.00)
12. Essential (primary) hypertension (401.9) (I10)
13. Fatigue (780.79) (R53.83)
14. HTN (hypertension) (401.9) (I10)
15. Hypoxia (799.02) (R09.02)
16. Impacted cerumen of right ear (380.4) (H61.21)
17. Increased urinary frequency (788.41) (R35.0)
18. Insufficient sleep syndrome (307.44) (F51.12)
19. Morbid obesity (278.01) (E66.01)
20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮ (278.91) (I95.43) (E66.01 769.43)
21. Need for influenza vaccination (V04.61) (Z23)
22. Nocturia (788.43) (R35.1)
23. Noncompliance with medications (V15.81) (Z91.14)
24. Obesity (278.00) (E66.9)
25. Onychomycosis (110.1) (B35.1)
26. OSA (obstructive sleep apnea) (327.23) (G47.33)
27. PND (post-nasal drip) (784.91) (R09.82)
28. Skin mole (216.9) (D22.9)
29. SOB (shortness of breath) (786.05) (R06.02)
30. Systolic congestive heart failure with reduced left ventricular function, NYHA class 2
    (428.20,428.0) (I50.20)
31. Tinea pedis (110.4) (B35.3)
32. Trichomonas exposure (V01.6) (Z20.2)
33. Urinary hesitancy (788.64) (R39.11)
34. Urinary incontinence (788.30) (R32)
35. Urinary urgency (788.63) (R39.15)
36. Wheezing (786.07) (R06.2)

Chronic cough (786.2) (R05)

**Past Medical History**
1. History of diabetes mellitus (V12.29) (Z86.39)
2. History of diastolic dysfunction (V12.59) (Z86.79)
3. History of heart failure (V12.59) (Z86.79)
4. History of hypertension (V12.59) (Z86.79)
5. History of hypertension (V12.59) (Z86.79)
6. Increased urinary frequency (788.41) (R35.0)

**Howard Faculty Practice Plan**
**Internal Medicine - Division of Pulmonary Disease and Sleep Medicine**
2041 Georgia Avenue, NW, Suite 5B01
Washington, DC 20060
Office: (202) 865-2122  Fax: (202) 865-1014

Daryl Bartley
████ 1961
05/01/2020

7. History of Morbid obesity with body mass index of 70 and over in adult (278.01,V85.45) (E66.01,Z68.45)
8. Noncompliance with medications (V15.81) (Z91.14)
9. Obesity (278.00) (E66.9)
10. History of Sleep apnea, obstructive (327.23) (G47.33)
11. Urinary urgency (788.63) (R39.15)

## Surgical History
1. History of nasal polypectomy

## Family History
1. Family history of insomnia (V17.2) (Z82.0)

## Social History
- Being A Social Drinker
- Former smoker (V15.82) (Z87.891)

## Current Meds
1. Aspirin EC 81 MG Oral Tablet Delayed Release; TAKE 1 TABLET DAILY;
   Therapy: 26Jul2017 to (Evaluate:27Jun2019) Requested for: 02Jul2018; Last Rx:02Jul2018 Ordered
2. Atorvastatin Calcium 40 MG Oral Tablet; TAKE 1 TABLET AT BEDTIME;
   Therapy: 02Jul2018 to (Evaluate:27Jun2019) Requested for: 02Jul2018; Last Rx:02Jul2018 Ordered
3. cloNIDine HCl - 0.1 MG Oral Tablet; TAKE 1 TABLET 3 TIMES DAILY;
   Therapy: 05Dec2018 to (Evaluate:30Nov2019) Requested for: 05Dec2018; Last Rx:05Dec2018 Ordered
4. Doxepin HCl - 10 MG Oral Capsule; TAKE 1 CAPSULE AT BEDTIME;
   Therapy: 19Dec2017 to (Evaluate:17Jun2018) Requested for: 19Dec2017; Last Rx:19Dec2017 Ordered
5. Econazole Nitrate 1 % External Cream; APPLY AND GENTLY MASSAGE INTO AFFECTED AREA(S) TWICE DAILY;
   Therapy: 26Jul2017 to (Last Rx:26Jul2017) Ordered
6. Furosemide 40 MG Oral Tablet; TAKE 1 TABLET TWICE DAILY  Requested for: 02Jul2018; Last Rx:02Jul2018 Ordered
7. hydrALAZINE HCl - 50 MG Oral Tablet; TAKE 2 TABLET Twice daily;
   Therapy: 02Oct2018 to (Evaluate:01Oct2019) Requested for: 03Jun2019; Last Rx:03Jun2019 Ordered
8. Ipratropium Bromide 0.06 % Nasal Solution; USE 2 SPRAYS IN EACH NOSTRIL 2 TO 3 TIMES DAILY;
   Therapy: 20Oct2017 to (Evaluate:17Feb2018) Requested for: 20Oct2017; Last ...
   TABLET DAILY AS DIRECTED;
   Therapy: 02Oct2018 to (Evaluate:27Sep2019) Requested for: 02Oct2018; Last Rx:02Oct2018 Ordered
10. Losartan Potassium 100 MG Oral Tablet; TAKE 1 TABLET DAILY;
    Therapy: 02Jul2018 to (Evaluate:01Nov2019) Requested for: 06Nov2018; Last Rx:06Nov2018 Ordered
11. Metoprolol Succinate ER 100 MG Oral Tablet Extended Release 24 Hour; TAKE 1 TABLET DAILY;
    Therapy: 02Jul2018 to (Evaluate:27Jun2019) Requested for: 02Jul2018; Last Rx:02Jul2018 Ordered

**Howard Faculty Practice Plan**
**Internal Medicine - Division of Pulmonary Disease and Sleep Medicine**
2041 Georgia Avenue, NW, Suite 5B01
Washington, DC 20060
Office: (202) 865-2122  Fax: (202) 865-1014

A-177

Daryl Bartley
1951
05/01/2020

12. ProAir HFA 108 (90 Base) MCG/ACT Inhalation Aerosol Solution; INHALE 1-2 PUFFS
    EVERY 4-6 HOURS AS NEEDED AND AS DIRECTED;
    Therapy: 11Sep2017 to (Evaluate:27Sep2019) Requested for: 02Oct2018; Last
    Rx:02Oct2018 Ordered
13. Promethazine-DM 6.25-15 MG/5ML Oral Syrup; TAKE 5 - 10 ML BY MOUTH EVERY 6
    HOURS AS NEEDED FOR CONGESTION;
14. Spironolactone 50 MG Oral Tablet; TAKE 20Nov2018). Requested for: 20Nov2018 Ordered
    Therapy: 13Aug2018 to (Evaluate:01Nov2019) Requested for: 06Nov2018; Last
    Rx:06Nov2018 Ordered
15. Terbinafine HCl - 250 MG Oral Tablet; TAKE 1 TABLET DAILY;
    Therapy: 07Feb2018 to (Evaluate:08Apr2018) Requested for: 07Feb2018; Last
    Rx:07Feb2018 Ordered
16. Triamcinolone Acetonide 0.1 % External Cream; APPLY AND RUB IN A THIN FILM TO
    AFFECTED AREAS TWICE DAILY.(AM AND PM);
    Therapy: 25Oct2017 to (Last Rx:25Oct2017) Ordered

## Allergies

1. No Known Drug Allergies

## Results/Data

Echo Summary
ECG rhythm: Sinus rhythm.
Study quality: This was a technically difficult study with suboptimal views.
Left Ventricle: Overall left ventricular systolic function is normal, with an EF between 55 - 60 %. There is severe concentric
left ventricular hypertrophy. The diastolic filling pattern indicates impaired relaxation. The left ventricular cavity size is
normal.
Right Atrium: The right atrial size is normal.
Aortic Valve: There is no evidence of aortic regurgitation. There is no evidence of aortic stenosis. The aortic valve is
trileaflet and appears structurally normal.
Mitral Valve: No mitral regurgitation. The mitral valve is normal.
Tricuspid Valve: The tricuspid valve appears structurally normal. Mild tricuspid regurgitation present.
Pulmonic Valve: There is mild pulmonic regurgitation.
Aorta: The aortic root, ascending aorta and aortic arch are normal.
Pericardium: There is no pericardial effusion.
Conclusions
1. Overall left ventricular systolic function is normal, with an EF between 55 - 60 %.

## Assessment

1. CHF (congestive heart failure) (428.0) (I50.9)
2. Morbid obesity (278.01) (E66.01)
3. SOB (shortness of breath) (786.05) (R06.02)

## Discussion/Summary

Mr Bartley is a 58 yo former smoker who agreed to a phone call for f/u of SOB on exertion associated with

Howard Faculty Practice Plan
**Internal Medicine – Division of Pulmonary Disease and Sleep Medicine**
2041 Georgia Avenue, NW, Suite 5B01
Washington, DC 20060
Office: (202) 865-2122  Fax: (202) 865-1014

Daniel Portias
11/20/1961
05/01/2020

congestion. He has severe obesity, OSA and diastolic dysfunction, HTN and h/o deviated nasal septum. His repl 2D Echo done 3/2018 shows worsening EF (45 to 50%) as well as new multiple wall motion abnormalities (basal, inferior, lateral) associated with worsening SOB at rest and severe orthopnea. He will continue f/u with cardiology at Sibley Memorial.
Also needs to f/u in Sleep clinic. Compliance with CPAP emphasized
will f/u

**Signatures**
Electronically signed by : Alicia Thomas, M.D.; May  1 2020  5:19PM EST (Author)



Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ▮▮/1961, Sex: M
Acct #: 2001251565
Adm: 7/8/2020, IP Adm: 7/8/2020, Disch: 7/11/2020

## 07/08/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B

### Reason for Visit

**Chief Complaint** *[last edited by Andrea Conner, RN on 7/8/2020 1155]*

- Shortness of Breath (Patient complains of fluid build up, difficulty to breathe, hx of COPD, audible wheezing heard, denies any pain, only having discomfort at this time.)

**Visit Diagnoses** *[last edited by Aurell K Horing, MD on 7/11/2020 1051]*

| Name | Code | Chronic? | Is ED? |
|---|---|---|---|
| Shortness of breath (primary) | R06.02 | No | Yes |
| Acute on chronic systolic CHF (congestive heart failure) | I50.23 | No | Yes |
| COPD exacerbation | J44.1 | No | Yes |
| Acute on chronic combined systolic and diastolic CHF (congestive heart failure) | I50.43 | No | No |
| Dilated cardiomyopathy | I42.0 | Yes | No |

### Hospital Problems

| Name | Code | Date Noted | Date Resolved | Present on Admission? | Last Updated By | Last Updated On |
|---|---|---|---|---|---|---|
| Shortness of breath (primary) | R06.02 | 07/08/2020 | — | Yes | Nadia Eltaki, MD | 07/08/2020 1401 |
| Atrial fibrillation | I48.91 | 01/16/2020 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| Cardiomyopathy | I42.9 | 09/19/2018 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| CKD (chronic kidney disease) stage 3, GFR 30-59 ml/min | N18.3 | 12/10/2019 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| Hypertension | I10 | 02/19/2019 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| Mixed hyperlipidemia | E78.2 | 03/02/2020 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| Morbid obesity due to excess calories | E66.01 | 02/19/2019 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| OSA (obstructive sleep apnea) | G47.3 3 | 03/05/2019 | — | Yes | Harry J Bigham Jr., MD | 07/10/2020 1200 |
| Systolic CHF, acute on chronic | I50.23 | 07/08/2020 | — | Yes | Ronny Khatkar, MD | 07/08/2020 1425 |

### Visit Information

#### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 07/08/2020 1142 | Admit Date/Time: | 07/08/2020 1156 | IP Adm. Date/Time: | 07/08/2020 1426 |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: | Car | Primary Service: | Internal Medicine | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | JHM CLINICAL | Unit: | Sibley Memorial Hospital 5B |
| Admit Provider: | Aurell K Horing, MD | Attending Provider: | Nadia Eltaki, MD | Referring Provider: | Self Referred |

#### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 07/11/2020 1211 | Home Or Self Care | None | Aurell K Horing, MD | Sibley Memorial Hospital 5B |

### Follow-up Information

A-180



| | SMH SIBLEY MEMORIAL HOSPITAL | Bartley, Daryl Ferdinand |
|---|---|---|
| **JOHNS HOPKINS** | 5255 Loughboro Road, NW | MRN: SM1124373, DOB: /1961, Sex: M |
| M E D I C I N E | Washington DC 20016-2633 | Acct #: 2001251565 |
| | | Adm: 7/8/2020, IP Adm: 7/8/2020, Disch: 7/11/2020 |

## 07/08/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)

### Visit Information (continued)

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Mudita Malhotra, MBBS | In 1 week | | 5215 Loughboro Road NW Suite 300 Washington DC 20016 202-537-4400 |
| Michael Noah Solomon, MD | | As needed | 5215 Loughboro Rd. NW Suite 400 Washington DC 20016 301-656-7374 |

### OUTPATIENT OBSERVATION and LENGTH OF STAY INFORMATION

| Outpatient/Obs Date: | Length of Stay: | Inpatient Length of Stay: |
|---|---|---|
| N/A | 3 days | 3 days |

### Coding Summary

#### Account Information

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | Combined from HAR |
|---|---|---|---|
| 2001251565 - BARTLEY,DARYL FERDINAND | TRUSTED HEALTH PLANS INC [1810] | None | None |

#### Admission Information

| Arrival Date/Time: | 07/08/2020 1142 | Admit Date/Time: | 07/08/2020 1142 | IP Adm. Date/Time: | 07/08/2020 1426 |
|---|---|---|---|---|---|
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | Internal Medicine JHM CLINICAL | Secondary Service Unit: | Sibley Memorial Hospital 5B |
| Admit Provider: | Aurell K Horing, MD | Attending Provider: | Aurell K Horing, MD | Referring Provider: | Self Referred |

#### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 07/11/2020 1211 | Home Or Self Care | None | Aurell K Horing, MD | Sibley Memorial Hospital 5B |

#### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| I50.23 | Acute on chronic systolic (congestive) heart failure | |

#### Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| I13.0 **[Principal]** | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | Yes | No | | Yes |
| I50.23 | Acute on chronic systolic (congestive) heart failure | Yes | MCC | | Yes |
| Z68.42 | Body mass index (BMI) 45.0-49.9, adult | Exempt from | CC | | No |



SMH SIBLEY MEMORIAL HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ████ 1961, Sex: M
Acct #: 2001251565
Adm: 7/8/2020, IP Adm: 7/8/2020, Disch: 7/11/2020

**07/08/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)**

## Coding Summary (continued)

| | | | POA reporting | | |
|---|---|---|---|---|---|
| I48.19 | Other persistent atrial fibrillation | | Yes | CC | No |
| G47.33 | Obstructive sleep apnea (adult) (pediatric) | | Yes | No | No |
| E66.01 | Morbid (severe) obesity due to excess calories | | Yes | No | No |
| Z87.891 | Personal history of nicotine dependence | | Exempt from POA reporting | No | No |
| Z20.828 | Contact with and (suspected) exposure to other viral communicable diseases | | Yes | No | No |
| N18.3 | Chronic kidney disease, stage 3 (moderate) | | Yes | No | No |
| E78.2 | Mixed hyperlipidemia | | Yes | No | No |
| I27.20 | Pulmonary hypertension, unspecified | | Yes | No | No |
| I42.0 | Dilated cardiomyopathy | | Yes | No | No |
| Z91.19 | Patient's noncompliance with other medical treatment and regimen | | Exempt from POA reporting | No | No |
| Z79.01 | Long term (current) use of anticoagulants | | Exempt from POA reporting | No | No |
| R00.1 | Bradycardia, unspecified | | No | No | No |
| R26.2 | Difficulty in walking, not elsewhere classified | | Yes | No | No |
| Z79.899 | Other long term (current) drug therapy | | Exempt from POA reporting | No | No |
| J44.9 | Chronic obstructive pulmonary disease, unspecified | | Yes | No | No |

## DRG Information

| DRG | DRG Type | Qualifier | Weight | MDC | LOS | SOI | ROM | Exp Reimb |
|---|---|---|---|---|---|---|---|---|
| 291 [Billing] | MS-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | | 1.3458 | 005 | 3 | | | 8,569.00 |
| Description: HEART FAILURE & SHOCK W MCC | | | | | | | | |
| 291 | MS-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | HAC Dx Included | 1.3458 | 005 | 3 | | | 8,569.00 |
| Description: HEART FAILURE & SHOCK W MCC | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | | 0.5276 | 005 | 3 | 2 | 2 | |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | Admission DRG | 0.5276 | 005 | 3 | 2 | 2 | |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | PPC DRG | 0.5276 | 005 | 3 | 2 | 2 | |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | PPC Admit DRG | | 005 | 3 | | | |
| Description: HEART FAILURE | | | | | | | | |
| 194 | DC APR-DRG V35 | | 0.95094 | 005 | 3 | 3 | 2 | 12,485.01 |
| Description: HEART FAILURE | | | | | | | | |



SMH SIBLEY MEMORIAL HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ███ 1961, Sex: M
Acct #: 2001251565
Adm: 7/8/2020, IP Adm: 7/8/2020, Disch: 7/11/2020

## 07/08/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)

### Coding Summary (continued)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 194 | DC APR-DRG V35 | HAC Dx Included | 0.95094 | 005 | 3 | 3 | 2 | 12,485.01 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | DC APR-DRG V35 | Admission DRG | 0.95094 | 005 | 3 | 3 | 2 | |
| Description: HEART FAILURE | | | | | | | | |

### Infection Status as of 7/11/2020

| Infection | Onset | Added | Added By | Resolved | Resolved By |
|---|---|---|---|---|---|
| None active | | | | | |
| Resolved | | | | | |
| Rule out COVID-19 (Airborne and Contact with Eye Protection) | 07/08/20 | 07/08/20 1203 | Result: COVID-19 (Coronavirus) NAT, NP/Nasal Swab [567062032] (Ordered) | 07/08/20 1352 | Rule-Out Test Resulted |

### Patient as-of Visit (group 1 of 2)

#### Allergies as of 7/11/2020

Allergies last reviewed by Gissella Mana, RN on 7/8/2020 2238 - Review Complete
No Known Allergies

#### Last Reviewed By - Revision History

| Reviewed On | User | Review Status |
|---|---|---|
| 07/08/2020 2238 | Gissella Mana, RN | Review Complete |
| 07/08/2020 1155 | Andrea Conner, RN | Review Complete |
| 07/08/2020 0658 | Neida Leal, RN | Review Complete |
| 07/06/2019 1335 | Mudita Malhotra, MBBS | Review Complete |
| 05/08/2020 1421 | Mudita Malhotra, MBBS | Review Complete |
| 04/26/2019 1928 | Naomi Peterson | Review Complete |
| 04/26/2020 0322 | Neida Leal, RN | Review Complete |
| 04/26/2020 0321 | Neida Leal, RN | Review Complete |
| 04/06/2020 1220 | Mudita Malhotra, MBBS | Review Complete |
| 04/06/2020 1213 | Mudita Malhotra, MBBS | Review Complete |
| 03/02/2020 1733 | Mudita Malhotra, MBBS | Review Complete |
| 03/02/2020 1614 | Tieira Lewis | Review Complete |
| 02/21/2020 0904 | Yodit Kassa, RT | Review Complete |
| 02/19/2020 1126 | Catherine Brutus | Review Complete |
| 02/18/2020 1808 | Robin Dorene O'Neill | Review Complete |
| 02/18/2020 1419 | Mudita Malhotra, MBBS | Review Complete |
| 02/18/2020 1215 | Kelly L Hamilton, RN | Review Complete |
| 02/18/2020 1112 | Tieira Lewis | Review Complete |
| 02/18/2020 1111 | Tieira Lewis | Review Complete |
| 02/05/2020 0817 | Natasha Woodley, RN | Review Complete |
| 01/16/2020 1434 | Carol Caldwell | Review Complete |
| 07/26/2019 1142 | Kelly Anne Heller, RN | Review Complete |
| 07/12/2019 0110 | Maria Rivere | Review Complete |
| 07/10/2019 2155 | Lisa D Salas | Review Complete |
| 07/10/2019 2117 | Ross A Usmani, RN | Review Complete |
| 06/25/2019 0800 | Stefanie A Schroeter, FNP | Review Complete |
| 06/24/2019 1504 | Stefanie A Schroeter, FNP | Review Complete |
| 06/24/2019 1501 | Stefanie A Schroeter, FNP | Review Complete |
| 06/24/2019 1452 | Norca S Rossetti | Review Complete |
| 06/11/2019 1028 | Daniel C Parker, RN | Review Complete |
| 05/10/2019 1647 | Melanie Barton, RN | Review Complete |
| 05/10/2019 1518 | Stefanie A Schroeter, FNP | Review Complete |
| 05/10/2019 1513 | Norca S Rossetti | Review Complete |

Privia · CAPCARD · Capital Cardiology Consultants · 106 Irving Street NW WASHINGTON DC 20010-2964

**BARTLEY, DARYL (id #17563361, dob:** ▮▮/1961)

## Encounters and Procedures

Clinical Encounter Summaries

**Encounter Date:** ▮▮/2020
Patient

| | | | |
|---|---|---|---|
| **Name** | BARTLEY, DARYL (58yo, M) ID# 17563361 | **Appt. Date/Time** | 07/10/2020 11:30AM |
| **DOB** | ▮▮/1961 | **Service Dept.** | PMG_CAPCARD_Varnum St Office* |
| **Provider** | PINDER THOMAS, MD | | |
| **Insurance** | Med Primary: TRUSTED HEALTH PLAN OF DC - DC HEALTHY FAMILIES (MEDICAID REPLACEMENT - HMO) Insurance # : 70697031 Referring Provider Name : SCHROETER, STEFANIE Prescription: ABARCA - Member is eligible. details | | |

### Chief Complaint

systolic heart failure, Morbid obesity, Hypertensive heart disease

### Patient's Care Team

**Referring Provider (Primary Insurance):** SCHROETER, STEFANIE: 5215 LOUGHBORO RD NW, STE 300, WASHINGTON, DC 20016, Ph (202) 537-4400, Fax (202) 537-4440

### Patient's Pharmacies

**CVS/PHARMACY #1334 (ERX): 717 14TH ST NW, WASHINGTON DC 20005, Ph (202) 737-9525, Fax (202) 737-2951**
NOVACARE REHABILITATION: 919 18TH STREET NW STE 100, WASHINGTON DC 20006, Ph (202) 775-5951, Fax (202) 872-1443

### Allergies

Allergies not reviewed (last reviewed 01/23/2020)
NKDA

BARTLEY, DARYL (id #17563361, dob: ████/1961)

## Medications

Medications not reviewed (last reviewed 06/18/2020)

| | | |
|---|---|---|
| **albuterol sulfate HFA 90 mcg/actuation aerosol inhaler** INHALE 2 PUFFS INTO THE LUNGS EVERY 6 (SIX) HOURS AS NEEDED FOR SHORTNESS OF BREATH. | 07/22/19 | filled |
| **atorvastatin 40 mg tablet** TAKE 1 TABLET BY MOUTH EVERY DAY | 04/27/20 | filled |
| **benzonatate 100 mg capsule** TAKE 1 CAPSULE BY MOUTH 3 TIMES DAILY AS NEEDED FOR COUGH | 02/22/20 | filled |
| **carvediloL 12.5 mg tablet** TAKE 1 TABLET BY MOUTH TWICE A DAY | 03/31/20 | filled |
| **Eliquis 5 mg tablet** TAKE 1 TABLET BY MOUTH 2 TIMES DAILY | 04/15/20 | filled |
| **Entresto 24 mg-26 mg tablet** Take 1 tablet(s) twice a day by oral route. | 04/13/20 | prescribed |
| **furosemide 40 mg tablet** TAKE 1 TABLET BY MOUTH TWICE A DAY | 04/27/20 | filled |
| **hydrALAZINE 50 mg tablet** TAKE 1 TABLET BY MOUTH TWICE A DAY | 04/27/20 | filled |
| **isosorbide mononitrate ER 30 mg tablet,extended release 24 hr** TAKE 1 TABLET BY MOUTH EVERY DAY | 04/27/20 | filled |
| **losartan 100 mg tablet** TAKE 1/2 TAB TWICE A DAY | 07/06/20 | changed |
| **losartan 50 mg tablet** TAKE 1 TABLET BY MOUTH EVERY DAY | 04/28/20 | filled |
| **spironolactone 25 mg tablet** TAKE 1 TABLET BY MOUTH EVERY DAY | 04/27/20 | filled |

amlodipine, lisinopril, aspirin, potassium, and furosemide

## Problems

Reviewed Problems
* Hypertensive disorder - Onset: 05/09/2017
* Sleep apnea - Onset: 05/09/2017
* Dyspnea – Onset: 05/09/2017
* Increased frequency of urination - Onset: 05/09/2017

## Family History

Family History not reviewed (last reviewed 01/23/2020)
Father                    – Essential hypertension
                          – Diabetes mellitus

A-185

**BARTLEY, DARYL (id #17563361, dob: ▮▮/1961)**

## Social History

Social History not reviewed (last reviewed 01/23/2020)
**Cardiology Social History**
Chewing tobacco: none
Are you working: looking for work
Marital status: Married
On average, how many days per week do you engage in moderate to strenuous EXERCISE (like walking fast, running, jogging, dancing, swimming, biking, or other activities that cause a light or heavy sweat)?: 0
On those days, how many minutes, on average, do you engage in EXERCISE at this level?: 0
Caffeine intake: None
How often do you have a DRINK containing ALCOHOL?: 2-4 times a month
How often do you have six or more DRINKS on one occasion?: Never
Illicit drugs: NONE
Prescription Medication abuse: N
Number of children: 2
Tobacco Smoking Status: Former smoker
Smokeless Tobacco Status: Never used smokeless tobacco
E-cigarette/Vape Status: Never used electronic cigarettes

## Surgical History

Surgical History not reviewed (last reviewed 05/09/2017)

## Past Medical History

Past Medical History not reviewed (last reviewed 05/09/2017)
Asthma: **Y**
Hypertension (high blood pressure): **Y**

HPI

58-year-old male who has a 20 year history of smoking- stopped one year ago. No history of diabetes, hyperlipidemia or prior MI or stroke. Diagnosed with hypertension in 2004. Had a fainting episode in 2018- admitted and diagnosed with congestive heart failure. Had a second episode of fainting in August 2019. Diagnosed with atrial fibrillation. Evaluated at Inova Hospital. Plans were made for TEE,cardiac MRI and cardioversion however patient refused. He was incarcerated in the meantime. He was treated medically and got out of jail in November 2019.

He was maintained on carvedilol, Aldactone, losartan, furosemide, hydralazine,isosorbide mononitrate and eloquis. He did not have any pedal edema and denies shortness of breath. Exercise tolerance was stable. He was climbing 3 flights of stairs. He is morbidly obese- has weighed up to 371. No wheezing, orthopnea or PND. He presented to continue his workup and treatment.

He has had repeated admissions for exacerbations of heart failure. He admits his medication but does complain of dizziness and light with mild headaches. Still complaining of pain with the ankle bracelet especially with increased edema.

He is currently hospitalized at present with what sounds like heart failure exacerbation with pedal edema and increase pain from his ankle bracelet. He has been treated. He admits to compliance with medication

A-186

**BARTLEY, DARYL (id #17563361, dob:** ___ **1961)**

## ROS

**Constitutional:**Constitutional: no fever or fatigue and normal sleep and **exercise intolerance; morbidly obese-**.

**Eyes:**Eyes: no eye pain or or vision symptoms and no vision change.

**HENMT:**Head no pain. Ears: no tinnitus, hearing loss, or ear pain. Nose: no nosebleeds or nasal or sinus problems. Mouth/Throat: no throat or mouth symptoms, sore throat, or bleeding gums; **on anti-coagulation**.

**Cardiovascular:**Cardiovascular: **palpitations, edema**, and **exertional dyspnea** and no chest pain.

**Respiratory:**Respiratory: **wheezing** and **shortness of breath** and no chest congestion.

**Gastrointestinal:**Gastrointestinal: no nausea, vomiting, gastrointestinal symptoms, or abdominal pain and normal bowel movements.

**Genitourinary:**Genitourinary: no dysuria, urgency, burning, incontinence, or genitourinary symptoms; **nocturia x2**.

**Musculoskeletal:**Musculoskeletal: **arthralgias, myalgias**, and **musculoskeletal symptoms**.

**Integumentary:**Skin: no rash or skin symptoms.

**Neurologic:**Neurologic: no headaches, weakness, numbness, dizziness, or neurological symptoms; **2 episodes of fainting which led to diagnosis of congestive heart failure and atrial fibrillation respectively**.

**Psychiatric:**Psych: no depression, anxiety, or emotional problems or concerns, no psychiatric symptoms.

**Endocrine:**Endocrine: no fatigue, polydipsia, or polyuria.

**Hematologic/Lymphatic:**Hematologic/Lymphatic no bruising or easy bleeding tendency; **on anti-coagulation**.

**Allergic/Immunologic:**Allergy/Immunologic: no allergic or immunological symptoms.

## Physical Exam

Patient is a 58-year-old male.

patient is currently hospitalized and called from his hospital bed

He sounds to have some mild respiratory distress

## BARTLEY, DARYL (id #17563361, dob: ____/1961)

### Assessment / Plan

1. Patient was again hospitalized with what appears to be exacerbation of heart failure

2. We'll try to speak with his treating physician to see if we can modify heart failure medication

3. Also will try to get his ankle brace of the chest once

4. Will get an in office visit following discharge

#### .. Chronic systolic heart failure -

patient started on carvedilol twice a day at entresto twice a day- was only taking it once a day

currently hospitalized with apparent failure exacerbation

I50.22: Chronic systolic (congestive) heart failure

#### .. Hypertensive disorder -

medication adjustments should help blood pressure

I10: Essential (primary) hypertension
• ELEVATED BLOOD PRESSURE: CARE INSTRUCTIONS

#### .. Atrial fibrillation -

continue long-term anti-coagulation

Currently controlled rate

I48.91: Unspecified atrial fibrillation
• ATRIAL FIBRILLATION: CARE INSTRUCTIONS

#### Morbid obesity -

stressed the need for weight loss- to be further discussed after atrial fibrillation and systolic dysfunction have been stabilized

E66.01: Morbid (severe) obesity due to excess calories
• WHEN YOU ARE OVERWEIGHT: CARE INSTRUCTIONS

### Return to Office

• Pinder Thomas, MD for Established Patient at PMG_CAPCARD_Varnum St Office* on 08/20/2020 at 10:30 AM

### Encounter Sign-Off

Encounter signed-off by Pinder Thomas, MD, 07/12/2020.
Encounter performed and documented by Pinder Thomas, MD
Encounter reviewed & signed by Pinder Thomas, MD on 07/12/2020 at 11:29pm

### Encounter Date: 07/06/2020

Patient

| | | | |
|---|---|---|---|
| **Name** | BARTLEY, DARYL (58yo, M) ID# 17563361 | **Appt. Date/Time** | 07/06/2020 11:45AM |
| **DOB** | ____/1961 | **Service Dept.** | PMG_CAPCARD_Varnum St Office* |
| **Provider** | PINDER THOMAS, MD | | |
| **Insurance** | Med Primary: TRUSTED HEALTH PLAN OF DC - DC HEALTHY FAMILIES (MEDICAID REPLACEMENT - HMO) Insurance # : 70697031 Referring Provider Name : SCHROETER, STEFANIE Prescription: ABARCA - Member is eligible. details | | |

### Chief Complaint

systolic heart failure, Morbid obesity, Hypertensive heart disease

BARTLEY, DARYL (id #17563361, dob:[____]1961)

## Assessment / Plan

1. Currently patient is compensated

2. A review of his 2-D echocardiogram reveals continued depression of systolic function-ejection fraction 25-30%

3. Reviewed all medication

4. We'll see if patient is approved for entresto which may help his LV function

5. Continue current medications at present with daily weights and weight reduction

6. Followup evaluation after entresto investigation

### Chronic systolic heart failure -

was recently discharged following a near syncopal episode- will obtain records

I50.22: Chronic systolic (congestive) heart failure

### Hypertensive disorder -

continue current medication for now

I10: Essential (primary) hypertension
ELEVATED BLOOD PRESSURE: CARE INSTRUCTIONS

### Atrial fibrillation -

continue long-term anti-coagulation

Currently controlled rate

I48.91: Unspecified atrial fibrillation
ATRIAL FIBRILLATION: CARE INSTRUCTIONS

### Morbid obesity -

stressed the need for weight loss- to be further discussed after atrial fibrillation and systolic dysfunction have been stabilized

E66.01: Morbid (severe) obesity due to excess calories
WHEN YOU ARE OVERWEIGHT: CARE INSTRUCTIONS

### Return to Office
None recorded.

## Encounter Sign-Off
Encounter signed-off by Pinder Thomas, MD, 04/14/2020.
Encounter performed and documented by Pinder Thomas, MD
Encounter reviewed & signed by Pinder Thomas, MD on 04/14/2020 at 9:02am

**Encounter Date: 03/23/2020**
Patient

| | | | |
|---|---|---|---|
| **Name** | BARTLEY, DARYL (58yo, M) ID# 17563361 | **Appt. Date/Time** | 03/23/2020 10:45AM |
| **DOB** | [____]/1961 | **Service Dept.** | PMG_CAPCARD_Varnum St Office* |
| **Provider** | PINDER THOMAS, MD | | |
| **Insurance** | Med Primary: TRUSTED HEALTH PLAN OF DC - DC HEALTHY FAMILIES (MEDICAID REPLACEMENT - HMO)<br>Insurance # : 70697031<br>Referring Provider Name : SCHROETER, STEFANIE<br>Prescription: ABARCA - The payer is currently unavailable. Please try again later. details check again | | |

## Chief Complaint

systolic heart failure, Morbid obesity, Hypertensive heart disease



**JOHNS HOPKINS**
M E D I C I N E

SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ▮▮/1961, Sex: M
Acct #: 2001265162
Adm: 7/28/2020, Disch: 7/30/2020

## 07/28/2020 - ED to Hosp-Admission (Discharged) in SMH Intensive Care Unit

### Reason for Visit

**Chief Complaints** *[last edited by Terrie Jones, RN on 7/28/2020 2308]*

- Shortness of Breath (c/o SOB that started 3 days; denies Chest pain.  PMHX: Afib, CHF and COPD)
- Urinary Pain (c/o urinary frequency and pain after diarrhea.  )
- Nausea (c/o nausea and vomiting X 3 days. )

**Visit Diagnoses** *[last edited by Jennifer Ross Alman, MD MPH on 7/30/2020 1121]*

| Name | Code | Is ED? |
|---|---|---|
| Chronic congestive heart failure, unspecified heart failure type (primary) | I50.9 | Yes |
| Diarrhea, unspecified type | R19.7 | Yes |
| Obesity with serious comorbidity, unspecified classification, unspecified obesity type | E66.9 | Yes |
| Systolic CHF, acute on chronic | I50.23 | No |

**Hospital Problems**

| Name | Code | Date Noted | Date Resolved | Present on Admission? | Last Updated By | Last Updated On |
|---|---|---|---|---|---|---|
| Chronic congestive heart failure, unspecified heart failure type (primary) | I50.9 | 07/29/2020 | — | Yes | Shannon Leigh Emerick, MD | 07/29/2020 0339 |
| Shortness of breath | R06.02 | 07/08/2020 | — | Yes | Alexandra Mack, CRNP | 07/29/2020 0345 |

### Visit Information

**Admission Information**

| | | | | |
|---|---|---|---|---|
| Arrival Date/Time: | 07/28/2020 2233 | Admit Date/Time: | 07/28/2020 2312 | IP Adm. Date/Time: |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: |
| Means of Arrival: | Car | Primary Service: | General Medicine | Secondary Service: N/A |
| Transfer Source: | | Service Area: | JHM CLINICAL | Unit: SMH Intensive Care Unit |
| Admit Provider: | Neil Mehta, MD | Attending Provider: | Shannon Leigh Emerick, MD | Referring Provider: Self Referred |

**Discharge Information**

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 07/30/2020 1252 | Home Or Self Care | None | Jennifer Ross Alman, MD MPH | SMH Intensive Care Unit |

**Follow-up Information**

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Mudita Malhotra, MD | Schedule an appointment as soon as possible for a visit | | 5215 Loughboro Road NW Suite 300 Washington DC 20016 202-537-4400 |
| Thomas Pinder, MD | In 1 week | | 1160 Varnum St. NE Suite 100 Washington DC 20017 202-832-1800 |
| JHCP Heart Care - Bethesda | | As needed | 6410 Rockledge Dr Ste 200 Bethesda Maryland 20817 301-897-5301 |

**OUTPATIENT OBSERVATION and LENGTH OF STAY INFORMATION**

| Outpatient/Obs Date: | Length of Stay: | Inpatient Length of Stay: |
|---|---|---|



SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ███/1961, Sex: M
Acct #: 2001265162
Adm: 7/28/2020, Disch: 7/30/2020

---

**07/28/2020 - ED to Hosp-Admission (Discharged) in SMH Intensive Care Unit (continued)**

| 7/29/2020 3:45 AM | 0 days | N/A |
|---|---|---|

## Coding Summary

### Account Information

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | Combined from HAR |
|---|---|---|---|
| 2001265162 - BARTLEY,DARYL FERDINAND | TRUSTED HEALTH PLANS INC [1810] | None | None |

### Admission Information

| Arrival Date/Time: | 07/28/2020 2233 | Admit Date/Time: | 07/28/2020 2233 | IP Adm. Date/Time |  |
|---|---|---|---|---|---|
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: |  |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | General Medicine JHM CLINICAL | Secondary Service: Unit: | SMH Intensive Care Unit |
| Admit Provider: | Neil Mehta, MD | Attending Provider: | Jennifer Ross Alman, MD MPH | Referring Provider: | Self Referred |

### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 07/30/2020 1252 | Home Or Self Care | None | Jennifer Ross Alman, MD MPH | SMH Intensive Care Unit |

### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| I13.0 | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | |

### Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| I13.0 **[Principal]** | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | Yes | No | | Yes |
| I50.23 | Acute on chronic systolic (congestive) heart failure | Yes | MCC | | Yes |
| Z11.59 | Encounter for screening for other viral diseases | Exempt from POA reporting | No | | No |
| I48.19 | Other persistent atrial fibrillation | Yes | CC | | No |
| N18.1 | Chronic kidney disease, stage 1 | | | | |
| J44.9 | Chronic obstructive pulmonary disease, unspecified | Yes | No | | No |
| E66.01 | Morbid (severe) obesity due to excess calories | Yes | No | | No |
| E78.5 | Hyperlipidemia, unspecified | Yes | No | | No |
| I42.0 | Dilated cardiomyopathy | Yes | No | | No |



SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ████/1961, Sex: M
Acct #: 2001265162
Adm: 7/28/2020, Disch: 7/30/2020

---

## 07/28/2020 - ED to Hosp-Admission (Discharged) in SMH Intensive Care Unit (continued)

### Coding Summary (continued)

| | | | | |
|---|---|---|---|---|
| G47.33 | Obstructive sleep apnea (adult) (pediatric) | Yes | No | No |
| R19.7 | Diarrhea, unspecified | | | |
| K64.9 | Unspecified hemorrhoids | Yes | No | No |
| I27.20 | Pulmonary hypertension, unspecified | Yes | No | No |
| R09.02 | Hypoxemia | Yes | No | No |
| Z98.890 | Other specified postprocedural states | | | |
| Z79.01 | Long term (current) use of anticoagulants | Exempt from POA reporting | No | No |
| Z79.899 | Other long term (current) drug therapy | Exempt from POA reporting | No | No |
| Z87.891 | Personal history of nicotine dependence | Exempt from POA reporting | No | No |
| Z91.11 | Patient's noncompliance with dietary regimen | Exempt from POA reporting | No | No |
| Z91.19 | Patient's noncompliance with other medical treatment and regimen | Exempt from POA reporting | No | No |

### DRG Information

| DRG | DRG Type | Qualifier | Weight | MDC | LOS | SOI | ROM | Exp Reimb |
|---|---|---|---|---|---|---|---|---|
| 291 [Billing] | MS-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | | 1.3458 | 005 | 1 | | | 8,569.00 |
| Description: HEART FAILURE & SHOCK W MCC | | | | | | | | |
| 291 | MS-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | HAC Dx Included | 1.3458 | 005 | 1 | | | 8,569.00 |
| Description: HEART FAILURE & SHOCK W MCC | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | | 0.5276 | 005 | 1 | 2 | 2 | 0.00 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | Admission DRG | 0.5276 | 005 | 1 | 2 | 2 | 0.00 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | PPC DRG | 0.5276 | 005 | 1 | 2 | 2 | 0.00 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | NAT APR-DRG V37 BEFORE 4/1/20, V37.1 AFTER 4/1/20 (FY 2020) | PPC Admit DRG | | 005 | 1 | | | 0.00 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | DC APR-DRG V35 | | 0.65461 | 005 | 1 | 2 | 2 | 9,177.39 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | DC APR-DRG V35 | HAC Dx Included | 0.65461 | 005 | 1 | 2 | 2 | 9,177.39 |
| Description: HEART FAILURE | | | | | | | | |
| 194 | DC APR-DRG V35 | Admission DRG | 0.65461 | 005 | 1 | 2 | 2 | 0.00 |
| Description: HEART FAILURE | | | | | | | | |

---



JOHNS HOPKINS
M E D I C I N E

SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB:          1961, Sex: M
Acct #: 2001287839
Adm: 8/30/2020, IP Adm: 8/30/2020, Disch: 9/2/2020

## 08/30/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B

### Reason for Visit

**Chief Complaints** *[last edited by Alex Pasion, RN on 8/30/2020 1746]*

- Shortness of Breath (Amitted for same last month, complains gradual sob over the past 2 days, normal urine output, increase swelling legs bilaterally, denies chest pain/palpitations)
- Edema
- Loss of Consciousness (driving two days ago, cough attack, LOC x2 mins, did not go to the hospital)

**Visit Diagnoses** *[last edited by Don Michael Coleman II, MD on 8/30/2020 2154]*

| Name | Code | Is ED? |
|---|---|---|
| COPD with acute exacerbation (primary) | J44.1 | Yes |
| Acute on chronic systolic congestive heart failure | I50.23 | Yes |

**Hospital Problems**

| Name | Code | Date Noted | Date Resolved | Present on Admission? | Last Updated By | Last Updated On |
|---|---|---|---|---|---|---|
| Acute on chronic combined systolic and diastolic congestive heart failure | I50.43 | 04/26/2020 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Atrial fibrillation | I48.91 | 01/16/2020 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Cardiomyopathy | I42.9 | 09/19/2018 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Chronic anticoagulation | Z79.01 | 05/08/2020 | — | Exempt from POA reporting | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| CKD (chronic kidney disease) stage 3. GFR 30-59 ml/min | N18.3 | 12/10/2019 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Class 3 severe obesity due to excess calories with serious comorbidity and body mass index (BMI) of 45.0 to 49.9 in adult | E66.01 Z68.42 | 03/02/2020 | — | Exempt from POA reporting | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| COPD without exacerbation | J44.9 | 09/02/2020 | — | Unknown | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Hypertension | I10 | 02/19/2019 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Morbid obesity due to excess calories | E66.01 | 02/19/2019 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1557 |
| Rectal pain | K62.89 | 09/02/2020 | — | Yes | Rosita Alyssa B Hermann, MD | 09/02/2020 1558 |
| Systolic CHF | I50.20 | 08/30/2020 | — | Yes | Peter Tait, MD | 08/30/2020 2310 |

### Visit Information

#### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 08/30/2020 1734 | Admit Date/Time: | 08/30/2020 1743 | IP Adm. Date/Time: | 08/30/2020 2311 |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | Internal Medicine JHM CLINICAL | Secondary Service: Unit: | N/A Sibley Memorial Hospital 5B |
| Admit Provider: | Rosita Alyssa B Hermann, MD | Attending Provider: | Don Michael Coleman II, MD | Referring Provider: | Self Referred |

#### Discharge Information



SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: /1961, Sex: M
Acct #: 2001287839
Adm: 8/30/2020, IP Adm: 8/30/2020, Disch: 9/2/2020

## 08/30/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)

### Visit Information (continued)

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 09/02/2020 1504 | Home Or Self Care | None | Rosita Alyssa B Hermann, MD | Sibley Memorial Hospital 5B |

### Follow-up Information

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Thomas Pinder, MD | Schedule an appointment as soon as possible for a visit in 2 weeks | | 1160 Varnum St. NE Suite 100 Washington DC 20017 202-832-1800 |
| Mudita Malhotra, MD | | | 5215 Loughboro Road NW Suite 300 Washington DC 20016 202-537-4400 |

### OUTPATIENT OBSERVATION and LENGTH OF STAY INFORMATION

| Outpatient/Obs Date: | Length of Stay: | Inpatient Length of Stay: |
|---|---|---|
| 9/2/2020 1:20 PM | 3 days | 0 days |

## Coding Summary

### Account Information

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | Combined from HAR |
|---|---|---|---|
| 2001287839 - BARTLEY,DARYL FERDINAND | TRUSTED HEALTH PLANS INC [1810] | None | None |

### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: Admission Type: | 08/30/2020 1734 Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Admit Date/Time: Point of Origin: | 08/30/2020 1734 Home Or Workplace Or Non-health Care Facility | IP Adm. Date/Time: Admit Category: | |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | Internal Medicine JHM CLINICAL | Secondary Service: Unit: | Sibley Memorial Hospital 5B |
| Admit Provider | Rosita Alyssa B Hermann, MD | Attending Provider: | Rosita Alyssa B Hermann, MD | Referring Provider: | Self Referred |

### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 09/02/2020 1504 | Home Or Self Care | None | Rosita Alyssa B Hermann, MD | Sibley Memorial Hospital 5B |

### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| R06.02 | Shortness of breath | |
| R60.9 | Edema, unspecified | |
| I48.91 | Unspecified atrial fibrillation | |



JOHNS HOPKINS
M E D I C I N E

SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ▮▮▮▮/1961, Sex: M
Acct #: 2001287839
Adm: 8/30/2020, IP Adm: 8/30/2020, Disch: 9/2/2020

---

### 08/30/2020 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)

Coding Summary (continued)

Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|------|-------------|-----|-----|-----|-----|
| I48.91 [Principal] | Unspecified atrial fibrillation | | | | |
| E66.01 | Morbid (severe) obesity due to excess calories | | | | |
| E78.5 | Hyperlipidemia, unspecified | | | | |
| I13.0 | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | | | | |
| N18.3 | Chronic kidney disease, stage 3 (moderate) | | | | |
| I50.43 | Acute on chronic combined systolic (congestive) and diastolic (congestive) heart failure | | | | |
| I42.9 | Cardiomyopathy, unspecified | | | | |
| J44.1 | Chronic obstructive pulmonary disease with (acute) exacerbation | | | | |
| N17.9 | Acute kidney failure, unspecified | | | | |
| K62.89 | Other specified diseases of anus and rectum | | | | |
| Z68.42 | Body mass index (BMI) 45.0-49.9, adult | | | | |
| Z79.01 | Long term (current) use of anticoagulants | | | | |
| Z79.899 | Other long term (current) drug therapy | | | | |
| Z82.49 | Family history of ischemic heart disease and other diseases of the circulatory system | | | | |
| Z87.891 | Personal history of nicotine dependence | | | | |
| Z91.19 | Patient's noncompliance with other medical treatment and regimen | | | | |
| Z20.828 | Contact with and (suspected) exposure to other viral communicable diseases | | | | |

Infection Status as of 9/2/2020

| Infection | Onset | Added | Added By | Resolved | Resolved By |
|-----------|-------|-------|----------|----------|-------------|
| None active Resolved | | | | | |
| Rule out COVID-19 (Airborne and Contact with Eye Protection) | 08/30/20 | 08/30/20 2002 | Result: COVID-19 (Coronavirus) NAT, NP/Nasal Swab [577172153] (Ordered) | 08/30/20 2215 | Rule-Out Test Resulted |

Patient as-of Visit

Allergies as of 9/2/2020

Allergies last reviewed by Alex Pasion, RN on 8/30/2020 1747 - Review Complete
No Known Allergies

Last Reviewed By - Revision History

| Reviewed On | User | Review Status |
|-------------|------|---------------|
| 08/30/2020 1747 | Alex Pasion, RN | Review Complete |
| 08/19/2020 1602 | Mudita Malhotra, MD | Review Complete |
| 07/29/2020 0659 | Clarisse Elisha Sintor | Review Complete |
| 07/29/2020 0342 | Alexandra Mack, CRNP | Review Complete |
| 07/28/2020 2307 | Terrie Jones, RN | Review Complete |
| 07/08/2020 2238 | Gissella Mana, RN | Review Complete |
| 07/08/2020 1155 | Andrea Conner, RN | Review Complete |
| 07/08/2020 0658 | Neida Leal, RN | Review Complete |
| 07/06/2020 1335 | Mudita Malhotra, MBBS | Review Complete |
| 05/08/2020 1421 | Mudita Malhotra, MBBS | Review Complete |
| 04/26/2020 1928 | Naomi Peterson | Review Complete |



SMH SIBLEY MEMORIAL HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ___/1961, Sex: M
Acct #: 2001381477
Adm: 1/12/2021, IP Adm: 1/13/2021, Disch: 1/14/2021

## 01/12/2021 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B

### Reason for Visit

**Chief Complaints** *[last edited by Michelle Pesons on 1/12/2021 2230]*

- Abdominal Pain (comes in w/ abdominal pain accompanied by nausea, vomiting and dizziness satring today)
- Shortness of Breath (states SOB and cough for the past couple of days)

**Visit Diagnoses** *[last edited by Nancy Vu, MD on 1/14/2021 0943]*

| Name | Code | Is ED? |
|---|---|---|
| Acute on chronic congestive heart failure, unspecified heart failure type (primary) | I50.9 | Yes |
| Non-intractable vomiting with nausea, unspecified vomiting type | R11.2 | Yes |
| History of medication noncompliance | Z91.14 | Yes |
| Morbid obesity | E66.01 | Yes |
| Lightheadedness | R42 | No |

**Hospital Problems**

| Name | Code | Date Noted | Date Resolved | Present on Admission? | Last Updated By | Last Updated On |
|---|---|---|---|---|---|---|
| Acute on chronic congestive heart failure, unspecified heart failure type (primary) | I50.9 | 01/13/2021 | — | Yes | Zryan Shwani, MD | 01/13/2021 0446 |
| Acute on chronic HFrEF (heart failure with reduced ejection fraction) | I50.23 | 01/13/2021 | — | Yes | Zryan Shwani, MD | 01/13/2021 0446 |

### Visit Information

#### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 01/12/2021 2206 | Admit Date/Time: | 01/12/2021 2226 | IP Adm. Date/Time: | 01/13/2021 0446 |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: | Car | Primary Service: | Internal Medicine | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | JHM CLINICAL | Unit: | Sibley Memorial Hospital 5B |
| Admit Provider: | Zryan Shwani, MD | Attending Provider: | Shannon Leigh Emerick, MD | Referring Provider: | |

#### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 01/14/2021 1230 | Home Or Self Care | None | Nancy Vu, MD | Sibley Memorial Hospital 5B |

#### Follow-up Information

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Mudita Malhotra, MD | In 1 week | | 5215 Loughboro Road NW Suite 300 Washington DC 20016 202-537-4400 |

Your cardiologist

#### OUTPATIENT OBSERVATION and LENGTH OF STAY INFORMATION

| Outpatient/Obs Date: | Length of Stay: | Inpatient Length of Stay: |
|---|---|---|
| N/A | 1 day | 1 days |



JOHNS HOPKINS
M E D I C I N E

SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ████/1961, Sex: M
Acct #: 2001416983
Adm: 2/20/2021, IP Adm: 2/20/2021, Disch: 2/23/2021

## 02/20/2021 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 5B (continued)

### Coding Summary

#### Account Information

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | Combined from HAR |
|---|---|---|---|
| 2001416983 – BARTLEY,DARYL FERDINAND | CAREFIRST COMMUNITY HEALTH PLAN DC MCO [1815] | None | None |

#### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: Admission Type: | 02/20/2021 1136 Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Admit Date/Time: Point of Origin: | 02/20/2021 1136 Home Or Workplace Or Non-health Care Facility | IP Adm. Date/Time: Admit Category: | 02/20/2021 1418 |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | Internal Medicine JHM CLINICAL | Secondary Service: Unit: | Sibley Memorial Hospital 5B |
| Admit Provider: | Pratima Thotakura, MD | Attending Provider: | Pratima Thotakura, MD | Referring Provider: | Provider Unknown |

#### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 02/23/2021 1413 | Home Or Self Care | None | Pratima Thotakura, MD | Sibley Memorial Hospital 5B |

#### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| I50.23 | Acute on chronic systolic (congestive) heart failure | |

#### Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| I13.0 [Principal] | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | Yes | No | | Yes |
| I50.23 | Acute on chronic systolic (congestive) heart failure | Yes | MCC | | Yes |
| Z68.42 | Body mass index (BMI) 45.0-49.9, adult | Exempt from POA reporting | CC | | No |
| I48.91 | Unspecified atrial fibrillation | Yes | No | | No |
| N18.30 | Chronic kidney disease, stage 3 unspecified | Yes | No | | No |
| J44.9 | Chronic obstructive pulmonary disease, unspecified | Yes | No | | No |
| E66.01 | Morbid (severe) obesity due to excess calories | Yes | No | | No |
| G47.33 | Obstructive sleep apnea (adult) (pediatric) | Yes | No | | No |
| I27.20 | Pulmonary hypertension, unspecified | Yes | No | | No |
| Z87.891 | Personal history of nicotine dependence | Exempt from POA reporting | No | | No |
| Z91.11 | Patient's noncompliance with dietary regimen | Exempt from POA reporting | No | | No |
| Z91.14 | Patient's other noncompliance with medication regimen | Exempt | No | | No |

MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

| Patient: | **BARTLEY, DARYL FERDINAND** | | | |
|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Date of Service: | 4/13/2021 |
| Account #: | WHC-00635817331 | | Finanical Class: | Medicaid-HMO |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 3 | | | |

---

### *Correspondence Release Documents*

Subject: bluebook

patient seen in clinic yesterday 4/13 by Dr Rao, patient in unable to ambulate more than a few feet, SOB/DOE and volume up. It was advised he proceed to admission yesterday, however he has "things to address" at home. Bluebook called this am (4/14)and patient advised to arrive around 1000.

---

### *Discharge Documentation*

DOCUMENT NAME:
PERFORM INFORMATION:
RESULT STATUS:
SERVICE DATE/TIME:
SIGN INFORMATION:

Ambulatory Clinical Summary
Elizabeth T Brandes,RN (4/13/2021 14:39 EDT)
Auth (Verified)
4/13/2021 14:39 EDT
Elizabeth T Brandes.RN (4/13/2021 14:39 EDT)

# BARTLEY, DARYL

**Visit Date:** 04/13/2021 13:30

## Instructions From Your Provider
W are advising an admission

---

MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

| Patient: | BARTLEY, DARYL FERDINAND | | |
|---|---|---|---|
| Med Rec #: | WHC-000003251117 | Date of Service: | 4/13/2021 |
| Account #: | WHC-00635817331 | Finanical Class: | Medicaid-HMO |
| Date of Birth: | /1961 Age: 59 years    Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 3 | | |

## Office/Clinic Notes

DOCUMENT NAME:  Cardiology Office/Clinic Note
PERFORM INFORMATION:  Sriram Rao,MBBS (4/13/2021 17:04 EDT)
RESULT STATUS:  Auth (Verified)
SERVICE DATE/TIME:  4/13/2021 16:43 EDT
SIGN INFORMATION:  Sriram Rao,MBBS (4/13/2021 17:04 EDT)

### History of Present Illness

Mr Bartley is a 59-year-old man with a background history of heart failure with reduced ejection fraction (EF 20% on previous echocardiograms), obesity, atrial fibrillation on apixaban, chronic kidney disease, COPD, hypertension, obstructive sleep apnea who presents with gross fluid overload for assessment and management.

I will review his history for the purposes of my notes. He states that he was initially diagnosed with heart failure 2 to 3 years ago after a period of incarceration. At that stage he had reasonable exercise tolerance but over the progressive he is that reduced to baseline exercise function of approximately half a flight of stairs. Over the last 6 months he has had a very significant drop in his exercise tolerance now being able to walk less than 10 to 20 m without getting short of breath. He has had 2-3 admissions for acute decompensated heart failure in the last 6 months all of which at Sibley Hospital. He is uncertain of the etiology of his heart failure, but he has had a coronary angiogram which she says was normal and has not had any stents or operations. He does not report having an MRI or an ICD. He lives in the Northeast with his mother and is currently on disability but states he was previously a marketing consultant. He is an ex-smoker of 20 pack years duration but quit approximately a year ago. He consumes social alcohol. He has previous heavy cocaine use for over 20 years but quit 4 years ago, he states that he was mostly nasally ingested but also occasionally ingested from smoking.

On review today in clinic he is grossly fluid overloaded and feels very unwell. The main location of his fluid is in his abdomen but he states that he has peripheral edema as well, and that this is the static location of his fluid overload. He denies any chest pain. He has 2 pillow orthopnea and some degree of paroxysmal nocturnal dyspnea, although he does state that he is noncompliant with his CPAP Pap machine due to difficulty getting an appropriate fit and seal from his current mask. He is a significant loss of appetite with some mild nausea, although denies any vomiting or diarrhea. He has no postural symptoms, but he does describe 2-3 cardiac syncopal episodes within the last year which he says that the pain attributed to low blood pressure. He states he has been compliant with medical therapy and other than low blood pressure with Entresto he has had no significant side effects from medical therapy

### Cardiac History

# HFrEF
# CKD stage III
# AF on Apixaban
# COPD

### Problem List/Past Medical History

Ongoing
  No qualifying data
Historical
  No qualifying data

### Medications

**Medications at the Start of the Visit**
1. apixaban (apixaban 5 mg oral tablet), 5 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
2. atorvastatin (atorvastatin 40 mg oral tablet), 40 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)
3. bumetanide (bumetanide 1 mg oral tablet), 1 mg, 1 tab, PO, 2x/day, 90 tab, 0 Refill(s)
4. carvedilol (carvedilol 6.25 mg oral tablet), 6.25 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
5. metOLazone (metolazone 5 mg oral tablet), 5 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)

**Medications at the End of the Visit**
1. apixaban (apixaban 5 mg oral tablet), 5 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
2. atorvastatin (atorvastatin 40 mg oral tablet), 40 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)
3. bumetanide (bumetanide 1 mg oral tablet), 1 mg, 1 tab, PO, 2x/day, 90 tab, 0 Refill(s)
4. carvedilol (carvedilol 6.25 mg oral tablet), 6.25 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
5. metOLazone (metolazone 5 mg oral tablet), 5 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)

### Allergies

No Known Allergies

Print Date/Time:  7/2/2021 12:15 EDT
Report Request ID:  316589974

MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

| | | | | |
|---|---|---|---|---|
| **Patient:** | **BARTLEY, DARYL FERDINAND** | | | |
| Med Rec #: | WHC-000003251117 | | Date of Service: | 4/13/2021 |
| Account #: | WHC-00635817331 | | Finanical Class: | Medicaid-HMO |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 3 | | | |

---

## *Office/Clinic Notes*

# Obesity
# OSA - non compliant with cpap
# HTN

**Social History**
  Tobacco/Nicotine
    Use: Denies., 04/13/2021

Referring: Thomas Pinder

### Review of Systems
The rest of the CV ROS is otherwise negative.

### Physical Exam

  Vitals & Measurements
04/13/2021 14:24  **T:** 36.7 °C (98.1 °F) - Oral  **P:** 116  **RR:** 24  **SpO2:** 95%
Oxygen Therapy: Room air

  Pain Assessment
Pain Present: Yes actual or suspected pain (04/13/21 14:24:00)
General: No acute distress, but somnolent and sleeping multiple times during discussion
Eye: Extraocular motions intact. Normal appearing conjunctiva. No scleral icterus.
HENT: Normocephalic, moist oral mucosa. Oropharynx clear and without edema, injection nor exudate.
Neck: Supple, non-tender, with full range of motion, no carotid bruits, JVD to earlobe, no lymphadenopathy.
Lungs: No respiratory distress. Lungs are clear to auscultation
Heart or Cardiovascular: Warm and well perfused. Atrial fibrillation with rapid ventricular response, normal S1, S2, 4 on 6 pansystolic murmur. There is full plus peripheral edema of legs and abdominal apron.
Abdomen: Soft, supple, non-distended. No tenderness to palpation. Pitting edema of abdominal apron.
Musculoskeletal: All extremities move well with full range of motion.
Skin: No rashes or lesions.
Neurologic: No focal motor deficits.
Psychiatric: Cooperative, appropriate mood, affect, and thought.

### Procedure
EKG -atrial fibrillation with rapid ventricular rate. Normal QRS duration, although low voltage.

### Assessment/Plan

1. Chronic systolic heart failure I50.22
  He is NYHA Class 4 today. He clearly requires admission. We discussed the best way to logistically do this and he requests to be a to go home tonight to arrange a few things with his mother before presenting to admission tomorrow. I have told him that if he feels more unwell overnight that he should call an ambulance and come to hospital sooner

MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

**Patient:** **BARTLEY, DARYL FERDINAND**

| | | | | |
|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Date of Service: | 4/13/2021 |
| Account #: | WHC-00635817331 | | Financial Class: | Medicaid-HMO |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 3 | | | |

## Office/Clinic Notes

At home he is maintained on Bumex 1 mg twice daily and metolazone. He will definitely need intravenous diuretic during his admission
He is on carvedilol 6.25 for GDMT. We will not make any changes and will titrate during his admission

2. Nonischemic cardiomyopathy I42.8
He has a nonischemic cardiomyopathy but the etiology is uncertain
I wonder whether he may have some degree of disease from his previous heavy cocaine use, although all the other causes of nonischemic cardiomyopathy (genetic, sarcoid, amyloid) will also need to be excluded
If possible during his admission which arrange for cardiac MRI as well as a right heart catheter and biopsy

3. Atrial fibrillation I48.91
He is in atrial fibrillation with a rapid ventricular rate
He is made on anticoagulation with apixaban
We will attempt to improve rate control during admission with diuresis

4. Anticoagulated Z79.01
He is anticoagulated with apixaban 5 mg twice daily
We will continue this for now

5. OSA (obstructive sleep apnea) G47.33
He is somnolent during review today and is clear that he has a moderate to severe sleep apnea
It would be worthwhile getting a sleep study on the floor as well as potentially using CPAP therapy

6. Syncope R55
His syncopal episodes are concerning given his low EF that he may be having cardiac syncope
We will monitor him on the floor and have been reviewed by EP for potential need for ICD implantation if he is willing

**Thank you for involving me in the care of this patient. For questions, please contact our clinic on (202) 877-7766**

**Sriram Rao, MBBS**
**Advanced Heart Failure Attending**

**Clinician Time Spent Day of Service**
Time spent pre-visit, including record review - 20 minutes
Time spent during the visit, including face-to-face time with the patient - 45 minutes
Time spent post-visit, including documentation - 15 minutes
Total time spent day of encounter = 80 minutes

MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

| | | | |
|---|---|---|---|
| **Patient:** | **BARTLEY, DARYL FERDINAND** | | |
| Med Rec #: | WHC-000003251117 | Date of Service: | 6/8/2021 |
| Account #: | WHC-00643236524 | Financial Class: | Medicaid-HMO |
| Date of Birth: | [redacted]/1961 Age: 59 years    Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 6 | | |

## *Office/Clinic Notes*

| | |
|---|---|
| DOCUMENT NAME: | Cardiology Office/Clinic Note |
| PERFORM INFORMATION: | Sriram Rao,MBBS (6/8/2021 16:55 EDT) |
| RESULT STATUS: | Auth (Verified) |
| SERVICE DATE/TIME: | 6/8/2021 16:47 EDT |
| SIGN INFORMATION: | Sriram Rao,MBBS (6/9/2021 14:48 EDT) |

### History of Present Illness

Mr Bartley is a 59-year-old man with a background history of heart failure with reduced ejection fraction (EF 20% on previous echocardiograms), obesity, atrial fibrillation on apixaban, chronic kidney disease, COPD, hypertension, obstructive sleep apnea. He was recently hospitalized for acute decompensated heart failure and presents for his first outpatient clinic review today after missing appointment last week due to external factors.

I will go visit his admission with the purpose of my notes. He was admitted for almost 3 weeks and during that time had large volume diuresis losing almost 30 kg with the fluid weight. On discharge he was at a dry weight of 129.9kg. He ended up being discharged and then brought back for an ICD as he had a number of post obligations that required sorting out, ended up having his ICD implanted on 5/19.

Since discharge he has been doing okay although he reduced his Bumex himself from 2 twice daily to 1 twice daily. Over the last week he has noticed a gradual increase in his shortness of breath and weights and he is now at 134.7 kg (5 kg above his dry weight). He denies chest pain, orthopnea, PND, palpitations, syncope, presyncope. He is able to walk approximately 100m resulting in NYHA 2-3 class symptoms, which is stable from discharge. Beyond the change in Bumex he is tolerating medical therapy well with no significant side effects, and has been compliant with therapy as directed.

### Cardiac History
\# HFrEF
\# CKD stage III
\# AF on Apixaban
\# COPD
\# Obesity
\# OSA - non compliant with cpap
\# HTN

Referring: Thomas Pinder

### Review of Systems
The rest of the CV ROS is otherwise negative.

### Physical Exam

Vitals & Measurements
No vitals or measurement results available for this patient

### Problem List/Past Medical History
Ongoing
  Acute on chronic left systolic heart
  failure
  Anticoagulated
  Atrial fibrillation
  ICD (implantable
  cardioverter-defibrillator) in place
  Morbid obesity
  Non-ischemic cardiomyopathy
Historical
  No qualifying data

### Procedure/Surgical History
• Single chamber ICD (Biotronik)
  (05/19/2021)

### Medications
**Medications at the Start of the Visit**
1. acetaminophen (acetaminophen 500 mg oral tablet), 1,000 mg, 2 tab, PO, q6h, PRN: as needed for pain, 0 Refill(s)
2. apixaban (apixaban 5 mg oral tablet), 5 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
3. atorvastatin (atorvastatin 40 mg oral tablet), 40 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)
4. bumetanide (bumetanide 1 mg oral tablet), 2 mg, 2 tab, PO, 2x/day, 120 tab, 0 Refill(s)
5. carvedilol (carvedilol 3.125 mg oral tablet), 3.125 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
6. hydrALAZINE-isosorbide dinitrate (hydrALAZINE-isosorbide dinitrate 37.5 mg-20 mg oral tablet), 1 tab, PO, 3x/day, 90 tab, 0 Refill(s)
7. tamsulosin (tamsulosin 0.4 mg oral capsule), 0.4 mg, 1 cap, PO, Daily, 30 cap, 0 Refill(s)

## MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

| Patient: | **BARTLEY, DARYL FERDINAND** | | |
|---|---|---|---|
| Med Rec #: | WHC-000003251117 | Date of Service: | 6/8/2021 |
| Account #: | WHC-00643236524 | Financial Class: | Medicaid-HMO |
| Date of Birth: | ▓▓/1961 Age: 59 years   Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 6 | | |

## Office/Clinic Notes

General: No acute distress. Small swelling over the ICD pocket site
Eye: Extraocular motions intact. Normal appearing conjunctiva. No scleral icterus.
HENT: Normocephalic, moist oral mucosa. Oropharynx clear and without edema, injection nor exudate.
Neck: Supple, non-tender, with full range of motion, no carotid bruits, JVD 8cm, no lymphadenopathy.
Lungs: No respiratory distress. Lungs are clear to auscultation
Heart or Cardiovascular: Warm and well perfused. Normal rate, regular rhythm, normal S1, S2, no murmur, gallop or rub. There is 1+ peripheral edema.
Abdomen: Soft, supple, non-distended. No tenderness to palpation.
Musculoskeletal: All extremities move well with full range of motion.
Skin: No rashes or lesions.
Neurologic: No focal motor deficits.
Psychiatric: Cooperative, appropriate mood, affect, and thought.

### Assessment/Plan

1. Acute on chronic left systolic heart failure I50.23
He is NYHA Class 2-3 today
We will increase his Bumex to 2 mg twice daily. We will check his weight later this week and depending on this we will either dose him with extra Bumex and/or metolazone, or arrange admission
He is on carvedilol 3.125 mg twice daily and BiDil 37.5/20 for GDMT. We will not make any changes. He is not an on an ARB or Entresto due to renal dysfunction

2. Non-ischemic cardiomyopathy I42.8
He has a nonischemic cardiomyopathy. We ended up deferring a cardiac MRI due to renal dysfunction
We discussed genetic testing and will continue to have ongoing discussions about this going forward

3. ICD (implantable cardioverter-defibrillator) in place Z95.810
He had an ICD implanted at his last admission
He has a small swelling over his ICD pocket site
He is due to follow with the EP service tomorrow

4. Atrial fibrillation I48.91
He has history of atrial fibrillation though the rate was controlled during the last admission
I will review his EP interrogation from tomorrow to look at the burden of AF

5. Anticoagulated Z79.01
He is anticoagulated on apixaban 5 mg twice daily

6. Morbid obesity E66.01
Despite high-volume diuresis his BMI remains above 40

### Medications at the End of the Visit

1. acetaminophen (acetaminophen 500 mg oral tablet), 1,000 mg, 2 tab, PO, q6h, PRN: as needed for pain, 0 Refill(s)
2. apixaban (apixaban 5 mg oral tablet), 5 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
3. atorvastatin (atorvastatin 40 mg oral tablet), 40 mg, 1 tab, PO, Daily, 90 tab, 0 Refill(s)
4. bumetanide (bumetanide 1 mg oral tablet), 2 mg, 2 tab, PO, 2x/day, 120 tab, 0 Refill(s)
5. carvedilol (carvedilol 3.125 mg oral tablet), 3.125 mg, 1 tab, PO, 2x/day, 60 tab, 0 Refill(s)
6. hydrALAZINE-isosorbide dinitrate (hydrALAZINE-isosorbide dinitrate 37.5 mg-20 mg oral tablet), 1 tab, PO, 3x/day, 90 tab, 0 Refill(s)
7. tamsulosin (tamsulosin 0.4 mg oral capsule), 0.4 mg, 1 cap, PO, Daily, 30 cap, 0 Refill(s)

### Allergies
No Known Allergies

### Social History
Smoking Status - 05/19/2021
   Never smoker
Alcohol
   Use: Denies., 05/19/2021
Substance Use
   Use: Denies., 05/19/2021
Tobacco/Nicotine
   Use: Denies., 04/13/2021

## MedStar Advanced Heart Failure Pgm at Washington Hosp Cntr

**Patient:**  **BARTLEY, DARYL FERDINAND**

| | | | | |
|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Date of Service: | 6/8/2021 |
| Account #: | WHC-00643236524 | | Finanical Class: | Medicaid-HMO |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Primary Doctor: | |
| Location: | MedStar Adv Heart Failure Pgm at MWHC; Exam Room 6 | | | |

---

### *Office/Clinic Notes*

Once we get a more clinically stable we will discuss further about initially diet control and then arranging bariatric surgery review depending on his symptoms as his weight will remain a barrier to any advanced therapies

**Thank you for involving me in the care of this patient. For questions, please contact our clinic on (202) 877-7766**

**Sriram Rao, MBBS**
**Advanced Heart Failure Attending**

**Patient Instructions**

1. BUMEX 2 TABLETS BY MOUTH TWICE A DAY
2. Please call nurse Emilio on Friday with your daily weights.

Contact Information:

email: emilio.a.marmol@Medstar.net

phone number: (202) 877-7766

**Clinician Time Spent Day of Service**
Time spent pre-visit, including record review - 10 minutes
Time spent during the visit, including face-to-face time with the patient - 20 minutes
Time spent post-visit, including documentation - 10 minutes
Total time spent day of encounter = 40 minutes
I attest that the times displayed above were spent by me for this encounter, and on the day of this encounter.

*Electronically signed by:*

*Sriram Rao, MBBS on: 06.09.2021 14:48 EDT*



SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ████1961, Sex: M
Acct #: 2001523630
Adm: 6/20/2021, IP Adm: 6/21/2021, Disch: 6/25/2021

## 06/20/2021 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 7A

### Reason for Visit

**Chief Complaints** *[last edited by Slater Knowles on 6/20/2021 2015]*

- Rectal Pain (Hx of anal fissure; recent constipation resulted led to straining, then pain x 4-5 days; pt denies any bleeding/fever)
- Fever

**Visit Diagnoses** *[last edited by Nadia Sirdar, MD MPH on 6/24/2021 1014]*

| Name | Code | Is ED? |
|---|---|---|
| Perirectal abscess (primary) | K61.1 | Yes |
| Rectal pain | K62.89 | No |
| Acute congestive heart failure, unspecified heart failure type | I50.9 | No |

**Hospital Problem**

| Name | Code | Date Noted | Date Resolved | Present on Admission? | Last Updated By | Last Updated On |
|---|---|---|---|---|---|---|
| Perirectal abscess (primary) | K61.1 | 06/21/2021 | — | Yes | Ian M Warrington, MD | 06/21/2021 0224 |

### Visit Information

**Admission Information**

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 06/20/2021 1945 | Admit Date/Time: | 06/20/2021 2239 | IP Adm. Date/Time: | 06/21/2021 0300 |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: | Car | Primary Service: | Internal Medicine | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | JHM CLINICAL | Unit: | Sibley Memorial Hospital 7A |
| Admit Provider: | Zryan Shwani, MD | Attending Provider: | Praneeth T Reddy, MD | Referring Provider: | |

**Discharge Information**

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 06/25/2021 1021 | Home Or Self Care | None | Nadia Sirdar, MD MPH | Sibley Memorial Hospital 7A |

**Follow-up Information**

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Mudita Malhotra, MD | | | 5215 Loughboro Road NW Suite 300 Washington DC 20016 202-537-4400 |

### OUTPATIENT OBSERVATION and LENGTH OF STAY INFORMATION

| Outpatient/Obs Date: | Length of Stay: | Inpatient Length of Stay: |
|---|---|---|
| N/A | 4 days | 4 days |

### Coding Summary

**Account Information**



SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ███/1961, Sex: M
Acct #: 2001523630
Adm: 6/20/2021, IP Adm: 6/21/2021, Disch: 6/25/2021

## 06/20/2021 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 7A (continued)

### Coding Summary (continued)

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | Combined from HAR |
|---|---|---|---|
| 2001523630 - BARTLEY,DARYL FERDINAND | CAREFIRST COMMUNITY HEALTH PLAN DC MCO [1815] | None | None |

### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 06/20/2021 1945 | Admit Date/Time: | 06/20/2021 1945 | IP Adm. Date/Time: | 06/21/2021 0300 |
| Admission Type: | Emergency: The Patient Required Immediate Medical Intervention As A Result Of Severe, Life Threatening, Or Potentially Disabling Conditions. | Point of Origin: | Home Or Workplace Or Non-health Care Facility | Admit Category: | |
| Means of Arrival: Transfer Source: | Car | Primary Service: Service Area: | Internal Medicine JHM CLINICAL | Secondary Service: Unit: | Sibley Memorial Hospital 7A |
| Admit Provider: | Zryan Shwani, MD | Attending Provider: | Nadia Sirdar, MD MPH | Referring Provider: | |

### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 06/25/2021 1021 | Home Or Self Care | None | Nadia Sirdar, MD MPH | Sibley Memorial Hospital 7A |

### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| K62.89 | Other specified diseases of anus and rectum | |

### Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| K61.0 [Principal] | Anal abscess | Yes | No | | Yes |
| I13.0 | Hypertensive heart and chronic kidney disease with heart failure and stage 1 through stage 4 chronic kidney disease, or unspecified chronic kidney disease | Yes | CC | | Yes |
| I50.20 | Unspecified systolic (congestive) heart failure | Yes | CC | | No |
| I42.9 | Cardiomyopathy, unspecified | Yes | CC | | No |
| E87.1 | Hypo-osmolality and hyponatremia | Yes | CC | | No |
| I48.91 | Unspecified atrial fibrillation | Yes | No | | No |
| J44.9 | Chronic obstructive pulmonary disease, unspecified | Yes | No | | No |
| N18.30 | Chronic kidney disease, stage 3 unspecified | Yes | No | | No |
| E66.01 | Morbid (severe) obesity due to excess calories | Yes | No | | No |
| E78.5 | Hyperlipidemia, unspecified | Yes | No | | No |
| Z68.39 | Body mass index (BMI) 39.0-39.9, adult | Exempt from POA reporting | No | | No |
| I95.9 | Hypotension, unspecified | No | No | | No |
| E87.6 | Hypokalemia | Yes | No | | No |
| T50.2X5A | Adverse effect of carbonic-anhydrase inhibitors, benzothiadiazides and other diuretics, initial encounter | Yes | No | | No |
| Z87.891 | Personal history of nicotine dependence | Exempt from POA reporting | No | | No |
| Z79.01 | Long term (current) use of anticoagulants | Exempt | No | | No |

A-206



**JOHNS HOPKINS**
M E D I C I N E

SMH SIBLEY MEMORIAL
HOSPITAL
5255 Loughboro Road, NW
Washington DC 20016-2633

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: 1961, Sex: M
Acct #: 2001523630
Adm: 6/20/2021, IP Adm: 6/21/2021, Disch: 6/25/2021

## 06/20/2021 - ED to Hosp-Admission (Discharged) in Sibley Memorial Hospital 7A (continued)

### Coding Summary (continued)

| | | from POA reporting | | |
|---|---|---|---|---|
| Z20.822 | Contact with and (suspected) exposure to covid-19 | Yes | No | No |

### ICD Procedures (ICD-10-PCS)

| Code | Description | Date | Performing Provider | Px Event |
|---|---|---|---|---|
| 0D9QXZX | Drainage of Anus, External Approach, Diagnostic | 06/22/2021 | Brett Colton Parker, MD | |

### DRG Information

| DRG | DRG Type | Qualifier | Weight | MDC | LOS | SOI | ROM | Exp Reimb |
|---|---|---|---|---|---|---|---|---|
| 394 [Billing] | MS-DRG V38 (FY 2021) | | 0.9386 | 006 | 4 | | | 6,090.83 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES WITH CC | | | | | | | | |
| 394 | MS-DRG V38 (FY 2021) | HAC Dx Included | 0.9386 | 006 | 4 | | | 6,090.83 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES WITH CC | | | | | | | | |
| 254 | NAT APR-DRG V38 (FY 2021) | | 0.6628 | 006 | 4 | 2 | 3 | 0.00 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | NAT APR-DRG V38 (FY 2021) | Admission DRG | 0.6628 | 006 | 4 | 2 | 2 | 0.00 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | NAT APR-DRG V38 (FY 2021) | PPC DRG | 0.6628 | 006 | 4 | 2 | 3 | 0.00 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | NAT APR-DRG V38 (FY 2021) | PPC Admit DRG | | 006 | 4 | | | 0.00 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | DC APR-DRG V35 | | 0.96292 | 006 | 4 | 3 | 3 | 12,618.73 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | DC APR-DRG V35 | HAC Dx Included | 0.96292 | 006 | 4 | 3 | 3 | 12,618.73 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |
| 254 | DC APR-DRG V35 | Admission DRG | 0.96292 | 006 | 4 | 3 | 2 | 0.00 |
| Description: OTHER DIGESTIVE SYSTEM DIAGNOSES | | | | | | | | |

### Other Providers

| Provider | Role |
|---|---|
| Joshua Seungbin Yoon, MD | Consulting |
| Jagdeep Singh Obhrai, MD | Consulting |

## Patient as-of Visit

### Allergies as of 6/25/2021

Allergies last reviewed by Troyneesha Baxter on 6/21/2021 1435 - In Progress
No Known Allergies

#### Last Reviewed By - Revision History

| Reviewed On | User | Review Status |
|---|---|---|
| 06/21/2021 1435 | Troyneesha Baxter | In Progress |
| 06/21/2021 0056 | John K Adair | Review Complete |
| 06/20/2021 2014 | Slater Knowles | Review Complete |
| 06/20/2021 2012 | Slater Knowles | Review Complete |
| 04/09/2021 1111 | Mudita Malhotra, MD | Review Complete |
| 03/08/2021 1707 | Mudita Malhotra, MD | Review Complete |
| 03/08/2021 1307 | Carol Caldwell | Review Complete |
| 03/08/2021 1307 | Carol Caldwell | Review Complete |
| 02/21/2021 1322 | Yodit Kassa, RT | Review Complete |

## MedStar Washington Hospital Center

**Patient:** **BARTLEY, DARYL FERDINAND**

| | | | | | |
|---|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram | |
| Date of Birth: | ▮▮▮/1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a | |
| Location: | WHC 4NW | | | | |

---

### *Consultation Notes*

DOCUMENT NAME:
PERFORM INFORMATION:
RESULT STATUS:
SERVICE DATE/TIME:
SIGN INFORMATION:

Cardiology Consultation
Tad B.Umali,MD (8/25/2021 08:59 EDT)
Auth (Verified)
8/25/2021 08:55 EDT
Sriram Rao,MBBS (8/25/2021 14:39 EDT); Tad B.Umali,MD
(8/25/2021 12:15 EDT)

### Chief Complaint
cc fluid overload, SOB, fatigue and pitting edema of legs and abdomen. PMH A-fib, HF and HTN.

### Reason for Consultation
Acute decompensated HF

### Consulting Attending Physician
Dr. Rao

### Requesting Practitioner
ED

### History of Present Illness
Mr. Daryl Bartley is a 72M w/ HFrEF (<20% in 4/2021), NICM s/p ICD (placed 5/2021, BTK), atrial fibrillation on eliquis, HTN, CKD stage 3a (eGFR 45), BPH, COPD, obstructive sleep apnea (not on CPAP) who presented to the ED for easy fatigability, shortness of breath, leg and abdominal swelling, and weight gain, gradual over months.

Patient endorses that he has not been taking his bumex as directed (2mg twice a day) - he says he has been taking only the morning dose (i.e. 2mg daily) for the past weeks to months because of urinary urge frequency. He has noticed that he at times has urinated on himself if he cannot find a restroom nearby, and he is also not able to use a urinal, especially while on the road. He also states multiple personal/social reasons for not taking his bumex as wll (e.g. car battery dying, needing multiple jump starts). Over the past several weeks, he has noticed his weight, SOB, swelling, fatigability, have been worsening. A relatively new (within past week) onset of cough (wet-sounding, nonproductive), inability to sleep at night, and fatigue with walking short distances are what made him come in.

Of note, patient was admitted "for 18 days" in spring 2021 for acute exacerbation of heart failure.

Of note, patient has a Biotronik ICD placed in May 2021, and he denies receiving shocks:
Right ventricular lead: Biotronik Plexapro MRI S DX 65/15, serial #81392867, sensing 12.2 mV, impedance 711 ohms, capture threshold 0.6 V at 0.4 ms
Generator: Biotronik Acticor 7 VR-T DX, serial #84777573

### Problem List/Past Medical History
Ongoing
Acute on chronic left systolic heart failure
Anticoagulated
At risk of venous thromboembolus
Atrial fibrillation
CHF (congestive heart failure)
COPD (chronic obstructive pulmonary disease)
ICD (implantable cardioverter-defibrillator) in place
Morbid obesity
Non-ischemic cardiomyopathy
Tobacco user
Historical
No qualifying data

### Procedure/Surgical History
- Single chamber ICD (Biotronik) (05/19/2021)

### Medications
Inpatient
acetaminophen, 1000 mg= 2 tab, PO, q6h, PRN
albuterol 2.5 mg/3 mL (0.083%) NEB, 2.5 mg= 3 mL, Neb, q6h, PRN
apixaban, 5 mg= 1 tab, PO, 2x/day
atorvastatin, 40 mg= 1 tab, PO, Daily
Bumex, 2 mg= 8 mL, IV Push, 2x/day
carvedilol, 6.25 mg= 2 tab, PO, 2x/day
hydralazine-isosorbide dinitrate 37.5-20 mg, 1 tab, PO, 3x/day
magnesium sulfate, 2 gm= 50 mL, IVPB, Daily, PRN
magnesium sulfate, 2 gm= 50 mL, IVPB, q2h, PRN
magnesium sulfate, 2 gm= 50 mL, IVPB, q2h, PRN

---

## MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | | |
|---|---|---|
| Med Rec #: | WHC-000003251117 | |
| Account #: | WHC-00050061563 | |
| Date of Birth: | /1961 Age: 59 years    Sex: Male | |
| Location: | WHC 4NW | |

| | | |
|---|---|---|
| Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Admitting Doctor: | Rao,Sriram | |
| Ordering Doctor: | n/a | |

---

### Consultation Notes

Per chart review, patient is ambulatory with a cane and lives with his mother. He has been fully vaccinated for COVID-19

In the ED, EKG showed AFib with stable BP, BNP to 686, BUN/Cr 27/1.85. 60mg IV lasix was given with 1250 cc UOP noted afterwards.

Today, patient appears intermittently somnolent, but otherwise can participate meaningfully in interview.

Currently endorses low back/perianal pain and bleeding from anal fissure
Currently denies chest pain, acute worsening of shortness of breath, headaches, acute vision changes, nausea/vomiting/diarrhea/constipation.

#### Cardiac History
\# HFrEF
\# CKD stage III
\# AF on Apixaban
\# COPD
\# Obesity
\# OSA - non compliant with cpap
\# HTN

Referring: Thomas Pinder

#### Review of Systems
GENERAL: Denies f/c/weight loss/night sweats +weight gain per HPI
RESP: + SOB/cough, orthopnea  per HPI
CV: Denies palpitations/chest pain/fluttering/LOC/syncope
GI: Denies n/v/d/c/melena/change in bowel habits
GU: Denies hematuria/nocturia/dysuria/incontinence/discharge +Urinary urge
frequency per hpi
MSK: Denies myalgia/arthralgia/ROM changes/swelling
SKIN: Denies rash/abrasion
HEME/LYMPH: Denies mucosal bleed/lymphadenopathy
NEURO: Denies HA/weakness/paresthesia
PSYCH: Denies SI/anxiety

The remainder of systems have been reviewed and are negative. See history of present illness for all other review of systems.

#### Physical Exam

Vitals & Measurements
T: 36.5 °C (Oral)  TMIN: 36.3 °C (Axillary)  TMAX: 36.8 °C (Oral)
HR: 78(Peripheral)  RR: 18  BP: 129/84  SpO2: 96%  WT: 127 kg

potassium chloride, 40 mEq= 2 tab, PO,
As indicated, PRN
potassium chloride, 10 mEq= 100 mL,
IVPB, As indicated, PRN
potassium chloride, 40 mEq= 2 tab, PO,
As indicated, PRN
potassium chloride, 10 mEq= 100 mL,
IVPB, As indicated, PRN
tamsulosin, 0.4 mg= 1 cap, PO, Daily
**Home**
acetaminophen 500 mg oral tablet, 1000
mg= 2 tab, PO, q6h, PRN
apixaban 5 mg oral tablet, 5 mg= 1 tab,
PO, 2x/day
atorvastatin 40 mg oral tablet, 40 mg= 1
tab, PO, Daily
bumetanide 1 mg oral tablet, 2 mg= 2 tab,
PO, 2x/day
carvedilol 3.125 mg oral tablet, 3.125 mg=
1 tab, PO, 2x/day
carvedilol 6.25 mg oral tablet, 6.25 mg= 1
tab, PO, 2x/day
hydrALAZINE-isosorbide dinitrate 37.5
mg-20 mg oral tablet, 1 tab, PO, 3x/day
tamsulosin 0.4 mg oral capsule, 0.4 mg= 1
cap, PO, Daily

#### Allergies
No Known Allergies

#### Social History
Smoking Status - 08/25/2021
Current some day smoker
Alcohol
Use: Denies., 05/19/2021
Substance Use
Use: Denies., 05/19/2021
Tobacco/Nicotine
Use: Denies., 04/13/2021

#### Family History
No Data Found

#### Lab Results
**CBC**
WBC: 7.2 k/uL (08/25/21 07:05:00)
Hgb: 11.7 gm/dL Low (08/25/21 07:05:00)
Hct: 38.8 % (08/25/21 07:05:00)

---

# MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | | | |
|---|---|---|---|
| Med Rec #: | WHC-000003251117 | Admit/Discharge: | 8/24/2021 / 8/31/2021 |
| Account #: | WHC-00050061563 | Admitting Doctor: | Rao,Sriram |
| Date of Birth: [ ] /1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a |
| Location: | WHC 4NW | | |

---

## Consultation Notes

Oxygen Delivery Device: Room Air (08/25/21 04:37:05)

**Today 7a-7a:** In **0 mL** / Out **0 mL** (0 mL)
**Yesterday 7a-7a:** In **14 mL** / Out **1620 mL** (-1606 mL)
**Since Admit:** In **214 mL** / Out **1620 mL** (-1406 mL)

**Previous 7 Day Weights:**
--
**AUG-25 01:49:** 157.3
--

Pain Assessment
Primary: Numeric Pain Score: 0 (08/25/21 04:00:00)
Pain Present: No actual or suspected pain (08/25/21 04:00:00)

**General:** Obese, edematous male sitting up in chair, intermittently somnolent, NAD
**HENT:** Normocephalic, normal hearing, no scleral icterus
**Neck:** Supple, with full range of motion
**Lungs:** Non-labored respiration. Difficult to auscultate due to habitus. Crackles bilaterally, inferior posterior fields, upper chest relative wasting compared to body habitus
**Heart/CV:** normal rate **irregular rhythm** NMRG There is 3+ edema to umbilicus. Radial pulses strong and equal.
**Abdomen:** Soft, supple, **obese** yet non-distended. NTTP BS x4quadrants. No masses or organomegaly noted.
**Musculoskeletal:** No gross deformity of extremities.
**Skin:** Skin is warm, dry and pink. No rashes or lesions. **Edema as above**
**Neurologic:** Awake, AOx3 (person, place and time). Cranial Nerves II-XII are grossly intact. NFDs
**Psychiatric:** Cooperative, appropriate mood, affect, and thought.

## Assessment/Plan

72M w/ HFrEF (<20% in 4/2021), NICM s/p ICD (placed 5/2021, BTK), atrial fibrillation on eliquis, HTN, CKD stage 3a (eGFR 45), BPH, COPD, obstructive sleep apnea (not on CPAP) presenting for acute decompensated on chronic HFrEF.

#### #Acute on chronic systolic heart failure
#### #EF <20% 4/2021

NYHA class IV symptoms in setting of hypervolemia 2/2 non-adherence with po bumex (LE edema, orthopnea, wet cough)
ACC/AHA stage C (structural heart disease with prior or current HF symptoms)
Warm and wet
Preload: IV Bumex 4mg BID, FG at least -2L, lyte repletions as appropriate
Afterload: Coreg 6.25mg bid, Hydralazine-ISDN 37.5-20 TID
Contractility: none
GDMT: Coreg 6.25mg bid and Hydralazine-ISDN 37.5-20 TID; can consider ARNI if creatinine improves/stabilizes, or SGLT2-i (empagliflozin).

---

Platelet: 199 k/uL (08/25/21 07:05:00)

### BMP
Sodium Lvl: 141 mmol/L (08/25/21 07:05:00)
Potassium Lvl: 3.6 mmol/L (08/25/21 07:05:00)
Chloride: 106 mmol/L (08/25/21 07:05:00)
CO2: 31 mmol/L (08/25/21 07:05:00)
BUN: 31 mg/dL High (08/25/21 07:05:00)
Creatinine: 2.03 mg/dL High (08/25/21 07:05:00)
Glucose Lvl Random: 100 mg/dL (08/25/21 07:05:00)

### Last 7 Creatinine Results
Creatinine:2.03 mg/dL  HI (08/25/21 07:05)
Creatinine:1.85 mg/dL  HI (08/24/21 19:13)
Creatinine:2.08 mg/dL  HI (05/20/21 05:14)
Creatinine:2.03 mg/dL  HI (05/19/21 06:54)
Creatinine:3.31 mg/dL  HI (05/04/21 07:02)
Creatinine:3.37 mg/dL  HI (05/03/21 07:44)
Creatinine:3.09 mg/dL  HI (05/02/21 03:13)

### Electrolytes
Magnesium Lvl: 1.9 mg/dL (08/25/21 07:05:00)
Phosphorus Lvl: 3 mg/dL (08/25/21 07:05:00)
Calcium Lvl: 8.5 mg/dL Low (08/25/21 07:05:00)

### LFTs (latest in last 72H):
08/25/2021 07:05
Total Protein: 7.2 gm/dL
Albumin Lvl: 3.5 gm/dL
AST: 25 units/L
ALT: 15 units/L
Bili Total: 1.8 mg/dL HI
Bili Direct: 1.11 mg/dL HI
Alk Phos: 113 units/L

### Troponin w/ HS (last 3)
Troponin I HS: 57 ng/L High (08/24/21 19:13:00)
Troponin I HS: 76 ng/L High (04/15/21 15:46:00)

---

# MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | | | | |
|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a |
| Location: | WHC 4NW | | | |

---

## Consultation Notes

Limiting factor for diuretic agents/preload management is urinary frequency.

#### #NICM
NICM of unclear etiology. Echo showing EF <20%. Prior hospitalization, cMR not done due to AKI on CKD.
- can revisit cMR this admission, if Cr remains stable after diuresis
- Discuss with patient genetic testing - see if agreeable at this junction to further elucidate etiology
- GDMT as above

#### #Atrial fibrillation
HR 110-120 on presentation, EKG showing Afib
- Consider ICD interrogation to determine Afib burden
- Continue Coreg 6.25mg bid
- Continue Apixaban 5mg bid

#### #S/p ICD implant
BTK device implanted by Dr. Hadadi 5/19/2021. Patient denies shocks
- Can consider interrogation
- CTM

#### #Lower urinary tract symptoms
Patient reports urge frequency per HPI, and endorses flomax helps him strain less with urination
- tamsulosin 0.4mg daily

#### #Anal fissure
Reports pain and bleeding; On gross exam no blood seen. H&H stable
- consider surgery consult
- CTM

#### #CKD stage 3a
Cr 1.8 which is near baseline. Cr higher during recent hospitalization.
- Monitor with diuresis.

#### #OSA
Not compliant with CPAP
- can offer while inpatient
- consider outpatient pulmonary follow-up

#### #COPD
No wheezing on exam. Some wasting on upper chest noted.
-Albuterol PRN.

Troponin I HS: 66 ng/L High (04/15/21 11:02:54)

#### BNP
| | |
|---|---|
| 8/25/21 | 686.4 |
| 4/15/21 | 471.5 |

#### Diagnostic Results
No micro

COVID-19 PCR Negative

EKG 8/24/21
Rate 116bpm
Rhythm atrial fib
Axis nl
PR n/a (A Fib w/RVR)
QRS 102ms
QTc 450ms
T Waves: no twi STEMI/NSTEMI noted

Low voltage across limb leads
PVC
Poor R progression

#### (08/24/2021 20:34 EDT XR Chest 1 View Portable)
COMPARISON: May 19, 2021

FINDINGS: There is a pacemaker in place. The pulse generator partially obscures visualization of the left upper lung. The heart is moderately enlarged. The aorta is mildly tortuous. There is pulmonary vascular congestion and mild interstitial edema.

IMPRESSION: Moderate cardiomegaly. Congestive heart failure. [1]

#### Cardiac cath 4/28/21
AIR REST
RA 18/22 (18) SV 10:42:31
RV 47/6, 12 10:42:55
PW 30/33 (28) PV 10:43:18

---

| | |
|---|---|
| Print Date/Time: | 10/12/2021 13:56 EDT |
| Report Request ID: | 343510350 |

# MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | |
|---|---|
| Med Rec #: | WHC-000003251117 |
| Account #: | WHC-00050061563 |
| Date of Birth: | ▇/1961 Age: 59 years    Sex: Male |
| Location: | WHC 4NW |

| | | |
|---|---|---|
| Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Admitting Doctor: | Rao,Sriram | |
| Ordering Doctor: | n/a | |

---

## Consultation Notes

Code: FULL CODE.
DVT prophylaxis: Apixaban 5mg PO BID [ afib ]
SUP prophylaxis: not indicated
Lines/tubes/drains: PIV x1
PT/OT/Dispo: will order
Diet: Cardiac AHA

#### This note is preliminary until signed by an attending: Dr. Rao

Tad Umali, MD
Internal Medicine PGY2
Pager: 202-405-4604

1. Acute on chronic systolic heart failure I50.23
2. Atrial fibrillation I48.91
3. CKD (chronic kidney disease) N18.9
4. ICD (implantable cardioverter-defibrillator) in place Z95.810
5. NICM (nonischemic cardiomyopathy) I42.8
6. OSA (obstructive sleep apnea) G47.33
7. Obesity E66.9
CHF exacerbation I50.9
Edema R60.9
Fluid overload E87.70

#### Attending Attestation

I have seen and examined the patient. I have personally reviewed the images and diagnostic results. I have reviewed note written by Tad Umali, MD and agree with the findings. My additional comments are:
-Patient well-known to me from outpatient setting
-Presents with significant fluid overload likely in the setting of missing afternoon Bumex doses
-Has achieved good volume diuresis in the past and will use the same strategy

**Sriram Rao, MBBS**
**Advanced Heart Failure Attending**

PA 55/28 (36) PA   10:43:45
Type   SV   CO (l/m)   CI (l/m/   HR   Time

AIR REST
Thermal   104.50   7.94   3.28   76
10:42:31
Fick   65.30   4.96   2.05   76   10:42:31
Label   % O2   Pres/Loc   Time

AIR REST
FA   98   PV   10:43:31
PA   61   PA   10:44:49

Comments:
Mr. Bartley noted to have elevated right sided pressures. Continue diuresis.

Conclusions:
Hemodynamics: RA 18 mmHg, RV 47/14 mmHg, PA 49/28 mmHg, PCW 28 mmHg, CO (Fick) 4.96 L/min, CI (Fick) 2.05 L/min/m2, PA sat 61 %
[2]

#### Echo 4/2021

Interpretation Summary

o Technically difficult study (Obese patient).
o The left ventricle is mildly dilated. There is mild concentric left ventricular hypertrophy. Left ventricular systolic function is severely reduced. Ejection Fraction <20%.
o The right ventricle grossly is moderately dilated. The right ventricular systolic function is severely reduced.
o The left atrium is mildly dilated. The right atrium is severely dilated.
o A bicuspid aortic valve cannot be excluded.
o Aortic root is mildly dilated measuring at 4.0cm.
o There is no comparison study available.
[3]

---

## MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | | |
|---|---|---|
| Med Rec #: | WHC-000003251117 | |
| Account #: | WHC-00050061563 | |
| Date of Birth: | ▇/1961 Age: 59 years  Sex: Male | |
| Location: | WHC 4NW | |

| | | |
|---|---|---|
| Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Admitting Doctor: | Rao,Sriram | |
| Ordering Doctor: | n/a | |

---

### Discharge Documentation

DOCUMENT NAME:
PERFORM INFORMATION:
RESULT STATUS:
SERVICE DATE/TIME:
SIGN INFORMATION:

Discharge Summary
Tad B.Umali,MD (8/31/2021 15:37 EDT)
Auth (Verified)
8/31/2021 15:35 EDT
Ajay Kadakkal,MD (9/1/2021 08:26 EDT); Tad B.Umali,MD
(8/31/2021 15:37 EDT)

## General Discharge Information

**Admission Date and Time: 08:52 pm on Aug 24, 2021**
**Attending Physician: Sriram Rao, MBBS**
Discharge Date: August 31, 2021
Primary Care Physician: Archana P. Mudivarthi, MD

**Discharge Diagnoses**
1. CHF exacerbation I50.9
2. Fluid overload E87.70
3. Edema R60.9
4. Acute on chronic systolic heart failure I50.23
5. Atrial fibrillation I48.91
6. CKD (chronic kidney disease) N18.9
7. ICD (implantable cardioverter-defibrillator) in
place Z95.810
8. NICM (nonischemic cardiomyopathy) I42.8
9. OSA (obstructive sleep apnea) G47.33
10. Obesity E66.9

---

## Hospitalization Summary

**Chief Complaint**
cc fluid overload, SOB, fatigue and pitting edema of legs and
abdomen. PMH A-fib, HF and HTN.

**Presentation and Hospital Course**

**Brief History of Presenting Illness**

Mr Bartley is a 59-year-old man with a background history of
NICM, heart failure with reduced ejection fraction (EF 20%
on previous echocardiograms), obesity, atrial fibrillation on
apixaban, chronic kidney disease, COPD, hypertension,
obstructive sleep apnea (not on CPAP). He presents in the
ED due to shortness of breath, fatigue and swelling of his
legs and abdomen for the past 2 weeks. He reports
orthopnea, PND and weight gain and denies chest pain,
palpitations, dizziness or ICD shock. Mr Bartley admits that
he is not taking Bumex as prescribed due to frequent
"accidents". He is also reporting pain and bleeding from an
anal fissure. No constipation.
Mr. Bartley was admitted to AHF service in April/May 2021
due to acute heart failure. He was discharged on Bumex

---

## MedStar Washington Hospital Center

**Patient:** **BARTLEY, DARYL FERDINAND**

| | | | |
|---|---|---|---|
| Med Rec #: | WHC-000003251117 | Admit/Discharge: | 8/24/2021  / 8/31/2021 |
| Account #: | WHC-00050061563 | Admitting Doctor: | Rao,Sriram |
| Date of Birth: | [redacted]/1961 Age: 59 years    Sex: Male | Ordering Doctor: | n/a |
| Location: | WHC 4NW | | |

---

### Discharge Documentation

2mg PO bid. He returned on 5/19/2021 and got an ICD
implantation (BTK) by Dr. Hadadi.

In the ED Mr. Bartley was found in Afib with HR 100s and
stable BP. Labs showed BNP 686, BUN/Crea 27/1.85, H&H
12/40. EKG showed Afib. He was treated with IV Lasix.

Mr. Bartley lives with his mother. He normally ambulates
with a cane.

#### Hospital Course by Problem

##### #Acute on chronic systolic heart failure
##### #EF <20% 4/2021
NYHA class IV symptoms in setting of hypervolemia 2/2
non-adherence with po bumex (LE edema, orthopnea, wet
cough)
ACC/AHA stage C (structural heart disease with prior or
current HF symptoms)
Warm and wet
The patient was diuresed with IV Bumex. Afterload was
managed with home medications Coreg 6.25mg bid,
Hydralazine-ISDN 37.5-20 TID. No inotropic agents were
required.
GDMT: Coreg 6.25mg bid and Hydralazine-ISDN 37.5-20
TID; continued while inpatient and will be continued upon
discharge. No ACE-i/ARB/ARNI due to chronic kidney
disease (See below)
The patient states that the limiting factor for diuretic
agents/preload management is urinary frequency.

##### #NICM
NICM of unclear etiology. Echo showing EF <20%. Prior
hospitalization, cMR not done due to AKI on CKD, and was
deferred on this admission.GDMT was continued as above.

##### #Atrial fibrillation
HR 110-120 on presentation, EKG on admission showing
Afib, and telemetry showing this as well. Patient was
continued on home coreg, apixaban (5mg bid daily).

##### #S/p ICD implant
BTK device implanted by Dr. Hadadi 5/19/2021. Patient
denies shocks.

##### #Lower urinary tract symptoms

---

## MedStar Washington Hospital Center

**Patient:** **BARTLEY, DARYL FERDINAND**

| | | | | | |
|---|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram | |
| Date of Birth: | ▇/1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a | |
| Location: | WHC 4NW | | | | |

---

### *Discharge Documentation*

Patient reports urge frequency per HPI, and endorses flomax helps him strain less with urination. He was continued on flomax daily.

#### #Anal fissure
Reports pain and bleeding; On gross exam no blood seen. H&H stable, and has not endorsed continuing or new pain related to the fissure.

#### #AKI on CKD stage 3a
Cr 1.8 which is near baseline. Cr higher during recent hospitalization, but has improved with diuresis. Patient is not on ACE-i/ARB/ARNI due to chronic kidney disease.

#### #OSA
Not compliant with CPAP, does not have a CPAP machine at home, stating discomfort with masks. He has deferred this therapy while inpatient.

#### #COPD
No wheezing on exam. Some wasting on upper chest noted. Albuterol was given as needed.

#### Imaging/Diagnostics

XR Chest 8/24/21
FINDINGS: There is a pacemaker in place. The pulse generator partially obscures visualization of the left upper lung. The heart is moderately enlarged. The aorta is mildly tortuous. There is pulmonary vascular congestion and mild interstitial edema.

IMPRESSION: Moderate cardiomegaly. Congestive heart failure.

#### Procedures
None

#### Consults
None

---

## Medications

---

| | |
|---|---|
| Print Date/Time: | 10/12/2021 13:56 EDT |
| Report Request ID: | 343510350 |

# MedStar Washington Hospital Center

| | | | | |
|---|---|---|---|---|
| **Patient:** | **BARTLEY, DARYL FERDINAND** | | | |
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a |
| Location: | WHC 4NW | | | |

---

## *Discharge Documentation*

**Discharge Medications**

**Medications at Time of Discharge (8) as of 08/31/2021 15:35**
\* indicates a medication that was prescribed. All other listed
medications are being continued.

(1) **acetaminophen (acetaminophen 500 mg oral tablet):**
  1,000 mg = 2 tab PO q8h PRN as needed for pain

(2) **\*apixaban (apixaban 5 mg oral tablet):**
  5 mg = 1 tab PO 2x/day

(3) **\*atorvastatin (atorvastatin 40 mg oral tablet):**
  40 mg = 1 tab PO Daily

(4) **\*bumetanide (bumetanide 1 mg oral tablet):**
  2 mg = 2 tab PO 2x/day

(5) **\*carvedilol (carvedilol 6.25 mg oral tablet):**
  6.25 mg = 1 tab PO 2x/day

(6) **\*hydrALAZINE-isosorbide dinitrate**
**(hydrALAZINE-isosorbide dinitrate 37.5 mg-20 mg oral tablet):**
  1 tab PO 3x/day

(7) **\*metOLazone (metolazone 5 mg oral tablet):**
  5 mg = 1 tab PO 2x/day
  **Special Instructions**
  30 minutes before taking a dose of bumex. Take in this manner
for 5 days (last day 9/5).
  Then take as directed for edema.

(8) **\*tamsulosin (tamsulosin 0.4 mg oral capsule):**
  0.4 mg = 1 cap PO Daily

**Reconciliation History**
Tad B. Umali, MD at 08-31-2021 15:29 (Complete)

**Allergies**
No Known Allergies

---

# Key Results
**Lab Results**
**CBC**
WBC: 4.8 k/uL (08/31/21 06:38:00)
Hgb: 11 gm/dL Low (08/31/21 06:38:00)

---

**MedStar Washington Hospital Center**

| | | | | |
|---|---|---|---|---|
| **Patient:** | **BARTLEY, DARYL FERDINAND** | | | |
| Med Rec #: | WHC-000003251117 | Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Account #: | WHC-00050061563 | Admitting Doctor: | Rao,Sriram | |
| Date of Birth: | [redacted]/1961 Age: 59 years Sex: Male | Ordering Doctor: | n/a | |
| Location: | WHC 4NW | | | |

## *Discharge Documentation*

Hct: 36.8 % Low (08/31/21 06:38:00)
Platelet: 171 k/uL (08/31/21 06:38:00)

**BMP**
Sodium Lvl: 137 mmol/L (08/31/21 06:38:00)
Potassium Lvl: 4 mmol/L (08/31/21 06:38:00)
Chloride: 99 mmol/L (08/31/21 06:38:00)
CO2: 32 mmol/L High (08/31/21 06:38:00)
BUN: 29 mg/dL High (08/31/21 06:38:00)
Creatinine: 2.05 mg/dL High (08/31/21 06:38:00)
Glucose Lvl Random: 105 mg/dL (08/31/21 06:38:00)

**Last 7 Creatinine Results**
Creatinine:2.05 mg/dL HI (08/31/21 06:38)
Creatinine:1.97 mg/dL HI (08/30/21 07:51)
Creatinine:1.84 mg/dL HI (08/29/21 20:41)
Creatinine:1.77 mg/dL HI (08/29/21 07:38)
Creatinine:1.69 mg/dL HI (08/29/21 07:38)
Creatinine:1.57 mg/dL HI (08/28/21 11:52)
Creatinine:1.60 mg/dL HI (08/27/21 18:15)

**Electrolytes**
Magnesium Lvl: 2 mg/dL (08/31/21 06:38:00)
Phosphorus Lvl: 2.7 mg/dL (08/29/21 20:41:00)
Calcium Lvl: 8.9 mg/dL (08/31/21 06:38:00)

No LFT results in past 72 hours

**Coag Panel**
Platelet: 171 k/uL (08/31/21 06:38:00)

**Imaging and Diagnostic Results**
No new imaging
No new micro

## Discharge Condition

**Physical Exam at Discharge**
Vitals & Measurements
T: 36.4 °C (Oral) **TMIN:** 36.3 °C (Oral) **TMAX:** 36.7 °C (Oral)
**HR:** 71(Peripheral) **RR:** 20 **BP:** 103/68 **SpO2:** 95%
**WT:** 137.9 kg

Oxygen Delivery Device: Room Air (08/31/21 14:11:15)

Pain Assessment

**Patient Discharge Condition and Location**
No qualifying data available.

**Code Status**
Code Status Full Code - Ordered

## MedStar Washington Hospital Center

**Patient:**  **BARTLEY, DARYL FERDINAND**

| | | | | | |
|---|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram | |
| Date of Birth: | 1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a | |
| Location: | WHC 4NW | | | | |

---

### Discharge Documentation

Primary: Numeric Pain Score: 0 (08/31/21 12:00:00)
Non-Verbal Pain Scale: Score: 0 (08/31/21 12:00:00)
Pain Present: No actual or suspected pain (08/31/21 12:00:00)

**General**: Obese, edematous male sitting up in chair, intermittently somnolent, NAD
**HENT**: Normocephalic, normal hearing, no scleral icterus
**Neck**: Supple, with full range of motion
**Lungs**: Non-labored respiration. . **Crackles bilaterally**, upper chest relative wasting compared to body habitus
**Heart/CV: normal rate irregular rhythm** NMRG There is 2+ **edema to knees.** Radial pulses strong and equal. JVD mid neck elevated
**Abdomen**: Soft, supple, **obese** yet non-distended. NTTP BS x4quadrants. No masses or organomegaly noted.
**Musculoskeletal**: No gross deformity of extremities.
**Skin**: Skin is warm, dry and pink. No rashes or lesions.
**Neurologic**: Awake, AOx3 (person, place and time). Cranial Nerves II-XII are grossly intact. NFDs
**Psychiatric**: Cooperative, appropriate mood, affect, and thought.

**Care Instructions For Follow Up Facility (PT/OT/SLP, Diet, Wound)**
N/a

**Lines/Tubes/Drains**
N/a

## Discharge Instructions
**Sriram Rao, MBBS, Advanced Heart Failure, Advanced Heart Failure** within 1 to 2 weeks.
Phone: (202)877-0333

## History

**Problem List/Past Medical History**
Ongoing
Acute on chronic left systolic heart failure
Anticoagulated
At risk of venous thromboembolus
Atrial fibrillation
CHF (congestive heart failure)
COPD (chronic obstructive pulmonary disease)
ICD (implantable cardioverter-defibrillator) in place

**Past Surgical History**
Single chamber ICD (Biotronik): 05/19/21

**Medical Records - Release of Information**

MedStar Washington Hospital Center
8am-4:30pm Mon-Fri
Phone: 202-877-7181
Fax: 202-877-5496

---

| | |
|---|---|
| Print Date/Time: | 10/12/2021 13:56 EDT |
| Report Request ID: | 343510350 |

## MedStar Washington Hospital Center

**Patient:** BARTLEY, DARYL FERDINAND

| | | | | | | |
|---|---|---|---|---|---|---|
| Med Rec #: | WHC-000003251117 | | Admit/Discharge: | 8/24/2021 | / 8/31/2021 |
| Account #: | WHC-00050061563 | | Admitting Doctor: | Rao,Sriram |
| Date of Birth: | /1961 Age: 59 years | Sex: Male | Ordering Doctor: | n/a |
| Location: | WHC 4NW | | | |

---

### Discharge Documentation

Morbid obesity
Non-ischemic cardiomyopathy
Tobacco user
Historical
No qualifying data

---

*Electronically signed by:*

*Tad B. Umali, MD on: 08.31.2021 15:37 EDT*

*Electronically signed by:*

*Ajay Kadakkal, MD on: 09.01.2021 08:26 EDT*

---

DOCUMENT NAME:                     Inpatient Clinical Summary
PERFORM INFORMATION:     Kalkidan Ayalew (8/31/2021 15:51 EDT)
RESULT STATUS:                  Auth (Verified)
SERVICE DATE/TIME:         8/31/2021 15:51 EDT
SIGN INFORMATION:           Kalkidan Ayalew (8/31/2021 15:51 EDT)

**Inpatient Clinical Summary**

 MedStar Washington Hospital Center

110 Irving Street, NW Washington, DC 20010
Phone: (202) 877-7000
www.whcenter.org

# Discharge Instructions For BARTLEY, DARYL FERDINAND

MedStar Washington Hospital Center would like to thank you for allowing us to assist you with your healthcare needs. If you need assistance with finding a physician or scheduling appointments, call **WHC Referral Services M-F 8:30am-4:30pm (202) 877-3627**. The following includes information regarding your recent visit.

**Access your information on line by registering for MYMEDSTAR, our patient portal, at www.mymedstar.org.**

---

| | |
|---|---|
| Print Date/Time: | 10/12/2021 13:56 EDT |
| Report Request ID: | 343510350 |

www.medstarhealth.org

Page 33 of 688



<table>
<tr><td></td><td>SMH MEDICAL OFFICE<br>BUILDING<br>5215 Loughboro Road, NW<br>Washington DC 20016-2618</td><td>Bartley, Daryl Ferdinand<br>MRN: SM1124373, DOB: ████ 1961, Sex: M<br>Visit date: 9/2/2021</td></tr>
</table>

## 09/02/2021 - Telephone in Sibley Primary Care

### Reason for Visit

**Chief Complaint** *[last edited by Carol Caldwell on 9/2/2021 1619]*

* Hospital Follow-up, onset date 9/2/2021

### Other Clinical Notes

**Telephone Encounter by Carol Caldwell at 9/2/2021 1649**

| | | |
|---|---|---|
| Author: Carol Caldwell | Service: — | Author Type: Medical Assistant |
| Filed: 9/2/2021 4:51 PM | Encounter Date: 9/2/2021 | Status: Signed |
| Editor: Carol Caldwell (Medical Assistant) | | |

Spoke with pt stated that SOB and fluid on the lungs is the reason for being admitted into the Hospital.. pt has scheduled follow up appt with Cardiologist as instructed .

Electronically signed by Carol Caldwell at 9/2/2021 4:51 PM

### Current Medications

#### Medication List

This report is for documentation purposes only. The patient should not follow medication instructions within. For accurate instructions regarding medications, the patient should instead consult their physician or after visit summary.

##### Active at the End of Visit

Medications last reviewed by Elizabeth A Boamah, RN on 6/23/2021 0711

###### atorvastatin (LIPITOR) 40 MG tablet

| | |
|---|---|
| Instructions: Take 1 tablet (40 mg per dose) by mouth daily | |
| Authorized by: Mudita Malhotra, MD | Ordered on: 1/16/2020 |
| Start date: 1/16/2020 | Quantity: 90 tablet |
| Refill: 3 refills by 1/15/2021 | |

###### apixaban (ELIQUIS) 5 mg Tab tablet

| | |
|---|---|
| Instructions: Take 1 tablet (5 mg per dose) by mouth 2 (two) times daily. | |
| Authorized by: Mudita Malhotra, MD | Ordered on: 2/11/2020 |
| Start date: 2/11/2020 | Quantity: 60 tablet |
| Refill: 3 refills by 2/10/2021 | |

###### albuterol HFA inhaler 90mcg/actuation *[patient reported]*

| | |
|---|---|
| Instructions: Inhale 2 puffs into the lungs every 6 (six) hours as needed for Wheezing. | |
| Entered by: Mudita Malhotra, MD | Entered on: 4/6/2020 |
| Action: Patient not taking | |

###### isosorbide-hydrALAZINE (BiDiL) 20-37.5 mg per tablet *[patient reported]*

| | |
|---|---|
| Instructions: Take 1 tablet by mouth daily. | |
| Entered by: Troyneesha Baxter | Entered on: 6/21/2021 |

###### tamsulosin (FLOMAX) 0.4 mg Cap 24 hr capsule *[patient reported]*

| | |
|---|---|
| Instructions: Take 0.4 mg by mouth daily. | |
| Entered by: Troyneesha Baxter | Entered on: 6/21/2021 |

###### bumetanide (BUMEX) 2 MG tablet

| | |
|---|---|
| Instructions: Take 1 tablet (2 mg per dose) by mouth 2 (two) times daily for 141 doses. | |
| Authorized by: Nadia Sirdar, MD MPH | Ordered on: 6/24/2021 |
| Start date: 6/24/2021 | End date: 9/3/2021 |


JOHNS HOPKINS
MEDICINE

SMH MEDICAL OFFICE
BUILDING
5215 Loughboro Road, NW
Washington DC 20016-2618

Bartley, Daryl Ferdinand
MRN: SM1124373, DOB: ▉▉▉1961, Sex: M
Visit date: 9/2/2021

## 09/02/2021 - Telephone in Sibley Primary Care (continued)

### Current Medications (continued)

Quantity: 60 tablet

Refill: 2 refills by 6/24/2022

#### carVEDILOL (COREG) 3.125 MG tablet

Instructions: Take 1 tablet (3.125 mg per dose) by mouth 2 (two) times daily with meals.
Authorized by: Nadia Sirdar, MD MPH
Start date: 6/24/2021
Quantity: 60 tablet

Ordered on: 6/24/2021
End date: 6/24/2022
Refill: 11 refills by 6/24/2022

### Stopped in Visit

None

## SmartForms

### Hospital Discharge Transition Management as of visit

Transitional Care Management Questions:
Based on the care team's assessment, does this patient need a follow-up phone call regarding this hospital discharge?: Yes[CC1.1]
Were you able to speak with the patient or other family representative able to speak on behalf of the patient?: Yes[CC1.1]
Follow-up questions when NOT able to speak to the patient or other family representative.
Follow-up questions when ABLE to speak to the patient or other family representative:
Who did you speak to?: Patient[CC1.1]
Reason for admission: Other (MUST SPECIFY), Fluid overload (Comment: SOB)[CC1.1]
Is a discharge summary document present in this patient's record?: No[CC1.1]
Pending test to be done or results for follow-up?: No[CC1.1]
New medications or changes to be made?: Yes[CC1.1]
How have you been feeling since leaving the hospital?: Feel better[CC1.1]
Any new self-care instructions?: Yes[CC1.1]
Any home care or supplies ordered?: No[CC1.1]
Does this patient have any other appointments scheduled related to this discharge?: Yes[CC1.1]
Help needed in arranging other appointments?: No[CC1.1]
Transportation or other immediate needs?: No[CC1.1]
Other concerns or issues?: Yes[CC1.1]
Is a follow-up PCP office visit necessary for this patient?: Yes[CC1.1]
Follow-up PCP office visit questions:
Were you able to schedule a PCP follow-up visit? (Please attempt to schedule within 7 calendar days of discharge date): Yes[CC1.1]
Electronically signed by: Carol Caldwell[CC1.1]
9/2/2021  4:20 PM[CC1.1]

### Attribution

| | | |
|---|---|---|
| CC1.1 | Carol Caldwell | 09/02/21 16:22 |

# END OF REPORT

EXHIBIT F


MedStar Heart &
Vascular Institute

MedstarHealth and Vascular Institute
110 Irving St NW, Suite NA104
Washington, DC, 20010-2975
Medstarhealth.org

October 22, 2021

To Whom It May Concern,

Mr. Darrel Bartley (DOB ▮▮▮▮/1961) is a patient of the advanced heart failure service at MedStar Washington Hospital Center. I have been following him since April 2021, when he was referred from his outside cardiologist for a second opinion and consideration of advanced therapies (including but not limited to heart transplantation).

He has a longstanding history of a non-ischemic cardiomyopathy, for which he is maintained on oral medical therapy. He has an implantable cardiac defibrillator, which was implanted for primary prevention of sudden death. Objective testing that we have performed shows him to have a fairly severe form of cardiomyopathy (ACC grade C/D), which would otherwise meet criteria for heart transplant evaluation other than his obesity which he is currently working on.

Since the time I first met him 6 months ago, he has had 3 prolonged admissions to hospital ranging from between 7 and 30 days. For these admissions he presents with significant shortness of breath and excessive fluid, and requires intravenous therapy to be able to return to his previous baseline.

He requires close follow-up as an outpatient in between admissions, and is contacted every 2 weeks by either myself or my clinic staff to assess his clinical status.

Best Regards,

Sriram Rao, MBBS

A-223



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 29, 2021

**BY ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Daryl Bartley, 20 Cr. 3 (KPF)**

Dear Judge Failla:

    The Government respectfully submits this letter in advance of the November 5, 2021 sentencing of the defendant, Daryl Bartley. Although the Probation Office calculated a sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 33 to 41 months' imprisonment, the parties stipulated in their plea agreement to a Guidelines range of 27 to 33 months. For the reasons set forth below, and in particular the defendant's history of financial crimes spanning 40 years, the Government respectfully submits that a term of imprisonment within the stipulated Guidelines range is sufficient but not greater than necessary to serve the purposes of sentencing.

**I.    Offense Conduct**

    On December 22, 2018, the defendant was recorded on surveillance video opening a business bank account at a bank in Maryland. Presentence Investigation Report ("PSR") ¶ 34 (revised February 23, 2021). The defendant opened this account not using his own identity, but rather the actual surname and social security number of another person. (PSR ¶ 34). A few months later, a co-conspirator deposited a stolen $13,812 check into this fraudulently-opened account. (PSR ¶ 35).

    On January 7, 2019, the defendant was recorded on surveillance video depositing a stolen $41,350 check into another business bank account. (PSR ¶ 33).

    The defendant's conduct — opening one account using a victim's stolen identity information, and depositing a stolen check into another check — was in furtherance of a large-scale wire fraud and bank fraud conspiracy. The defendants charged in this case engaged in more than 100 fraudulent transactions totaling more than $18 million, typically by (1) depositing stolen and counterfeit checks and (2) tricking victims into wiring money by impersonating vendors or other business partners via email. To access and launder their fraud proceeds, the co-conspirators needed bank accounts. The defendant's role, though limited in duration, was critical to the success of the conspiracy.

## II.      Plea Agreement and Applicable Guidelines Range

On January 2, 2020, a grand jury returned an indictment charging the defendant in three counts. (ECF Doc. No. 39). Count One charged the defendant with conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349. Count Two charged the defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Count Three charged the defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) & (b).

On December 3, 2020, the defendant pleaded guilty pursuant to a plea agreement to Count One of the Indictment. In the plea agreement, the parties stipulated to a Guidelines calculation resulting in an offense level of 11 and a criminal history category of VI. Based upon that calculation, the parties further stipulated to a Guidelines range of 27 to 33 months' imprisonment.

In the PSR, however, the Probation Office calculates a higher offense level of 13 and, as a result, a higher Guidelines range of 33 to 41 months' imprisonment. (PSR ¶¶ 79, 177). The Probation Office applied an additional two-point enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i) for the defendant's use of a means of identification (a victim's social security number) to obtain another means of identification (a bank account). (PSR ¶ 72). Although a bank account number can indeed be a "means of identification," *see United States v. Samet*, 200 F. App'x 15, 23 (2d Cir. 2006) (agreeing that "the use of names and social security numbers to obtain a bank loan or a credit card [is] conduct to which the Guideline should apply . . . [because] the bank loan account number or credit card number is the 'means of identification'"), the bank account opened by the defendant in this case was a business account held in the name of a fake business entity. Accordingly, the bank account number would principally identify a business, rather than a person as required by the enhancement. *See id.* (a "means of identification" must "identify a specific individual").

In all events, regardless of whether the enhancement applies in this case, the Government adheres to its stipulated Guidelines range of 27 to 33 months.

## III.     Discussion

The Government respectfully requests that the Court impose a term of imprisonment within the stipulated Guidelines range of 27 to 33 months' imprisonment based upon the nature and circumstances of the offense, the history and characteristics of the defendant, and the compelling need in this case for just punishment, general deterrence, and the protection of the public from future crimes of the defendant. *See* 18 U.S.C. § 3553(a).

The defendant's conduct in this case is serious. It directly harmed two sets of victims: the banks and companies defrauded of money, and the individual whose stolen identity the defendant used. With respect to the former, the defendant intended to cause a foreseeable loss of $55,162, most of which is attributable to a single $41,350 check that the defendant personally handled. Though the account opened by the defendant received a comparatively small amount, that was luck, not prudence. When the defendant opened the account using a stolen identity, he knew it would be used to receive ill-gotten gains; after all, that was point of using a stolen identity. The

account, once opened, might receive nothing — or it might receive millions, as other accounts in this scheme did. The defendant's conduct, though ultimately less impactful than most of his co-defendants, was nevertheless integral to the success of the greater scheme.

In addition to the financial victims, the defendant also caused real harm to his identity theft victim. Using a stolen identity strikes at the core of the victim's sense of security. It can also have lasting practical consequences. By opening a bank account that was subsequently closed for fraud, the defendant created a financial record that may negatively impact the victim's credit history. In addition, the defendant effectively confirmed for his co-conspirators that the victim's identity information "worked" — that is, the victim's name and social security number could be used to conduct financial transactions. That confirmation makes it possible for co-conspirators (either unidentified or not yet arrested) to again use the victim's identity, potentially multiplying the harm.

The defendant's offense conduct in this case was not aberrational. On the contrary, it was the latest in a virtually unbroken record of fraud spanning a staggering 40 years. As the Probation Office observes, the defendant has accumulated "approximately 20 convictions for larceny and fraud-related offenses" and sentences totaling "over 65 years' imprisonment in addition to numerous terms of probation and supervised release." (PSR at 43). Notably, this record includes a 2014 federal conviction in the Eastern District of Virginia for similar fraudulent conduct, in which the defendant was found a "leader of this offense" responsible for a loss amount of $440,692. (PSR ¶ 105). Barely out of prison and while on supervised release for that conviction — for which he was sentenced to 60 months' imprisonment — the defendant committed the instant offense.

It may be, as the defense suggests, that this 40-year criminal history shows the defendant is incorrigible, and the Court should assume that specific deterrence is not in the cards. (ECF Doc. No. 257 at 2). But if specific deterrence is not possible, and rehabilitation has for four decades failed, then the only conclusion is that a lengthy term of imprisonment is necessary to protect the public by incapacitating the defendant.[1] Moreover, even if specific deterrence is not possible in this case, a meaningful term of imprisonment is still necessary for general deterrence. It would, in all frankness, send the wrong message to the public if the defendant's inability to stop committing financial crimes was rewarded by a reduced sentence, on the theory that he simply cannot be deterred.

The defendant argues for lenity because he suffers from serious medical conditions, including congestive heart failure. (ECF Doc. No. 257 at 6). The Government extends its sympathies to the defendant. Notwithstanding its general criticisms of the workload of Bureau of Prisons ("BOP") medical staff (ECF Doc. No. 257 at 9–10), however, the defense presents no evidence that the BOP is incapable of treating the defendant's heart conditions, and the Government is aware of none. *See United States v. Cutler*, 520 F.3d 136, 175 (2d Cir. 2008) (overturning district court's finding that the BOP was incapable of providing "constant

---

[1] The defense suggests that home incarceration, followed by a period of supervised release, is sufficient because "should he slip, the Court would have a full arsenal of consequences, from further home incarceration to institutional incarceration." (ECF Doc. No. 257 at 11). With respect, the defendant has been slipping for 40 years.

monitoring" given the "evidence that the BOP cares for many thousands of inmates who have, inter alia, cardiac disease, hypertension, carotid artery disease, arteriosclerotic heart disease, cardiac arrhythmia, and/or congestive heart failure"); *United States v. Korn*, No. 11-CR-384S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release motion based on defendant's "serious heart condition" because the "Bureau of Prisons remains capable of adequately treating Korn and is doing so"). While a defendant's ill health may be appropriately considered at sentencing, it is neither an excuse for a defendant's crimes nor a reason to avoid an otherwise appropriate sentence of imprisonment. *Cf. United States v. Galanis*, 844 F. App'x 400, 403 (2d Cir. 2021) (affirming sentence where "district court acknowledged Galanis's health issues, but it noted that most of those conditions were already present when Galanis committed his offense and observed that the Bureau of Prisons is generally capable of handling inmates with such conditions").

Finally, the wide availability of vaccines (and indeed, the defendant's own vaccination) greatly reduces the dangers cited by the defendant from COVID-19. (ECF Doc. No. 257 at 6–9). "[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19." *United States v. Kosic*, 18 Cr. 30 (PAC), 2021 WL 1026498, at *3 (S.D.N.Y. Mar. 17, 2021); *see also, e.g.*, *United States v. Perelda*, 17 Cr. 559 (VB), 2021 WL 2533475 (S.D.N.Y. June 21, 2021) (vaccination "greatly diminishes" defendant's risk of contracting or suffering severe complications from COVID-19 despite underlying medical conditions including obesity, diabetes, and hypertension); *United States v. Hayward*, 19 Cr. 61 (PKC), 2021 WL 1820158 (S.D.N.Y. May 5, 2021) (denying compassionate release of fully vaccinated defendant with serious health conditions).

For these reasons, a term of imprisonment within the stipulated Guidelines range of 27 to 33 months' imprisonment is sufficient, but not greater than necessary, to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____

Alexander Li
Thomas Burnett
Assistant United States Attorneys
(212) 637-2265/-1064

cc:   Megan W. Benett, Esq. (*by ECF*)

LB51BARS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          20 Cr. 3 (KPF)

5   DARYL BARTLEY,

6              Defendant.                  Remote Sentencing
    ------------------------------x

7
                                          November 5, 2021
8                                         3:35 p.m.

9
    Before:
10
                    HON. KATHERINE POLK FAILLA,
11
                                          District Judge
12

13                        APPEARANCES

14  DAMIAN WILLIAMS
         United States Attorney for the
15       Southern District of New York
    BY:  ALEXANDER N. LI, ESQ.
16       Assistant United States Attorney

17  KREINDLER & KREINDLER LLP
         Attorneys for Defendant
18  BY:  MEGAN WOLFE BENETT, ESQ.

19  ALSO PRESENT:  FRANCESCA PIPERATO, Pretrial Services Officer
                   ERIKA GOTTLIEB, Paralegal Specialist, USAO
20                 BELLA GENTILE, Intern, USAO

21

22

23

24

25

LB51BARS

```
1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3     the record, beginning with the government.

4              MR. LI:  Good afternoon, your Honor.  Alexander Li for

5     the government.  And also on the public line are my colleagues,

6     paralegal specialist Erika Gottlieb, and an intern in our

7     office, Bella Gentile.

8              THE COURT:  Good afternoon to each of you.  Thank you

9     very much.

10             Ms. Benett, good afternoon to you.  Oh, I see as well

11    Ms. Piperato.  Thank you for participating as well.  Thank you.

12             MS. BENETT:  Hi.  Good afternoon, your Honor.  Megan

13    Benett on behalf of Daryl Bartley, appearing remotely.  And I

14    want to both thank the Court for allowing us to proceed

15    remotely with the hearing, especially in light of the problems

16    we had at the last appearance, and if the Court wants to go

17    over the waiver of right to proceed, the consent to proceed by

18    videoconference with myself and Mr. Bartley, we're prepared to

19    do so.

20             THE COURT:  Thank you.  I think I should begin with

21    that.  I suspect I know the answers to some of these questions,

22    but it is important to get them on the record.

23             Ms. Benett, may I understand that you have spoken with

24    your client about his ability to have this proceeding take

25    place in person and his related -- in fact his right to have
```

LB51BARS

```
 1   this proceeding take place in person and his ability to waive
 2   that right?
 3              MS. BENETT:  Yes, I have, your Honor.
 4              THE COURT:  And after speaking with you, is it
 5   Mr. Bartley's wish to proceed virtually, by videoconference
 6   today?
 7              MS. BENETT:  It is indeed.
 8              THE COURT:  May I speak with him on that point?
 9              MS. BENETT:  Yes.
10              THE COURT:  Mr. Bartley, I'm going to ask you first,
11   sir, whether you have been able to see and hear these
12   proceedings?
13              THE DEFENDANT:  Yes, I have, your Honor.  Thank you.
14              THE COURT:  Good afternoon to you, sir.
15              THE DEFENDANT:  And good afternoon to you.
16              THE COURT:  And please understand, a consequence of
17   using this videoconferencing proceeding is that sometimes your
18   images will switch places so I may appear as though I'm looking
19   at you and then I may look at something else.  I promise you
20   that I'm looking at you all of the time.  It's just your
21   picture is moving on my screen, and so that sometimes happens
22   and it's what we deal with in this setting.
23              Mr. Bartley, is it in fact the case that having spoken
24   with your attorney about your right to have this proceeding
25   take place in person, you have decided to proceed virtually, by
```

LB51BARS

1    videoconferencing?

2              THE DEFENDANT:  Yes, I have, your Honor.

3              THE COURT:  Thank you, sir.

4              Ms. Benett, because this is a sentencing under the

5    CARES Act, there are two sets of findings that need to be made.

6    One set has already been made by our Chief Judge in entering

7    certain standing orders.  The other finding, which I must make

8    today, is that further delay to this proceeding could cause

9    substantial harm to the interests of justice.  Without meaning

10   to put words in your mouth, my expectation is that your

11   client's medical conditions, which you discussed at some length

12   in your submissions, plus his desire to get resolution of this

13   matter, are what are animating your desire to proceed today by

14   videoconference.  But let me hear from you if there is another

15   factual proffer that you wish to make.

16             MS. BENETT:  No, that's correct, your Honor, and I

17   believe that I also set forth both those factors in a letter

18   request to proceed remotely filed on October 29th that this

19   Court so ordered in connection with this sentencing hearing.

20             THE COURT:  Thank you.

21             Mr. Li, given that proffer, I believe I can make the

22   finding that further delays in this proceeding could cause

23   substantial harm to the interests of justice, but sir, are

24   there other facts that you would like me to consider?

25             MR. LI:  No, your Honor.

LB51BARS

```
1         THE COURT:  Okay.  Thank you.

2         Ms. Piperato, let me please speak with you as well as

3    we begin this proceeding.  We've had our conversations earlier

4    in this prosecution about ways in which we can ensure

5    Mr. Bartley's compliance with his conditions of pretrial

6    release.  Are you participating in today's sentencing to give

7    me an update as to his compliance with those conditions or is

8    there other information that you would like to share with me,

9    just so that I know where to place you in the agenda items that

10   I have for today's sentencing?

11        MR. PIPERATO:  Good afternoon, your Honor.  So since

12   the violation hearing, Mr. Bartley has reported telephonically

13   every Monday, so he has complied with that condition.  And

14   that's the only update that pretrial has.

15        THE COURT:  And excuse me as I write that note down.

16   When you say reporting telephonically every Monday, is it

17   simply a phone call with audio or is it a FaceTime or similar

18   situation where you're also getting video?

19        MR. PIPERATO:  A phone call.  So on several occasions

20   I've spoken to Mr. Bartley myself --

21        THE COURT:  Thank you.

22        MR. PIPERATO:  -- and on several -- a week or two,

23   he's left a voicemail.

24        THE COURT:  From your perspective --

25        MR. PIPERATO:  Which is fine.
```

LB51BARS

1          THE COURT:  Okay.  From your perspective,

2     Ms. Piperato, do you believe that Mr. Bartley is complying, if

3     a little bit late, with his conditions of pretrial release?

4          MR. PIPERATO:  Yes.

5          THE COURT:  Is there anything else that you would like

6     to tell me about Mr. Bartley or his pretrial compliance in

7     today's proceeding?

8          MR. PIPERATO:  No, your Honor.

9          THE COURT:  Thank you.  Please understand, you are

10    welcome to remain for this proceeding.  I might not ask you

11    further questions, and I will understand if some other pretrial

12    services matter comes up that takes your attention away, but

13    I'm glad that you participated today.  I'm glad to hear that

14    Mr. Bartley is compliant.  So thank you for assisting him in

15    getting to that place.

16          Let me now speak with counsel in this case.  And I see

17    Mr. Bartley also nodding, and I think in appreciation of

18    Ms. Piperato's efforts, which we are all appreciative for.

19          Let me speak to counsel in this case and make sure I

20    have what I should have.  I have a presentence investigation

21    report dated March 4th of 2021; I have a defense sentencing

22    submission with a number of exhibits, including letters from

23    family and supporters and medical records, dated October 27th

24    of 2021; and I have a government sentencing submission that is

25    dated October 30th of 2021.  Mr. Li, is there something else I

LB51BARS

| | |
|---|---|
| 1 | should have from the government in the vein of either an order |
| 2 | of forfeiture or an order of restitution or something along |
| 3 | those lines? |
| 4 | MR. LI:  No, your Honor, there is not. |
| 5 | THE COURT:  Will there be either, sir, or should I |
| 6 | simply be ordering those figures without an accompanying order? |
| 7 | MR. LI:  Your Honor, may I have just a moment to check |
| 8 | my file? |
| 9 | THE COURT:  Of course. |
| 10 | (Pause) |
| 11 | MS. BENETT:  Your Honor, as Mr. Li does that, I see |
| 12 | that Ms. Piperato has left, but I would just like to say for |
| 13 | the record that she was extremely helpful in arranging for the |
| 14 | remote proceedings. |
| 15 | Hi.  I just wanted to say thank you.  So she was |
| 16 | instrumental in figuring this out for us, and I wanted to make |
| 17 | sure that I recognized and thanked her for her assistance on |
| 18 | the record. |
| 19 | THE COURT:  Oh, I should echo that, because I do know |
| 20 | the AV issues we were having in past conferences, so this is |
| 21 | light years ahead of that.  I do thank you, Ms. Piperato.  I |
| 22 | know that you're participating with video off, and we'll let |
| 23 | you do that.  Thank you. |
| 24 | MR. LI:  Your Honor, I apologize.  With respect to the |
| 25 | other materials, there was a consent preliminary order of |

LB51BARS

1   forfeiture that the parties had agreed upon.  It is my

2   recollection, now that the Court mentions it, that there was a

3   problem with the quality of the signature pages --

4                THE COURT:  Yes.

5                MR. LI:  -- at the time that we submitted this to the

6   Court at the plea.  And I do not see in my file that we

7   submitted a better quality image of the signatures, and so I

8   will make sure that we get on that promptly.  We have not

9   submitted a proposed order of restitution, and we will do so

10  after this proceeding.

11               THE COURT:  Thank you.  And I'll speak with

12  Mr. Bartley in just a moment because I do see that he wants to

13  speak with us, and I will hear from him in just a moment.

14               Ms. Benett, do you consent to us signing and my filing

15  the order of forfeiture and the order of restitution following

16  this proceeding?

17               MS. BENETT:  Yes, that's fine, your Honor.

18               THE COURT:  Thank you.  And as well, Ms. Benett, may I

19  speak with Mr. Bartley, who I see has indicated a desire to

20  speak with us this afternoon?

21               MS. BENETT:  Yes.  Thank you.

22               THE COURT:  Thank you.

23               Mr. Bartley, let me hear from you, sir.

24               THE DEFENDANT:  Thank you, your Honor.  I hate to

25  interrupt the proceedings, but I wanted to make everyone aware

LB51BARS

1   that I have an uncontrollable bladder and I may have to go to

2   the bathroom quite regular during this proceeding, and I just

3   wanted to make everyone aware of that.  If I have to get up

4   urgently, it's because I have to go to the bathroom.  I'm

5   sorry, 'cause --

6           THE COURT:  No, sir.  I appreciate you letting me

7   know.  Thank you.  And we will keep that in mind, and we will

8   take no offense, because it certainly is better than the

9   alternative, so thank you for just putting it on our radar

10  screen so that we know that fact.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Ms. Benett, from your perspective -- oh,

13  excuse me.  Mr. Bartley, was there something else you wanted to

14  add?

15          THE DEFENDANT:  Yes.  I need to go right now, if I

16  may.

17          THE COURT:  Oh, of course, sir.  Go ahead.  We'll wait

18  right here.

19          THE DEFENDANT:  Thank you.

20          (Recess)

21          THE DEFENDANT:  Thank you all very much.  Sorry for

22  that.

23          THE COURT:  Please don't worry, Mr. Bartley.  I'm sure

24  you have a lot going on right now, and I don't want you to be

25  troubled by that at all.  I at least appreciate you giving us

LB51BARS

1    advance warning.

2              Ms. Benett, I'd like to return to you, please, because

3    the question I was about to ask was whether, from your

4    perspective, I have all of the materials you meant me to have

5    for this proceeding.

6              MS. BENETT:  I believe so.  And I'm sorry.  I should

7    have written it down when you were saying it, but you have the

8    revised probation department -- presentence investigation

9    report of March 4th, right, not the -- that's the revised

10    final?

11              THE COURT:  That's correct.  I only get the second

12    disclosure, so that's the one that I received.  And then I have

13    your letter of October 27th.  It has a significant number of

14    exhibits and attachments to it.  I have a number of letters and

15    I have as well medical records.

16              MS. BENETT:  Right.  And the government's submission.

17    That's all as far as I understand, your Honor.

18              THE COURT:  Great.  Then let me continue speaking with

19    you, Ms. Benett.  Ms. Benett, have you had an opportunity to

20    review this presentence investigation report with your client?

21              MS. BENETT:  I have, your Honor.  I provided a copy to

22    Mr. Bartley, the draft and the final, and we have gone over it

23    together, both of them together.

24              THE COURT:  May I ask as well whether you had

25    sufficient time under Federal Rule of Criminal Procedure 32 to

LB51BARS

1    undertake that review?

2              MS. BENETT:  Yes, I did, your Honor.

3              THE COURT:  Do you have any objections to the second

4    disclosure of the PSR?

5              MS. BENETT:  We do not.

6              THE COURT:  Thank you.

7              There is a slight increase in the number of criminal

8    history points as between the parties' plea agreement and the

9    probation's presentence investigation report.  It doesn't

10   affect the criminal history category.  I believe it's the

11   difference between 24 and 22.  Ms. Benett, do you have any

12   objection to their calculation of the guidelines?

13             MS. BENETT:  Well, I should say two things.  First, I

14   should note -- and this is not a formal objection, but I should

15   note that the March 4th revised PSR took the government's point

16   and reduced the offense level from 13 to 11, and I will just

17   note that while the initial final PSR had recommended a

18   sentence commensurate with the bottom end of the guidelines, in

19   the revised PSR, the recommendation is not at the bottom of the

20   guidelines, which would be 27 months.  Instead, they just -- I

21   don't know if that was intentional or not.  Obviously I can't

22   object to that recommendation per se.

23             As to the criminal history points, I did make

24   substantial effort to get the file from many of those older

25   cases.  It was, as the Court I'm sure can understand,

LB51BARS

1   challenging to do so.  I do not have a factual basis to

2   challenge the probation department's calculation of the

3   criminal history here and so we will not object to it, even

4   though it is higher than the parties had calculated.

5          THE COURT:  Sure.  And actually, the criminal history

6   category remains the same; it's just the sheer number of

7   criminal history points.

8          MS. BENETT:  Yes, right.  Yes, understood.  And I

9   meant the points, as particularly in line with the fact that

10  the criminal history category is unchanged.

11         THE COURT:  Thank you.

12         As well, Ms. Benett, at the back of the presentence

13  investigation report, there are mandatory, standard, and

14  special conditions of supervised release.  Have you had an

15  opportunity to review those with your client?

16         MS. BENETT:  I did, your Honor.

17         THE COURT:  And there are several suggested special

18  conditions of supervised release -- a search condition under

19  certain factual circumstances; a drug testing and treatment

20  condition; a request for the provision of financial information

21  if the probation officer seeks the provision of financial

22  information; a proscription on obtaining lines of credit or

23  credit cards or loans unless one is in compliance with the

24  payment schedule; and a recommendation that Mr. Bartley be

25  supervised in his district of residence.  Do you have any

LB51BARS

1    objection to any of those suggested special conditions?

2             MS. BENETT:  Your Honor, thank you for asking.  In

3    some cases I might.  In this case I would not, given the nature

4    of the offense conduct here.  I understand the request for

5    those special conditions, and the defense would not have an

6    objection to those special conditions.

7             THE COURT:  A few pages later, in the PSR, there are

8    also instructions regarding the payment of restitution and how

9    that would be done and the manner in which one would make

10   payments and/or seek adjustments to those payments.  Do you

11   have any objections to the proposed payment system that is set

12   forth in the presentence investigation report?

13            MS. BENETT:  So I will consent that what I am looking

14   at -- well, page 50 of the ECF filing, page 49 of the

15   document --

16            THE COURT:  Yes.

17            MS. BENETT:  -- as to scheduled payments does not

18   actually have the proposed monthly payments in it, and I don't

19   know if I'm for some reason looking at the wrong document.

20            THE COURT:  Oh, I'm sure you're not.  What I'm looking

21   at in the middle of the page speaks to a request of 20 percent

22   of gross income.  That's the paragraph that begins, "You shall

23   commence monthly installment payments."

24            MS. BENETT:  Yes, right.  I just meant the sort of

25   specific terms, like what day of the month, for example.  You

14

LB51BARS

| | |
|---|---|
| 1 | know, we would not have an objection to -- I mean, I would -- |
| 2 | well, given Mr. Bartley's current employment situation, which |
| 3 | is that he is presently unemployed but is continuing to seek |
| 4 | employment, 20 percent of his gross income feels more than sort |
| 5 | of theoretical right now. I do think that if he were to |
| 6 | continue living with, you know -- if he were to be out of |
| 7 | custody and living in his mother's apartment, that he would be |
| 8 | able to satisfy that. I think if he were to be living |
| 9 | independently, that we would ask that the Court consider a |
| 10 | smaller monthly payment, given that's of the gross and not of |
| 11 | the net income. |
| 12 | THE COURT: Let me do this, please. I will make it |
| 13 | 15 percent due on the 15th day of every month. I think that |
| 14 | will handle some of the issues, and as appropriate, Mr. Bartley |
| 15 | can make a request to the probation office for modifications to |
| 16 | that. But I did want to make sure you had seen that. |
| 17 | Ms. Benett, do I understand -- and I should have asked |
| 18 | this earlier -- there is no objection to the restitution and |
| 19 | forfeiture figures of $41,350? |
| 20 | MS. BENETT: There is no objection. |
| 21 | THE COURT: May I speak with your client about these |
| 22 | issues? |
| 23 | MS. BENETT: Yes. |
| 24 | THE COURT: Mr. Bartley, you've heard me speaking with |
| 25 | your attorney about the presentence investigation report in |

LB51BARS

1    this case, and let me begin by asking whether you and she have

2    reviewed that document.  And please understand, sir, I don't

3    want the specifics of your communications.  I just want to know

4    that you have reviewed it.  Have you, sir?

5              THE DEFENDANT:  Yes, your Honor, we have.

6              THE COURT:  And your attorney has said to me that she

7    does not have objections and that you do not have objections to

8    the contents of that report; is that also correct?

9              THE DEFENDANT:  No, I do not.  That is correct, yes.

10             THE COURT:  Thank you.  No, I asked the question that

11   called for a double negative, sir.  My own fault.

12             We've talked and you heard me speak with her about the

13   conditions of supervised release -- the mandatory, which

14   include things like not committing a crime; the standard, which

15   includes things like the manner in which you are supervised by

16   your probation officer and the folks with whom you can

17   interact; and then certain special conditions, and you heard me

18   speak of five of them -- a search condition; a drug testing and

19   treatment condition, as appropriate; that you provide financial

20   information if you're asked to do so by your probation officer;

21   a prohibition on opening up new lines of credit without the

22   permission of your probation officer, unless you're in

23   compliance with your payment schedule; and then a suggestion, a

24   recommendation that you be supervised in your district of

25   residence.  Do you have any objections to those conditions,

16

LB51BARS

1   sir?

2          THE DEFENDANT:  No, I do not, your Honor.

3          THE COURT:  Mr. Bartley, since you've reviewed all of

4   the conditions with your attorney and since we've spoken about

5   some of them in this proceeding, will you agree that I can

6   refer to these conditions in this proceeding collectively as

7   the mandatory, standard, and special conditions of supervised

8   release, without reading them word for word into the record?

9          THE DEFENDANT:  Yes, I will.

10         THE COURT:  Thank you.

11         And sir, you heard me speak with your attorney as well

12  about the restitution schedule, and I have revised that

13  slightly.  Do you understand that, sir?

14         THE DEFENDANT:  I do, but -- I wanted to state my

15  attorney has mentioned that I'm unemployed, but I'm also -- I'm

16  disabled right now because I have COPD.

17         THE COURT:  Yes.

18         THE DEFENDANT:  And I've been labeled as disabled,

19  although I am still looking for work, something that I can do

20  that's not too strenuous or hazardous to my health.  I'm

21  steadily looking for jobs in customer service and concierge,

22  things that I can do, no lifting, no heavy anything like that.

23  So I would have no problem making restitution or attempting to

24  get restitution paid, I have no problem with that, but I just

25  wanted to make the Court aware that I am disabled at this

LB51BARS

1    point, legally disabled.

2              THE COURT:  And you see me writing that down, sir.  I

3    do have that notation.  I'm confident that when you begin

4    supervised release and are speaking with your probation

5    officer, they will be aware of that as well.  I am aware of

6    folks who are unemployed but who are not excused from

7    employment, and given the conditions that I think are outlined

8    in your medical records, it would not surprise me if the

9    probation office were to find that you were excused from

10   employment to the extent that these conditions persisted.  So

11   yes, I understand.  Thank you.

12             THE DEFENDANT:  Thank you.

13             THE COURT:  All right.  Mr. Li, has the government had

14   a sufficient opportunity, under Federal Rule of Criminal

15   Procedure 32, to review the presentence investigation report in

16   this case?

17             MR. LI:  We have.

18             THE COURT:  Do you have any objections to its

19   contents?

20             MR. LI:  No, your Honor.  And in fact, I should state

21   a correction to my sentencing submission before the Court.  In

22   preparing for this proceeding, I realized that I had been

23   reviewing, for purposes of my sentencing submission, the

24   original final presentence investigation report and not the

25   amended one dated March 4, 2021, which I have since fully

LB51BARS

1  reviewed.  That amended version, as the Court knows, did in
2  fact adopt the government's objections to the calculation of
3  the offense level, including the elimination of an enhancement
4  to which we stated our objection in our sentencing submission,
5  so that issue is now moot.
6            THE COURT:  Sir, I appreciate you anticipating my next
7  question, which is:  Do you still have that objection to the
8  presentence investigation report?  The answer is no, and I
9  appreciate that.
10           Sir, may I confirm that from the government's
11 perspective, the restitution and forfeiture figures are
12 $41,350?
13           MR. LI:  That is correct, your Honor.
14           THE COURT:  And may I confirm that the government does
15 not object to the probation officer's calculation of the
16 criminal history points in this case?
17           MR. LI:  That's correct, your Honor.
18           THE COURT:  Of course you are standing by your plea
19 agreement, but as a practical matter, it doesn't affect the
20 guidelines range in this case.
21           MR. LI:  That's correct, your Honor, and our plea
22 agreement does permit for a corrected calculation of the
23 criminal history as appropriate.  In this case, as the Court
24 noted, it does not actually affect his criminal history
25 category, but to the extent that there are additional criminal

LB51BARS

1    history elements that were not in our plea agreement, we have

2    no objection to those additional arrests and convictions.

3              THE COURT:  Mr. Li, this is a question specific to

4    you, and I don't think Ms. Benett needs to opine on it, but

5    I'll offer it.  In this version of the presentence

6    investigation report, which was prepared at an earlier stage in

7    the life cycle of this prosecution, there are multiple

8    references to an individual named Andrew Heaven.  Mr. Heaven,

9    if I understand it, is not being prosecuted in this case.  I

10   may be misremembering the facts, but I thought I understood

11   that the government had removed him from the indictment.  And

12   given that, my question is:  Should we modify those references

13   to Mr. Heaven that are in the presentence investigation report?

14   To be clear, his inclusion or exclusion from the report doesn't

15   impact Mr. Bartley or his sentence or -- there's no way I

16   believe in which the Bureau of Prisons would look at references

17   to Mr. Heaven and think anything.  But I'm just wondering, if I

18   am correct that he's no longer in this case, I question whether

19   he should be mentioned in the presentence investigation report.

20             MR. LI:  I agree with your Honor.  It is true, we have

21   nolle'd the case as to Mr. Heaven, and I agree with your Honor

22   that it is not really appropriate for there to be factual

23   findings, even in a different person's PSR, with respect to

24   Mr. Heaven, given that he is no longer in the case.

25             THE COURT:  I will modify those paragraphs accordingly

LB51BARS

1    then, with Ms. Benett's agreement.

2            Ms. Benett, I'm not sure that you have a horse in this

3    particular race, but my understanding of this case is that

4    Mr. Heaven is no longer in the case, and given that, I didn't

5    want his name showing up in a document that someone somewhere

6    could obtain.

7            MS. BENETT:  Yes, and we have no objection to removing

8    any reference to Mr. Heaven from the PSR.  Thank you, your

9    Honor.

10           THE COURT:  Okay.  Thank you.  I will do that.  I

11   won't bother you all with the language that I use, but you can

12   understand that I'll be removing references to him.  Thank you.

13           With that, with that modification -- and it would be

14   an excision of all references to Mr. Heaven -- I am going to

15   adopt the presentence investigation report in this case, the

16   guidelines calculations contained in that report, and the

17   factual statements that are contained in that report.

18           Ms. Benett, I'm going to ask you some questions,

19   please, and you will let me know if you would prefer that this

20   portion of our transcript be under seal, but my questions go to

21   the current status of your client's various medical conditions.

22   Do you want that portion of this transcript sealed?

23           MS. BENETT:  Would it be possible just for Mr. Bartley

24   and myself to go into the breakout room quickly so I can

25   confirm with him privately?

LB51BARS

| | |
|---|---|
| 1 | THE COURT: Ms. Noriega, is that a thing that can be |
| 2 | done? |
| 3 | THE DEPUTY CLERK: Yes, Judge. It will take another |
| 4 | minute or two because it takes a while to open up the breakout |
| 5 | room, but I can move them into a breakout room. |
| 6 | THE COURT: Okay. Then let's please do that. |
| 7 | MS. BENETT: Yes, if the Court doesn't mind indulging |
| 8 | me, I think we're fine, but I just want to confirm and not have |
| 9 | Mr. Bartley feel like he has to answer one way or another. |
| 10 | THE COURT: Of course. No, that is fine. But you'll |
| 11 | understand, I do want as complete a description as you can give |
| 12 | me of how Mr. Bartley is doing today. |
| 13 | MS. BENETT: Okay. |
| 14 | (Recess) |
| 15 | THE COURT: There are references -- Mr. Bartley, I do |
| 16 | need you to unmute yourself. Thank you, sir. |
| 17 | THE DEFENDANT: Yes. I'm back. |
| 18 | THE COURT: Thank you. |
| 19 | All right. Ms. Benett, where we left off was that you |
| 20 | were going to speak with Mr. Bartley about his willingness to |
| 21 | have his medical conditions discussed in the record or whether |
| 22 | he wished it to be sealed. |
| 23 | MS. BENETT: Thank you, your Honor. So while we did |
| 24 | obviously produce, you know, substantial information about |
| 25 | Mr. Bartley's health and medical history to the Court and on |

LB51BARS

1    the docket, I think he would feel more comfortable discussing

2    this with the Court if it were not part of the public record,

3    and we would ask that this portion of the sentencing not be

4    publicly available in light of the sensitivity of the topics

5    concerning his current medical condition.

6            THE COURT:  Of course.  I am going to order that this

7    portion of the transcript be sealed.  It may be produced to the

8    government and to the defense and to the probation office as

9    needed.  It may also be transmitted by email rather than having

10   to be transmitted in person or by mail, given the pandemic, but

11   this portion addressing Mr. Bartley's medical conditions will

12   be under seal.

13           (Pages 23-29 SEALED by order of the Court)

14

15

16

17

18

19

20

21

22

23

24

25

LB51BARS

1          THE COURT:  Mr. Li, I would like to hear from the

2     government with respect to their views on sentencing.  I would

3     like you to take account of the medical discussions I've just

4     been having with the defense.  I would like you as well to take

5     account of other sentences I've imposed in this case.  Whenever

6     you are ready, sir.

7          MR. LI:  Yes, your Honor.

8          So I know the Court has been interested throughout the

9     life of this case on the relative culpability of the

10    defendants, and I think that the defendant here, Mr. Bartley,

11    is situated on the low end of culpability, both in terms of the

12    loss amount, which is obvious, but also in terms of his

13    specific role here, which was really limited to two actions --

14    one, with opening a bank account using a stolen identity; and

15    the second was depositing a fraudulent check.  I think he is

16    most comparable to the very first defendant whom the Court

17    sentenced, which is Mr. Murray-Sesay.

18          The trouble with this case, as the Court knows, is

19    that the defendant has an extremely extensive criminal history,

20    and in the ordinary course, I think we would come charging out

21    the gate for the government and saying that that really

22    warrants a very lengthy sentence because, in all candor, it

23    appears the defendant cannot seem to be deterred or

24    rehabilitated over the 40-year life of his criminal history.  I

25    recognize, as everyone on this conference does, that the

LB51BARS

1   defendant also has compelling medical conditions that make what

2   I call charging out the gate perhaps inappropriate in this

3   case, and certainly I extend my sympathies to the defendant for

4   the difficult medical issues that he faces.

5           Your Honor, I don't know what to do about this case.

6   I really don't.

7           THE COURT:  I'm not laughing, sir; I am smiling at

8   your candor.  Thank you.

9           MR. LI:  I've struggled with this.  I've discussed

10  this internally with my colleagues, with the other AUSA on this

11  case, and I really don't know.  The options that we have in

12  this courtroom, as I think the history of the defendant shows,

13  really don't seem to work.  And for an ordinary defendant, I

14  would say, you know, just put him in then.  I don't know that

15  that is necessarily the right answer, or certainly not for the

16  length of time that we might otherwise recommend for a

17  defendant without the medical conditions that he faces.  I do

18  know that the Bureau of Prisons is capable of treating folks

19  with difficult medical conditions such as the defendant's.  As

20  the Court knows, the Bureau of Prisons does operate federal

21  medical facilities that are essentially hospitals that are

22  equipped to treat the sorts of conditions that the defendant

23  has.  I do not know if they have the ability to perform

24  something so substantial as a heart transplant.  I don't know.

25  And I think my guess is that for something so truly

LB51BARS

1    sophisticated and specialized, that may be something for which
2    an outside hospital would be required.  But the Bureau of
3    Prisons does have experience in dealing with people who have
4    advanced medical conditions such as the defendant, although I
5    recognize that certainly today, in the middle of a pandemic,
6    treating medical conditions is more complicated than it would
7    be in the ordinary course.
8            Your Honor, you know, at the end of the day, I stand
9    by my sentencing submission.  To the extent that the tools we
10   have available, that the Court has available, I simply do not
11   see one that is better than a term of imprisonment.  If there
12   were one that was better, I would certainly advocate reaching
13   for it.  But it just seems to me that all of the efforts that
14   have been made to incentivize the defendant to stay on the
15   right side of the law, whether it's pretrial release or
16   supervised release, have failed, and on that record, I simply
17   don't see an alternative that is workable on the facts of this
18   case than some term of imprisonment.
19           THE COURT:  Mr. Li, thank you very much, again,
20   especially for your candor.
21           Ms. Benett, I'll hear from you now.  Ms. Benett, I'm
22   not making light of this situation at all.  Your client has the
23   worst criminal history I've ever dealt with as judge, or as
24   former prosecutor.  And I have such difficulty reconciling the
25   person who is with me on the videoconference now with the

LB51BARS

1    person who has all of those arrests and convictions.  And so I

2    do not understand what makes this prosecution different from

3    the dozens that preceded it.  And I will echo something that

4    Mr. Li said.  I wouldn't be spending quite so much time

5    worrying about this case were it not for the severity of the

6    medical conditions you've identified, because that's the only

7    thing that potentially -- and I won't say it will -- keeps your

8    client out of prison.

9             MS. BENETT:  Your Honor, I will start by saying I

10   fully appreciate everything that the Court has said and that I

11   think from the defense perspective, I'm just sort of on the

12   other side of the coin from Mr. Li insofar as I too struggled

13   with this sentencing, recognizing, for the very reasons that

14   you and Mr. Li have identified, that under any other

15   circumstance, I certainly wouldn't -- I guess I can't say I

16   wouldn't presume to ask for leniency or for the sort of

17   variance I have asked for here, but I would not feel

18   comfortable doing so.

19            I'm not sure if -- I have to be honest.  I'm not sure

20   how -- I struggled with our sentencing memo for all of the same

21   reasons that you have articulated and that Mr. Li has stated.

22   This is a record unlike one that I have encountered in my

23   experience as a criminal defense attorney, and it is -- I

24   respectfully disagree with Mr. Li's characterization of it as

25   admitting or suggesting that Mr. Bartley is incorrigible.  I

34

LB51BARS

1   mean, I did go back and I thought about it, and I did look

2   at -- I did go back and look at my *Merriam-Webster* because I do

3   think, I do think -- and I believe we all recognize this --

4   that his medical condition -- oh, okay.

5        THE COURT:  I'm reading lips.  Mr. Bartley, let's take

6   a break.

7        And Ms. Benett, during that time, you'll be thinking

8   of all the wonderful things you're about to tell me.

9        MS. BENETT:  Okay.

10       (Recess)

11       THE COURT:  Ms. Benett, why don't you continue,

12  please, with your sentencing presentation.  Thank you.

13       MS. BENETT:  Thank you.

14       I know I got some raised eyebrows when I said I wasn't

15  sure if "incorrigible" was the right word, and I would like to

16  say that that's only because when I went -- and I reflected on

17  whether or not to even mention that I don't necessarily agree

18  with that assessment.  It is because it would mean that

19  Mr. Bartley is not capable of being corrected, not that he

20  has -- he certainly -- I cannot say anything about his criminal

21  history record because it is, as everybody has recognized --

22       THE COURT:  Really bad.  Let's go with really bad.

23       MS. BENETT:  Uniquely -- uniquely so, even.  Like I

24  said, I have not encountered anything like this.

25       I do think, however, that his current condition is

LB51BARS

1    meaningfully different.  His medical condition has, even over

2    the course of this case, has worsened so much, and I do have --

3    I don't want him to be deterred because he's physically

4    incapable of living a meaningful, you know, living his life.

5    At the same time, I do think that he is physically

6    incapacitated, but that incapacitation has impacted his outlook

7    on his life and what time, you know -- the same way it would

8    for any of us, thinking of the time, the days or the months or

9    the years that we may have left, and that he is looking at his

10   life from this perspective differently than he had previously.

11           So that is what I would say, in addition to, you know,

12   the reasons that I put into our sentencing memo about that, you

13   know -- and I don't disagree with Mr. Li, and I recognize that

14   the Bureau of Prisons does -- and of course, you know, they do

15   have their medical facilities.  I don't think that there's any

16   question that the care that Mr. Bartley needs are sophisticated

17   and complicated.  He has a very good relationship with his

18   treating doctor, who seems to me to be an excellent physician.

19   Dr. Rao is Australian, and he was quite funny when we've

20   spoken.  He said he was worried that I was going to ask him for

21   an opinion about the criminal case and he said that he only

22   knows the Australian system.  I assured him all I wanted to

23   know was the medical information.  But it's clear that he and

24   Mr. Bartley have a good and close relationship and that that I

25   think has been meaningful in terms of the care that Mr. Bartley

LB51BARS

1    has been not just receiving but in terms of motivating

2    Mr. Bartley to obtain the care and treatment that he needs.

3         I don't know what I would do if I were the sentencing

4    judge in this case.  I think that this is a really hard case.

5    I think that they probably all are.  I've said in other cases

6    that are difficult for different reasons that in some ways as a

7    defense lawyer, I have the easier job, because I get to make my

8    argument and then the Court has to pass the judgment.  This is

9    one I don't know -- I asked for what I believe is an

10   appropriate sentence in light of all of the circumstances.  I

11   believe that this Court will continue -- if Mr. Bartley were to

12   fail on probation for any reason, I have no doubt -- certainly

13   given the Court's admonition at our bail review hearing, I have

14   no doubt that Mr. Bartley would not long be without severe

15   consequences were he to falter if he were to be on probation or

16   on some sort of home detention as opposed to incarcerated in

17   the Bureau of Prisons facility.  I think that -- and I said

18   this in the sentencing memo.  It's not to minimize the offense

19   conduct, but certainly it is, in the scheme of the conspiracy,

20   fairly limited and --

21        THE COURT:  Let's stop right there.  Fairly limited

22   while on supervised release for another sentence for doing just

23   this.  So I suppose I should be grateful that he went from

24   being the top of the conspiracy to a bit player in this

25   conspiracy, but I don't really feel grateful about that.

LB51BARS

1          MS. BENETT:  I understand.  I did read the -- I looked

2     at the prior case.  I read the sentencing filings in that case.

3     I read the sentencing transcript in that case.  I mean, it's --

4     I gather the Court has also done its homework.

5          So I don't know what to say other than, you know, it

6     is Mr. Bartley's extraordinary medical condition that brought

7     me to the place where I believe it was appropriate on his

8     behalf to propose to the Court a sentence that would allow him

9     to remain out of Bureau of Prisons custody, getting the medical

10    treatment that he -- continue with the medical treatment and

11    seeing the medical practitioner he's seeing now.

12          I don't know that I have anything to add beyond what

13    is in the submissions.  I certainly am happy to address the

14    Court if you have any questions.  And if the Court wants to

15    speak with Mr. Bartley and ask him questions, I would not have

16    an objection to that.  I think that he is prepared for that

17    possibility.

18          THE COURT:  All right.  Let me then do that.

19          Mr. Bartley, I'm not the first judge you've seen.  I'm

20    far from the first judge you've seen in a criminal case.

21    You've gotten small sentences, you've gotten long sentences,

22    and none of them has seemed to stop you.  You brought yourself

23    to a series of extraordinary physical challenges to your

24    health, yet you continued to use drugs until July of 2020.  So

25    among the many problems I have is that I would flatter myself

LB51BARS

1  to think that I could persuade you to live a law-abiding life

2  when all of these other very, very thoughtful judges have not.

3  I don't know, sir, how to stop you from engaging in criminal

4  conduct, and if I think that you're going to engage in criminal

5  conduct, I have to keep you from doing so.  So why is this case

6  different from all of your other dozens of criminal justice

7  system interactions?

8          THE DEFENDANT:  Well, your Honor, I think it's

9  primarily because of where I am in my life right now.  I no

10  doubt have had my share of poor decisions throughout my life

11  and have been involved in many criminal activities along the

12  way, but I've gotten to this stage in my life right now, as my

13  attorney, Ms. Benett, said, I think about how much time I have

14  left on this earth, what I would like to contribute to society,

15  totally the opposite of what I've done before.  I just -- I'm

16  just in a different vein right now.  I'm dealing with health

17  issues, which we all know, and I'm dealing with life issues --

18  my kids, my mother as well.  I just know that I'm not going to

19  be here very much longer, and I would like to spend my rest --

20  the rest of my years in a positive vein.  And I have been

21  working hard to try and deal with my addiction issues.  I have

22  been working very hard to deal with my decision-making, the

23  company I'm keeping, the places I go.  I just am trying to make

24  better decisions for myself for once in my life.  I'm almost 60

25  years old at this point, and it's way too old to be in this

LB51BARS

1  situation I'm in right now.  And I don't prefer to be in this

2  situation that I put myself in, once again.  And I just know

3  that my time here is not much longer, and I would like to do

4  some more positive things in life and make a difference, and

5  healthwise, I guess I have to look at things a lot more

6  differently now.  Nowadays, I have to -- because of what I'm

7  dealing with personally and what I don't need to be dealing

8  with.  And the only thing I could say, your Honor, is, I have

9  never been in this situation that I'm in today before.  With

10  all my other -- my previous misdeeds, I've never been in this

11  situation, and it makes it -- makes quite a difference, from my

12  standpoint, what I'm dealing with, where my life is -- I'm not

13  satisfied with where it is right now, where it should be, where

14  it could be, and I want to try and make changes and do better.

15  I just need to do better for the rest of my years here.  And

16  I've been trying very hard to focus on doing better, work on my

17  addiction, work on my decision-making, work on the company I

18  keep, work on the things I do in life.  It's a lot different

19  these days, your Honor, than it's been over the years.

20         THE COURT:  Mr. Bartley, I thought I understood from

21  your medical records that there may be a correlation between

22  your use of cocaine and the damage to your heart.  Did you see

23  that as well?

24         THE DEFENDANT:  He asked me had I used, had I used

25  before, and I said yes, I've used, and he told me that it's not

LB51BARS

1    a good thing, and I've adhered to that since he mentioned that
2    to me, yes, ma'am, I have.
3              THE COURT:  It's not crazy to think that if you use
4    drugs again, you will die.  Do you agree with me?
5              THE DEFENDANT:  Absolutely.  Absolutely.  I agree.
6              THE COURT:  With respect to your mom, what is the
7    situation with your mother?  What is the care that you're
8    giving her now?
9              THE DEFENDANT:  Just -- my mom has diabetes and my mom
10   is 81 years old.  I'm there to do things, a lot of things for
11   her that she can't do for herself.  She can still drive, but
12   that means -- we live three flights up the stairs, no elevator.
13   You know, I do little things for her around the house.  I try
14   to take the load off of her so that she doesn't have to do so
15   much in her age -- at her age.  She just discovered she has
16   possible gout the other day, so I'm having to lift things for
17   her and do things for her that she can't possibly do for
18   herself these days anymore.  I'm just there to be there for my
19   mother.  She's been there for me many, many years when lord
20   knows I didn't deserve the love and support.  I just want to be
21   there for her.
22             THE COURT:  Mr. Bartley, you've been kind enough to
23   answer the questions that I'm asking you directly, but you are
24   at this time permitted to, and indeed invited to, speak with me
25   about your sentencing, if there's something else that you would

LB51BARS

1    like me to know.  It may be the case that the questions I've

2    asked have covered what you wanted to say, but if there's

3    anything else you want to make sure that I have in my mind,

4    I'll hear from you now.

5              THE DEFENDANT:  I would just like to finally say, your

6    Honor, it's a fact that I'm just, at this point in my life -- I

7    don't have many years left, and I have no choice but to do the

8    right thing.  Not that I don't want to do the right thing,

9    because I do, and I've been making a very strong effort to do

10   the right thing on all levels -- addiction level,

11   decision-making levels, as I said, company I've been keeping.

12   You know, I stay close to family and home, and that's where I

13   plan to be if allowed.

14             THE COURT:  Thank you, sir.  Is there anything else?

15             THE DEFENDANT:  No.  Thank you, your Honor.  I would

16   just appreciate the consideration of all of those things and

17   leave things where you -- to your sentence.  And that's all.

18   Thank you --

19             THE COURT:  Thank you very much.

20             THE DEFENDANT:  -- for hearing me.

21             THE COURT:  Of course.

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. Bartley, what I'm going to do right

24   now is just step out of this platform for a moment.  I'm just

25   going to put myself on mute and turn off my camera because as

LB51BARS

1    you've seen, I've taken notes of what everyone has said and I

2    want to gather my notes together.  I'll be back as soon as I

3    can, but if you need to step out too to use the bathroom, now

4    would be a great time to do it, sir.

5         So I thank everyone on this conference for their

6    patience.  I'll be back as soon as I can.  But that's probably,

7    let's imagine, at least five minutes.  So if you do need to

8    step away or you'd like to turn off your cameras for a few

9    minutes, I take no offense, and we'll all get back together in

10   a few minutes.  Thank you very much.

11        (Recess)

12        THE COURT:  Thank you, everyone, for your patience,

13   and let me begin now, and I will describe the sentence I intend

14   to impose, but I will give each side an opportunity to make

15   legal objections before the sentence is actually imposed.

16        And in imposing today's sentence, I've considered

17   factors that are set forth by Congress in Section 3553(a) of

18   Title 18 of the United States Code.  They include, as relevant

19   to today's proceeding:

20        The nature and circumstances of the offense;

21        The history and characteristics of Mr. Bartley;

22        The need for the sentence imposed to reflect the

23   seriousness of the offense, to promote respect for the law, to

24   provide a just punishment for the offense, to afford adequate

25   deterrence to criminal conduct, to protect the public from

LB51BARS

1    further crimes by Mr. Bartley, to provide him with needed

2    educational and vocational training, medical care, or other

3    correctional treatment in the most effective manner;

4            I must consider the sentencing guidelines;

5            I must consider the need to avoid unwarranted sentence

6    disparities amongst similarly situated defendants; and

7            The need to provide restitution to victims.

8            My guidelines calculations replicate those in the

9    parties' plea agreement.  There is a base offense level of 7,

10   and there is a 6-level enhancement for the loss figure between

11   40 and $95,000.  There is a 2-level reduction for acceptance,

12   and that yields an adjusted offense level of 11.

13           Mr. Bartley has 24 criminal history points, which puts

14   him in criminal history category VI, and therefore, while the

15   adjusted offense level is, for those of us who do this

16   regularly, quite small, the criminal history category makes the

17   sentence a significant one of 27 to 33 months.  The probation

18   office is recommending a sentence at the high end of that

19   range; the government is recommending sentence within that

20   range; and the defense is recommending a sentence of time

21   served and a combination of home detention with community

22   service.

23           I was not kidding when I said earlier that this is the

24   most substantial criminal history I've ever seen, as judge or

25   as prosecutor, and I also was not kidding when I said that the

LB51BARS

1    only thing that potentially kept Mr. Bartley from prison were

2    his medical conditions.

3           Mr. Bartley, when judges think about sentencing, we

4    think about whether someone has committed the same offense,

5    have they committed it over a substantial period of time, have

6    they learned from prior experiences or interactions with the

7    criminal justice system, have they committed offenses while on

8    criminal justice sentences, and you, unfortunately, sir,

9    managed to tick off every box.  Everything that would cause a

10   sentencing judge to have a red flag, you've done.  You've done.

11   And I don't necessarily accept the argument that because you

12   have not been deterred, I shouldn't try to deter you.  And I

13   have thought very seriously, and I continue to think very

14   seriously, that the biggest issue for me is that of

15   incapacitation.

16          The issue, sir, is the one that we've been talking

17   about for most of this afternoon, and that is your

18   extraordinary medical conditions.  And the medical records that

19   I have seen, I don't think anyone disputes their severity, and

20   the indications from your doctor about the gravity of your

21   conditions.  And so I have tried to balance the need for

22   incapacitation with my fear that the Bureau of Prisons, in its

23   current state, at this stage in its existence, cannot provide

24   the specific care that you need for your conditions, and so I

25   am not going to impose additional prison time.  But let me

LB51BARS

1    finish my sentence.  I am imposing a sentence of time served

2    with a three-year period of supervised release, but the first

3    18 months of that period of supervised release will be home

4    incarceration, by which I mean the only reason you're leaving

5    your home is to go to medical treatment or emergencies that are

6    approved by the probation office.  But there is no other

7    reason, no other reason, because I appreciate that you're

8    helping your mom out, but otherwise I'd put you in jail.  And

9    so the sentence of jail that I was going to impose, I am

10   letting you serve in your home.  So it is 18 months of home

11   incarceration with medical treatment, necessary medical

12   treatment, and if there's an emergency that is approved by your

13   probation officer.

14          I don't know, sir, that you would need location

15   monitoring.  I will leave it to your supervising probation

16   officer to determine whether you will.

17          The other conditions of supervised release also apply.

18   And they include the search condition that we mentioned

19   earlier; the drug testing and treatment, which, at least for

20   the short term, will have to be done virtually; the access to

21   financial information; the proscription on lines of credit

22   unless you have approval from probation; and the recommendation

23   of supervision in the district of residence.

24          I am ordering forfeiture in the amount of $41,350.

25          I am imposing restitution in the amount of $41,350.

LB51BARS

1          I am not otherwise imposing a fine because I don't

2     believe, sir, that you have the ability to pay it.

3          But I must impose a mandatory special assessment of

4     $100.

5          Mr. Li, is there any reason why I may not impose the

6     sentence that I've outlined?

7          MR. LI:  No, your Honor.

8          THE COURT:  Thank you.

9          Ms. Benett, is there any reason that I may not impose

10    the sentence that I've just outlined?

11         MS. BENETT:  No, your Honor.

12         THE COURT:  And Ms. Benett, well, I will impose the

13    sentence, and then I'm going to speak to an issue that was

14    raised in your submission.

15         So Mr. Bartley, sir, I'm not going to make you stand

16    for this.  Normally, were you in the courtroom, you would

17    stand.  But I do want you to take very seriously what I'm

18    saying this afternoon.

19         After considering all of the factors set forth in

20    Section 3553(a) of Title 18 of the United States Code, I find

21    that a term of time served is sufficient but not greater than

22    necessary to comply with all of the purposes of sentencing.

23    But that period of imprisonment is being followed by a

24    three-year term of supervised release, with the mandatory,

25    standard, and special conditions that are outlined in the

LB51BARS

| | |
|---|---|
| 1 | presentence investigation report, and with the condition that |
| 2 | the first 18 months of that three-year period of supervised |
| 3 | release will include a condition of home incarceration, with |
| 4 | you being let out only for necessary medical treatment or |
| 5 | emergencies approved by your probation officer, and with |
| 6 | location monitoring if and as needed by your probation officer. |
| 7 | I am ordering restitution and forfeiture as I've |
| 8 | discussed earlier, and I'm imposing a $100 mandatory special |
| 9 | assessment. |
| 10 | Mr. Bartley, do you understand the sentence that I've |
| 11 | just imposed? |
| 12 | THE DEFENDANT:  Yes.  Most of it, your Honor. |
| 13 | THE COURT:  Okay. |
| 14 | THE DEFENDANT:  I got the three years' supervised |
| 15 | supervision, with 18 months of it home detention. |
| 16 | THE COURT:  It's home incarceration, sir.  You can't |
| 17 | leave -- |
| 18 | THE DEFENDANT:  Home incarceration. |
| 19 | THE COURT:  You can't leave except for medical |
| 20 | treatment.  You stay in your house. |
| 21 | THE DEFENDANT:  Only medical treatment. |
| 22 | THE COURT:  Only medical treatment, sir. |
| 23 | THE DEFENDANT:  What about work, your Honor -- |
| 24 | THE COURT:  No, sir. |
| 25 | THE DEFENDANT:  -- were I to get a job? |

48

LB51BARS

1          THE COURT:  No, sir.  No, sir.

2          THE DEFENDANT:  Okay.  All right.

3          THE COURT:  And I want to be clear.  Your attorney

4    spoke to me about the possibility of community service as a

5    component of your supervised release.  I think community

6    service is a great idea, but I still want to deal with the

7    incapacitation and the deterrent aspects of imprisonment, and

8    that's why I'm focusing on the home incarceration.  I will not

9    stop you in the second 18 months of your supervised release

10   from getting a job, from speaking to people, but in the first

11   18 months, I want you to realize how close you are to going to

12   prison, and that is why I'm imposing home incarceration.  Do

13   you understand, sir?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  Mr. Bartley, to the extent that you have

16   not waived this in any plea agreement that you may have with

17   the government, you have the right to appeal from your

18   conviction and from your sentence.  And if you are interested

19   in appeal, please speak with Ms. Benett because she is familiar

20   with the process.  Generally speaking, you have two weeks after

21   I file the judgment of conviction in order to file your notice

22   of appeal.  And that judgment of conviction will probably be

23   filed early next week.  So if appeal is something that is of

24   interest to you, please speak with Ms. Benett.  Do you

25   understand that, sir?

49

LB51BARS

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Okay.  Mr. Bartley, sir, for a moment

3    there you were looking puzzled.  Did I leave you with something

4    that you wanted to question?

5          THE DEFENDANT:  I just had a question.  So I'm solely

6    to be financially -- my mother is supposed to take care of me

7    in the 18 months, right?  Is that what we're saying?  I can't

8    earn any type of income at all?

9          THE COURT:  That is correct, sir.  I want you to

10   remain in the home.  I'm thinking about the possibility that

11   you might earn income in your home, but I don't really want

12   that to be a focus of your home incarceration.

13         THE DEFENDANT:  It's not.  I just don't want to be my

14   mother's responsibility, but -- I mean, I understand how close

15   I am to the alternative.

16         THE COURT:  Right.  And your mom will understand,

17   because she doesn't want you to have the alternative, sir.

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  All right.

20         THE DEFENDANT:  That's crystal clear.

21         THE COURT:  Good.

22         And Mr. Li, I believe that there are open counts as to

23   Mr. Bartley.  Is the government moving for their dismissal at

24   this time?

25         MR. LI:  Yes, your Honor.  The government moves to

50

LB51BARS

1    dismiss the open counts, which is Counts Two and Three of the

2    indictment.

3              THE COURT:  That motion is granted, sir.  Thank you.

4              Mr. Li, from the government's perspective, is there

5    anything else for us to address today?  Is there anything I've

6    omitted discussing?

7              MR. LI:  No, your Honor.  And just to be clear, we

8    will submit to your Honor the proposed consent order of

9    forfeiture with all of the signatures that were not in a clear

10   format previously.  We will get that to you in a clear format.

11   And we will also submit to the Court a proposed order of

12   restitution that formalizes the terms that the Court had set

13   forth orally.

14             THE COURT:  All right.  Sir, I thank you very much.

15   And my hope and expectation is that in a future sentencing I

16   will get to meet the other members of your team.

17             MR. LI:  Thank you.  We hope the same.

18             THE COURT:  All right.  Mr. Bartley, another question,

19   sir?

20             I'm sorry.  Please unmute yourself.

21             THE DEFENDANT:  One last thing, your Honor.

22             THE COURT:  Yes, sir.

23             THE DEFENDANT:  So I will be contacted by probation?

24             THE COURT:  That would be my expectation, sir.  I

25   mean, I think it begins -- from my perspective, it begins

LB51BARS

| | |
|---|---|
| 1 | today, but it might take a few -- ah, I'm understanding from my |
| 2 | deputy that she will be sending to your counsel a package that |
| 3 | speaks to these issues. |
| 4 | THE DEFENDANT:  Very well. |
| 5 | THE COURT:  But let me just say, Mr. Bartley, I'm not |
| 6 | expecting you to have a wild party over the weekend and do |
| 7 | anything that would cause us to have to see each other again so |
| 8 | soon.  So yes.  And sir, you do deserve your mother's love.  It |
| 9 | is unconditional.  And she will be fine taking care of you for |
| 10 | the next 18 months, especially when presented with the |
| 11 | alternative. |
| 12 | THE DEFENDANT:  Thank you very much, your Honor, for |
| 13 | your kindness. |
| 14 | THE COURT:  Mr. Bartley, I say this to many |
| 15 | defendants.  I'm going to say this to you.  Let's hope you and |
| 16 | I don't see each other in this context again.  Your attorney |
| 17 | has given me free rein to put you in jail if you mess up.  She |
| 18 | might not think she has, but she has.  And also, I don't even |
| 19 | need her permission.  I can do it anyway.  But I'm just telling |
| 20 | you, we're all hoping for you to address and recover from these |
| 21 | very serious health conditions that you have, but if with those |
| 22 | conditions you still engage in criminal conduct or fraudulent |
| 23 | conduct, well, then we'll have to do something about that too. |
| 24 | You said yourself you don't want to spend your golden years in |
| 25 | jail dealing with these health conditions, so please don't put |

52

LB51BARS

1   me in a position of having to make that decision.

2              THE DEFENDANT:  Absolutely not.  I will not.  Thank

3   you, your Honor.

4              THE COURT:  Ms. Benett, is there anything else you'd

5   like to address with me this afternoon?

6              MS. BENETT:  Well, you are making me reconsider our

7   consent to the special conditions, but no, I'm fine.  Nothing

8   further, your Honor.  We appreciate the Court's careful

9   attention to everything we provided, and thank you for your

10  thoughtfulness in fashioning the sentence.

11             THE COURT:  Of course.  And to be clear, I don't

12  disagree with your ideas about community service.  I simply am

13  a little bit concerned about assigning a number to them.

14  That's it.  For me, it's not the issue of doing it.  I think

15  Mr. Bartley can absolutely help the community as best he can.

16  But I just don't feel comfortable, given his health issues,

17  putting a number on it.

18             MS. BENETT:  I appreciate that, your Honor.  Thank

19  you.

20             THE COURT:  All right.  Be well, everyone.  Be well.

21  And have a good weekend.  We are adjourned.  Thank you.

22             MS. BENETT:  Thank you.

23             MR. LI:  Thank you.

24                              oOo

25



Case 1:20-cr-00003-KPF   Document 274   Filed 11/08/21   Page 1 of 7

AO 245B (Rev. 09/19)   Judgment in a Criminal Case   (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

### Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| DARYL BARTLEY | ) |
| a/k/a | ) Case Number:  20-cr-00003-KPF-13 |
| Daryl Ferdinand Bartley; Darryl Barkley; Daryle Barkley; DB | ) |
| Barkley; Daryle Bartley; Daryl Edward Bartley; | ) USM Number:  73351-083 |
| Darylf Bartley; Daryl Ferdinan Bartley, X Bartley; Daryl | ) |
| Ferdinand; Daryl Ferdinard; Robert Gregory Taylor | ) Megan W. Benett, Esq. |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s) ___One___

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Bank and Wire Fraud | 9/30/2019 | One |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   ___ALL OPEN COUNTS___   ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/5/2021
Date of Imposition of Judgment

_Kathrin Polk Faille_
Signature of Judge

Honorable Katherine Polk Failla, U.S. District Judge
Name and Title of Judge

11/8/2021
Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
       Sheet 2 — Imprisonment

| | Judgment — Page | 2 | of | 7 |

DEFENDANT:  DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D
CASE NUMBER:  20-cr-00003-KPF-13

# IMPRISONMENT

       The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Time served

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
              DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |

DEFENDANT:   DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D
CASE NUMBER:   20-cr-00003-KPF-13

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Three (3) years

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
       ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A-275

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

| | | | | |
|---|---|---|---|---|
| Judgment—Page | | 4 | of | 7 |

DEFENDANT:  DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D
CASE NUMBER:  20-cr-00003-KPF-13

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

A-276

Case 1:20-cr-00003-KPF   Document 274   Filed 11/08/21   Page 5 of 7

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT: DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D
CASE NUMBER: 20-cr-00003-KPF-13

## SPECIAL CONDITIONS OF SUPERVISION

1. You will serve the first eighteen (18) months of supervised release on home incarceration at your current residence, to be enforced by the means of location monitoring at the discretion of your assigned Probation Officer at the United States Probation Office. You will remain at your approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Office. You must possess or have access to a telephone that will allow video conferencing by the Probation Office. And you are further directed to report, upon receiving reasonable notice, to any location indicated by the Probation Office in order to have the location monitor affixed and activated.

2. You shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

3. You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

4. You must provide the probation officer with access to any requested financial information.

5. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule.

6. It is recommended that you be supervised in the district of your residence.

A-277

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | | | Judgment — Page | 6 | of | 7 |

DEFENDANT: DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D
CASE NUMBER: 20-cr-00003-KPF-13

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 41,350.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| See Restitution Order | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☑ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Case 1:20-cr-00003-KPF   Document 274   Filed 11/08/21   Page 7 of 7
Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

|  |  | Judgment — Page | 7 | of | 7 |

DEFENDANT: DARYL BARTLEY a/k/a Daryl Ferdinand Bartley; D:
CASE NUMBER: 20-cr-00003-KPF-13

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __100.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☑ in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
    You shall commence monthly installment payments of 15% of your gross income, payable on the 15th of each
    month, immediately upon your release from home incarceration.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
|  |  |  |  |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
$41,350.00

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A-279